**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| **JACOB SHMUEL BOTACH** ) | |
| ) | |
| *Counterclaim Plaintiff,* ) | **Case No. 1:25-cv-20251-KMM** |
| ) | |
| v. ) | **Jury Trial Demand** |
| ) | |
| **FAIZ AKBAR** ) | |
| ) | |
| **and** ) | |
| ) | |
| **JEFFREY SOFFER** ) | |
| ) | |
| *Third Party Defendants,* ) | |
| ) | |
| **and** ) | |
| ) | |
| **FONTAINEBLEAU FLORIDA HOTEL, LLC** ) | |
| ) | |
| *Counterclaim Defendant.* ) | |
| ) | |

**COUNTERCLAIM AND THIRD PARTY COMPLAINT**

Counterclaim Plaintiff Rabbi Jacob Shmuel Botach ("Rabbi Shmuley"), by and through undersigned counsel, hereby files this complaint against Third Party Defendants Faiz Akbar ("Akbar") and Jeffrey Soffer ("Soffer") and Counterclaim Defendant Fontainebleau Florida Hotel, LLC d/b/a Fontainebleau Miami Beach ("the Fontainebleau") for violations of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a; the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 and 1982; and the common law prohibitions on tortious interference with advantageous

business relationships. Rabbi Shmuley seeks to recover monetary damages, estimated at $20,000,000, as well as attorney's fees and costs and to obtain injunctive and declaratory relief.[1]

## JURISDICTION AND VENUE

1.  This Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. § 1331 as the action arises under, *inter alia*, 42 U.S.C. § 2000a and 42 U.S.C. § 1981, laws of the United States, and all other claims are part of the same case or controversy pursuant to 28 U.S.C. § 1367.

2.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) in that all or some events or omissions giving rise to Counterclaim Plaintiff's claims occurred in this judicial district, and Counterclaim and Third Party Defendants have conducted business in this judicial district and may be found conducting business in this judicial district.

## PARTIES

3.  Counterclaim Plaintiff Jacob Shmuel Botach ("Rabbi Shmuley") is an Orthodox Jew and world-renowned influencer on Jewish and Israeli affairs and human rights. Dubbed "America's Rabbi," he is the founder and executive director of the World Values Network, a non-profit organization.

4.  Third Party Defendant Faiz Akbar is a natural person believed to reside in Virginia.

5.  Third Party Defendant Jeffrey Soffer owns, in-whole or in-part, directly or through corporate entities, the Fontainebleau.

6.  Counterclaim Defendant Fontainebleau Florida Hotel, LLC d/b/a Fontainebleau Miami Beach ("the Fontainebleau"), is a corporation conducting business in Florida.

---

[1] On or about the date of filing this Complaint, a copy was sent to the Florida Commission on Human Relations solely to give notice of the events described herein and advise that Rabbi Shmuley seeks to vindicate his claims exclusively in federal court.

## GENERAL ALLEGATIONS

### Rabbi Shmuley's Background and Ties to Israel

7. Rabbi Shmuley is a Jewish-American Orthodox Rabbi. He began his Jewish education at a Jewish school in Greater Miami. After grade school, he studied for two years at the Rabbinical Seminary of California in Los Angeles, followed by two years at the Toras Emes Yeshiva in Jerusalem. He then returned to the United States, studying at Oholei Torah, where he was chosen by the Lubavitcher Rebbe—the foremost global rabbinic leader of the time—to be one of ten rabbinical students sent to establish Sydney, Australia's first-ever rabbinical seminary, where he led community events and outreach for two years.

8. In 1988, Rabbi Shmuley returned to New York to complete his rabbinical ordination at Chabad headquarters at 770 Eastern Parkway, one of the largest and most well-known Chabad yeshivas in the world. Upon ordination, the Lubavitcher Rebbe appointed him as his emissary to Oxford University, where he served as Rabbi for eleven years. During his tenure at Oxford, Rabbi Shmuley brought numerous world leaders and Israeli Prime Ministers—including Benjamin Netanyahu, Ehud Olmert, Shimon Peres, Yitzchak Rabin, and Yitzchak Shamir—to campus to defend Israel against the widespread misinformation and libel being promoted, even at that time. His efforts helped galvanize support for Israel among students and intellectuals from around the world.

