UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:25-cv-20251-KMM

FONTAINEBLEAU FLORIDA HOTEL, LLC,

    Plaintiff,
v.

JACOB SHMUEL BOTACH, *et al.*,

    Defendants.
_____/

## ORDER ON MOTION TO DISMISS

THIS CAUSE came before the Court upon Defendant Jacob Shmuel Botach's Motion to Dismiss Plaintiff's First Amended Complaint. ("Motion" or "Mot.") (ECF No. 19). Plaintiff Fontainebleau Florida Hotel, LLC ("Plaintiff") filed a Response in opposition, ("Resp." or "Response") (ECF No. 27), and Defendant filed a Reply, ("Reply") (ECF No. 29). The Motion is now ripe for review.

**I.    BACKGROUND**[1]

This case arises from an incident that occurred at the Fontainebleau Florida Hotel (the "Hotel") on December 2, 2024. *See generally* FAC. Plaintiff alleges that the following events occurred:

> After more than an hour of loitering, Defendant Boteach engaged in an uneventful conversation with a registered guest of the Hotel and the two parted ways. More than an hour later (after midnight on Sunday, December 2, 2024), Defendant Boteach engaged in a verbal altercation with the same registered guest wherein the guest and Defendant Boteach exchanged hateful words at each other. The guest used language that was heinous and accused Defendant Boteach of being a "baby killer" and other words that are easily interpreted as antisemitic. Defendant

---

[1] The following facts are taken from the First Amended Complaint ("FAC") (ECF No. 12) and are accepted as true for purposes of ruling on the Motion to Dismiss. *See MSP Recovery Claims, Series LLC v. Metro. Gen. Ins. Co.*, 40 F.4th 1295, 1302 (11th Cir. 2022).

> Boteach, in turn, hurled anti-Islamic words at the registered guest and repeatedly shouted, "Allahu Akbar? Are you going to blow yourself up or something? … he uses the expressions of, like, suicide bombers."  Within hours, Defendant Boteach posted an edited video of the exchange on Instagram and began his campaign of threats against the Hotel, its ownership, its outside lawyer, and its employees—who had nothing to do with the altercation except that Hotel security de-escalated and ended it.

*Id.* ¶¶ 28–29.  Plaintiff alleges that following the altercation, the Defendant, who the FAC describes as a "social media influencer and rabbi" with "hundreds of thousands of social media followers[,]" went on a "multi-week assault on the [Hotel], its personnel, and representatives—creating AI videos purporting to show them celebrating antisemitism, comparing them to Nazi collaborators, falsely accusing them of banning Jews from the property, and fabricating statements that they embraced a policy of Judenrein, i.e., the extermination of six million Jews."  *Id.* ¶¶ 2, 12.  The FAC alleges that Defendant falsely stated that he was denied entry to the Hotel because he is "too Jewish," that the Hotel refused to cooperate with law enforcement's investigation of the incident, and that he "was trespassed from the Hotel for being 'too Jewish[.]'"  *Id.* ¶¶ 87, 91.  Plaintiff further alleges that "Defendant Boteach published a statement that, in part, called for guests 'who have booked' at the Hotel to 'cancel your reservations'" and to "'be smart and cancel and give your hard-earned money to a hotel that doesn't abide antisemites.'"  *Id.* ¶ 10.  Moreover, Plaintiff alleges:

> At all hours of the day and night, Defendant Boteach proceeded to harass the Hotel and its representatives. For example, he posted a "headshot" photograph of the head of the Hotel's outside counsel with the words "DIGITALLY DECAPITATED" and later, at 3:49 am, menacingly threatened that counsel was "about to have a really interesting Shabbat" when he arrived at his synagogue, which Defendant Boteach identified by name and location. Defendant Boteach directly contacted counsel's clergy and posted harassing images of them.

*Id.* ¶ 13.

On January 16, 2025, this action was removed from the 11th Judicial Circuit in and for Miami-Dade County to this Court.  *See generally* (ECF No. 1).  On February 18, 2025, Plaintiff

2

filed the FAC alleging: (1) defamation *per se* against Defendant ("Count I"), (2) ordinary defamation against Defendant ("Count II"), (3) aiding and abetting defamation against unnamed defendants ("Count III"), (4) tortious interference with business relationships against Defendant ("Count IV"), and (5) aiding and abetting tortious interference with business relationships against unnamed defendants ("Count V"). *See generally* FAC. Now before the Court is Defendant's Motion to Dismiss which seeks dismissal of Counts I, II, and IV of the FAC with prejudice. *See generally* Mot.

