UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CV-20251-MOORE/Elfenbein

**FONTAINEBLEAU FLORIDA HOTEL, LLC**,

    Plaintiff,

v.

**JACOB SHMUEL BOTACH**, *et al*,

    Defendants.
_____/

## ORDER

**THIS CAUSE** is before the Court on two Notices of Hearing, one filed by Defendant Jacob Shmuel Botach ("Defendant"), ECF No. [55], and one filed by Plaintiff Fontainebleau Florida Hotel, LLC ("Plaintiff"), ECF No. [56]; ECF No. [65].[1]  Defendant's Notice of Hearing ("Defendant's Notice"), ECF No. [55], notified the Court that the Parties dispute whether Plaintiff should be required to produce documents responsive to Defendant's Third Request for Production ("Defendant's RFP") Nos. 1–11.  *See* ECF No. [55] at ¶1(a).  Plaintiff's Notice of Hearing ("Plaintiff's Notice"), ECF No. [65], notified the Court that the Parties dispute whether Defendant should be required to produce the documents responsive to Plaintiff's First Request for Production (Plaintiff's RFP") Nos. 9, 16, and 17.  *See* ECF No. [65] at 1-2.

---

[1] Plaintiff filed an Amended Notice of Hearing, ECF No. [65], articulating the same issues as its original Notice of Hearing, ECF No. [56].  Plaintiff notes in the Amended Notice of Hearing that "only Exhibit C has been amended, solely to include three additional documents on which Plaintiff intends to rely at the hearing, and which were not in existence at the time the initial Notice of Hearing was filed on September 15, 2025. Those three additional documents are: (1) Exhibit C.6 – Order denying Defendant's Motion to Dismiss Plaintiff's First Amended Complaint entered September 16, 2025 (ECF No. 57); (2) Exhibit C.7 – Paperless Order denying Defendant's Motion to Strike entered September 18, 2025 (ECF No. 59); and (3) Exhibit C.8 – Email from Defendant's Counsel dated September 18, 2025." *See* ECF No. [65] at n.1.

CASE NO. 25-CV-20251-MOORE/Elfenbein

On September 30, 2025, the Court conducted a hearing via Zoom to address these matters (the "Hearing"). *See* ECF No. [67]. The Court heard argument from both sides concerning Defendant and Plaintiff's Notices. *See* ECF No. [67]. At the Hearing, the Parties made two oral motions: (1) Defendant made an Oral Motion to Compel Documents Responsive to Defendant's RFP Nos. 1-11 ("Defendant's Motion"), ECF No. [83], and (2) Plaintiff made an Oral Motion to Compel Documents Responsive to Plaintiff's RFP Nos. 9, 16, and 17 ("Plaintiff's Motion"), ECF No. [84]. At the Hearing, the Court *sua sponte* raised an additional concern regarding the conduct of Samuel Clifford Feldman, Esq. ("Mr. Feldman"), co-counsel of record for Defendant, based on the documents submitted in Plaintiff's Amended Notice of Hearing, ECF No. [65]. Specifically, the document of concern involved an email exchange between Mr. Feldman, Plaintiff's counsel, and co-counsel for Defendant, which may violate the Florida Rules of Professional Conduct. *See* ECF No. [65-3] at 86-88. At the Hearing, the Court ruled on Plaintiff's Motion to Compel, and took Defendant's Motion to Compel under advisement. To memorialize the oral rulings from the Hearing and to rule on the matter taken under advisement, it is **ORDERED and ADJUGED** as follows:

**A. Plaintiff's Motion to Compel, ECF No. [84]**

For the reasons stated at the Hearing, Plaintiff's Motion to Compel Documents Responsive to Plaintiff's RFP Nos. 9, 16, and 17, **ECF No. [84]**, is **GRANTED**. Defendant **SHALL** produce documents responsive to Plaintiff's RFP Nos. 9, 16, and 17 **on or before October 20, 2025**.

