**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

FONTAINEBLEAU FLORIDA HOTEL,
LLC d/b/a FONTAINEBLEAU MIAMI
BEACH, *a foreign limited liability company,*        CASE NO. 1:25-cv-20251-KMM

      Plaintiff,

  v.

JACOB SHMUEL BOTACH, *et.al.*

      Defendants.

_____/

### DEFENDANT/COUNTER PLAINTIFF'S RESPONSE IN OPPOSITION TO PLAINTIFF'S RULE 11 MOTION FOR SANCTIONS

Defendant Jacob Shmuel Botach ("Rabbi Botach"), by and through undersigned counsel,

hereby, hereby files this Response in Opposition to Plaintiff's Rule 11 Motion for Sanctions (ECF

No. 105, hereinafter "Mot."). In support thereof, Defendant states as follows:

### INTRODUCTION[1]

Rabbi Botach was twice threatened and attacked in Plaintiff's hotel lobby simply because

he was Jewish. The attacks were videotaped. He spoke up about Plaintiff's response. He was then

sued. Following that strategy, Plaintiff now seeks to sanction Rabbi Botach via Fed. R. Civ. P. 11

for filing a counterclaim for Plaintiff's violation of his civil rights. In support of its Rule 11 Motion,

Plaintiff contends that Rabbi Botach "is not about that truth" and filed a counterclaim "to

---

[1] Plaintiff incorporated by reference its "arguments from its Motion to Dismiss and Reply in Support (ECF Nos. 80, 96). Mot. at 1. The undersigned was not retained to represent Rabbi Botach's former counsel. *See* Fed. R. Civ. P. 11(c)(5)(A) ("The court must not impose a monetary sanction against a represented party for violating Rule 11(b)(2)"). Accordingly, this response will not address certain the issues, including the alleged hallucinated case citations. In addition, the undersigned were just retained and have reached out to Plaintiff's counsel to confer on various issues, including providing leave for Rabbi Botach to file an amended response to Plaintiff's Motion to Dismiss Counterclaim.

retaliate[,]" "leverage" and "harass[.]" Mot. at 2, 7. Plaintiff further contends that Rabbi Botach weaponized the "Counterclaim as a principal facet of his social-media activity" in a "desire to look tough online." *Id.* at 6. When stripped of the *ad hominem*,[2] Plaintiff's Motion is effectively another round of briefing on its pending Motion to Dismiss. That is improper.

Plaintiff's Rule 11 motion is thus an extraordinary overreach. It asks this Court to convert a contested civil-rights counterclaim arising from an indisputably antisemitic attack in a hotel lobby, security inaction, and subsequent retaliation into sanctionable misconduct. That is not what Rule 11 is for. The rule is not a tool to emphasize the merits of a litigant's position, nor is it a substitute for a motion to dismiss or for summary judgment. *See* Advisory Committee Notes, 1993 Amendments ("Nor should Rule 11 motions be prepared to emphasize the merits of a party's position, to exact an unjust settlement, [or] to intimidate an adversary into withdrawing contentions that are fairly debatable[.]"). Rule 11 is instead "intended to deter claims with *no* factual basis at all; creative claims coupled even with ambiguous or inconsequential facts, may merit dismissal but not punishment." *Davis v. Carl*, 906 F.2d 533, 538 (11th Cir. 1990) (emphasis in the original).

Nothing pled in the Counterclaim meets the objectively frivolous standard. Rather, the Counterclaim pleads concrete facts and invokes well-founded theories under Title II and 42 U.S.C. §§ 1981 and 1982, along with a traditional Florida tort claim. Plaintiff may disagree with Rabbi Botach's theories and claims. Plaintiff may believe they are weak. But mere disagreement, weakness, and even dismissal, do not give rise to sanctions. This Court should deny Plaintiff's Motion.

