UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CV-20251-MOORE/Elfenbein

**FONTAINEBLEAU FLORIDA HOTEL, LLC**,

    Plaintiff,

v.

**SHMULEY BOTEACH JACOB
A/K/A SHMUEL BOTACH**, *et al*,

    Defendants.
_____/

## ORDER ON PLAINTIFF'S MOTION FOR SANCTIONS

**THIS CAUSE** is before the Court on Plaintiff Fontainebleau Florida Hotel, LLC's ("Plaintiff") Motion for Sanctions (the "Motion for Sanctions"), ECF No. [61]. The Honorable K. Michael Moore referred the Motion for Sanctions to me "to take all necessary and proper action as required by law and/or to issue a Report and Recommendation." *See* ECF No. [62]. Having reviewed the Motion for Sanctions, the response thereto, and the record in this case, the Motion for Sanctions, **ECF No. [61]**, is **GRANTED in part and DENIED in part**.

    **I.**    **BACKGROUND**

This lawsuit arises from an incident that occurred on December 1, 2024, in the lobby of Plaintiff's Fontainebleau Miami Beach hotel (the "Hotel"), when Defendant Faiz Akbar ("Akbar"), a hotel guest, approached Defendant Jacob Shmuel Botach, a/k/a Shmuley Boteach, ("Boteach" or "Defendant"), and launched into what Boteach describes as a threatening "antisemitic tirade." *See* ECF No. [88] at 4; ECF No. [61] at 2. The two sides sharply disagree about who instigated the confrontation and the circumstances of Boteach's removal. Plaintiff's Complaint alleges defamation and tortious interference with business relationships, claiming Boteach made false

public statements that the Hotel trespassed him because of his religion and that it refused to cooperate with law enforcement. *See* ECF No. [1-1] at 12-17. Boteach filed Counterclaims against Plaintiff alleging violation of the Civil Rights Act and tortious interference with business relationships. *See* ECF No. [40] at 13-20.

## II. PROCEDURAL HISTORY

On March 11, 2025, Defendant served a subpoena on the Miami Beach Police Department ("MBPD"), seeking all video footage of the incident that Plaintiff had provided to the department. *See* ECF No. [88] at 7; ECF No. [61] at 3. On March 26, 2025, the MBPD produced responsive surveillance footage to Defendant's counsel, who thereafter forwarded the footage to Defendant. *See id*. On April 2, 2025, before entry of any protective order in this matter, Defendant posted an excerpt of the surveillance footage to his public Instagram account, where he maintains more than 90,000 followers. *See* ECF No. [61] at 3, 4; ECF No. [88] at 8, 11. Plaintiff did not seek emergency relief or otherwise move the Court at that time regarding the posting. On April 7, 2025, the Parties jointly filed a Motion for Entry of Stipulated Protective Order. *See* ECF No. [31].

Two days later, the Court entered the Parties' Stipulated Protective Order (the "Protective Order"), which provides that all materials produced by a non-party are automatically designated "Outside Counsel Eyes Only" for a period of thirty days from the date of production without any affirmative act by either party. *See* ECF No. [32] at ¶19. Additionally, paragraph 27 broadly prohibits any party from using discovery material for any purpose outside the litigation, including for any business, commercial, personal, or public purpose. *See id*. at ¶27. Paragraphs 31 and 34 restrict access to "Highly Confidential" and "Outside Counsel Eyes Only" materials to a limited set of enumerated persons. *See id*. at ¶¶31, 34, 27. Should the Parties seek to challenge these confidentiality designations, paragraph 44 requires a party wishing to contest a designation to first

2

provide written notice to the designating party, engage in a meet-and-confer process, and only then seek relief from the Court — all while continuing to treat the material as designated in the interim. *See id*. at ¶44.

