IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

FONTAINEBLEAU FLORIDA HOTEL,
LLC d/b/a FONTAINEBLEAU MIAMI
BEACH, *a foreign limited liability*          CASE NO. 2024-024127-CA-01
*company*,

      Plaintiff,

v.

JACOB SHMUEL BOTACH a/k/a
"SHMULEY BOTEACH," *an individual*,
and John Does 1-10,

      Defendants.

_____/

**DEFENDANT, JACOB SHMUEL BOTACH a/k/a "SHMULEY BOTEACH'S,"
MOTION FOR SUMMARY JUDGMENT AS TO COUNTS I, II, AND IV OF
PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendant, Jacob Shmuel Botach a/k/a "Shmuley Boteach", (hereinafter "Defendant"),

pursuant to Fed. R. Civ. P. 56, moves this Honorable Court for an order entering final summary

judgment on Counts I, II, and IV in favor of Defendant and against Plaintiff Fontainebleau Florida

Hotel, LLC d/b/a FOUNTAINEBLEU MIAMI BEACH's, (hereinafter "Fontainebleau" or

"Plaintiff" or "Hotel"), and in support thereof states:

**I.  INTRODUCTION**

This lawsuit stems from a hateful, anti-Semitic verbal tirade that included threats of

physical violence by a Plaintiff's registered guest, Faiz Akbar, against Defendant, a prominent

rabbi, author, and columnist.  Following the incident, Defendant posted a video of the attack along

and his personal impressions and opinions about what he experienced during and after the attack.

In retaliation, the Hotel banned him from the property and demanded he remove the video of the

1

attack from his social media pages. The Hotel then filed this lawsuit. The operative First Amended Complaint pleads claims for defamation *per se*, ordinary defamation, or tortious inference with business relationship. Plaintiff is seeking both monetary compensation and injunctive relief.

Defendant's alleged defamatory publications are not false and amount to pure opinion, albeit hyperbolic, regarding the incident itself, his own experiences, and Plaintiff's reactions to the incident. The evidence shows that it has not suffered any actual damage as a result of the alleged defamatory statements. The evidence also shows that Plaintiff's claimed damages are, at best, pure speculation. And, if Plaintiff suffered any damages at all those damages were the result of Plaintiff's own conduct or the conduct of Plaintiff's guest, Faiz Akbar. Finally, Plaintiff is improperly seeking injunctive relief, which is not available in defamation claims and related torts because it is impermissible prior restraint on the freedom of speech.

## II.  ARGUMENT

### A.  Summary Judgment Standard.

Courts must enter summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Ave. CLO Fund, Ltd. v. Bank of Am., N.A.*, 723 F.3d 1287, 1294 (11th Cir. 2013); see also *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Courts must grant summary judgment if a party "has failed to make a sufficient showing on an essential element of her case." *Celotex*, 477 U.S. at 323.

"For factual issues to be considered genuine, they must have a real basis in the record." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009). Speculation, however, is

2

insufficient to create a genuine issue of material fact. *Walker v. CSX Transp. Inc.,* 650 F.3d 1392, 1401 (11th Cir. 2011); *Marshall v. City of Cape Coral,* 797 F.2d 1555, 1559 (11th Cir.1986) (stating that, although "[a]ll reasonable inferences arising from the evidence must be resolved in favor of the non-movant, ... inferences based upon speculation are not reasonable"); *see also Salinero v. Johnson & Johnson,* 400 F. Supp. 3d 1334, 1345 (S.D. Fla. 2019), aff'd, 995 F.3d 959 (11th Cir. 2021) ("unreliable conjecture and speculative inferences are not evidence sufficient to survive summary judgment"). Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Scott v. Harris,* 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-587 (1986)).

