UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.: 1:25-cv-20251-KMM

FONTAINEBLEAU FLORIDA HOTEL, LLC
d/b/a FONTAINEBLEAU MIAMI BEACH,
a foreign limited liability company

      Plaintiff,

v.

JACOB SHMUEL BOTACH a/k/a
"SHMULEY BOTEACH,"
an individual, and John Does 1-10,

      Defendant.

_____/

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S**
**MOTION FOR SANCTIONS (ECF NO. 208)**

Defendant, JACOB SHMUEL BOTACH, a/ka/ "SHMULEY BOTEACH," ("Defendant"

or "Rabbi Botach"), files this response in opposition to Plaintiff's Motion for Sanctions pursuant

to Fed. R. Civ. P. 16, as follows:

**INTRODUCTION**

This case arises from an antisemitic verbal attack and threats made by a hotel guest, Faiz

Akbar, against Defendant, a rabbi, which occurred in the lobby of the Hotel in the early hours of

December 2, 2024. Plaintiff brought this lawsuit against Rabbi Botach for defamation after Rabbi

Botach posted an accurate video of the attack and his opinions regarding how Plaintiff handled the

attack and its fallout. From Rabbi Botach's perspective, Plaintiff failed to prosecute or sufficiently

cooperate with police in investigating the perpetrator of the antisemitic assault against him and instead chose to ban him from their properties and whitewashed the incident in the media. As a result, Rabbi Botach brought a counterclaim against Plaintiff for violations of his civil rights. The parties' claims and defenses in this case arise from their differing perspectives regarding the assault and its subsequent investigation.

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

On January 16, 2025, this case was removed to federal court (ECF No. 1). On February 18, 2025, Plaintiff filed its First Amended Complaint (ECF No. 12). Rabbi Botach filed his Counterclaim and third-party claims on July 23, 2025 (ECF No. 40). On September 24, 2025, Plaintiff filed its Motion for Sanctions due to Rabbi Botach's use of a confidential surveillance video on his social media accounts (ECF No. 61).

On September 30, 2025, Rabbi Botach filed his Answer to the First Amended Complaint (ECF No. 69). On October 9, 2025, Plaintiff moved to dismiss Rabbi Botach's Counterclaim. (ECF No. 80). No ruling has been entered and no answer yet filed.

On February 10, 2026, Rabbi Botach moved to continue trial and for additional time to serve third-party defendants (ECF No. 119, 120). On February 20, 2026, the Court denied Rabbi Botach's motions (ECF No. 125). In *dicta*, the Court stated, "[t]he Court DIRECTS Defendant to cease such harassing conduct and social media references to Plaintiff and its counsel during the course of this litigation." On February 26, 2026, the Court entered an order granting in part and denying in part Plaintiff's Motion for Sanctions relating to the confidential surveillance video (ECF No. 130).

2

On February 26, 2026, Rabbi Botach posted a video restating his litigation position in this case and referring to a "world-renowned establishment" without identifying the name or type of establishment. *See* Pl. Mot. Sanctions, D.E. 208, Ex. 3. On March 10, 2026, Rabbi Botach posted a video wherein he reiterated his perspective on his safety after a third party disagreed with Rabbi Botach's position on Jewish safety. *See* Pl. Mot. Sanctions, D.E. 208, Ex. 4. On March 11, 2026, Rabbi Botach posted a video wherein he declined to discuss the case or Plaintiff, choosing instead to reiterate a one-sentence summary of his litigation position.  *See* Pl. Mot. Sanctions, D.E. 208, Ex. 5. On March 16, 2026, Rabbi Botach posted a link to an unrelated news story wherein Plaintiff is involved with a contested zoning issue on Miami Beach, specifically its well-known water park project. *See* Pl. Mot. Sanctions, D.E. 208, Ex. 6. On March 24, 2026, Rabbi Botach posted a video discussing a Broadway play and comparing it to his position as a defendant in a case brought by a business owned by a wealthy businessman. *See* Pl. Mot. Sanctions, D.E. 208, Ex. 7. On March 28, 2026, Rabbi Botach posted a video of an unwanted confrontation by a third party wherein he compares the interaction to the one that occurred at Plaintiff's premises. *See* Pl. Mot. Sanctions, D.E. 208, Ex. 9.