9. During his tenure at Oxford, Rabbi Shmuley founded the L'Chaim Society, one of the largest student organizations in the university's long history, second only to the Oxford Union, amassing over 5,000 members of every religion, denomination, ethnicity, and creed.

10. The organization's core mission was to foster Jewish pride, promote universal Jewish values, combat antisemitism, and vigorously defend Israel. Rabbi Shmuley brought a

constant stream of global leaders—including U.S. senators, members of Congress, and world-renowned figures such as Mikhail Gorbachev, Elie Wiesel, Michael Jackson, and Simon Wiesenthal—to speak on Israel's behalf and educate students. Some of these speakers were Nobel Peace Prize laureates whose powerful messages about the Holocaust and the need for a strong Jewish state left a lasting impact. Rabbi Shmuley developed a close relationship with Elie Wiesel and regularly appeared with him in public lectures, advocating that the IDF and a secure Israel are the most necessary responses to the atrocities of the Holocaust.

11. Following over a decade of service at Oxford, Rabbi Shmuley returned to New York to continue his mission with even greater intensity. He authored Holocaust Holiday, a deeply personal account of traveling to 100 Holocaust sites with his children to teach them about the darkest chapters of Jewish history and the necessity of Jewish resilience. He has maintained strong relationships with key figures in Israeli leadership, including Prime Minister Benjamin Netanyahu and Strategic Affairs Minister Ron Dermer, who served as Rabbi Shmuley's student president at Oxford and entered public service in Israel after completing his education. Rabbi Shmuley has taken out countless full-page ads in major media outlets—The New York Times, The Washington Post, USA Today, Los Angeles Times, and The Wall Street Journal—defending Israel in what are among the largest campaigns of their kind. As a result of this, as well as his thousands of syndicated weekly columns and many debates around the world against Israel's foremost critics, many of them televised, he has become a frequent commentator on CNN, Fox News, MSNBC, the BBC, Sky News Australia, and Newsmax, where he is known for refuting misinformation and passionately advocating for Israel. His book *The Israel Warrior*, endorsed by Alan

4

Dershowitz and other leading defenders of Israel, is widely used by high school and university students facing anti-Israel sentiment on campus.

12. Rabbi Shmuley has devoted his life to defending Israel and the Jewish people in his capacity as a clerical figure and due to his sincerely held religious belief that it is his duty to do so. He travels to Israel frequently and is the proud father of three children who have served in the IDF, including two as elite combat soldiers. His daughter Chana served in the IDF Spokesperson's Unit, escorting American four-star generals on official visits. His daughter-in-law, Dalia, served as a military social worker and was responsible for organizing funerals for dozens of fallen soldiers—heartbreakingly, even during the week of her own wedding just days after October 7, 2023 when terrorists invaded Israel from Gaza and killed or kidnapped over a thousand Israeli civilians.

**Rabbi Shmuley's Jewish Race, Religion, and National Origin Are Connected to Israel**

13. As described at length above, Rabbi Shmuley feels and publicly expresses a deep affinity for Israel, his family's ancestral homeland. Rabbi Shmuley, like the vast majority of Jews the world over, identifies Israel as his ultimate place of national origin. His racial and religious identities as a Jew are also intimately connected to Israel and the modern State of Israel. The terms "Jew," "Jewish," and "Judaism" literally come from the word "Judea," an important part of historic Israel.

14. Rabbi Shmuley's connection to Israel is neither idiosyncratic nor can it be chalked up to mere politics; it is at the core and very essence of what makes him (and millions of others) Jewish. The Bible itself references this ancient Jewish hope[2] while the Prophets and Writings of the Hebrew Bible repeatedly record this aspiration.[3] From a Jewish law

---

[2] *See, e.g., Deuteronomy* 30:1-5.
[3] *See, e.g., Isaiah* 11:11-12; *Jeremiah* 29:14; 20:41-42; *Psalm* 126; *Psalm* 137.

perspective, over half of the Biblical commandments that Jews are bound to obey are specifically tied to the Jewish homeland.[4] From a doctrinal point of view, belief in and hope for the return to Zion (Israel) is expressed countless times in thrice daily prayers and is literally part of the 13 Principles of Jewish Faith.[5] Belief in the need for Zionism is no different than belief in the need to keep any of the other commandments. In fact, many commandments such as Sabbatical, Jubilee, consecration of first fruits and festival pilgrimages, presume religious commitment to the biblical Land of Israel.