**II.    LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint for failing to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). This requirement "give[s] the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and alterations omitted). The court takes the plaintiff's factual allegations as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

A complaint must contain enough facts to plausibly allege the required elements. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295–96 (11th Cir. 2007). A pleading that offers "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

**III.   DISCUSSION**

In the instant Motion, Defendant argues that (1) the FAC is a shotgun pleading, (2) Plaintiff's ordinary defamation claim (Count II) fails as a matter of law, (3) Plaintiff's *per se* defamation claim (Count I) fails as a matter of law, (4) Plaintiff is not entitled to injunctive relief, and (5) Plaintiff's tortious interference with business relationships (Count IV) claim fails as a matter of law. *See generally* Mot. Defendant moves to dismiss Counts I, II, and IV with prejudice. *Id.* at 21. The Court will address Defendant's arguments, along with Plaintiff's Response and Defendant's Reply, in turn.

**A.   The FAC is not a Shotgun Pleading**

As an initial matter, the Court is not convinced by Defendant's argument that the FAC is a shotgun pleading. *See* Mot. at 11. Defendant argues that because the FAC "includes superfluous references to settlement negotiations, prior events, accusations of extortion, and descriptions of conduct completely unrelated to the alleged defamatory statements or the underlying incident[,]" it is a shotgun pleading. *Id.* In response, Plaintiff asserts that "'[t]he unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.'" Resp. at 13 (quoting *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015)). Plaintiff further contends that the FAC "does not come close to the level of dysfunctional pleading to which shotgun-pleadings caselaw applies." Resp. at 13. The Court agrees and finds that the FAC sufficiently places Defendant on notice of the claims brought against him. Accordingly, to the extent Defendant seeks dismissal of the FAC on shotgun pleading grounds, the Motion is DENIED.

### B. Dismissal of Count II (Ordinary Defamation) is Improper

Under Florida law, the tort of defamation, which includes libel and slander, is generally defined as "the unprivileged publication of false statements which naturally and proximately result in injury to another." *Alan v. Wells Fargo Bank, N.A.*, 604 F. App'x 863, 865 (11th Cir. 2015). To state a claim for defamation, a plaintiff must plausibly allege that the defendant (1) published, (2) to a third party, (3) a false statement about the plaintiff, and (4) the falsity of the statement caused injury to the plaintiff. *Id.* (quoting *Valencia v. Citibank Int'l*, 728 So.2d 330, 330 (Fla. 3rd DCA 1999)). "True statements, statements that are not readily capable of being proven false, and statements of pure opinion are protected from defamation actions by the First Amendment." *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018) (citing *Keller v. Miami Herald Publ'g Co.*, 778 F.2d 711, 714–15, 717 (11th Cir. 1985)). "Whether the statement is one of fact or opinion and whether a statement of fact is susceptible to defamatory interpretation are questions of law for the court." *Id.* at 1262–63.

The FAC alleges that Defendant falsely stated that he was denied entry to the Hotel because he is "too Jewish," that the Hotel refused to cooperate with law enforcement's investigation of the incident, and that he "was trespassed from the Hotel for being 'too Jewish[.]'" FAC ¶¶ 87, 91. Defendant argues that "alleged defamatory statements amount to pure opinion" and that "expressions of opinion, regardless of how offensive, [including] that a party or entity is 'racist' or 'Nazi'[,] are not actionable as defamation[.]" Mot. at 14 (citations omitted). In Response, Plaintiff argues that "[w]hether the Hotel trespassed Defendant Boteach because he is 'too Jewish' is capable of being proven true or false." Resp. at 5. In Reply, Defendant argues that "[t]he statement that Defendant was banned for being 'too Jewish' is obviously Defendant's hyperbolic

5

opinion based on the sequence of events and circumstances laid out in [the FAC]." Reply at 4.

The Court disagrees. The FAC alleges that:

> Defendant Boteach knew that he was disseminating false statements because his claims were about events in which he purported to have been personally involved. For example, Defendant Boteach edited a letter that stated he was trespassed because of his threats of litigation by misleadingly deleting from that letter—that he had access to and read—the basis of the trespass (i.e., his threats of litigation) and then he claimed the Hotel trespassed him because he is "too Jewish" (i.e., falsely attributing those words to the Hotel). . . . The claim that Defendant Boteach was trespassed from the Hotel for being "too Jewish" was false because Defendant Boteach was trespassed pursuant to Hotel policy to not entertain people who are threatening litigation against the Hotel.