**B. Defendant's Motion to Compel, ECF No. [83]**

Defendant's RFP Nos. 1–11 seek information related to Plaintiff's financials. *See* ECF No. [55-2] at 5. At the Hearing, Defendant argued that Plaintiff's claims for defamation place at issue whether Defendant's actions harmed Plaintiff's reputation. Defendant further argued that the best

2

way to assess reputational harm is through financial information. Accordingly, Defendant argued that its RFP Nos. 1-11, seeking Plaintiff's financial information, are necessary to show whether Plaintiff's sustained any reputational damages. Plaintiff conceded that, if Plaintiff were seeking damages based on reputational harm, lost profits, or lost bookings, Plaintiff's financial information would be relevant. Plaintiff, however, asserted that it is not seeking such damages. Instead, Plaintiff clarified that its damages theory is limited to remediation costs — specifically, increased marketing expenditures incurred to counteract alleged defamatory conduct. Plaintiff emphasized that its expert's testimony is confined to those marketing-related damages and does not rely on revenue or profitability data. Plaintiff advised the Court that it intended to seek leave to amend its damages allegations by interlineation to remove any claims for reputational harm and lost profits or bookings by the end of that week. The Court took the matter under advisement until the end of the week to await Plaintiff's proposed amendments of the Complaint by interlineation and to receive a copy of the report prepared by Plaintiff's damages expert, which the Court ordered Plaintiff to submit by October 3, 2025. *See* ECF No. [67].

Plaintiff timely submitted the report of its expert and filed a Notice of Filing Plaintiff's Proposed Amendments to its Complaint in which it sought to formally remove claims for reputational harm and lost profits. *See* ECF No. [73]. The undersigned, however, struck that filing as inconsistent with Federal Rule of Civil Procedure 15 and inconsistent with the undersigned's comments during the Hearing. *See* ECF No. [76] ("If Plaintiff wishes to amend its pleading, by interlineation or otherwise, it must file an appropriate motion for leave to amend in compliance with the Federal Rules of Civil Procedure and Local Rules, not a Notice."). As of the date of this Order, Plaintiff has not filed a motion seeking to amend by interlineation.

Nonetheless, the Court has sufficient information on which to rule based on its review of Plaintiff's damages expert report. The report makes calculations based on the "[r]emedial damages for 3-year marketing campaign to repair the Fontainebleau Miami Beach Hotel's brand and image[.]" Specifically, the analysis in Plaintiff's expert report focuses on Defendant's impact and reach on public audiences generally, media commentary against Plaintiff regarding the subject incident and each media outlet's reach, and Defendant's social media posts and reach regarding the subject incident. Ultimately, Plaintiff's damages expert opines that Plaintiff would have to undertake "a three-year advertising, marketing and public relations campaign separate from any unrelated or routine campaigns, to focus on positive image building and reinforcement for the hotel's inclusivity, luxury, safety and appeal, with a segment dedicated to Jewish audiences in America." To support this opinion, she explains the following:

> it takes at least three messages to correct and/or counterbalance one negative or defamatory one. Marketing studies indicate that to counteract negative impressions (such as a bad review or a crisis event), brands must employ consistent, repeated messaging across multiple channels to rebuild familiarity, trust, and preference. Research points to an optimal ad frequency for positive effects, emphasizing that repeated contact is necessary for lasting recall and attitude change. Public relations campaigns are generally long-term engagements when strategically targeting image-building (or in this case, correcting).

As a result, she opines that the remedial marketing costs will be $1 million in the first year, $750,000 in the second year and $500,000 in the third year.

Based on its review of the report, the Court finds that Plaintiff's expert report is confined to marketing-related damages and does not rely on revenue or profitability data or lost bookings. In light of the foregoing, any evidence related to Plaintiff's financials, as sought in RFP Nos. 1-11, are not relevant to the very limited category of damages that Plaintiff seeks in this case. Therefore, Defendant's Motion to Compel Documents Responsive to Defendant's RFP No. 1-11, **ECF No. [83]**, is **DENIED**. With that said, should Plaintiff in the future take a position contrary

to the representations made at the Hearing regarding its damages and seek damages for harm to its reputation, lost revenue, or cancelled bookings, Defendant may renew its motion at such time.

### C. Referral of Attorney Samuel Clifford Feldman to this Court's Disciplinary Committee

On the day before the Hearing, Plaintiff supplemented its Notice of Hearing with three additional documents that were not available at the time the original Notice of Hearing was filed. Of significance to the discussion that follows is an email sent by Defendant's attorney, Mr. Feldman, to Plaintiff's counsel that raises serious concerns about Mr. Feldman's professionalism, civility, and adherence to the Rules Regulating the Florida Bar. *See* ECF No. [65-3] at 85-91.