---

[2] *E.g.* Plaintiff's Motion at 9 ("This Court is not a circus from which Botach can springboard into his angry, if often incoherent, online tirades.")

## ARGUMENT

### I.   STANDARD

"Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." *Menendez v. Signature Consultants, LLC*, Case No. 11-cv-61534, 2011 WL 6179727, *1 (S.D. Fla. Dec. 13, 2011) (quoting *Operating Eng'rs Pension Trust v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988). The Eleventh Circuit applies a two-part test: (1) whether the claims are objectively frivolous; and (2) whether the signer should have known they were frivolous at the time of filing. *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998).

In applying this objective reasonableness standard, "any doubts as to whether Rule 11 has been violated should be resolved in favor of the party who signed the pleading." *Miller v. RelationServe, Inc.*, Case No. 05-cv-61944, 2006 WL 5849318, *9 (S. D. Fla. Dec. 1, 2006). Additionally, sanctions "are not warranted when the claimant's evidence is merely weak but appears sufficient, after a reasonable inquiry, to support a claim under existing law." See *Baker*, 158 F.3d at 524.

A claim is frivolous only "if no reasonably competent attorney could conclude that it has any reasonable chance of success or is a reasonable argument to change existing law." *Id*.  The party moving for Rule 11 sanctions has a "relatively high burden of showing the lawsuit is so baseless in law or fact to justify Rule 11 sanctions." *Cabrera v. Goodyear Tire & Rubber Co*., No. 10-cv-21226, 2011 WL 535103, at *2 (S.D. Fla. Feb. 8, 2011)

### II.   RABBI BOTACH'S TITLE II CLAIM IS NOT FRIVOLOUS, NOR IS HE REQUIRED TO PLEAD A COMPARATOR, NOR DOES HE NEED TO PROVE ONE IN AN ACCOMODATION CLAIM

Plaintiff first contends that Rabbi Botach's claim is frivolous because he "and his counsel know or should have known that identifying an apt comparator is and will be impossible." Motion

at 3. The requirement of a comparator arises in the employment discrimination context under Title VI, which is not at issue here. As the Fifth Circuit explained, the employment discrimination requirement of a "similarly situated" comparator is sometimes applied in the accommodation context because of:

> [S]cant case law under Title II. By contrast, Title VII of the Civil Rights Act of 1964, which prohibits discrimination in employment, has produced a good deal of case law. For this reason, courts faced with a Title II case frequently borrow Title VII authority. The district court below identified several courts that have used the Title VII case *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to determine whether a plaintiff has satisfied his or her burden of proof in a Title II case for which there is circumstantial evidence only. Consistent with these courts, the district court used *McDonnell Douglas* to guide her analysis of Fahim's Title II claim.

*Fahim v. Marriott Hotel Servs., Inc.,* 551 F.3d 344, 349 (5th Cir. 2008) (internal citations omitted). Courts in this District have likewise acknowledged this gap. *See Bivins v. Wrap it Up, Inc.*, No. 07-cv-80159, 2007 WL 3047122, at *5 (S.D. Fla. Oct. 18, 2007) (acknowledging that the "Eleventh Circuit has not articulated a *prima facie* test to apply in accommodations, as opposed to employment, cases.").

Recognizing the differences in the employment versus accommodation setting, some courts have adopted a different framework altogether. *See e.g. Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 870-71 (6th Cir. 2001)). One court in this District described this alternative approach as follows:

> The Sixth Circuit acknowledged providing a comparator is not always reasonably possible in cases outside the employment context and laid out a different test for a prima facie case in non-employment discrimination. This test requires:
>
> > (1) plaintiff is a member of a protected class;
> >
> > (2) plaintiff sought to make or enforce a contract for services ordinarily provided by the defendant; and
> >
> > (3) plaintiff was denied the right to enter into or enjoy the benefits or

privileges of the contractual relationship in that

> (a) plaintiff was deprived of services while similarly situated persons outside the protected class were not and/*or*

> (b) plaintiff received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory.