On April 10, 2025, one day after entry of the Protective Order, Defendant again posted the surveillance footage to his social media accounts. *See* ECF No. [61] at 3; ECF No. [88] at 9. On April 16, 2025, Plaintiff formally designated all materials produced by the MBPD as "Highly Confidential" pursuant to the Protective Order. *See id*. at 3; ECF No. [88] at 9. Plaintiff's counsel notified Defendant's counsel of the designation, and Defendant's counsel, in turn, advised Defendant. *See* ECF No. [88] at 9. Upon receiving notice of the designation, Defendant removed the surveillance footage from his social media accounts. *See* ECF No. [88] at 9; ECF No. [61] at 3. On April 16, 2025, upon removing the posts, Boteach published a Twitter post acknowledging he was "required under the rules to remove the video." *See* ECF No. [61] at 4-5. On September 17, 2025, Defendant again posted the video on social media. *See id*. at 5-6; ECF No. [88] at 10-11.

The current dispute before the Court centers on whether Boteach violated the Protective Order on three separate occasions by publicly posting the Hotel's surveillance footage to his social media accounts with 90,000+ Instagram followers. *See* ECF No. [61] at 1-6. Plaintiff contends that Defendant's own April 16, 2025 post — in which he publicly acknowledged that the footage was designated "Highly Confidential," that a Court Order governed its dissemination, and that he was "required under the rules" to remove it — forecloses any argument that his subsequent September 17, 2025 violation was inadvertent. *See* ECF No. [61] at 4-5; ECF No. [61-3]. Plaintiff further argues that the footage was properly designated "Highly Confidential" because it reveals the Hotel's security camera locations and capabilities and captures images of third-party guests

3

wholly unrelated to this litigation. *See id*. at 4. Plaintiff requests that the Court preclude Defendant from introducing the surveillance footage at trial, award Plaintiff its reasonable attorney's fees and expenses, order Defendant to show cause why he should not be held in contempt, and permit Plaintiff to designate all future discovery materials as "Outside Counsel Eyes Only." *See* ECF No. [61] at 7-8.

Defendant opposes the Motion for Sanctions on several grounds. *See* ECF No. [88]. First, Defendant argues that the surveillance footage was publicly available prior to any confidentiality designation because Plaintiff had previously provided it to the MBPD, making it subject to Florida's public records laws, and because Defendant had already posted an excerpt of the footage on Instagram on April 2, 2025, before the Protective Order was entered or any designation was made. *See id*. at 12-13. Defendant, therefore, contends that the footage did not qualify for a "Highly Confidential" designation under the Protective Order's own terms, which require that designated materials constitute non-public information. *See id*. at 8-9. Second, Defendant argues that the first two alleged violations cannot form the basis for sanctions because they occurred before the Protective Order was entered on April 9, 2025, and before Plaintiff designated the footage as "Highly Confidential" on April 16, 2025, making the September 17, 2025 post the only potential violation. *See id*. at 15-16. Third, Defendant contends that the September 2025 posting was inadvertent, as Defendant had recently undergone back surgery, was taking prescribed opioid pain medication at the maximum dosage, and mistakenly believed that the footage was no longer confidential after being advised it would be used as a deposition exhibit. *See id*. at 10, 17. Defendant also contends that "Rule 16 sanctions are *not* intended to apply to violations of discovery orders under Rule 37" and therefore does not apply to violations of the Protective Order. *See id*. at 18 (emphasis in original). Finally, Defendant argues that the severe sanctions requested

by Plaintiff — including exclusion of evidence and striking of pleadings — are disproportionate to the conduct at issue, as Plaintiff has failed to demonstrate any concrete harm resulting from the posting, and that at most, lesser sanctions would be appropriate given the circumstances. *See id*. at 13-14, 17.

In its Reply, Plaintiff contends that Defendant's sworn Declaration statement that he "immediately" removed the offending Instagram post upon instruction from counsel is materially false because, by the time counsel notified Defendant of the violation, the Instagram story had already expired on its own through the platform's automatic twenty-four-hour expiration feature. *See id*. at 7-8 n.1; ECF No. [90-2]. Plaintiff additionally contends that Defendant's attempt to challenge the confidentiality designation within his opposition brief is procedurally improper, as the Protective Order requires written notice, a meet-and-confer, and a formal motion before the Court may consider any such challenge. *See* ECF No. [90] at 9-10.