**B.     The Undisputed Facts Entitle Defendant to Judgment as a Matter of Law on Plaintiff's Defamation Claims.**

Plaintiff's Ordinary Defamation and Defamation Per Se claims are based on two allegedly defamatory statements, each contained in a separate post:

> **Statement 1 (contained in Post 1):**
>
> On **December 8, 2024**, Defendant Boteach published a written post accompanied by a video featuring himself alongside an unidentified Jewish man.  In the video, Defendant Boteach falsely claimed that [he] was refused access to the Hotel because he is "too Jewish."
>
> **Statement 2 (contained in Post 2):**
>
> On **December 10, 2024**, Defendant Boteach published a written post accompanied by a video featuring himself.  In the video, Defendant Boteach falsely claimed that the Hotel refused to cooperate with law enforcement in its investigation, including falsely claiming that the Hotel, on December 10th, "still has not provided the surveillance tapes . . . to the Miami Beach Police Department."

Ex. 3 (filed under seal pursuant to protective order (ECF No. 32) to Statement of Material Facts ("SOF") filed contemporaneously with this motion. A review of the social media posts demonstrates that the statements are unactionable, pure opinion and hyperbole.

3

### i.       Legal Standard for Ordinary Defamation.

A federal court sitting in diversity jurisdiction, applies the forum's substantive law to defamation claims. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 (1938). In Florida, defamation is defined as "the unprivileged publication of false statements which naturally and proximately result in injury to another." Wolfson v. Kirk, 273 So. 2d 774, 776 (Fla. 4th DCA 1973) (citation omitted). Defamation has five elements: (1) publication; (2) falsity; (3) the statement was made with knowledge or reckless disregard as to the falsity on a matter concerning a public figure, or negligently on matters concerning a private person or entity; (4) actual damages; and (5) the statement must be defamatory." *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018) (citing *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008)).

A defamatory statement must be objectively falsifiable. *Reed v. Brandel Eugene Chamblee*, TGC, LLC, 2023 U.S. Dist. LEXIS 172449, *43-44 (citing *Santilli v. Van Erp*, No. 8:17-CV-1797, 2018 U.S. Dist. LEXIS 79916, 2018 WL 2172554, at *5-6 (M.D. Fla. Apr. 20, 2018) (calling an academic a "fringe scientist," "mad professor," and "cunning scam artist" constituted opinion because such statements are not objective or falsifiable) and *Hamze v. Cummings*, 652 F. App'x 876, 881 (11th Cir. 2016) (finding that sheriff's expression that the defendant's crime was a "brutal, senseless, roadrage [sic] killing" that showed a "disregard for human life" was an opinion and therefore non-actionable as a defamation claim)).

"Under Florida law, a defendant publishes a 'pure opinion' when the defendant makes a comment or opinion based on facts which are set forth in the publication or which are otherwise known or available to the reader or listener as a member of the public." *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018); *see also Button v. McCawley*, No. 0:24-cv-60911, 2025 U.S. Dist. LEXIS 3634, at *14-15 (S.D. Fla. Jan. 8, 2025). "Mixed expression of opinion occurs when an

opinion or comment is made which is based upon facts regarding the plaintiff or his conduct that have not been stated in the publication or assumed to exist by the parties to the communication. *Turner, 879 F.3d at 1262.* "[C]ourts should construe statements in their totality, with attention given to any cautionary terms used by the publisher in qualifying the statement. *Id*

With regard to Statement 1, Plaintiff wrongly asks this Court to look at 3 seconds from a nearly 5 minute video to find that Defendant's statement that he was banned from the Hotel for being "too Jewish" was false and malicious. (DE 12 and SOF, Ex. 3). However, this Court must consider the "too Jewish comment in the context in which it was delivered. The video actually shows Defendant having a light-hearted conversation with a man about the video showing the antisemitic attack.  The man he is speaking with is visibly Jewish, wearing a large star of David necklace. He is also much taller and larger than Defendant. The two are laughing and Defendant jokingly refers to the other man as "Super Jew":



Ex. 3. (screenshot of Instagram video).