On May 24, 2026, Rabbi Botach posted about another unwanted confrontation by a third party during an international trip wherein the third party harassed him and invoked Plaintiff's counsel's name and ability. *See* Pl. Mot. Sanctions, D.E. 208, Ex. 10. This third party was later identified as Eli Lipskar, the son of Plaintiff's counsel's longtime rabbi. *See* Botach Declaration, **Exhibit A**, attached hereto as Exhibit 1.  Later on May 24, 2026, Rabbi Botach's social media account reflected duplicative posts about Plaintiff's counsel's prior high-profile representations.

*See* Pl. Mot. Sanctions, D.E. 208, Ex. 1. Rabbi Botach denies posting these duplicative posts, stating that they were old drafts from months prior and not intended to be posted. *See* Declaration of Gavriel Bell, attached hereto as Exhibit 2.  The May 24, 2026, duplicative posts resulted from a series of technological glitches encountered following replacement of his mobile phone and the data restoration process.  *See id.*

On May 26, 2026, Plaintiff's co-counsel emailed Rabbi Botach's counsel demanding an immediate conferral. Plaintiff's co-counsel provided dates for the March posts but not the posts themselves. Plaintiff's co-counsel provided a copy of the May 24, 2026 post referencing Eli Lipskar. Upon request, Plaintiff's co-counsel provided copies of the omitted posts to Rabbi Botach's counsel and reiterated his demand for an immediate conferral on the months-old posts.

On May 28, 2026, counsel for the parties conducted their pre-trial conference and discussed the identified posts. During this conferral, Rabbi Botach offered to remove the posts; Plaintiff declined the proposed remediation and chose to file the instant Motion.

It should also be noted that Plaintiff's counsel, Sean Burstyn, is no stranger to publicizing this litigation or slinging insults at Defendant.  Not only did Mr. Burstyn immediately post a copy of the Complaint on social media the day it was filed, but Mr. Burstyn was mocking Defendant's opinion that the Hotel was not safe for Jews several month ago in an interview with a prominent Jewish social media influencer.  *See* ECF No. 138.  Indeed, Mr. Burstyn has made himself a material issue in this lawsuit from inception.  *See* ECF No. 152.

## SUMMARY OF ARGUMENT

Plaintiff's Motion travels under Fed. R. Civ. P. 16(f) and the Court's inherent authority.

4

Plaintiff fails to carry its burden under either theory.

First, Plaintiff has failed to identify a specific court order that Rabbi Botach has violated. While Plaintiff relies on this Court's order denying Rabbi Botach procedural extensions of time, no sanctions motion was then pending, and this Court chose not to use the term "ORDERS" regarding Rabbi Botach's out-of-court conduct. Rather, for the first time, the Court used the term "DIRECTS" to address an ancillary issue not raised by the actual motion papers.

Second, Plaintiff's Motion must be denied because Fed. R. Civ. P. 16(f) does not apply to Plaintiff's generalized complaints about Rabbi Botach's out-of-court conduct and is not founded upon any Rule 16 pretrial order. While Plaintiff refers to this Court's order regarding prior dissemination of confidential materials, that order was limited only to the posting of a second surveillance video – not Rabbi Botach's general social media presence. Further, that order is not a Rule 16 pretrial order under that rule and cannot be used to abrogate Rabbi Botach's procedural due process rights as they relate to sanctioning out-of-court conduct.

Third, Plaintiff's Motion should be denied as Plaintiff delayed reporting any alleged breaches of decorum for nearly three months, robbing the Defendant, his counsel, and this Court of the opportunity to modify any contested behavior as the case moved towards trial. Any disruption to the pre-trial process is due to Plaintiff's failure to timely report out-of-court conduct it contests as improper.