15. Indeed, the Jewish religion is predicated on the belief that God promised Abraham that he and his descendants shall live in and maintain sovereignty over the Land of Israel,[6] and much of the narrative portions of the Torah and greater Jewish Bible detail the tribulations Jews experience when they do not have sovereignty over this land and their resulting struggle to achieve and maintain such sovereignty.

16. The concepts of a Jewish warrior class and the national defense of the Land of Israel are as integral to Rabbi Shmuley's Jewish religion, race, and national origin as the land of Israel is itself. Indeed, from a biblical or Jewish cultural narrative perspective, the first Jewish army is described a mere two chapters after the Torah details God's promise of Israel to Abraham.[7]

17. All of the aforementioned doctrinal aspects of Judaism are religious beliefs sincerely held by Rabbi Shmuley. Even from a purely secular perspective, this connection to Israel is a core feature of the cultural identity of those of Jewish national origin and race like Rabbi

---

[4] *About Us,* TORAH VEHA'ARETZ INSTITUTE, https://en.toraland.org.il/about.

[5] *Maimonides Introduction to Perek Helek,* MAIMONIDES HERITAGE CENTER, https://www.mhcny.org/qt/1005.pdf (explaining the 12th Fundamental Principle).

[6] *Genesis* 12:1-9.

[7] *Genesis* 14:14 ("And Abram heard that his kinsman had been taken captive, and he armed his trained men, those born in his house, three hundred and eighteen, and he pursued [them] until Dan.").

Shmuley. Whether one views Rabbi Shmuley's Judaism through the prism of religion, race, or national origin, Jewish sovereignty and self-determination in Israel is core to all three identities, which are in and of themselves indivisible.

18. As a result of Rabbi Shmuley's above detailed Judaism and Zionism, and his related public celebration and support of his Jewish race, religion, and national origin, patrons of the Fontainebleau subjected Rabbi Shmuley to antisemitic harassment and threats of violence as described below.[8]

**The First Antisemitic Attack on Rabbi Shmuley at the Fontainebleau**

19. Rabbi Shmuley has a deep attachment to the Fontainebleau. When he was approximately eight years old, his parents divorced and he moved with his mother to Miami Beach, often visiting the Fontainebleau, which was a refuge for Orthodox Jews, especially during holidays like Passover. Over the years, as an adult and public speaker, Rabbi Shmuley addressed various events held at the hotel attended by hundreds.

---

[8] Antisemitism is defined in detail by The International Holocaust Remembrance Alliance ("IHRA"), a multi-governmental organization with 35 member countries, including the United States, with a mission "to strengthen, advance and promote Holocaust education, remembrance, and research worldwide." *See* International Holocaust Remembrance Alliance, *About The International Holocaust Remembrance Alliance* (last visited Nov. 19, 2024), https://holocaustremembrance.com/who-we-are. Recognized as a "vital tool in the struggle against antisemitism" by the New York Governor's office (*See* Proclamation of Governor Kathy Hochul (Jun. 12, 2022), https://www.governor.ny.gov/sites/default/files/2022-06/IHRA_Antisemitism_Definition_Proclamation-2022.pdf), IHRA defines antisemitism as encompassing, inter alia, "making mendacious, dehumanizing, demonizing, or stereotypical allegations about Jews as such or the power of Jews as collective — such as, especially but not exclusively, the myth about a world Jewish conspiracy or of Jews controlling the media, economy, government or other societal institutions ("Jews Control the World Trope"); accusing Jews as a people of being responsible for real or imagined wrongdoing committed by a single Jewish person or group, or even for acts committed by non-Jews ("Collective Responsibility Trope"); denying the Jewish people their right to self-determination, e.g., by claiming that the existence of a State of Israel is a racist endeavor ("Jewish Self-Determination Denial"); using the symbols and images associated with classic antisemitism (e.g., claims of Jews killing Jesus or blood libel) to characterize Israel or Israelis ("Blood Libel Trope"); and drawing comparisons of contemporary Israeli policy to that of the Nazis ("Holocaust Inversion")." International Holocaust Remembrance Alliance, *Working Definition of Antisemitism* (last visited Nov. 19, 2024), https://holocaustremembrance.com/resources/working-definition-antisemitism (cleaned up). As of August 2024, 35 States and the District of Columbia have adopted IHRA, including Texas and New York. American Jewish Committee, *Use of the Working Definition in the U.S.* (last visited Nov. 19, 2024), https://www.ajc.org/use-of-the-working-definition-in-the-us.