FAC ¶¶ 71, 73. Accepting the FAC's allegations as true, the Court finds that Defendant's statement that he was "banned for being 'too Jewish'" is capable of being proven false, and thus, a statement of fact or, in other words, the statement is actionable as defamation.[2] Accordingly, Defendant's Motion as to Count II is DENIED.

### C.  Dismissal of Count I (Defamation *Per Se*) is Improper

To state a claim for defamation *per se*, a plaintiff must plausibly allege that the defendant (1) published, (2) to a third party, (3) a false statement about the plaintiff, (4) that rises to the level of defamation *per se*. *Berisha v. Lawson*, 378 F. Supp. 3d 1145, 1155 (S.D. Fla. 2018), *aff'd*, 973

---

[2] While the Response and Reply discuss whether the FAC's allegation that Defendant falsely stated that the Hotel "'refused' to cooperate with a law enforcement investigation following the Incident" plausibly states a claim for ordinary defamation, the Court need not address this statement, because this argument was not raised in the Motion. *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court." (cleaned up)); *see also* Resp. at 3; Reply at 4; *see generally* Mot. The Court further notes that in his Motion, Defendant makes general arguments about the alleged defamatory statements but fails to convey which specific statement(s) he is referencing. *See, e.g.*, Mot. at 15 ("Here, Defendant's alleged defamatory statements amount to pure opinion, especially when they are considered in the context of on the events of December 2, 2024, as described in the Complaint and captured on the disturbing video. Moreover, Defendants' statements that the hotel supports antisemitism can only be considered hyperbolic statements of opinion."); *see also United States v. Dunkel*, 927 F. 2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

F.3d 1304 (11th Cir. 2020). "Defamation *per se* does not require any additional explanation to prove the defamatory nature of the statement." *Akai Custom Guns, LLC v. KKM Precision, Inc.*, 707 F. Supp. 3d 1273, 1293–94 (S.D. Fla. 2023). "In a defamation *per se* action, the injurious nature of the statement is apparent from the words in the statement itself and the court consequently takes notice of that fact." *Id.* (citing *Campbell v. Jacksonville Kennel Club, Inc.*, 66 So. 2d 495, 497 (Fla. 1953)). "A publication may be defamation *per se* when, considered alone without innuendo: (1) it charges that a person has committed an infamous crime; (2) it charges a person with having an infectious disease; (3) it tends to subject one to hatred, distrust, ridicule, contempt or disgrace; or (4) it charges conduct, characteristics, or a condition incompatible with the proper exercise of a lawful business, trade, profession or office which thereby tends to injure one in his trade or profession." *Akai Custom Guns*, 707 F. Supp. 3d at 1294 (citing *Richard v. Gray*, 62 So. 2d 597, 598 (Fla. 1953)). Moreover, "[t]o injure one in his trade or profession, the statement must, without innuendo, strike at 'professional competence and fitness to engage in a given profession.'" *San Juan Prods., Inc. v. River Pools & Spas, Inc.*, No. 8:21-CV-2469-TPB-JSS, 2023 WL 1994087, at *8 (M.D. Fla. Feb. 14, 2023) (quoting *Leavitt v. Cole*, 291 F. Supp. 2d 1338, 1346 (M.D. Fla. 2003)). "The false statement must do more than merely harm the person or entity in its trade or business – the statements must impute fraud, want of integrity, or actual misconduct." *Id.* (citation omitted).

Relatedly, Defamation *per se* against a corporate defendant may be recoverable. *See id.* "Some examples of statements that have constituted defamation *per se* include explicit statements accusing a person or entity of committing specific crimes punishable by law, such as insurance fraud, or statements that a hospital performed and charged for unnecessary tests and medications

and made profits by leaving patients in intensive care for a longer period of time whenever possible[.]" *Id.* (citations omitted).