To be more specific, on September 18, 2025 at 5:07 p.m., Plaintiff served its First Set of Request for Admissions, Second Set of Interrogatories, and Third Request for Production of Documents on Defendant. *See* ECF No. [65-3] at 88-89. Within 30 minutes of receiving that email, which simply served discovery requests, Mr. Feldman emailed a three-page non-sensical rant to all counsel of record. *See* ECF No. [65-3] at 86-89. Within three hours of this email, Defendant's other attorneys, Matthew Mainen and John Y. Benford, emailed Plaintiff's counsel to advise that neither of them, their law firms, nor their client (the Defendant) authorized the email from Mr. Feldman. *See* ECF No. [65-3] at 85.

In this email, Mr. Feldman proceeds to demand $100 million from Plaintiff in the next 14 days and thereafter continues to discuss the law of extortion in Florida, suggesting that Defendant will be "adding" their "weird Turnberry overlords and private equity daddies" "'to the chat shortly" so it is

> [t]ime for one of those fat checks they are writing to end up in ourrrr [sic] pockets, not yours. Time for me to EXPOSE, EXPOSE, EXPOSE, Jeffrey Soffer. We recently learned some very interesting thingssss [sic] . . . . Hopefully, your insurance carriers will still cover some aspects of the catastrophe to unfold for your clients. . . . I look forward to reading every single word of every single policy related to every single one of the soon-to-be expanded ensemble of named defendants. . . .

5

*See* ECF No. [65-3] at 87.

In another portion of Mr. Feldman's email, he makes disparaging remarks toward Plaintiff's counsel, saying:

> Okay, fess up: Which first-year over there stuffed some botched prompt into Lexis Protégé, and put personal touches on to further screw up the already-incorrect output? And what partner overbilled to pretend to review it, and thus missed every single, did not correct any single, of the many aspects of and assumptions within your ridiculously wrong (in light of the law) conclusions? In the unlikely chance those over-billing partners actually did review the first-year's junk . . . . . . Wow. Those optics would be quite worse for y'all.

*See* ECF No. [65-3] at 86.

And throughout the email, Mr. Feldman uses inappropriate language, such as "I'm just a guy that knows when some bastion of Corporate America reallyyyyyyy [sic] *shit the bed*"; "[c]onditions which quite conveniently did not touch on discussion of existing policies and procedures, and updates proven necessary by the incidents suffered by Rabbi Shmuley and many other Jews thanks to your *shit* hotel;" and "[s]ilence about warning our fellow community members of the truth that they were not safe to patronize your overrated (meaning it is poorly rated but its rating should be even poorer), overpriced *shitty* hotel, where you use a lot of questionable tactics to try to juice your bottom-lines." *See* ECF No. [65-3] at 86-89 (emphasis added).

Rule 4-8.4(d) of the Rules Regulating the Florida Bar states that a lawyer shall not "engage in conduct in connection with the practice of law that is prejudicial to the administration of justice, including to knowingly, or through callous indifference, disparage, humiliate, or discriminate against litigants . . . witnesses . . . or other lawyers on any basis . . ." The Comments to Rule 4-8.4 explain that "[t]he proscription extends to any characteristic or status that is not relevant to the proof of any legal or factual issue in dispute. Such conduct, when directed towards litigants, . . . witnesses . . . or other lawyers, . . . subverts the administration of justice and undermines the

public's confidence in our system of justice, as well as notions of equality." Attorneys admitted to practice in the Southern District of Florida must adhere to the Rules Regulating the Florida Bar. *See* S.D. Fla. L. R. 11.1(c) ("The standards of professional conduct of members of the Bar of this Court shall include the current Rules Regulating the Florida Bar. For a violation of any of those cannons in connection with any matter pending before this Court, an attorney may be subjected to appropriate disciplinary action."). Indeed, the Local Rules make clear that "it is a fundamental tenet of this Court that attorneys in this District be governed at all times by a spirit of cooperation, *professionalism*, and *civility*." See S.D. Fla. L. R., Intro. Stmt. (emphasis added).

Rule 6(c)(1) of the Rules Governing the Admission, Practice, Peer Review, and Discipline of Attorneys in the Southern District of Florida states as follows: "Any . . . Magistrate Judge . . . may, in the Judge's discretion, refer in writing to the [Ad Hoc] Committee [on Attorney Admissions, Peer Review, and Attorney Grievance] the name of any attorney . . . whose acts or omissions may violate the Standards for Professional Conduct (See Rule 6(b)(2)(A))." In light of this rule and Mr. Feldman's conduct, the Court hereby refers this matter to the Committee. The Court believes that Mr. Feldman's conduct raises a significant question as to whether his conduct has violated the Standards for Professional Conduct.

**DONE AND ORDERED** in Chambers in Miami, Florida on October 10, 2025.

_____
**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc: All counsel of record