Under this formulation, outward hostility or other evidence of discrimination can establish the same prong of a prima facie case as a comparator does.

*West v. LQ Mgmt., LLC*, 156 F. Supp. 3d 1361, 1367 (S.D. Fla. 2015) (internal citations omitted).

"The primary difference between these tests is whether or not they require a comparator; the remaining elements track closely." *Id.* In *West*, Judge Altonaga determined that a Plaintiff need not prove a comparator to prevail in an accommodation claim because the tests, even in employment cases, are not designed to be "rigid" and "to require a comparator . . . would effectively bar Plaintiffs' claim—even if every disputed fact of discrimination Plaintiffs present is true. Such an outcome, inflexible denying Plaintiffs' otherwise plausible claim discrimination for want of a comparator, finds no support in either the nature of the prima facie case or in the purpose of Title IV." *Id.* at 1167-68.

Accordingly, Plaintiff's assertion that Rabbi Botach's claim is "frivolous" because an "apt comparator" is "impossible" rests on a legal premise that is not well established. Federal courts, including some in this District, have expressly recognized that public-accommodation related claims plaintiffs may proceed without comparator evidence where discriminatory intent is shown through markedly hostile or objectively unreasonable treatment. At most, Plaintiff's argument goes to the weight of Rabbi Botach's evidence, which is a merits issue not a sanctions issue. It does not render the claim legally deficient, let alone sanctionable. Rule 11 is not a vehicle for collapsing unsettled doctrine into a single, rigid pleading requirement, and it certainly does not permit

sanctions for advancing a theory that multiple federal courts have already endorsed.

### III. RABBI BOTACH'S § 1981 CLAIM HAS BOTH FACTUAL AND LEGAL MERIT

Plaintiff next argues that Rabbi Botach's § 1981 is frivolous because "Botach knew or should have known that he did not try to make any contract with the Hotel and otherwise did not have any contract with the Hotel that could have been interfered with. And § 1981 claims cannot be based on speculative future contracts." Motion at 4. Plaintiff's Motion ignores that Rabbi Botach had a preexisting relationship with Plaintiff and that Plaintiff interfered with that relationship because of Rabbi Botach's protected activity and status.

For example, the Counter claim alleges that he was previously attacked at Plaintiff's hotel on January 3, 2023. ECF No. 40, ¶ 21. Following the first attack, Plaintiff provided Rabbi Botach with "pool passes" for him and his family. Id. at ¶ 24 ("Fisher offered Rabbi Shmuley free vacations at the hotel, which he refused, and then insisted on a small gesture like pool passes for Rabbi Shmuley and his grandkids on the infrequent occasions they were in Miami, which Rabbi Shmuley accepted."). The Counterclaim goes on to allege that Plaintiff "retaliated against Rabbi Shmuley for trying to enforce his rights by *revoking his access to the hotel and his lifetime facilities passes*, making false and scandalous statements to his key donors, and filing a retaliatory lawsuit against Rabbi Shmuley." *Id.* at ¶ 62. Plaintiff's disagreement with these allegations is, once again, a merits issue, not a sanctions issue. Nonetheless, those allegations describe far more than a "speculative future contract." They plead a concrete and existing course of dealing and benefit.

Plaintiff further attacks Rabbi Botach's 1981 claim as frivolous for lack of any possible comparator." Motion at 4. For the reasons stated above, Plaintiff's argument is misplaced. Indeed, in *Usai v. Club Mgmt. Miami II, LLC*, this Court has already ruled that claimants need not pled an apt comparator at this stage in the litigation:

The Court finds, and Slizskaya and Vega do not dispute, that the Complaint is lacking in terms of identifying comparators. *See generally* Compl.; *see* MTD Resp. at 12–13. However, Slizskaya and Vega are correct that failure to identify specific comparators is not fatal to their discrimination claims at this stage. *See Bardelas v. City of Doral*, No. 1:20-CV-24894-KMM, 2021 WL 12313738, at *7 (S.D. Fla. Aug. 23, 2021) (explaining that "courts have found insufficient comparators are not fatal even at the motion for summary judgment stage" (citing *Troupe*, 861 Fed.Appx. at 293–94)). The Eleventh Circuit recently emphasized that "it is error for a district court to apply the *McDonnell Douglas* standard at the motion to dismiss stage." *Hernandez v. CareerSource Palm Beach Cnty., Inc.*, No. 23-12285, 2025 WL 1541367, at *4 (11th Cir. May 30, 2025). Instead, "[a]t the pleading stage in the Title VII context, ... a plaintiff must provide enough factual matter, taken as true, to plausibly suggest intentional discrimination." *Id.* at *3."

*Usai v. Club Mgmt. Miami II, LLC*, 801 F. Supp. 3d 1295, 1319 (S.D. Fla. 2025) (Moore, J.).

Plaintiff's motion thus rests on a fundamental mischaracterization of both the pleadings and the governing law. Rabbi Botach has alleged a concrete, existing relationship with Plaintiff's hotel and a retaliatory and discriminatory revocation of that relationship. He is not required—at the pleading stage or in response to a sanctions motion—to prove a comparator or to negate every alternative explanation for Plaintiff's conduct. Plaintiff's arguments go to what Rabbi Botach may or may not be able to prove after discovery. They do not transform a colorable § 1981 claim into a frivolous one. Rule 11 is not a substitute for a motion to dismiss or summary judgment, and it does not authorize sanctions simply because Plaintiff believes it will ultimately prevail on the merits.

## IV.   THE § 1982 CLAIM HAS LEGAL AND FACTUAL BASIS

As Plaintiff's next attempt at sanctions, it claims that there is "no property interest." Motion at 4-5. Once again, Plaintiff ignores the property rights pled in the counterclaim (i.e. lifetime passes and access to Plaintiff's hotel and facilities) and ignores clear Eleventh Circuit precedent that § 1982 "protects broadly defined property rights." *Watts v. Joggers Run Prop. Owners Ass'n, Inc.*, 133 F.4th 1032, 1045 (11th Cir. 2025); *see also Tillman v. Wheaton-Haven Recreation*

7

*Association, Inc.,* 410 U.S. 431, 433 n.3, 93 S.Ct. 1090, 35 L.Ed.2d 403 (1973*)* (right to access community pool covered under the protection of § 1982).

In other words, § 1982 is not limited to ownership in real property, it reaches discriminatory interference with the use and enjoyment of broad personal property interests, including access rights, and other incidents of property. The Counterclaim alleges that Plaintiff granted Rabbi Botach lifetime access to the hotel's facilities and then, because of discriminatory and retaliatory animus, revoked those rights. ECF No. 40 ¶¶ 24, 62. Those allegations fall squarely within the type of "broadly defined property rights" protected by § 1982. Nor can Plaintiff dispute that Rabbi Botach falls within a protected class under the statute. The Supreme Court has held unequivocally that "Jews constitute[] a protected group of people that Congress intended to protect" under § 1982. *Shaare Tefila Congregation v. Cobb*, 481 U.S. 615, 616 (1987).

## V.   RABBI BOTACH'S TORTIOUS INTERFERENCE CLAIM HAS LEGAL AND FACTUAL BASIS

Plaintiff next argues that Plaintiff's Florida tortious interference claim is frivolous because it purportedly seeks damages belonging to "*persons not named as parties in the Counterclaim*." Motion at 5 (emphasis in original). Plaintiff's contention is a simple standing and "proper party" argument, a merits defense that belongs in a Rule 12(b)(6) motion, not Rule 11.