The Court granted Defendant leave to file a Sur-Reply, wherein Defendant makes four arguments. *See* ECF No. [104]; ECF No. [109]. First, Defendant contends that the Court should disregard the new legal arguments, cases, and evidentiary submissions introduced for the first time in Plaintiff's Reply, as the Eleventh Circuit precedent states that arguments raised for the first time on reply are deemed abandoned. *See id*. at 2-3. Second, Defendant disputes Plaintiff's accusation of perjury, clarifying that he deleted an Instagram post — not a story — following his conversation with counsel, and that unlike a temporary Instagram story, a post does not automatically expire. *See id*. at 3-4. Third, Defendant argues that the Protective Order cannot be applied retroactively to punish conduct that occurred before its entry or before any confidentiality designation was made, and that Plaintiff's attempt to characterize pre-Order conduct as violations is both legally improper and strategically motivated to exclude key evidence. *See id*. at 4-5. Fourth, Defendant

5

argues that elevating all materials to "Outside Counsel Eyes Only" is contrary to the public nature of judicial proceedings, that confidentiality designations must be applied as narrowly as possible, and that the video at issue was already publicly available and remains subject to Florida public records disclosure laws. *See id*. at 5-6.

### III.   LEGAL STANDARD

#### A.  Rule 16(f) Sanctions

Federal Rule of Civil Procedure 16(f)(1) authorizes a court to "issue any just orders" if a party or its attorney "fails to obey a scheduling *or other pretrial order*." Fed. R. Civ. P. 16(f)(1)(C) (emphasis added). The sanctions available under Rule 16(f) include those enumerated in Rule 37(b)(2)(A)(ii) through (vii), which authorize the court to prohibit a disobedient party from supporting or opposing designated claims or defenses, from introducing designated matters into evidence, or from making certain arguments. *See* Fed. R. Civ. P. 16(f)(1); 37(b)(2)(A)(ii)-(vii). Additionally, Rule 16(f)(2) provides that the court "must order the party, its attorney, or both to pay the reasonable expenses — including attorney's fees — incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or . . . an award of expenses [would be] unjust." *See* Fed. R. Civ. P. 16(f)(2).

"The district court enjoys 'discretion to decide if there is a pattern of delay or a deliberate refusal to comply with court orders or directions that justifies a sanction.'" *Giovanno v. Fabec*, 804 F.3d 1361, 1365 (11th Cir. 2015) (quoting *United States v. Samaniego*, 345 F.3d 1280, 1284 (11th Cir. 2003)). Generally, the Eleventh Circuit views sanctions contained in Rule 16(f) as being "designed to punish lawyers and parties for conduct which unreasonably delays or otherwise interferes with the expeditious management of trial preparation." *See Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir. 1985). In *Goforth*, the Eleventh Circuit treated Rule 16(f) as a broad case-

management sanctions hook extending beyond purely "scheduling orders" to other pretrial directives. *See id*. (finding that Rule 16(f) sanctions may be applied "to punish counsel for his disregard of the court's orders to submit a preliminary statement and ultimately to be ready for trial.")

In contrast, the Eleventh Circuit's decision in *Lipscher v. LRP Publications, Inc.*, 266 F.3d 1305 (11th Cir. 2001), has foreclosed a district court's ability to enforce stipulated protective orders through Rule 37. In *Lipscher*, the Eleventh Circuit held, as a matter of first impression, that a Rule 26(c) protective order is not "an order to provide or permit discovery" within the meaning of Rule 37(b)(2), and therefore violations of such orders are not sanctionable under that rule. *See id.* at 1323. The Eleventh Circuit reasoned that Rule 37(b)(2)'s text authorizes sanctions only for failures to obey orders that compel the provision or permitting of discovery, and that a protective order — which restricts rather than compels discovery — does not fall within that scope. *See id*. The appellate court declined to decide whether a court's inherent authority or contempt power could provide an alternative basis for sanctions. *Id*. Nor was it presented with a Rule 16(f) argument, as those grounds had not been invoked in the lower court. *See id*.