It is indisputable that Defendant is discussing the factual events that happened in the Hotel lobby (*i.e.* the antisemitic attack) with the other man in the subject post/video. Defendant shares

his opinions about how Jewish people should be overtly proud of their faith and never back down when threatened. It is within this context that Defendant hyperbolically states that he was banned from the Hotel for being *too Jewish*. Furthermore, just one day before and still available on his social media pages, Defendant made three separate posts that included the full letter from Plaintiff which took issue with his posting the attack video and stated that he was "trespassed" (*i.e.*, banned) from the Hotel for threatening litigation. Instagram Dec 7 i; Instagram Dec 7 ii; Instagram Dec 7 iii. This is exactly the type of protected commentary and opinion the Eleventh Circuit described in *Turner*, 879 F.3d at 1262 (explaining that publications are "pure opinion" when "defendant makes a comment or opinion based on facts which are set forth in the publication or which are otherwise known or available to the reader or listener as a member of the public.") -

As for Statement 2, the record evidence establishes that Plaintiff believed that the Hotel's unwillingness to share the surveillance video with the MBPD without a ***subpoena*** demonstrated their lack of cooperation. *See* SOF, Ex. 6 at 260:10 – 263:25. In fact, Defendant was not the only person who believed the video was crucial evidence. A local news reporter who did a story on the attack agreed that the Hotel should release the surveillance video to clear up questions surrounding the attack. *See* Instagram.

Witness testimony confirms that the Hotel did, in fact, require a subpoena before it gave a copy of the surveillance video to the Police. *See* SOF, Ex. 4, at 43:6 – 44:3; SOF, Ex. 5, at 27:19 - 28:3. Evidence also confirms that MBPD did not immediately notify Defendant's then attorney regarding the MBPD's receipt of the video. *See* SOF, Ex. 5, at 27:19 - 28:3; SOF, Ex. 8, at ¶¶ 9-10. The evidence therefore shows that Plaintiff's opinion that the Hotel was not cooperating with law enforcement because it required a subpoena to turn over the video is not false and amounts to pure, unactionable opinion.

    **ii.**       **Plaintiff is a Public Figure and Must Prove that Defendant Acted with Actual Malice by Clear and Convincing Evidence to Prove Ordinary Defamation.**

For a public figure to prevail in defamation claims, he must prove that the defendant declarant acted with actual malice. *Trump v. CNN, Inc.*, 684 F. Supp. 3d 1269, 1273 (S.D. Fla. 2023) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964)). A public figure must prove "well beyond a preponderance of the evidence—that the defendant[] published a defamatory statement either with actual knowledge of its falsity or with a high degree of awareness of its probable falsity." *Berisha*, 973 F.3d at 1312. Thus, the appropriate question at summary judgment is "whether the evidence in the record could support a reasonable jury finding either that the plaintiff has shown actual malice by clear and convincing evidence or that the plaintiff has not." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).

Although state law governs the merits of a plaintiff's defamation action, standards for public figures and actual malice originate from the First Amendment and are matters of federal law. *Berisha v. Lawson*, 973 F.3d 1304, 1306 (11th Cir. 2020). Determining whether an individual or entity is a public figure subject to the actual malice analysis is a question of law for the court to decide. *See Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016).

Individuals or entities may qualify as general public figures—that is one with such fame and notoriety that he will be a public figure in any case—or limited public figures who thrust themselves into a particular public controversy and thus must prove actual malice in regard to certain issues. *See Berisha v. Lawson*, 973 F.3d 1304, 1310 (11th Cir. 2020); *see also Tobinick v. Novella*, 848 F.3d 935, 945 n.9 (11th Cir. 2017). Here, Plaintiff characterizes itself as an "icon" and world-class destination for guests from all over the world since 1954. (DE 12 at ¶15). It is a destination and "major Hotel" on Collins Avenue in Miami Beach. *See, e.g.,* SOF, Ex. 1, at 10:15. It hosts tourists, locals, and events, such as weddings. *See, e.g.,* SOF, Exs. 18, 19. Additionally,

the factual averments and allegations in both Counts I and II for Defamation Per Se and Ordinary Defamation demonstrate that Plaintiff considered itself a public figure when it pleaded the higher "malice" standard. (DE 12). The factual averments and both defamation counts in the First Amended Complaint repeatedly characterize Defendant's alleged conduct as "malicious" and assert that Defendant's statements were made with "malice" toward the Hotel. (DE 12 at § C, ¶¶ 8, 10, 11, 14, 41, 48, 56, 78, 98). Therefore, Plaintiff is a general public figure who must show by clear and convincing evidence that Defendant acted with actual malice when he made the allegedly defamatory statements. *See Liberty Lobby*, 477 U.S. 156-57.