Fourth, Rabbi Botach did not substantively violate any directive and did not intend to post the duplicative May 24th postings. Plaintiff's identified posts do not reflect on Plaintiff or Plaintiff's counsel but rather reflects on the status of the case and incidents with third parties who

harbor relationships with Plaintiff's counsel that occurred beyond his control. Further, a cursory review of Rabbi Botach's social media feed as compared to those duplicative posts reflect abnormalities and errors indicative of an unintentional posting of an old draft post. None of the posts indicate intentional harassment of Plaintiff or Plaintiff's counsel.

Lastly, Plaintiff's Motion must be denied as Plaintiff has failed to provide clear and convincing evidence of each element for civil contempt and failed to provide clear and convincing evidence of "willful" violations or "good cause" for a criminal contempt finding. As Plaintiff has failed to establish a *prima facie* case for any form of contempt, Plaintiff's Motion must be denied.

**LEGAL STANDARDS**

**Rule 16:** Fed. R. Civ. P. 16 is entitled "Pretrial Conferences; Schedule; Management." Subsection (c)(2)(J) identifies the pretrial order as flowing from a Rule 16 conference, and subsection (d) defines "pretrial orders" as being issued after such a conference. Subsection (f), Sanctions, specifies that sanctions are available under Rule 16 when a party or attorney fails to obey a schedule or pretrial order.

**The Court's Inherent Authority Regarding Sanctions:** "Federal courts have the inherent authority to fashion an appropriate sanction for conduct which abuses the judicial process." *Trump v. Clinton*, 161 F.4th 671, 688 (11th Cir. 2025) (cleaned up). "This authority arises from the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id*. "To unlock that inherent power, a court must find that a party or his attorney acted in bad faith." *Id*. "On a finding of bad faith, the district court may assess attorney's fees. *Id*. "To establish bad faith under the inherent authority standard, a court must find subjective

bad faith." *Id*. "And such a bad faith finding must be made in compliance with the mandates of due process, requiring fair notice and an opportunity to be heard." *Hernandez v. Acosta Tractors, Inc*., 898 F.3d 1301, 1306 (11th Cir. 2018).

**Contempt Proceedings:** "A contempt sanction is considered civil if it is remedial, and for the benefit of the complainant." *Pliteq, Inc. v. Mostafa*, No. 23-CV-24868-ELFENBEIN, 2025 U.S. Dist. LEXIS 214081, at *5 (S.D. Fla. Oct. 29, 2025). "By contrast, a contempt sanction is criminal if it is punitive, to vindicate the authority of the court." *Id.*

A party seeking **civil contempt** "bears the initial burden of proving by clear and convincing evidence that the alleged contemnor has violated an outstanding court order." *Commodity Futures Trading Comm'n v. Wellington Precious Metals, Inc.,* 950 F.2d 1525, 1529 (11th Cir. 1992). "The clear and convincing evidence must establish that: (1) the allegedly violated order was valid and lawful; (2) the order was clear and unambiguous; and (3) the alleged violator had the ability to comply with the order." *Ga. Power Co. v. NLRB*, 484 F.3d 1288, 1291 (11th Cir. 2007).

On the other hand, the three elements of **criminal contempt** are (1) a lawful and reasonably specific order that (2) the defendant has violated (3) willfully. *Pliteq, Inc.,* at 11-12. "A federal court may punish contemptuous conduct that occurs outside its presence only after giving notice of the essential facts constituting the charged criminal contempt, requesting that the contempt be prosecuted by an attorney for the government, and affording other procedural protections." *Id.* "The defendant is not only entitled to be informed of the nature of the charge against him, but to know that it is a charge, and not a civil suit." *Id.* "In proceedings for criminal contempt the defendant is presumed to be innocent, he must be proved to be guilty beyond a reasonable doubt,

7

and he cannot be compelled to testify against himself." *Id.*

## ARGUMENT

I.      **Plaintiff's Motion must be denied as Plaintiff cannot identify a court order that Rabbi Botach has violated.**

On February 20, 2026, this Court denied Rabbi Botach's motion to continue trial and for additional time to serve third-party defendants. In doing so, this Court ruled the motions, "ORDERED AND ADJUDGED that Defendant's Continuance Motion [119] is DENIED" and "Defendant's Extension Motion [120] is DENIED." The Court continued, "Defendant is ORDERED TO SHOW CAUSE on or before February 24, 2026, as to why his third-party claims should not be dismissed[.]" The Court did not order Rabbi Botach to show cause why he should not be sanctioned or subject to a functional "gag order." Rabbi Botach's out-of-court conduct was not put at issue by the pending motions, either.