20. After Rabbi Shmuley's father passed away in May 2020, he wanted to be closer to his mother, so he bought an apartment on 43rd and Collins Avenue, just two blocks from his cherished Fontainebleau. This was a familiar and comfortable location, as he had grown up nearby on 44th and Prairie Avenue, where his mother still lived.

21. However, things took an unexpected turn on or about January 3, 2023 when he was sitting inside the Fontainebleau lobby working on his laptop. Three individuals approached him and began shouting "Free Palestine" and making threatening gestures. Feeling threatened, he captured the tail-end of the harassment on his phone.

22. Rabbi Shmuley went to the hotel's security, thinking they would handle the situation properly and come to his defense, but to his surprise, the security staff accused *him* of harassing the guests, even though the video clearly showed that he was the one being attacked and harassed for no other reason other than sitting with a yarmulke and therefore identifiably Jewish in a hotel lobby.

23. The following day, Rabbi Shmuley reached out to Phil Goldfarb, Chief Operating Officer of the Fontainebleau. The two knew each other because Rabbi Shmuley had taken Goldfarb's daughter Dara to Israel on an all-expense paid Birthright trip to Israel, and she had introduced Rabbi Shmuley to her father, saying to call him if he ever needed anything. Goldfarb called Shmuley back quickly and apologized, acknowledging that the security staff handled the situation terribly and promising to retrain them to address issues related to antisemitism. Goldfarb expressed his complete shock and outrage at the attack on Rabbi Shmuley and noted his own great fears over the growing tide of antisemitism throughout the United States.

24. Although Rabbi Shmuley did not publicly mention where the attack took place, the harassment had generated attention on social media. Goldfarb reached out again, seeing that the incident had gone globally viral, and asked if Rabbi Shmuley would consider publicly not mentioning the hotel. Rabbi Shmuley explained he had not named the hotel because he trusted the management's commitment to retrain the security staff to protect Jewish guests as Goldfarb promised. Goldfarb then had Patrick Fisher, Managing Director of the hotel, speak and meet with Rabbi Shmuley. Fisher offered Rabbi Shmuley free vacations at the hotel, which he refused, and then insisted on a small gesture like pool passes for Rabbi Shmuley and his grandkids on the infrequent occasions they were in Miami, which Rabbi Shmuley accepted.

**The Second Antisemitic Attack on Rabbi Shmuley at the Fontainebleau**

25. In or about the late hours of December 1, 2024 and early hours of December 2, Rabbi Shmuley was in the lobby of the Fontainebleau working on a proposed acceptance speech for one of President Trump's cabinet nominees who was friendly with Rabbi Shmuley and has expressed strong public support for Israel. He was approached from behind by Faiz Akbar, who recognized Rabbi Shmuley from his countless TV appearances and debates defending Israel and fighting antisemitism.

26. Akbar, appearing deeply dangerous, unhinged, and suffused with near-lethal hate launched into an unprovoked and physically threatening antisemitic tirade, nearly all of which was captured on film. Referencing Israel's defensive operations in Gaza and Rabbi Shmuley's ties to Israel, such as his sons' service in the IDF and his Jewish and Israeli advocacy on popular media such Piers Morgan Uncensored, Akbar falsely accused Rabbi Shmuley of being a "baby killer" and demanded that he leave the premises, aggressively throwing

virtually every curse word in book at him and saying things like "get the fuck out of here, pussy" and "get out of the lobby right now man I don't want to see people like you." Akbar's demands that Rabbi Shmuley leave the hotel were coupled with threats of imminent violence such as "I will spit on your face right now" and "I will fuck your shit." Akbar's menacing attack and taunts made clear his intention of imminently committing an act of violence against Rabbi Shmuley.

27. The incident, which was largely captured on video, occurred over several minutes and was in the proximity of hotel security guards who watched passively and failed to respond for an extended time. Rabbi Shmuley yelled for security to come to his aid and pleaded with security to call the police. Security finally responded and instead of calling the police to protect Rabbi Shmuley, a security guard threatened to call the police on him. The security guard astonishingly engaged in a handshake and hug with the assailant and did not promptly report the incident to law enforcement despite Rabbi Shmuley's pleas.