As an initial matter, in arguing Count I of the FAC should be dismissed, Defendant only addresses the FAC's allegation that Defendant published the following statement: "@fontainbleumiamibeach being slaughtered on their own social media as hundreds cancel their reservations[.]" Mot. at 17 (quoting FAC ¶ 55). While Defendant notes that this is "the only publication identified in the [FAC,]" the Court finds that Plaintiff is not required to attach the FAC's referenced publications at this stage. *Id.*; *see also Mennella v. Am. Airlines, Inc.*, No. 17-21915-CIV, 2019 WL 1429636, at *4 (S.D. Fla. Mar. 29, 2019), *aff'd*, 824 F. App'x 696 (11th Cir. 2020) ("To meet the standard for publication to a third party, a plaintiff must allege the identity of the particular person to whom the remarks were made with a reasonable degree of certainty[.]"). Relatedly, the FAC alleges that Defendant published statements asserting that "he was denied entry to the Hotel because he is 'too Jewish'" and that "the Hotel refused to cooperate with a law enforcement investigation into the Incident." FAC ¶¶ 68–69. Consequently, because (1) Plaintiff is not required to attach the alleged publications at this stage and (2) the Motion fails to address several grounds for relief raised in the FAC, the Court finds dismissal of Count I inappropriate. *See Jones v. Poole*, No. CV 118-206, 2019 WL 4795677, at *2 (S.D. Ga. Sept. 30, 2019) (quotations omitted) ("It is not the role of the [c]ourt to make arguments for the parties but to consider and decide the specific arguments made by the parties."); *Amargos v. Verified Nutrition, LLC*, 666 F. Supp. 3d 1249, 1250 (S.D. Fla. 2022) (quotations omitted) ("It's well-established that arguments not properly presented in a party's initial brief or raised for the first time in a reply brief are deemed waived."). Accordingly, Defendant's Motion as to Count I is DENIED.

### D. The Hotel is not a Public Figure

Whether an individual or entity is a public figure "'is a question of law to be determined by the court.'" *San Juan Prods*, 2023 WL 1994087, at *7 (quoting *Jacoby v. Cable News Network, Inc.*, 537 F. Supp. 3d 1303, 1309 (M.D. Fla. 2021)). Florida law recognizes both general and limited public figures. *See Turner v. Wells*, 879 F.3d 1254, 1272 (11th Cir. 2018). Defamation of a general public figure requires a showing of actual malice. *See id.* Defamation of a limited public figure, however, requires a showing of "actual malice only in regard to certain issues." *Id.* Notably, "the *Twombly/Iqbal* 'plausibility pleading standard applies to the actual malice standard in defamation proceedings.'" *Id.* (quotations omitted). "Thus, to plead actual malice, [Plaintiff] must allege facts sufficient to give rise to a reasonable inference that the false statement was made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Id.* (quotations omitted).

Nevertheless, in his Motion, Defendant failed to sufficiently argue that the Hotel is a public figure. Notably, the sole case cited by Defendant, asserting that the Hotel is a public figure, is both egregiously misquoted and concerns the application of Alabama law. *Compare* Mot. at 11 (quoting *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1252 (11th Cir. 2021) (emphasis added) ("'When applying state defamation law to public figures, **such as the Fontainebleau Hotel,** the First Amendment imposes additional limitation[.]'") (emphasis added), *with Coral Ridge Ministries Media, Inc.*, 6 F.4th at 1252 ("When applying state defamation law to public figures, the First Amendment imposes additional limitations.").

Moreover, even if this Court found that the Hotel is a public figure, that determination would have no impact on this Court's ruling, because the FAC sufficiently pleads actual malice on behalf of the Defendant. *See* FAC ¶ 10 ("Defendant Boteach deliberately distorted a statement of

9

the Hotel, deleting a portion that made clear it declined entry to persons threatening litigation against the Hotel, so as to create the false appearance that he was told that the Hotel enacted a policy to ban Jews."); *see also id.* ("Defendant Boteach threatened that his counsel was preparing "the most devastating lawsuit from which I hope the rancid hotel will never recover."); *id.* ("Defendant Boteach published several AI-generated videos of persons affiliated with the Hotel in which he purports to quote them apologizing (i.e., admitting misconduct) and denying the wrongfulness of antisemitism.").

### E. Tortious Interference of Business Relationship (Count IV)

To prove tortious interference with a business relationship, a plaintiff must show: (1) the existence of a business relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff because of the breach of the relationship. *Novell v. Bank of Am. Corp.*, No. 14–CV–80672–RLR, 2014 WL 7564678, at *3 (S.D. Fla. Dec. 3, 2014).

Defendant argues that the FAC "fails to identify any actual 'business relationship' with which Defendant 'intentionally or unjustifiably' interfered." Mot. at 20; *see also id.* at 19 (quoting *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 815 (Fla.1994)) ("It is well-established that 'business relationship' requires a relationship with a particular party, and not a relationship with the general business community."). In response, Plaintiff contends that "a tortious interference pleading need only show identifiable people; the standard does not require identified people at the pleading stage." Resp. at 7; *see also id.* (quoting *Ferguson Transp., Inc. v. N. Am. Van Lines, Inc.*, 687 So. 2d 821, 821 (Fla. 1996)) ("To 'establish the tort of tortious interference with a business relationship, the plaintiff must prove a business relationship with identifiable customers.'"). Defendant does not respond to Plaintiff's argument in his Reply. *See*

10

*generally* Reply; *see also Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) ("When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned." (quotations omitted)).