Plaintiff further contends that the tortious-interference claim is frivolous because Rabbi Botach has "no evidence" of "commitment to donations[,]" "withdraws of donations[,]" and or "any legal right to future donations." Mot. at 6.[3]   To the contrary, Counterclaim alleges more than speculation, it pleads personal and economical relationships with identifiable and well-respected members of the Jewish community and alleges that Plaintiff interfered with those relationships by

---

[3] Plaintiff further contends "The evidence shows that donations stopped before Mr. Soffer allegedly took any action beginning on December 16, 2024." Mot. at 6. That is a classic factual dispute appropriate for summary judgment or trial, not sanctions. Likewise, Plaintiff's causation argument is not appropriate.

making false and scandalous statements about Rabbi Botach. *See* ECF No. 40 ¶¶ [36–39, 72–76]. This interference resulted in the loss of Rabbi Botach's largest donors, directly impairing his ability to carry out his important charitable work.

In short, Plaintiff disputes Rabbi Botach's standing and challenges whether he can ultimately prove his allegations. Those are ordinary, contested merits issues. They may be tested through motions practice and discovery but they do not support the extraordinary remedy of Rule 11 Sanctions.

## VI. RABBI BOTACH'S COUNTERCLAIM WAS NOT FILED FOR AN IMPROPER PURPOSE

Finally, Plaintiff also fails to establish any "improper purpose" within the meaning of Rule 11. Rabbi Botach filed his counterclaim to seek redress for alleged civil-rights violations and economic harm. That is a definitive and proper purpose for litigation. Plaintiff's theory would invert that framework by allowing alleged and speculative motive, rhetoric, or public controversy to substitute for the required showing of objective frivolousness.[4] And "an objective standard of analysis is required even with respect to whether a filing was made with an improper purpose. *Sussman v. Bank of Israel*, 56 F.3d 450, 458 (2d Cir. 1995) (quoting Schwarzer, *Sanctions Under the New Fed. R. 11--A Closer Look*, 104 F.R.D. 181, 195 (1995)). "Thus, the court is not to delve into the attorney's subjective intent in filing the paper, but rather should assess such objective factors as whether papers or proceedings caused delay that was unnecessary, whether they caused increase in the cost of litigation that was needless, or whether they lacked any apparent legitimate purpose. Findings on these points would suffice to support an inference of an improper purpose."

---

[4] Attached to Plaintiff's Motion are posts from Rabbi Botach's social media accounts. Plaintiff does not allege that Rabbi Botach violated any gag order or protective order by making extrajudicial statements. Rule 11 is not designed to sanction constitutionally protected out of court statements, which are not signed nor submitted.

*Id.* (internal quotation marks omitted) (noting inquiries into a party's subjective intent "would invite a number of potentially harmful consequences, such as generating satellite litigation, inhibiting speech and chilling advocacy.").

Here, the Counterclaim addresses non-frivolous claims. It did not cause unnecessary delay, *needlessly* increase the cost of litigation, or lack an apparent purpose. Because the filing itself is objectively reasonable, allegations about tone, publicity, or supposed ulterior motive cannot transform it into sanctionable conduct under Rule 11. The Court should deny Plaintiff's Motion.

## **CONCLUSION**

For these reasons, Plaintiff's Rule 11 motion should be denied in its entirety.


Respectfully submitted,

**OFFIT KURMAN, P.A.**
100 Southeast Third Avenue, 10th Floor
Fort Lauderdale, Florida 33394
T: 954.353.4180
F: 754.331.2465

*/s/ Christopher D. Cathey*
Christopher D. Cathey
Florida Bar No. 663255
chris.cathey@offitkurman.com

*/s/ Austin M. Krtausch*
Florida Bar No. 1025521
austin.krtausch@offitkurman.com
*Counsel for Defendant*

10

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 28, 2026, I electronically filed the foregoing using

the CM/ECF system, which will electronically furnish service upon all counsel of record.

*/s/ Christopher D. Cathey*
Christopher D. Cathey

11