In a matter within this District, *Valdez-Castillo v. Busch Entertainment Corp.*, No. 06-CV-20772, 2008 WL 4999175 (S.D. Fla. 2008), the court was confronted with the practical application of *Lipscher*. There, the court denied a motion for sanctions after plaintiff's counsel disclosed a confidential document to the press in clear violation of a protective order. *See id*. at *2. Though *Valdez-Castillo* openly questioned the soundness of *Lipscher*'s reasoning, it recognized *Lipscher* as binding precedent. *Id.* at *2. *Valdez-Castillo* thus acknowledged what *Lipscher* left unresolved; that foreclosing of Rule 37(b)(2) as a sanctioning vehicle for protective-order violations creates a meaningful gap in a court's ability to enforce its own orders, leaving courts with only their inherent

authority, which requires a high bar of bad faith. *Id.*

Although neither the Eleventh Circuit nor any court in this District has expressly held that Rule 16(f) authorizes sanctions for violations of a Rule 26(c) stipulated protective order, neither has held that it cannot. The question therefore remains an open one in this Circuit. Critically, Rule 16(f)(1)(C)'s text is meaningfully broader than Rule 37(b)(2)'s — it does not limit its reach to orders compelling discovery, but instead authorizes sanctions whenever a party "fails to obey a scheduling *or other pretrial order*." *See* Fed. R. Civ. P. 16(f)(1)(C) (emphasis added). A stipulated protective order entered in the course of civil litigation is, by its nature, a pretrial order — it governs the conduct of the parties during the pretrial phase of the case and is entered by the Court for the express purpose of facilitating the orderly progress of discovery and trial preparation. Interference with such an order qualifies as the kind of conduct Rule 16(f) was designed to address.

At least one circuit court has directly addressed this question and embraced this reasoning. In *Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 54–55 (2d Cir. 2018), the Second Circuit affirmed sanctions imposed under Rule 16(f)(1)(C) against a party who violated a protective order's procedural requirements by filing a challenge to a confidentiality designation without first following the order's required meet-and-confer procedure. The court held that Rule 16(f)(1)(C), which authorizes sanctions for failure to obey "a pretrial order," provided a proper and sufficient basis for the sanction. *See id.* at 54.

The application of Rule 16(f) here resolves the enforcement gap identified in *Valdez-Castillo*; where Rule 37(b)(2) is unavailable under *Lipscher*, Rule 16(f) serves as the appropriate vehicle for enforcing a court's protective order and sanctioning those who willfully disregard it. Applying *Huebner*'s reasoning here would not only be consistent with the text and purpose of Rule 16(f), but would also give meaning to the Protective Order that the Parties themselves stipulated

8

to and that this Court entered — an order that expressly provides for enforcement through sanctions.

### IV. DISCUSSION

To recap, the Parties' arguments span five broad topics: (1) whether Rule 16(f) provides the proper procedural vehicle for sanctions arising from a violation of a stipulated protective order; (2) whether the surveillance footage was properly designated "Highly Confidential" under the Protective Order; (3) whether Defendant's April 2, 2025 social media posts can properly be characterized as violations of the Protective Order given that the first predated its entry; (4) whether Defendant's April 10, 2025 and September 17, 2025 Instagram posts were a knowing and willful violation of the Protective Order or an inadvertent act; and (5) whether the severity of the sanctions sought by Plaintiff are proportionate to the conduct at issue or whether lesser sanctions would adequately address the harm and deter future violations. The Court takes each in turn.

**A. The Court Has Authority to Impose Sanctions Under Rule 16(f) for Defendant's Violation of the Protective Order.**

As a threshold matter, the Court addresses Defendant's argument that Rule 16(f) is an improper vehicle for sanctions arising from a violation of the Protective Order. *See* ECF No. [88] at 17-18. The Court disagrees. As set forth above, Rule 16(f)(1)(C) broadly authorizes sanctions whenever a party "fails to obey a scheduling or other pretrial order." *See* Fed. R. Civ. P. 16(f)(1)(C). The Protective Order entered on April 9, 2025 is, by its nature, a pretrial order governing the conduct of the Parties during the pretrial phase of this litigation. *See* ECF No. [32]. Under the Eleventh Circuit's reading of Rule 16(f) in *Goforth*, the rule extends beyond purely administrative scheduling directives to any pretrial order tied to the orderly management of trial preparation. *See Goforth*, 766 F.2d at 1535. Defendant's public dissemination of materials designated under the Protective Order is precisely the kind of conduct that interferes with the