> iii. **Defendant is Entitled to Summary Judgment on Count II for Ordinary Defamation Because Plaintiff Cannot Prove Defendant Acted with Actual Malice.**

Even if this Court does not consider Statements 1 and 2 to be unactionable opinion or hyperbole, Plaintiff cannot demonstrate that Defendant made those statements with "actual malice." Actual malice is "not satisfied merely through a showing of ill will or 'malice' in the ordinary sense of the term. *Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657, 666 (1989). The phrase "actual malice" is unfortunately confusing in that it has nothing to do with bad motive or ill will. *Id.* at n.7 (citing *Rosenbloom* v. *Metromedia, Inc.*, 403 U.S. 29, 52, n. 18 (1971) (opinion of Brennan, J.)).

Actual malice requires "knowledge that [a false statement] was false" or "reckless disregard of whether it was false or not." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254 at 280. "All that matters is the speaker's state of mind—*i.e.*, whether, *at the time he spoke*, he knew (or didn't care) that he was speaking falsely." *Block v. Matesic*, 789 F. Supp. 3d 1131, 1164-65 (S.D. Fla. 2025) (citing *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667, (1989) ("[W]e have made clear that the defendant must have made the false publication with a 'high degree of awareness of

. . . probable falsity.'"); *see also* 1 Robert D. Sack, Lyrissa B. Lidsky, Sack on Defamation § 5:5.1 at 5-87 (5th ed. 2024) ("It is crucial that the state of mind of the defendant be measured *at the time of publication.*" (collecting cases) (emphasis added)).

As explained above, Statement 1 regarding Defendant's belief that he was trespassed from the Hotel for being "too Jewish" was made after Defendant made *three* posts of the letter relied upon by the Hotel to demonstrate "knowledge that the statement was false" and in the in the context of a longer video discussing the attack, the events that followed, and Defendant's interpretations and opinions regarding those events. The letter Plaintiff contends contradicts Defendant's statement was available to the reader or listener as a member of the public because Defendant posted it three times. Defendant therefore qualified his statement as a belief and did not act with actual malice. *See Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018).

Plaintiff also cannot establish actual malice as to Statement 2. As explained above, Defendant construed the Hotels unwillingness to give the video to MBPD without a subpoena as a lack of cooperation. Furthermore, there was clear confusion over when the video was provided, as the police department did not immediately advise Defendant's counsel or provide her with the video. Thus, Statement 2 cannot be defamatory, and Plaintiff has not established Defendant acted with actual malice. It is irrelevant whether Defendant made either statement out of spite or ill-will. *See Rosenbloom*, 403 U.S. at 52, n. 18.

### iv.   Legal Standard for Defamation Per Se.

"[A] publication is libelous [sic] *per se*, or actionable *per se*, if, when considered alone without innuendo: (1) it charges that a person has committed an infamous crime; (2) it charges a person with having an infectious disease; (3) it tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (4) it tends to injure one in his trade or profession." *Block v. Matesic*,

789 F. Supp. 3d 1131, 1155 (S.D. Fla. 2025) (quoting *Richard v. Gray*, 62 So. 2d 597, 598 (Fla. 1953)). "In other words, when a statement is so obviously defamatory and damaging to [one's] reputationit generally gives rise to an absolute presumption both of malice and damage. *Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1119 (S.D. Fla. 2021).