Only after ruling on the only two motions pending did this Court refer to Rabbi Botach's out-of-court conduct, stating, "[t]he Court DIRECTS Defendant to cease such harassing conduct and social media references to Plaintiff and its counsel during the course of this litigation." Rabbi Botach had no notice that his out-of-court conduct would be addressed by this Court under the circumstances and was not provided an opportunity for a full response. While this Court's directives are not taken lightly, the Court chose to use language differing from an order as no Rule 16, 37, or other sanctions motion filed by Plaintiff had been pending.

8

Presumptively, had this Court issued an order regarding Rabbi Botach's out-of-court conduct because of the Court's inherent authority, Rabbi Botach's due process rights would have been violated. The Court's authority "must stay within the bounds of due process." *Citronelle-Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1304 (11th Cir. 1991). "Due process requires that the court inform the alleged contemnor of the contemptuous conduct and provide a hearing in which the alleged contemnor may explain why the court should not make a contempt finding." *Id.* "Although the district court has the authority to impose sanctions designed to ensure compliance, the sanctions cannot be any greater than necessary to ensure such compliance." *Id; see also Hernandez v. Acosta Tractors, Inc.,* 898 F.3d 1301, 1306 (11th Cir. 2018) ("[I]n order for a court to impose a sanction pursuant to its inherent authority, it must make a finding that the sanctioned party acted with subjective bad faith . . . [a]nd such a bad faith finding must be made in compliance 'with the mandates of due process,' requiring fair notice and an opportunity to be heard."). At no time did this Court make a ruling on subjective bad faith.

Plaintiff asks the Court to violate Rabbi Botach's due process rights by construing this Court's February 20, 2026 *dicta* as a "sanctions order." But neither the intent of the Court's order nor its language evinces a "clear and unambiguous" conclusion to satisfy due process. *See Ga. Power Co. v. NLRB*, 484 F.3d 1288, 1291 (11th Cir. 2007) ("Moreover, we will construe any ambiguities or uncertainties in such a court order in a light favorable to the person charged with contempt.").

9

Furthermore, at no point was Rabbi Botach given notice that his out-of-court conduct would be placed at issue for evaluation and an order by this Court. Construing the Court's *dicta* as an order would constitute a direct violation of Rabbi Botach's due process rights to fair notice and an opportunity to be heard and would further violate the Court's requirement to make a subjective bad faith finding based on admissible evidence.

As presented, Plaintiff's Motion invites unnecessary distraction from the parties' pre-trial preparation, this Court's ability to rule on pending motions, and invites issues of appeal unnecessarily.

Plaintiff's Motion should be denied on this basis alone.

II.     **Plaintiff's Motion should be denied because neither this Court's February 20, 2026 order nor its February 26, 2026 permit Rule 16(f) sanctions.**

Plaintiff's Motion argues for a broad interpretation of the term "pretrial order" as used in Fla. R. Civ. P. 16(f)(1)(c). Plaintiff's position ignores the use of the term within Rule 16 and its commentary as flowing from a Rule 16 conference or akin to a scheduling order.

Specifically, Rule 16(c)(2)(J) introduces the term in reference to the pretrial conference, stating, "[a]t any pretrial conference, the court may consider and take appropriate action on the following matters:… determining the form and content of the pretrial order[.]" Rule 16(d) addresses "pretrial orders" with further detail, stating, "After any conference under this rule, the court should issue an order reciting the action taken. This order controls the course of the action unless the court modifies it."

This narrower use of the term, "pretrial order," under Rule 16 is supported by its commentary. "Notes of Advisory Committee on Rules—1983 Amendment" uses the term, "pretrial order," as "the pretrial orders that issue following Rule 16 conferences." In discussing then-subdivision (e), the Committee states, "[t]he purpose of an order is to guide the course of the litigation[.]" Rule 16's use of the phrase, "other pretrial orders," is not inclusive of all other orders issued before trial, but is intended to account for the possibility of multiple pretrial orders issued following a pretrial conference. The Committee states it as follows:

> Since the amended rule encourages more extensive pretrial management than did the original, two or more conferences may be held in many cases. The language of Rule 16(e) recognizes this possibility and the corresponding need to issue more than one pretrial order in a single case.