28. Fearing for his safety and with no law enforcement in sight, Rabbi Shmuley left the Fontainebleau that evening.

29. Rabbi Shmuley then sent the entire video of the attack to Goldfarb and then called him. Goldfarb did not accept his calls, acknowledge the video, or text back.

30. Absent meaningful communication from the hotel, on or about December 3, 2024, Rabbi Shmuley announced litigative plans to vindicate his civil right to patronize the Fontainebleau sans antisemitic harassment and threats of imminent violence, which would have been the case had the hotel responded effectively to Akbar's attack or properly trained its security following the 2023 incident.

31. That same week, the Fontainebleau released a statement calling the attack on Rabbi Shmuley "an altercation," refused to acknowledge that Rabbi Shmuley was the victim of a heinous antisemitic attack, and said that one of the parties had used "abhorrent language," suggesting it might have been Rabbi Shmuley rather than Akbar. Commentators condemned the hotel's failure to call out the antisemitic nature of the attack.[9]

32. On December 6, 2024, Rabbi Shmuley, through counsel, notified the Fontainebleau in writing of his intent to pursue litigation against the hotel for, *inter alia*, "discrimination in a public accommodation, and any other causes of action in State and Federal law uncovered."

**The Fontainebleau and Soffer's Retaliation Against Rabbi Shmuley**

33. On December 6, 2024, the Fontainebleau informed Rabbi Shmuley, via letter to counsel, that it was "declin[ing] entry and service to" Rabbi Shmuley because he was "actively in or threatening litigation against the hotel." At the time, Rabbi Shmuley held lifetime passes to access Fontainebleau facilities such as the swimming pool.

34. The letter also included cease-and-desist demands that Rabbi Shmuley remove videos exposing the attack and censor his commentary on it and the surrounding circumstances.

35. This letter also cites in its first paragraph Rabbi Shmuley's attempt to vindicate his civil rights through litigation. Similarly, the third paragraph mentions "Rabbi Botach's threats of a lawsuit."

36. Beginning on or about December 16, 2024, Jeffrey Soffer, a Fontainebleau owner, made multiple calls to Miriam Adelson—then a very close friend and supporter of the Rabbi—telling her that that Rabbi Shmuley went to the Fontainebleau on the night of the attack looking for a fight and that he is a fraudulent Jew and not really Orthodox. He further

---

[9]https://jewishjournal.com/commentary/columnist/editors-note/377439/miami-hotel-cant-bring-itself-to-say-antisemitism.

told Adelson that Rabbi Shmuley is crazy, insane, argumentative, and not normal.  Soffer also claimed that a video from the hotel showed that Rabbi Shmuley had earlier approached and harassed Akbar, falsely portraying Rabbi Shmuley as the instigator of the attack. These statements were not true. Thereafter, Adelson stopped donating to Rabbi Shmuley's organization. At the time, Adelson was Rabbi Shmuley's largest donor and a close friend of nearly two decades.

37. Aware of the commercial relationship between Rabbi Shmuley and Adelson, Soffer also requested that Adelson pressure Rabbi Shmuley to not pursue his contemplated civil rights litigation against the Fontainebleau.

38. On or about December 18, 2024, Soffer continued his campaign of retaliation against Rabbi Shmuley by speaking to another group of supporters, the Falic family of Bal Harbor, and told Moshe Levy, Simon Falic's son-in-law, that Rabbi Shmuley intentionally got attacked to shakedown the hotel, he is a shakedown artist, and is a fake rabbi. Soffer indicated that Rabbi Shmuley searches for antisemitic attacks to justify his organization's existence. These statements were not true. Thereafter, the Falic family, which was counted among Rabbi Shmuley's closest supporters and friends, withdrew donations to Rabbi Shmuley's organization.

39. Aware of the business relationship between Rabbi Shmuley and the Falics, Soffer also requested that the Falics pressure Rabbi Shmuley to not pursue his contemplated civil rights litigation against the Fontainebleau.

40. On December 19, 2024, the Fontainebleau filed a retaliatory lawsuit against Rabbi Shmuley, the instant matter, including 63 paragraphs of introductory and background allegations that take up over eleven pages and were seemingly inserted to embarrass and humiliate Rabbi

12

Shmuley. Many of the allegations therein contain statements and accusations about Rabbi Shmuley unrelated to the Fontainebleau's causes of action and some amount to nothing more than personal attacks and petty insults. The lawsuit not only accuses Rabbi Shmuley of criminal conduct like extortion and financial misconduct but also conduct unbecoming of a rabbi such as eating at non-kosher establishments like the Fontainebleau. The hotel also gratuitously dredged up alleged, irrelevant conflicts between Rabbi Shmuley and unnamed third parties and his family members.