Nevertheless, in the case cited by Defendant, *Ethan Allen, Inc.*, the Supreme Court of Florida notes that "a plaintiff may properly bring a cause of action alleging tortious interference with present or prospective customers but no cause of action exists for tortious interference with a business's relationship to the community at large." 647 So. 2d at 815 (citations omitted). Here, the Court finds that the FAC sufficiently alleges tortious interference "with present or prospective customers." *Id.*; *see also* FAC ¶¶ 114–115 (discussing Defendant's published statements regarding "hundreds of cancellations by guests at the Hotel").[3] The Court further finds that the FAC sufficiently alleges damages. *See* FAC ¶¶ 114–115. Accordingly, Defendant's Motion as to Count IV is DENIED.

### F. The Court Defers Ruling on Whether Injunctive Relief is Appropriate

Defendant argues that "Plaintiff is not entitled to injunctive relief as it would amount to impermissible prior restraint on speech in violation of the First Amendment, even if, as Plaintiff suggests, such speech is made for profit." Mot. at 19. In response, Plaintiff asserts that "Plaintiff has not yet moved for issuance of an injunction and it is far too premature to resolve on the merits Plaintiff's ability to seek an injunction for Defendant's commercial speech that was designed to enrich himself through extortion at the expense of Plaintiff's business." Resp. at 12. In reply,

---

[3] In the instant Motion, Defendant merely argues that the FAC fails to identify "any actual business relationships or resultant damages" and provides no argument as to the remaining elements of tortious interference with a business relationship, such as knowledge and intentionality. Mot. at 20; *see also Novell*, 2014 WL 7564678, at *3. Consequently, this Court will merely consider whether (1) the FAC sufficiently alleges the existence of a business relationship and (2) the FAC sufficiently alleges damages. *Id.*

Defendant asserts that "Plaintiff admits that it did not identify any basis for injunctive relief yet continues to double down on its accusations salacious and impertinent accusations of criminal conduct." Reply at 7. In this case, the Court declines to consider whether injunctive relief is appropriate at this stage in the litigation, because Plaintiff has not moved for injunctive relief nor brought a claim solely requesting injunctive relief. Accordingly, Defendant's Motion as to Plaintiff's request for injunctive relief is DENIED WITHOUT PREJUDICE.

### G. Dismissal Under the Single Publication Rule is Improper

In his Motion, Defendant argues that "this Court must dismiss either Count I or Count II and Count IV for tortious interference because the single publication/single action rule mandates dismissal of torts based on the same publications and facts as a defamation claim." Mot. at 21 (citing *Byrd v. Hustler Magazine, Inc.*, 433 So. 2d 593, 594–95 (Fla. 4th DCA 1983)). In response, Plaintiff argues that Defendant "distorts" the facts and "misapprehends Florida law with respect to the single-publication rule." Resp. at 1. Plaintiff contends that the correct interpretation of the rule is one that "generally bars plaintiffs from asserting multiple causes of action based on the same, single defamatory statement." *Id.* (citing *Callaway Land & Cattle Co. v. Banyan Lakes C. Corp.*, 831 So. 2d 204, 208 (Fla. 4th DCA 2002)).

Notably, the case cited by Defendant, *Byrd v. Hustler Mag., Inc.*, held that a "a picture and its caption must be viewed as a composite" in determining whether a publication is defamatory. 433 So. 2d at 594. As Defendant provides no insight as to why this holding is relevant to the facts here, the Court does not find Defendant's contention that "this Court must dismiss either Count I or Count II and Count IV" compelling. *See Dunkel*, 927 F. 2d at 956. Moreover, Plaintiff notes that in this case, "there are multiple publications at issue, and the statements underlying the defamation claims in Counts I and II are different from the statements underlying Count IV." Resp.

12

at 9. At this stage of the litigation, and considering the Parties' arguments, the Court does not find dismissal under the single publication rule appropriate. *See, e.g., Ditthardt v. N. Ocean Condos, L.P.*, 580 F. Supp. 2d 1288, 1290 (S.D. Fla. 2008) (citation omitted) ("On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as true.").

## IV.   CONCLUSION

UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that Defendant Jacob Shmuel Botach's Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 19) is DENIED.

DONE AND ORDERED in Chambers at Miami, Florida, this 16th day of September 2025.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc: All counsel of record