9

expeditious management of this litigation. Moreover, while Rule 37(b)(2) is foreclosed as a sanctioning vehicle under *Lipscher*, 266 F.3d at 1323, and while this Circuit has not previously resolved whether Rule 16(f) fills that gap, the Court finds the Second Circuit's reasoning in *Huebner* persuasive and adopts it here. *See Huebner*, 897 F.3d at 54-55. To hold otherwise would leave this Court without any rule-based mechanism to enforce its own Protective Order — precisely the enforcement gap that *Valdez-Castillo* identified and lamented. *See Valdez-Castillo*, 2008 WL 4999175, at *2. Accordingly, the Court finds that Rule 16(f) provides the appropriate basis for sanctions here.

The Court also briefly addresses inherent authority. Although the Court's inherent power may, in appropriate circumstances, support sanctions for a violation of a protective order, the Court declines to reach that question here. Invocation of a court's inherent authority requires a finding of subjective bad faith. *See Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) ("The key to unlocking a court's inherent power is a finding of bad faith.") (citing *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995)). Although the Parties have mentioned the Court's inherent authority, neither Party has briefed the bad faith standard or argued that the conduct at issue satisfies it. Because Rule 16(f) provides an adequate and independent basis for the relief the Court grants, the Court need not and does not reach the inherent authority question.

**B. Defendant Violated the Protective Order**

Having established the applicable legal framework, the Court turns to whether Defendant violated the Protective Order. The Court finds that he did. The Court entered the Protective Order on April 9, 2025. *See* ECF No. [32]. By operation of paragraph 19, all materials produced by a non-party — including the surveillance footage the MBPD produced on March 26, 2025 — were automatically designated "Outside Counsel Eyes Only" upon the Order's entry, without any

affirmative act by either party for a period of 30 days. *See id*. at ¶19. Defendant posted the surveillance footage on April 10, 2025, one day after the Protective Order took effect. *See* ECF No. [61] at 3. By that date, the footage was subject to the Protective Order's most restrictive designation, and public dissemination to Defendant's 90,000+ Instagram followers plainly fell outside the narrow categories of persons permitted to access such materials under Paragraphs 31 and 34. *See* ECF No. [32] at ¶¶31, 34; ECF No. [61] at 5.

On April 16, 2025, Plaintiff formally designated all MBPD materials as "Highly Confidential." *See* ECF No. [61] at 3. Defendant removed his posts upon being so advised by counsel. *See* ECF No. [88] at 9. Significantly, upon doing so, Defendant publicly posted on Twitter that he was "required under the rules to remove the video" — a statement that confirms his actual knowledge of the Protective Order, its confidentiality designation provisions, and his obligation to comply with them. *See* ECF No. [61] at 4-5; ECF No. [61-3]. Defendant further acknowledged that the proper course, if he disagreed with the designation, was to challenge it through the Court — a process he never initiated. *See id*.

On September 17, 2025, with full knowledge of the foregoing, Defendant again posted the surveillance footage to his public Instagram account. *See* ECF No. [61] at 5-6. Defendant's explanation — that he was recovering from back surgery, taking prescribed opioid pain medication, and mistakenly believed the footage was no longer confidential because it would be used as a deposition exhibit — does not persuade the Court that the violation was inadvertent. *See* ECF No. [88] at 10; ECF No. [88-1] at ¶¶29-31. Defendant had previously confirmed, in his own words in a public post, that he understood the footage remained confidential until the Court determined otherwise. He never followed the procedure to challenge the footage's "Highly Confidential" designation under the Protective Order. His explanation that he misunderstood his

11

counsel's reference to the footage being used at a deposition as somehow lifting the confidentiality designation is not credible given his own prior written acknowledgment of his obligations.