A trier of fact is limited to the four corners of the publication to determine whether a published statement is defamatory per se. *Block v. Matesic*, 789 F. Supp. 3d 1131, 1155 (S.D. Fla. 2025). "It is well settled in Florida that '[c]ommentary or opinion based on facts that are set forth in the [allegedly defamatory communication] or which are otherwise known or available to the reader or listener are not the stuff of libel.'" *Id.* (quoting *Turner v. Wells*, 198 F. Supp. 3d 1355, 1366 (S.D. Fla. July 29, 2016). As this Court has recently explained:

> In assessing whether a statement is 'pure opinion,' we 'must construe the statement in its totality, examining not merely a particular phrase or sentence, but all of the words used in the publication,' and we must 'consider the context in which the statement was published and accord weight to cautionary terms used by the person publishing the statement. *Id.* at 1367 (quoting *Hay v. Indep. Newspapers, Inc.*, 450 So. 2d 293, 295 (Fla. 2d DCA 1984)). "Pure opinion is sometimes characterized as rhetorical hyperbole." *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1379 (S.D. Fla. June 5, 2006) (Seltzer, Mag. J.) (cleaned up); *see also Readon*, 317 So. 3d at 1235 ("Florida law recognizes a difference between statements presented as fact and statements presented as an opinion or rhetorical hyperbole.").

*Block*, 789 F. Supp. 3d at 1156.

As explained in § B.i, *supra*, Statements 1 and 2 are clear opinions and hyperbole. Regardless, neither statement is so "obviously defamatory and damaging to [the Hotel's] reputation" so that it should create a presumption of malice and damages. *See Corsi.*, 519 F. Supp. 3d at 1119; *see also Block*, 789 F. Supp. 3d 1155 (describing categories of publication giving rise to defamation per se).

However, insofar as Plaintiff contends that the Hotel's refusal to cooperate with law enforcement is a criminal act, such a statement does not support a claim for defamation per se

10

because failure to cooperate with law enforcement is not an infamous crime. Statements may be "defamatory *per se* when they charge a person with an *infamous* crime or tend to subject one to hatred, distrust, ridicule, contempt or disgrace, or tend to injure one in one's business or profession." *Rubin v. U.S. News & World Report, Inc.*, 271 F.3d 1305, 1306 (11th Cir. 2001). Nonetheless, under Florida law failure to "cooperate" with law enforcement is not a crime, much less an infamous crime. *See Gutterman v. State*, 141 So. 2d 21, 27 (Fla. 1st DCA 1962) (discussing "infamous crimes" and holding that minimally an "infamous crime" would subject a person to imprisonment in a state prison or penitentiary). Here, Defendant's alleged statement that Plaintiff did not cooperate with law enforcement in the investigation of the anti-Semitic attack against him does not amount to an accusation of criminal activity.

> **v.      Plaintiff Cannot Prove Causation or Damages.**

As set forth in Defendants' Motion to Exclude Opinions and Testimony of Plaintiff's Expert Shannon Wilkinson Pursuant to *Daubert* (ECF No. 146) ("Defendant's Daubert Motion"), Plaintiff's entire theory of causation and damages, which has been ever-shifting throughout this litigation, is based entirely on Wilkinson's flawed opinions regarding Plaintiff's online "image". *See generally* Defendant's Daubert Motion.  As discussed extensively in the motion, Wilkinson's opinions, among other things, are based entirely upon irrelevant facts, including eight irrelevant social media posts, two irrelevant TV news segments, and an irrelevant article in the op-ed section of the *Jerusalem Post*.  *Id*.  None of these posts or statements are at issue in this litigation.  *Id*. Further, to the extent some of the statements may be at issue, they are comingled with numerous irrelevant statements and publications.  *Id*.  Further, Wilkinson's suggested "damages" consisting of seven vague, round number cost amounts do not utilize any methodology to arrive at these amounts, much less a reliable methodology which would meet the strictures of *Daubert v. Merrell*

*Dow Pharm. Inc.*, 509 U.S. 579 (1993), and Rules 702 and 403, Fed. R. Evid. *Id*. Finally, as discussed in Defendant's Daubert Motion, there is no record evidence that any third-party readers were aware of Statements 1 or 2, including commenting or otherwise reacting to the statements. *Id*.