It follows naturally that Rule 16(f) is directed to particulate types of orders issued prior to a trial, i.e., pretrial orders following one or more pretrial conferences. Rule 16(f) is not intended to apply to all orders issued prior to trial. *See Callip v. Harris County Child Welfare Dept.,* 757 F.2d 1513, 1518 (5th Cir. 1985) (distinguishing 16(f)'s impact on case management from case-related conduct and noting it had no impact on a "district court's inherent power to dismiss or to impose lesser sanctions for violations of court orders").

Plaintiff has not identified any obligation of a pretrial order or scheduling order that Rabbi Botach has violated. This Court's February 20, 2026 and February 26, 2026 orders were not issued because of a Rule 16 pretrial conference and, therefore, cannot be the basis for a Rule 16(f) motion.

Plaintiff's Motion should be denied on that basis to the extent it invokes Rule 16.

11

**III.   Plaintiff's Motion should be denied because Plaintiff's delayed reporting any alleged misconduct for several months and until the eve of trial.**

Plaintiff's Motion begins its allegations about Rabbi Botach by referencing: 1) a February 26, 2026 video, 2) a March 10, 2026 video, 3) a March 11, 2026 video, 4) a March 16, 2026 post, 5) a March 24, 2026 video, 6) a March 28, 2026 video, 7) a May 24, 2026 post, and 8) two identical X posts on May 24, 2026. Had Plaintiff timely raised its concerns about the first alleged violation – or even the second alleged violation – then none of the subsequent ones would have occurred. But Plaintiff's failure to do so has put the parties and this Court in the unfortunate position of evaluating out-of-court statements on the eve of trial. Plaintiff's failure to timely raise the issues should serve as cause to deny their Motion. *See, e.g., Leon v. M.I. Quality Lawn Maint., Inc.*, No. 10-20506-CIV, 2018 U.S. Dist. LEXIS 202255, at *37 (S.D. Fla. Nov. 29, 2018) (denying a motion for sanctions because a delay in filing "undermines the very policy that Court's cite in support the imposition of sanctions pursuant to the Court's inherent authority."); *Peer v. Lewis*, 606 F.3d 1306, 1312-13 (11th Cir. 2010) (requiring Rule 11 motions to be served "promptly").

Plaintiff's co-counsel indicated that Plaintiff has "exercised restraint" prior to bringing these posts to defense counsel's and this Court's attention. But by unilaterally "exercising restraint" until the eve of trial, Plaintiff has prevented defense counsel and this Court from "exercising restraint" in a manner that would have avoided this Motion and any prejudice Plaintiff now claims to experience. Plaintiff's chosen course of action undermines the stated purpose of the sanctions process, which is to allow the Court to manage its docket and the pre-trial process between the parties. Plaintiff cannot now be rewarded for bringing about the very prejudice it now claims to suffer.

12

For these reasons, Plaintiff's Motion should be denied as untimely.

**IV.     Plaintiff's Motion must be denied because Plaintiff has failed to show a *prima facie* case of a violation of a court order or sanctionable conduct.**

Even if the Court entertains the substance of the posts, the posts reveal why Plaintiff's never raised them before – the posts do not rise to the level of sanctionable conduct.

In the February 26, 2026 video, Rabbi Botach expounds on his perspective of this case and the religious undertones flowing herein. As this Court is well-aware, an antisemitic attack at Plaintiff's premises is what began this general dispute; Plaintiff's initial complaint for damages against Rabbi Botach is what began this specific lawsuit. Plaintiff's cribbed portion of Rabbi Botach's video is nothing more than what he has included in his public pleadings and in his testimony. Plaintiff has offered the Court no legal basis to punish or censure Rabbi Botach for sharing his perspective on a dispute he did not ask to be part of or a lawsuit he did not initiate.