41. The Fontainebleau filed a retaliatory lawsuit against Rabbi Shmuley, despite the fact that Soffer had earlier offered Adelson a public apology to Rabbi Shmuley so long as he did not file a claim. Due to Rabbi Shmuley's friendship with Adelson, Rabbi Shmuley agreed to these terms, adding that Soffer had to also agree to finally train his security to protect Jewish visitors. In the end, it appears Soffer was just buying time to build his retaliatory lawsuit against Rabbi Shmuley.

## CAUSES OF ACTION

### COUNT I
Violation of Title II of the Civil Rights Act of 1964
42 U.S.C. § 2000a
(Against Akbar, the Fontainebleau, Soffer)

42. Rabbi Shmuley incorporates all prior paragraphs as if they were stated fully herein.

43. 42 U.S.C. § 2000a(a) reads: "All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin."

44. For purposes relevant here, places of public accommodation are statutorily defined as including a "hotel" like the Fontainebleau. 42 U.S.C. § 2000a(1).

45. 42 U.S.C. § 2000a-2 reads "No person shall (a) withhold, deny, or attempt to withhold or deny, or deprive or attempt to deprive any person of any right or privilege secured by section 2000a or 2000a–1 of this title, or (b) intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person with the purpose of interfering with any right or privilege secured by section 2000a or 2000a–1 of this title, or (c) punish or attempt to punish any person for exercising or attempting to exercise any right or privilege secured by section 2000a or 2000a–1 of this title."

46. 42 U.S.C. § 2000a-2(b) and 2(c) also function as anti-retaliation provisions. *See, e.g.*, *Fenton v. Dudley*, 761 F.3d 770, 776 (7th Cir. 2014) ("The Civil Rights Act has an anti-retaliation provision, section 203(b)"); *Hamm v. Rock Hill*, 379 U.S. 306, 310-11, 85 S. Ct. 384, 388-89 (1964) (looking to the anti-retaliation aspects of 2(c)).

47. Rabbi Shmuley is easily identifiable as Jewish because of his yarmulke, rabbinical beard, tzitzit, and public and primetime media persona as "America's Rabbi."

48. Akbar identified Rabbi Shmuley as a Jew, even referencing his Jewish advocacy on the Piers Morgan show and the ongoing Gaza War, and because of this subjected him to threats of violence. Akbar did not similarly threaten any non-Jews at the Fontainebleau that night. In threatening Rabbi Shmuley with violence, Akbar "attempt[ed] to . . . deny" or otherwise "attempt[ed] to deprive" Rabbi Shmuley "a[] right or privilege secured by section 2000a," 42 U.S.C. § 2000a-2(a), namely his right to enjoy the facilities of the Fontainebleau, a hotel and therefore a place of public accommodation. Akbar otherwise violated 42 U.S.C. § 2000a-2(b)-(c) by attempting to and succeeding in intimidating, threatening, coercing and punishing Rabbi Shmuley for exercising his rights. As Rabbi Shmuley left the premises,

fearing for his safety and life, Akbar in fact succeeded in denying and depriving Rabbi Shmuley of his rights.

49. Rabbi Shmuley also "attempted to exercise [his] right or privilege secured by section 2000a" by exposing the antisemitism he experienced and formulating and announcing plans to secure his right to patronize the Fontainebleau sans antisemitic harassment by commencing litigation against the Fontainebleau for inadequately addressing Akbar's attack, and clearly failing to train their security staff after other such attacks. In violation of 42 U.S.C. § 2000a-2, the Fontainebleau, with Soffer acting as their agent and in his individual capacity, retaliated against Rabbi Shmuley by revoking his access to the hotel and his lifetime facilities passes and making false and scandalous statements to his key donors. Thereafter the hotel filed a retaliatory lawsuit.

50. As a direct and proximate result of Akbar's, the Fontainebleau's, and Soffer's actions, Rabbi Shmuley experienced considerable financial loss, emotional distress, harm to his reputation, humiliation, and embarrassment.

51. For this Count, Rabbi Shmuley seeks costs, attorneys' fees, and declaratory and injunctive relief to the fullest extent permissible by law.