The Court, however, does not find Defendant's April 2, 2025 post as a separate violation. That post occurred before the Protective Order was entered on April 9, 2025, and before any confidentiality designation had been made. The Court agrees with Defendant that applying the Protective Order retroactively to conduct that predates its entry would be improper. *See* ECF No. [109] at 4-5. Accordingly, the Court's analysis is limited to Defendant's conduct on and after April 9, 2025.

### C. The Court Declines to Address Defendant's Remaining Arguments for Failure to Abide By the Protective Order's Procedure

Defendant's argument that the surveillance footage was publicly available and, therefore, could not properly be designated as "Highly Confidential" under the Protective Order's own terms is unavailing. *See* ECF No. [88] at 8-9. Paragraph 44 of the Protective Order provides a clear and unambiguous procedure for challenging an improper confidentiality designation: written notice to the designating party, a good-faith meet-and-confer, and, if unresolved, a motion to the Court — all while continuing to treat the material as designated in the interim. *See* ECF No. [32] at ¶44. Defendant never availed himself of this procedure. He acknowledged in his own April 16, 2025 post that he intended to challenge the designation but was "required under the rules" to remove the footage in the meantime. *See* ECF No. [61] at 4-5. He then simply posted the footage again without filing any challenge. A party subject to a court order cannot unilaterally decide the order does not apply to him and act accordingly. The proper course was to abide by the procedure outlined in the Protective Order and, if unresolved, seek relief from this Court.

The Court is careful to note that it makes no determination at this time as to whether the surveillance footage was properly designated as "Highly Confidential" under the terms of the

Protective Order. That question is not ripe for the Court's consideration. Defendant has never initiated the designation challenge procedure prescribed in paragraph 44 — he has not provided written notice to Plaintiff identifying the basis for his challenge, engaged in the required meet-and-confer, or filed a motion seeking relief from the Court. *See id*. at ¶44. Until Defendant complies with that procedure, the propriety of the designation is not properly before this Court. If he wishes to challenge the "Highly Confidential" designation, Defendant must comply with the requirements of paragraph 44 of the Protective Order and seek Court intervention should the dispute remain unresolved.[1]

### D. Sanctions Are Warranted, But Limited to Attorney's Fees

Having found that Defendant violated the Protective Order, the Court turns to the appropriate sanction. Plaintiff requests a broad array of relief, including preclusion of the surveillance footage at trial, an order to show cause for contempt, permission to redesignate all materials as "Outside Counsel Eyes Only," striking of pleadings, and an award of attorney's fees and expenses. *See* ECF No. [61] at 7-8. The Court finds that the most severe of these sanctions — preclusion of evidence, striking of pleadings, and redesignation of all materials — are not warranted at this time.

While Defendant's conduct was knowing and disregarded a clear Court Order, the severity of the sanctions imposed must be proportionate to the circumstances. The Eleventh Circuit has made clear that before imposing the most severe Rule 16 sanctions, such as dismissal, a court must

---

[1] The Court also rejects Defendant's argument that it should disregard the new legal arguments and evidence presented in Plaintiff's Reply. *See* ECF No. [109] at 2-3. The Court granted Defendant leave to file a Sur-Reply specifically to address any new arguments or evidence raised in Plaintiff's Reply. *See* ECF No. [104]. Defendant availed himself of that opportunity. *See* ECF No. [109]. Having had a full and fair opportunity to respond to any new arguments contained in the Reply, Defendant cannot now claim prejudice from its consideration. Accordingly, the Court will consider the arguments in Plaintiff's Reply and has considered all submissions from the Parties in rendering this ruling.