In addition to Plaintiff's entire theory of causation and damage being based upon Wilkinson's irrelevant and speculative opinions, there is no record evidence that would create a genuine issue of material fact that Statements 1 and 2 actually caused damage to Plaintiff. Plaintiff's own corporate representative was unable to identify any third party who was aware of Statements 1 or 2. *See* 9-18-25 Carpenter Dep. at 48:24-49:13. Further, as discussed *infra*, five of the six witnesses (alleged guests of the hotel) Plaintiff stated under oath in its Answer to Defendant's 1st Interrogatories supposedly canceled their reservations because of Defendant's statements, unequivocally testified that they were not aware of Statements 1 and 2. *See* SOF, ¶¶ 50-62. Thus far, Plaintiff has not proffered one witness, declaration, social media comment, communication, document, or any modicum of proof that there was a third-party reader that either saw these two statements, much less reacted to them. In short, nobody noticed Statements 1 and 2, much less cared about them. Rather, as demonstrated by the testimony of the five witnesses, as well as the comments to the social media posts containing Statements 1 and 2, the only thing any reader cared about was the horrific and disgusting nature of Akbar's anti-Semitic verbal attack against Defendant – a true event, and not one of the two defamatory statements at issue. *See* SOF, ¶¶ 50-62.

This underscores the conjectural nature of Plaintiff's causation and damages.

**C.    Defendant is Entitled to Summary Judgment on Plaintiff's Claims for Tortious Interference.**

Claims for tortious interference with a business relationship require: (i) the existence of a

business relationship; (ii) defendant's knowledge of that relationship; (iii) an intentional and unjustified interference with the relationship; and (iv) injury resulting from the breach of the relationship. *See, e.g.*, *Saulsberry v. Elder*, No. 21-CV-62362, 2022 U.S. Dist. LEXIS 228936, at *14 (S.D. Fla. Dec. 20, 2022) (citing *Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, 1191 (11th Cir. 1999). Here, Plaintiff has not proven any actual business relationships were interfered with by Defendant's statements nor has it identified any resultant damages.

1. **Defendant did Not Interfere with Plaintiff's "Business Relationships."**

A "business relationship" requires a relationship with a particular party, and not a relationship with the general business community. *See Ethan Allen, Inc. v. Georgetown Manor, Inc.,* 647 So. 2d 812, 815 (Fla.1994); *Dunn*, 193 F.3d at 1191 (affirming dismissal and finding that allegations that a publication prevented Plaintiffs from employment with a "commercial airline" were insufficient to state a claim for intentional interference with a business relationship). "[T]he alleged business relationship must afford the plaintiff existing or prospective legal or contractual rights." *Ozyesilpinar*, 365 So. 3d at 460; *see also Ethan Allen*, 647 So. 2d at 815 (answering a certified question of law from the Eleventh Circuit and holding that a Plaintiff may not recover in a tortious interference with a business relationship action where the relationship is based on speculation regarding future sales to past customers).

The same problems which prevent Plaintiff from establishing causation and damage in its defamation claims via Wilkinson's irrelevant and unreliable opinions (discussed *supra*) also prevent Plaintiff from establishing causation and damages. *See* Section B.v., *supra*. In particular, contrary to Plaintiff's sworn testimony in its Answers to Plaintiff's 1st Interrogatories, the witness testimony is unequivocal that no customers/guests cancelled reservations at the Hotel. *See* SOF, at Exs. 1, 16-19 (filed under seal pursuant to protective order (ECF No. 32). In fact, two of the

witnesses identified by Plaintiff not only did not cancel, but they held a three-day wedding event that included a block of 20-30 rooms. *See* SOF, Exs. 18-19. Significantly, none of the five witnesses recall Defendant making any of the statements at issue. *See* SOF, ¶¶ 50-62. Rather, what they do remember is the video of the antisemitic verbal attack against Defendant, which was a true event and not one of the defamatory statements at issue. *Id.*

Furthermore, Counsel for Plaintiff stipulated on the record that it was not seeking any financial damages and otherwise was not offering any evidence as to financial damage allegedly caused by Defendant's two statements at issue. *See* SOF, Ex. 12. Nor did Plaintiff's expert on damages, Shannon Wilkinson, consider any facts evidencing financial/economic damage to Plaintiff as a result of the two statements at issue. *See* SOF, Ex. 11. And the reason is clear: Contrary to Plaintiff's allegations in the Amended Complaint and Answers to Defendant's 1st Interrogatories, Plaintiff cannot show that it lost any sales, revenues, bookings, or otherwise suffered any economic damage based upon the two statements at issue.