In the March 10, 2026 video, Rabbi Botach expressed his opinion on his own safety during an impromptu on-street exchange.

In the March 11, 2026 video, Rabbi Botach reiterated his personal belief and his position in this case that he will not be silenced by antisemites or those who protect antisemites. Plaintiff's response to the antisemitic attack against him on its property, and its employees' embrace of the attacker immediately afterward, remain at issue in this case.

In the March 16, 2026 post, he included a link about an unrelated issue to this litigation. Plaintiff offers no explanation or theory as to why this post could be considered harassing. The underling issue itself – whether a water park is appropriate for Miami Beach – remains a hotly contested issue among residents of Miami Beach.

In the March 24, 2026 video, Rabbi Botach criticizes an abstract concept of influence exerted by a billionaire and business class on legal outcomes. Rabbi Botach asks a question explored extensively by legal academia and news organizations, and for good reason. *See, e.g., Amanda Peters, What Torres v. Madrid Reveals about Fact Bias in Civil Rights Cases*, 50 Fla. St. U. L. Rev. 569 (2023); Caroline Fredrickson and Lisa Graves, *On Dark Money and the Right's Judicial 'Revival'*, National Law Journal (May 31, 2019) (last accessed June 9, 2026 at https://www.law.com/nationallawjournal/2019/05/31/on-dark-money-and-the-rights-judicial-revival/); Andrea Prat, Fiona Scott Morton, and Jacob Spitz, *Ruling for the rich: Evidence of a pro-wealthy bias on the US Supreme Court*, Center for Economic Policy Research (23 Feb 2026) (last accessed June 9, 2026 at https://cepr.org/voxeu/columns/ruling-rich-evidence-pro-wealthy-bias-us-supreme-court). To censure Rabbi Botach for asking such a question only serves to reinforce the conclusions one might draw from the question.

In the March 28, 2026 video, Rabbi Botach records a spontaneous and unwanted exchange with a third party that Rabbi Botach identifies as similar to the one that occurred at Plaintiff's premises. His statements merely reflect his position in defense of Plaintiff's lawsuit and in support of his claim – that the incident occurred and left him feeling unsafe and inadequately protected. Again, Plaintiff offers no theory or legal basis for why such a statement could be restrained or punished by this Court.

In the May 24, 2026 post, Rabbi Botach recounts an interaction he had during an international trip with his family and unrelated to this case. During this interaction, a then-unidentified third party accosted him, stating Plaintiff's counsel "is counsel to fuck you up." This

14

third party was speaking about this lawsuit; he was later identified as Eli Lipskar, the son of Plaintiff's counsel's longtime rabbi, Chaim Lipskar. This pre-existing relationship is well-established by Plaintiff's counsel's own Instagram postings and the fact that the accosting third party, Eli Lipskar, is a social media follower of Plaintiff's counsel. Plaintiff's counsel has previously posted about this case, drawing his own attention to his representation of Plaintiff and Plaintiff's legal theories. Rabbi Botach's posting does little more than recount the interaction, note the relationship, and restate his position and the procedural posture of this case. Again, Plaintiff has failed to present any legal theory or basis for restraining or punishing Rabbi Botach for these basis factual statements.

In the two identical X posts dated that same day, May 24, 2026, Rabbi Botach maintains that no such posts were made intentionally and were old drafts of prior posts. Rabbi Botach's position is uncontroverted and supported by the odd timing and content of the posts. First, it's posted it duplicate. Rabbi Botach's active social media feed is devoid of duplicate posts. Second, the posts are not accompanied by media. Rabbi Botach's posts are always accompanied by a graphic or a video; Plaintiff's selected posts attached to its Motion are indicative of this quality. Third, the posts refer to a long-dead news story, i.e. the "Epstein files." By May 24, 2026, the "Epstein files" have been buried by a war with Iran, increasing inflation and energy prices, Thomas Massie's primary loss, and the NHL and NBA playoffs among many, many other headline-grabbing news stories. Fourth, the posts' language reflects exact language used in poses several months before any discussion of sanctions or Rabbi Botach's postings entered this litigation as an auxiliary issue. Fifth, the posts are littered with typos and stray errors, unlike Rabbi Botach's

15

typical posts. And lastly, Rabbi Botach avers that he had no intent of posting these posts and has since taken them down.