52. Wherefore, Rabbi Shmuley seeks an injunction against the Fontainebleau restoring his lifetime passes and access to the hotel and a declaration that retaliating against Rabbi Shmuley was unlawful; a declaration that Jeffrey Soffer's aforestated retaliation was unlawful and an injunction against further retaliation to the fullest extent permissible by law; and an injunction against Akbar requiring that he stay a reasonable distance away from Rabbi Shmuley and not further interfere with his civil rights and a declaration this his conduct was unlawful.

53. Rabbi Shmuley's request for attorneys' fees has a statutory basis. *See United States v. Sec'y Fla. Agency for Health Care Admin.*, 21 F.4th 730, 743 (11th Cir. 2021) (citing 42 U.S.C. § 2000a-3(b)) ("a prevailing party may recover its reasonable attorney's fees.")).

**COUNT II**
Violation of the Civil Rights Act of 1866
42 U.S.C. § 1981
(Against Akbar, the Fontainebleau, and Soffer)

54. Rabbi Shmuley incorporates all prior paragraphs as if they were stated fully herein.

55. 42 U.S.C. § 1981(a) reads in relevant part: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . and to the full and equal benefit of all laws . . . for the security of persons and property."

56. 42 U.S.C. § 1981(b) reads: "For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

57. The statute under which this cause arises "was designed to do just what its terms suggest: to prohibit all racial discrimination . . . with respect to the rights enumerated therein." *Runyon v. McCrary*, 427 U.S. 160, 170, 96 S. Ct. 2586, 2594, 49 L. Ed. 2d 415 (1976).

58. The Supreme Court has "held that 42 U. S. C. § 1981 . . . prohibits not only racial discrimination but also retaliation against those who oppose it." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 354-55, 133 S. Ct. 2517, 2529 (2013) (citation omitted).

59. Rabbi Shmuley is a racially Jewish person within the jurisdiction of the United States who, because of his Jewish race, was unlawfully denied the same right to contract as others when Akbar unlawfully forced him but not any non-Jews out of the Fontainebleau with his threats of violence.

60. Akbar additionally violated Rabbi Shmuley's rights on the basis of his race in violation of § 1981 by depriving him the full and equal benefit of Florida's common law tort prohibiting assault and the related Fla. Stat. § 784.011, also a law for the security of persons and property, which prohibits the making of an "unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent."

61. Rabbi Shmuley opposed this discrimination, as well as the enabling of such discrimination, by formulating and announcing a plan to vindicate his civil rights through litigation against the Fontainebleau for inadequately addressing Akbar's attack.

62. The Fontainebleau, with Soffer acting as their agent and in his individual capacity, retaliated against Rabbi Shmuley for trying to enforce his rights by revoking his access to the hotel and his lifetime facilities passes, making false and scandalous statements to his key donors, and filing a retaliatory lawsuit against Rabbi Shmuley.

63. As a direct and proximate result of Akbar's, Soffer's, and the Fontainebleau's actions, Rabbi Shmuley experienced considerable financial loss, emotional distress, harm to his reputation, humiliation, and embarrassment.

64. Wherefore, Rabbi Shmuley seeks all relief available at law, including attorneys' fees, which are statutorily codified in 42 U.S.C. § 1988(b).

**COUNT III**
Violation of the Civil Rights Act of 1866
42 U.S.C. § 1982
(Against Akbar, the Fontainebleau, and Soffer)

65. Rabbi Shmuley incorporates all prior paragraphs as if they were stated fully herein.

17

66. 42 U.S.C. § 1982 reads "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

67. The statute under which this cause arises "was designed to do just what its terms suggest: to prohibit all racial discrimination . . . with respect to the rights enumerated therein." *Runyon v. McCrary*, 427 U.S. 160, 170, 96 S. Ct. 2586, 2594, 49 L. Ed. 2d 415 (1976).

68. The Supreme Court has long recognized that "§ 1982 encompasses retaliation claims." *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 447, 128 S. Ct. 1951, 1955 (2008) (discussing *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 90 S. Ct. 400, 24 L. Ed. 2d 386)).

69. Rabbi Shmuley is a racially Jewish citizen. In addition to providing lodging, the Fontainebleau also sells a number of items that may become one's personal property upon purchase.