13

Case 1:25-cv-20251-KMM   Document 130   Entered on FLSD Docket 02/27/2026   Page 14 of 16

CASE NO. 25-CV-20251-MOORE/Elfenbein

find both that a party engaged in a clear pattern of delay or willful contempt and that lesser sanctions would not suffice. *See World Thrust Films, Inc. v. Int'l Family Entm't, Inc.*, 41 F.3d 1454, 1456 (11th Cir. 1995). The *World Thrust Films* court reversed a dismissal sanction imposed for failure to comply with scheduling requirements precisely because the district court failed to make the necessary finding that lesser sanctions would not adequately address the misconduct. *See id.* That same principle applies with equal force here. While the record reflects a knowing violation of a Court Order, the Court cannot find on this record that the most severe sanctions available — preclusion of the surveillance footage, striking of pleadings, or redesignation of all materials as "Outside Counsel Eyes Only" — are necessary when a lesser sanction, namely an award of attorney's fees, will adequately address the harm caused and deter future violations. Preclusion of the surveillance footage would be a significant evidentiary sanction that could materially affect the merits of this case, and the Court declines to impose it absent a more developed record establishing that lesser relief would be insufficient.

The Court does, however, find that an award of reasonable attorney's fees and expenses incurred in connection with the briefing of the Motion for Sanctions is warranted and appropriate. Rule 16(f)(2) provides that, upon a finding of noncompliance, the Court "must order the party, its attorney, or both to pay the reasonable expenses — including attorney's fees — incurred because of any noncompliance with this rule," unless the noncompliance was substantially justified or an award would be unjust. *See* Fed. R. Civ. P. 16(f)(2). Defendant's noncompliance was not substantially justified. He had actual knowledge of the Protective Order, acknowledged his obligations under it in writing, and posted the footage anyway. The attorney's fees and expenses Plaintiff incurred in bringing this Motion are a direct consequence of that conduct and must be borne by Defendant.

Additionally, the Court takes this opportunity to admonish Defendant in the clearest terms. The Protective Order is an Order of this Court.  It is not optional.  It is not subject to Defendant's personal assessment of whether its terms are fair, whether the underlying designation is appropriate, or whether the footage is already available in some other form.  If Defendant believes a designation is improper, the Protective Order provides a mechanism to challenge it.  That mechanism must be used.  Defendant cannot simply disregard the Protective Order and take matters into his own hands.  The Court further warns Defendant that any future violation of the Protective Order will be treated with the utmost seriousness.  Should Defendant again publicly disseminate materials designated under the Protective Order without first obtaining relief from this Court in the form of a de-designation, the Court will entertain whether any or all of the following sanctions authorized by Rule 37(b)(2)(A) are appropriate under the circumstances:

- (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
- (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
- (iii) striking pleadings in whole or in part;
- (iv) staying further proceedings until the order is obeyed;
- (v) dismissing the action or proceeding in whole or in part; or
- (vi) rendering a default judgment against the disobedient party.

*See* Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi).  Defendant is warned that this Court will not hesitate to impose any of these sanctions if the circumstances warrant them.

### V.   CONCLUSION

For the foregoing reasons, Defendant's Motion for Sanctions, **ECF No. [61]**, is **GRANTED in part and DENIED in part**.  By **March 13, 2026**, Plaintiff's counsel shall provide

counsel for Defendant with an Affidavit that sets forth counsel's hourly rate and experience, the amount of attorney's fees and costs expended in researching and drafting all briefing in connection with the Motion for Sanctions, including time spent reviewing and analyzing Defendant's Response, Defendant's Motion for Leave to File a Sur-Reply, and Defendant's Sur-Reply, along with all time entries associated with these tasks.  By **March 20, 2026**, Defendant shall notify Plaintiff if he objects to the amount of attorney's fees and costs sought.  If there is no dispute as to the amount of attorney's fees and costs, by **March 27, 2026**, Plaintiff shall file a Notice informing the Court that the Parties have stipulated to the amount, providing the stipulated sum for attorney's fees and costs. Alternatively, if Defendant disputes the amount, by **March 27, 2026**, Plaintiff shall file a Motion requesting the entry of an award of reasonable attorney's fees and costs, attaching a supporting affidavit and the corresponding time entries, and Defendant will have an opportunity to file a Response and Plaintiff a Reply as provided in the Local Rules.

**DONE and ORDERED** in Chambers in Miami, Florida on February 26, 2026.

_____
**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc:  All Counsel of Record