Because damages are essential to a claim for tortious interference, Defendant is entitled to summary judgment.

**2. Defendant is Entitled to Summary Judgment on Plaintiff's Requests for Injunctive Relief Because the Request is an Impermissible Prior Restraint of Defendant's First Amendment Right to Freedom of Speech.**

In the event this Court does not enter summary judgment on Counts I, II, or III, Defendant is entitled to summary judgment in his favor as to Plaintiff's request for injunctive relief. "Injunctive relief is not available to prohibit the making of defamatory or libelous statements." *Chevaldina v. R.K./FL Mgmt.*, 133 So. 3d 1086, 1090 (Fla. 3d DCA 2014). "[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). Protection against prior restraints on speech extends to both false statements and to those from which a commercial gain

14

is derived. *See Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 761 (1976) ("[S]peech does not lose its First Amendment protection because money is spent to project it .... Speech likewise is protected even though it is carried in a form that is 'sold' for profit."); *ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915, 924 (6th Cir. 2003) (same); *Town of Lantana v. Pelczynski*, 290 So. 2d 566, 569 (Fla. 4th DCA) ("Freedom from prior restraint upon speech and press extends to false, as well as true statements.") (citing *Patterson v. Colorado*, 205 U.S. 454, 462 (1907)).  Counts I, II, and III of the First Amended Complaint are each assert that Plaintiff incurred damages as a result of alleged defamatory statements by Defendant. However, the law is clear that a plaintiff is not entitled to injunctive relief to prevent a defendant from making further statements, even if those statements are defamatory. Therefore, Defendant is entitled to summary judgment on the issue of injunctive relief for Counts I, II, and III.

## IV.  CONCLUSION

Based upon the forgoing, Defendant respectfully requests that this Honorable Court enter Summary Judgment in favor of Defendant on Counts I, II, and/or IV of Plaintiff's First Amended Complaint, or in the alternative, summary judgment as to Plaintiff's request for injunctive relief as to Counts I, II, and/or III in the event summary judgment is not entered, along with any other relief deemed just and appropriate.

Respectfully submitted this 20th day of March, 2026.

/s/ John Y. Benford
John Y. Benford, Esquire
Florida Bar No.: 51950
john.benford@wilsonelser.com
alyssa.heitman@wilsonelser.com
Jacqueline M. Bertelsen, Esquire

15

Florida Bar No.: 123747
jacqueline.bertelsen@wilsonelser.com
daniela.ezeta@wilsonelser.com
Wilson Elser Moskowitz Edelman & Dicker LLP
111 N. Orange Avenue, Suite 1200
Orlando, FL 32801
Telephone:  407-203-7599
Facsimile:  407-648-1376
Counsel for Defendant, Jacob Shmuel Botach

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2026, I electronically filed the foregoing by using the

Florida Courts E-Filing Portal, which will serve an electronic copy on all counsel of record.

/s/ John Y. Benford
John Y. Benford, Esquire
Florida Bar No.: 51950
john.benford@wilsonelser.com
alyssa.heitman@wilsonelser.com
Jacqueline M. Bertelsen, Esquire
Florida Bar No.: 123747
jacqueline.bertelsen@wilsonelser.com
daniela.ezeta@wilsonelser.com
Wilson Elser Moskowitz Edelman & Dicker LLP
111 N. Orange Avenue, Suite 1200
Orlando, FL 32801
Telephone:  407-203-7599
Facsimile:  407-648-1376
Counsel for Defendant, Jacob Shmuel Botach