Plaintiff's Motion ignores the important concepts of Rabbi Botach's First Amendment rights as they relate to this case. At no point has Plaintiff offered a substantive legal theory or basis for why any of the foregoing comments should have been restrained, should be restrained in the future, or should be punished. At no point does Plaintiff articulate *why* any posts should be considered harassing. This omission is glaring as Plaintiff's counsel submits a declaration but omits any indication that he has objectively been harassed, subjectively feels harassed, or that the Plaintiff or Plaintiff's counsel has suffered in any way.

A "party seeking civil contempt bears the initial burden of proving by clear and convincing evidence that the alleged contemnor has violated an outstanding court order." *Commodity Futures Trading Comm'n v. Wellington Precious Metals, Inc*., 950 F.2d 1525, 1529 (11th Cir. 1992). Plaintiff has not attempted to meet this burden, nor could it.

## V. Plaintiff's Motion must be denied as it has not satisfied the procedural or substantive requirements of either civil or criminal contempt proceedings.

Plaintiff's Motion claims the February 20, 2026 order of this Court was violated but spends most of its time analyzing the February 26, 2026 order regarding a surveillance video. Plaintiff cannot rely on the February 26, 2026 order as that order does not address the same conduct or theory of violative conduct. Nor can Plaintiff rely on the Court's February 20, 2026 order because that order, as applied to Rabbi Botach's out-of-court conduct, cannot be shown by clear and convincing evidence that "(1) the allegedly violated order was valid and lawful; (2) the order was

clear and unambiguous; and (3) the alleged violator had the ability to comply with the order." *Ga. Power Co.* at 1291.

  **a. Plaintiff's Motion must be denied as it has not made a *prima facie* case by clear of convincing evidence of civil contempt.**

First, as argued above, Rabbi Botach is entitled to procedural due process. This entitlement includes fair notice of what behavior is at issue and an opportunity to be heard *at the first instance*. In this case, Rabbi Botach should have been provided notice that his out-of-court conduct would be subject to this Court's scrutiny and subsequent order *before* the February 20, 2026 order. As no such notice was provided, he was not given an opportunity to be heard on the issue either through oral hearing or complete briefing. Therefore, applying the February 20, 2026 order in a manner requested by Plaintiff would render that order invalid and unlawful.

Second, the language used in the *dicta* is ambiguous. Harassment is not defined, nor can it be reasonably defined in context as the issue was not fully briefed. In addition, the language in the order refers to conduct of Rabbi Botach's former counsel that caused this Court to refer that counsel to the disciplinary committee. Lastly, the *dicta* can be read either in the conjunctive or the disjunctive, leaving open the question of if Rabbi Botach may not even reference his litigating counterparty *or* he may not reference his litigating the counterparty for the purpose of harassment. Each interpretation invokes a different level of legal scrutiny. Therefore, the *dicta* cannot be considered "clear and unambiguous."

Lastly, absent an ability to fairly understand the obligations of the *dicta* that Plaintiff posits is a binding order, Rabbi Botach cannot fairly be able to comply with the order. Rabbi Botach's May 24th post about his family's confrontation by Eli Lipskar is a prime example. No reasonable person doubts that Eli and Plaintiff's counsel are congregants in the same shul and friends for several years. This close relationship raises the specter of an inappropriate motivation for the confrontation. Rabbi Botach is entitled to note the relationship in reaction to an unwanted and involuntary attack by a person that invokes Plaintiff's counsel against him.

As a result, Plaintiff's Motion must be denied to the extent it seeks civil contempt sanctions as Plaintiff has failed to meet its burden.

**b. Plaintiff's Motion must be denied as it has not made a *prima facie* case by clear of convincing evidence of contempt or "good cause" for criminal contempt.**

First, as noted above, Plaintiff has failed to establish by clear and convincing evidence any violation of a "reasonably specific" court order.