70. Because of Rabbi Shmuley's Jewish race, Akbar unlawfully deprived him of his rights under this statute by forcing him out of the Fontainebleau with threats of violence, precluding Rabbi Shmuley from making purchases at the Fontainebleau.

71. The Fontainebleau has similarly deprived Rabbi Shmuley of making such purchases because it banned him from the hotel in retaliation for exposing the discrimination he experienced and formulating and announcing a plan to vindicate his civil rights through litigation against the hotel for inadequately addressing Akbar's attack. The hotel also filed a retaliatory lawsuit against Rabbi Shmuley.

72. As a direct and proximate result of Fontainebleau and Soffer's actions, Rabbi Shmuley experienced considerable financial loss, emotional distress, harm to his reputation, humiliation, and embarrassment.

18

73. Wherefore, Rabbi Shmuley seeks all relief available at law, including attorneys' fees, which are statutorily codified in 42 U.S.C. § 1988(b).

## COUNT IV
### Tortious Interference with Advantageous Business Relationships
(Against the Fontainebleau and Soffer)

74. Rabbi Shmuley incorporates all prior paragraphs as if they were stated fully herein.

75. "In Florida, the elements of tortious interference are '(1) the existence of a business relationship that affords the plaintiff existing or prospective legal rights; (2) the defendant's knowledge of the business relationship; (3) the defendant's intentional and unjustified interference with the relationship; and (4) damage to the plaintiff.'" *Aerotek, Inc. v. Zahn*, 625 F. App'x 394, 395 (11th Cir. 2015) (quoting *Int'l Sales & Serv., Inc. v. Austral Insulated Prods., Inc.*, 262 F.3d 1152, 1154 (11th Cir. 2001)).

76. Rabbi Shmuley had a business relationship with Miriam Adelson and the Falic family as they were central donors to Rabbi Shmuley's organization. The Fontainebleau and their agent Soffer were aware of the existence of this business relationship and in fact played on this relationship in attempting to thwart Rabbi Shmuley's contemplated civil rights litigation and silence him for exposing and opposing unlawful discrimination. Acting in pursuit of the Fontainebleau's interests, Soffer made false and scandalous statements to Rabbi Shmuley's donors with the intent of causing a rupture in their relations as punishment for Rabbi Shmuley's exposure of discrimination at the hotel and announced civil rights litigation against the Fontainebleau. Retaliating against someone for exposing discrimination and seeking to vindicate their civil rights in court is unjustified. As a result of the Fontainebleau and Soffer's actions, Rabbi Shmuley lost his largest donors.

77. As a direct and proximate result of Fontainebleau and Soffer's actions, Rabbi Shmuley experienced considerable financial loss, emotional distress, harm to his reputation, humiliation, and embarrassment.

78. Wherefore, Rabbi Shmuley seeks all relief available at law, including compensatory damages and punitive damages in an amount to be determined at trial, payment of Rabbi Shmuley's reasonable attorney's fees, expert fees, and costs, pre-judgment and post-judgment interest on the preceding items as provided by law, injunctive relief, declaratory relief, and such other relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Rabbi Shmuley prays as follows:

A. That the Court order Akbar, the Fontainebleau, and Soffer to pay compensatory damages;

B. That the Court order Akbar, the Fontainebleau, and Soffer to pay punitive damages;

C. That the Court enter judgment in favor of Rabbi Shmuley including injunctive relief and declaratory relief;

D. That the Court order Akbar, the Fontainebleau, and Soffer to pay Rabbi Shmuley's reasonable attorney's fees, expert fees, and costs;

E. That the Court order Akbar, the Fontainebleau, and Soffer to pay pre-judgment and post-judgment interest as provided by law; and

F. Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Rabbi Shmuley demands a jury trial for all issues herein that are so triable.

Date: July 23, 2025

Respectfully submitted,

**National Jewish Advocacy Center, Inc.**

   /s/        *Matthew Mainen*
Matthew Mainen
Maryland Bar No. 2012170265
*Appearing Pro Hac Vice*
3 Times Square
New York, NY 10036
Phone:  (301) 814-9007
Email: matt@njaclaw.org

**Docketed and also Signed By**:

   /s/        *Samuel Feldman*
Samuel Feldman
Florida Bar No. 1042262
Pennsylvania Bar No. 326206
71 Northeast 27th Avenue
Pompano Beach, FL 33062
Phone:  (954) 682-8590
Email: sam@feld.law