Second, and in addition to the failures previously outline, Plaintiff has not established a "willful" violation of a court order. "In criminal contempt, willfulness means a deliberate or intended violation, as distinguished from an accidental, inadvertent, or negligent violation of an order." *United States v. Baldwin*, 770 F.2d 1550, 1558 (11th Cir. 1985). As argued above and as averred by Rabbi Botach, at no point did he intend any video or post to harass Plaintiff or Plaintiff's counsel. Specific to the duplicative May 24, 2026 posts, Rabbi Botach did not intend to post them at all; they were old drafts erroneously posted while attempting to post about his interaction with

18

Eli Lipskar. This error is belied by the abnormalities shown by the posts: 1) they are duplicative, 2) they omit any media, 3) they include typographical errors, 4) they have no bearing on Rabbi Botach's surrounding posts, and 5) they have no bearing on timely news stories.

Third, Plaintiff has not provided "good cause" for a charge of criminal contempt. "The standard for determining whether a case of out-of-court contempt should be criminally prosecuted is whether the movant for such relief, in this case Plaintiff, has established good cause to hold the adverse party in contempt." *Blanco GmbH + Co. KG v. Vlanco Indus., LLC*, No. 12-61580-CIV-LENARD/GOODMAN, 2014 U.S. Dist. LEXIS 187274, at *31 (S.D. Fla. Dec. 19, 2014), *adopted by*, *Blanco GmbH + Co. KG v. Vlanco Indus., LLC*, 2015 U.S. Dist. LEXIS 179527 (S.D. Fla., Jan. 22, 2015).

Plaintiff has failed to offer any basis for a finding of "good cause" other than the alleged violation of the Court's February 20, 2026 order. Plaintiff cannot rely on the violation itself or ask this Court to speculate or hypothesize as to "good cause," and meet its burden. *See Blanco GMBH+Co. v. Vlanco Indus., LLC*, No. 12-61580-CIV-LENARD/GOODMAN, 2022 U.S. Dist. LEXIS 9405, at *16 (S.D. Fla. Jan. 19, 2022), *adopted by Blanco Gmbh + Co. Kg*, 2022 U.S. Dist. LEXIS 28124 (S.D. Fla., Feb. 16, 2022).

As a result of these failures and omissions, Plaintiff's Motion must be denied insofar as it seeks criminal contempt.

**VI.    Plaintiff's frivolous argument regarding Defendant's insurance carrier.**

Lastly, Plaintiff argues that Defendant and his insurance carrier in this litigation, Chubb Insurance, had some nefarious intent because the word "investigator" appears on the check stub to the check Chubb issued for the sanctions award. Chubb's accounts payable department routinely assigns a description of "investigator" for miscellaneous litigation costs in which there is no specific category matching the cost, including payments relating to sanctions awarded by courts. The fact that Plaintiff attempts to use such a trivial matter to bolster its argument for sanctions underscores the weakness of its Motion.

## CONCLUSION

Based on the foregoing, Defendant respectfully requests that this Court deny Plaintiff's Motion for Sanctions.

Respectfully submitted this 12th day of June, 2026.

*/s/ John Y. Benford*
John Y. Benford, Esq.
Florida Bar No. 51950
john.benford@wilsonelser.com
alyssa.heitman@wilsonelser.com
Christopher W. Lee, Esq.
Florida Bar No. 122054
christopher.lee@wilsonelser.com
Wilson Elser Moskowitz Edelman
& Dicker LLP
111 N Orange Ave, Suite 1200
Orlando, FL 32801
Phone: 407-203-7599

*/s/ Christopher D. Cathey*
Christhoper D. Cathey, Esq.
Florida Bar No. 663255
chris.cathey@offitkurman.com
Austin M. Krtausch, Esq.
Florida Bar No. 1025521
austin.krtausch@offitkurman.com
Offit Kurman, P.A.
100 SE Third Ave, 10th Floor
Fort Lauderdale, FL 33394
Phone: 954-353-4180
Co-Counsel for Defendant

Co-Counsel for Defendant

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 12, 2026, the foregoing document was filed using the CM/ECF system for the United States District Court, Southern District of Florida, which will send electronic notice of the foregoing to all counsel of record.

*/s/ Christopher D. Cathey*
Christopher D. Cathey, Esquire