**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

FONTAINEBLEAU FLORIDA HOTEL, LLC
d/b/a FONTAINEBLEAU MIAMI BEACH,

Plaintiff,

v. Case No. 1:25-cv-20251-KMM

JACOB SHMUEL BOTACH
a/k/a "SHMULEY BOTEACH," et al.,
Defendants.
_______________________________/

**DEFENDANT JACOB SHMUEL BOTACH'S OBJECTIONS TO REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR SANCTIONS**

Defendant Rabbi Jacob Shmuel Botach respectfully objects to the Report and Recommendation ("R&R") [ECF 233] and asks the Court not to adopt it. The R&R recommends the most severe sanctions a federal court can impose: (1) striking Rabbi Botach's Answer and Affirmative Defenses; (2) entering default judgment against him as to liability; and (3) dismissing his counterclaim with prejudice, as punishment for constitutionally protected, out-of-court social-media speech.

The R&R takes an expansive view of the Court's February 20, 2026 paperless order ("February 20th Order"), transforming a litigation-conduct directive into an unconstitutional "gag order", a categorical ban on any mention of Plaintiff or its counsel, on any subject, for the duration of the case, that is not supported by the Order's text and runs afoul of the First Amendment.

The R&R uses Rule 16(f) to circumvent the regular contempt process and recommends terminating sanctions grossly disproportionate to the conduct at issue and reserved only for the most egregious litigant conduct. The R&R disclaims reliance on the Court's inherent authority and any finding of subjective bad faith, resting entirely on Rule 16(f). But case-ending

sanctions require a heightened level of culpability, and the R&R borrows the results of inherent-authority cases without making the findings those cases require.

The R&R also concedes that its recommendation is not based on any determination that Rabbi Botach's Affirmative Defenses or Counterclaim lack merit, yet recommends extinguishing those claims and defenses for speech that has not tainted a jury, impaired discovery, or interfered with the Court's ability to decide this case. Such punishment is legally unsupported and incompatible with due process, fair notice, and the strong preference for adjudication on the merits. The Court should reject the R&R or, at a minimum, reject any default as to liability, dismissal of the counterclaim, striking of defenses, contempt-like relief, or other case-dispositive sanction, particularly without an evidentiary hearing.

## I. Standard of Review

28 U.S.C. § 636(b)(1) requires the Court to review de novo those portions of the R&R to which specific objection is made. Where the recommendation supports severe sanctions, contempt-like relief, or merits-affecting consequences, de novo review is especially important because such remedies require strict adherence to clarity, notice, proportionality, and due-process limits. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991); *see also Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980). Because the R&R rests on a paper record with no evidentiary hearing, its inferences about intent, willfulness, and credibility are entitled to no deference.

## II. Relevant Procedural Background

**A. Surveillance Video Protective Order.** On April 9, 2025, the Court entered a Stipulated Protective Order [ECF 32] governing surveillance video[1] showing the disputed confrontation ("Protective Order"). On February 26, 2026, the Court entered an order (the "Feb. 26 Order") partly granting and denying Plaintiff's motion for sanctions relating to the surveillance video, declining to exclude the video, but granting attorney's fees and warning Rabbi Botach regarding future violations of the Protective Order [ECF 130]. The Court expressly declined to determine whether the footage was properly designated "Highly Confidential" or was in fact confidential [ECF 130 at 12-13]; the sanction rested solely on the principle that a party must use the Protective Order's challenge procedure rather than resort to self-help. For that technical violation of a discovery order, one not involving spoliation or destruction of evidence, the Court imposed a stipulated $15,000 fee and refused the more severe sanctions Plaintiff sought, holding that lesser sanctions were adequate to address harm and deterrence. By the time the Feb. 26 Order issued, Rabbi Botach had already removed the video, and he has complied with the Protective Order and the Court's warning to date.

**B. Trial Continuance and the February 20th Order.** On February 10, 2026, Rabbi Botach moved to continue trial, extend discovery deadlines, and for additional time to serve third-party defendants [ECF 119, 120]. On February 20, 2026, the Court denied those motions [ECF 125]. After denying the only pending motions, the Court added: "[t]he Court DIRECTS Defendant to cease such harassing conduct and social media references to Plaintiff and its counsel during the course of this litigation." The February 20th Order cites no provision of Rule 16 and identifies no enforcement mechanism.

---

[1] The Miami Beach Police produced the video, and nothing about its content (a hotel lobby) was confidential, notwithstanding Plaintiff's overreaching designation.

**C. Pending Sanctions Motion.** On May 29, 2026, Plaintiff moved for sanctions [ECF 208], seeking terminating sanctions, fees, and contempt relief based on post-February 20 social-media posts. Rabbi Botach opposed [ECF 214], arguing that the February 20th Order could not be enforced prospectively on out-of-court conduct, that Rule 16(f) was not a proper enforcement mechanism, that Plaintiff's motion was untimely, that no substantive violation occurred, and that no evidence supported inherent-authority sanctions. On June 22, 2026, Plaintiff replied, raising for the first time additional facts and new legal argument regarding Rabbi Botach's First Amendment rights [ECF 218]. On July 9, 2026, Rabbi Botach moved for leave to file a sur-reply to address the new facts and the new First Amendment argument [ECF 220], and separately moved to vacate or modify the February 20th Order [ECF 221]. The Court permitted a sur-reply limited to the new facts and prohibited Rabbi Botach from responding to Plaintiff's legal authorities [ECF 225]. Rabbi Botach filed the sur-reply on July 21, 2026 [ECF 226]. On July 29, 2026, the magistrate judge issued the R&R [ECF 233].

## III. Relevant Factual Background

This dispute arises from a December 1, 2024 encounter in the lobby of Plaintiff's hotel. Rabbi Botach, a public religious figure (America's most famous Rabbi), was seated in the lobby when another guest approached and confronted him; he contends the confrontation was hostile and included threats. What followed, his removal from the property, Plaintiff's public account of the incident, and this lawsuit, became the subject of extensive public commentary by both sides. The Parties sharply dispute what occurred, and that question is for a jury.

Throughout this litigation, serious and public accusations have been directed at Rabbi Botach's character and conduct, including that he was "loitering" and that he sought to exploit the incident for personal gain. Plaintiff and its counsel have themselves discussed this case publicly. Rabbi Botach's challenged statements were made in that reciprocal environment, as the response of a public figure, whose resources fall far short of his adversary's, to accusations

he believed were false and injurious to a reputation built over decades. That context does not excuse noncompliance with a valid order, but it bears directly on the very questions the R&R purports to resolve: whether Rabbi Botach's conduct was willful, whether it abused the judicial process, and whether the most severe sanctions are proportionate. A litigant's public defense of his own reputation, during a heated and reciprocal public dispute, is not the corruption of the adjudicative process for which case-ending sanctions are reserved.

Nor did Rabbi Botach resort to self-help. He did not declare himself free to disregard the February 20th Order. He raised his concerns about the Order's breadth, and its effect on his ability to answer public accusations, through counsel, and he ultimately moved to vacate or modify it. [ECF 221.] That is the course the law prescribes for a party who believes an order is overbroad; it is the opposite of the defiance the R&R attributes to him.

His conduct also reflects an effort to comply with the Order as he understood it. In his first post after the Order, he deliberately declined to name Plaintiff, referring only to a "world-renowned establishment." [ECF 208, Ex. 3.] In another, he stated that he would not discuss the case at all. These are not the acts of a litigant bent on defiance, but of a person attempting to honor an ambiguous directive while continuing to participate in an ongoing public dispute about his own character.

Finally, the merits remain unresolved. There is video of the encounter; there are witnesses. The R&R does not find that Rabbi Botach's affirmative defenses or counterclaim lack merit. [R&R at 45 n.5.] The terminating sanctions it recommends would end this case without a jury ever seeing that evidence, converting a dispute over out-of-court speech into a final judgment on claims the R&R itself declines to call meritless. The strong preference for deciding cases on their merits counsels firmly against that result.

**A. The Disputed Social Media Posts.** On February 26, 2026, Rabbi Botach posted a video restating his litigation position and referring to a "world-renowned establishment"

without identifying Plaintiff. *See* ECF 208 at Ex. 3. On March 10, 2026, he posted a video reiterating his perspective on Jewish safety after a third party disagreed. *Id.* at Ex. 4. On March 11, 2026, he posted a video declining to discuss the case or Plaintiff, instead reiterating a short summary of his litigation position. *Id.* at Ex. 5. On March 16, 2026, he posted a link to an unrelated news story involving Plaintiff's contested Miami Beach water-park zoning dispute. *Id.* at Ex. 6. On March 24, 2026, he posted a video discussing a Broadway play and comparing it to his position as a defendant in a case brought by a business owned by a wealthy businessman. *Id.* at Ex. 7. On March 28, 2026, he posted a video of a stranger's antisemitic verbal attack, comparing it to the incident at Plaintiff's premises. *Id.* at Ex. 9.

On May 24, 2026, Rabbi Botach posted about a May 22, 2026 verbal assault by a stranger during his family's trip to Jerusalem. *Id.* at Ex. 10. The stranger, Eli Lipskar, visibly intoxicated and aggressive, approached the Rabbi and shouted, "Sean Burstyn will fuck you up in court." *See* ECF 214-1. Eli Lipskar is the son of Rabbi Chaim Lipskar; both are close friends and synagogue members with Mr. Burstyn. *Id.*

Also on May 24, 2026, Rabbi Botach's social-media account reflected duplicative posts about Plaintiff's counsel's prior high-profile representations. *See* ECF 218 at Ex. 1. Rabbi Botach denies intentionally posting them. He and his assistant, Gavriel Bell, submitted unrebutted declarations establishing that a revised version of the post was originally made in November 2025, before the Order, and that an old draft was inadvertently reposted on May 24, 2026 along with other prior posts, caused by technical irregularities when Mr. Bell synchronized Rabbi Botach's accounts on a new cell phone. *See* ECF 214-1, 214-2.

On or about June 9, 2026, another member of Mr. Burstyn's synagogue, AJ Tabak, contacted Charles Foreman, a close friend of Rabbi Botach's, and threatened legal action unless Mr. Foreman provided Mr. Burstyn information regarding the Rabbi. *Id.* Plaintiff does not deny this in its Reply. *See* ECF 218.

**B. Rabbi Botach's Deposition Testimony.** The R&R relies on Rabbi Botach's deposition testimony, stating that he "wanted Burstyn to reexamine his actions, wanted Plaintiff to reconsider its strategy, and questioned why Plaintiff continued to pay Burstyn," and it accepts Plaintiff's interpretation that this was an admission that his social-media activity was intended to influence Plaintiff's litigation decisions and interfere with Plaintiff's relationship with its counsel. That was not his testimony. Asked why he posted about the incident, Rabbi Botach testified: "I want to hold them accountable by exposing anti-Semitism and those who seek to whitewash it, excuse it, suppress it, deny it, which endangers Jewish lives. If you don't reveal what is done to Jews, it will continue to happen. You cannot bury it." *See* ECF 155-33 at 399:17-400:4. Answering public accusations about one's own character is protected speech; it is not the abuse of process that terminating sanctions require.

## IV. Objections

### A. The R&R rests on a procedure that denied Rabbi Botach a fair opportunity to address the First Amendment after Plaintiff first raised it in Reply.

Before issuing the R&R, the magistrate judge acknowledged she would review Plaintiff's First Amendment authorities but precluded Rabbi Botach from addressing them in a sur-reply. As the order permitting a limited sur-reply stated, "[t]o the extent Defendant seeks to file additional briefing addressing Plaintiff's characterization of legal authorities, alleged misstatements of case law, or Plaintiff's reliance on out-of-district decisions, the Court finds such briefing unnecessary." The order further provided that the sur-reply "shall not exceed five (5) pages and **shall not reargue legal issues previously briefed or address Plaintiff's legal authorities**, except to the extent necessary to respond directly to arguments related to the newly submitted factual material" (emphasis added).

Plaintiff did not raise First Amendment compliance in its Motion, so Rabbi Botach had not "previously briefed" that issue; he had merely noted that neither Plaintiff nor the Court had

addressed the First Amendment before the February 20th Order or in the Motion. By injecting the argument in Reply and then obtaining an order barring Rabbi Botach from "address[ing] Plaintiff's legal authorities," the process left him functionally unable to rebut Plaintiff's new legal argument or offer contrary authority, a denial of due process. *See Yaffa v. Weidner*, 717 F. App'x 878, 883-84 (11th Cir. 2017) (a court's discretion to sanction is "subject to 'the most fundamental safeguard of fairness,' due process"). Because this Court reviews de novo, it can and should reach the First Amendment merits (Objection D); but the procedure that produced the R&R was not a full and fair opportunity to be heard, and Rabbi Botach objects on that basis. *See* R&R at 17:12-14.

**B. The R&R erroneously relies on Rule 16 for an order not issued under Rule 16.**

Rabbi Botach objects to the R&R's reliance on Rule 16. *See* R&R at 6:3-5; 19:4-22:2; 24:18-23; 29:4-9; 29:11-34:11. Rule 16(f)(1) authorizes sanctions where a party fails to appear at or participate in a pretrial conference, or "fails to obey a scheduling or other pretrial order." Read in pari materia, and under *noscitur a sociis* and *ejusdem generis*, "other pretrial order" takes its meaning from its neighbors: orders of the same case-management character that structure trial preparation, not a sua sponte restriction on a litigant's extrajudicial speech appended to an order denying a continuance. *See Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006); *Marx v. Gen. Revenue Corp.*, 568 U.S. 371 (2013) (interpretation giving effect to every clause preferred).

The authorities the R&R cites confirm this limit. In *Goforth v. Owens*, 766 F.2d 1533 (11th Cir. 1985), the sanctionable failures were a party's failure to file a required pretrial statement and to attend a pretrial conference, classic Rule 16 obligations. *United States v. Samaniego*, 345 F.3d 1280 (11th Cir. 2003), involved a late-filed pretrial statement required

by a Rule 16 order. And in *Giovanno v. Fabec*, 804 F.3d 1361 (11th Cir. 2015), the order at issue was an explicit Rule 16 command:

> The court **ordered** Fabec to appear at the **pretrial conference** and **expressly warned that his failure to appear would result in an entry of a default judgment** . . . . Under those circumstances, the district court acted well within its discretion in concluding that Fabec's noncompliance with the court's **pretrial instructions** justified the entry of a default judgment.

*Id.* at 1365-66. Each case involved an order issued under Rule 16 and a violation of an explicit Rule 16 requirement; none supports extending Rule 16(f) to a stand-alone speech restriction. The R&R's shift from "pretrial order" to "directive" is unsupported by the rule or its interpretive law; if Rule 16 were so broad, it would say so.

Rule 16(f) also may not be used as a due process "workaround." *See Yaffa*, 717 F. App'x at 883-84. In *Weidner*, due process was satisfied only because "the district court issued a written order to show cause why sanctions should not be imposed, heard argument on the show-cause order, warned the parties that further noncompliance with court orders would result in sanctions, and gave Weidner several more chances to explain herself at trial." *Id.* at 884. None of those steps occurred here: Rabbi Botach received no warning or hearing on the conduct at issue, was precluded from briefing his First Amendment arguments, and faced an R&R that relied on unrelated orders to manufacture "repeated" violations. No show-cause order issued as to his out-of-court conduct (though the Court issued one in the February 20th Order regarding service), and no evidentiary hearing occurred.

Nor can the R&R bootstrap its result from the Court's protective order ruling. *See Fontainebleau Fla. Hotel, LLC v. Jacob*, No. 25-CV-20251, 2026 WL 548040 (S.D. Fla.

Feb. 27, 2026).[2] That order deemed the Protective Order a Rule 16 "pretrial order," but that is not the definition in Rule 16(d), and it is not the language of the April 9, 2025 order, which invokes Rule 26(c)(1)(G) as its authority *and Rule 37 as its specified enforcement mechanism*. The ruling likewise conceded that no Eleventh Circuit or district authority holds Rule 16(f) reaches a Rule 26(c) protective order, and that the question "remains an open one" [ECF 130 at 8], filling the gap only by analogy to the out-of-circuit decision in *Huebner v. Midland Credit Mgmt.*, 897 F.3d 42 (2d Cir. 2018), which involved a discovery-procedure violation, not extrajudicial speech.

Courts apply the "traditional tools of statutory construction" to the federal rules. When interpreting a rule, words must be read not in isolation but with an eye to the "purpose and context of the statute," *Dolan*, 546 U.S. at 486, giving effect to every clause, *Marx*, 568 U.S. 371. The R&R isolates "pretrial" from the balance of Rule 16 and its defining subsections, contrary to those canons and to the cases the R&R itself cites. This would be the first case using

[2] Rabbi Botach opposed the Court's use of Rule 16 as to the Protective Order as well. The Court's reliance on *Valdez-Castillo v. Busch Entm't Corp.*, No. 06-20772-CIV, 2008 U.S. Dist. LEXIS 110818 (S.D. Fla. Nov. 20, 2008), ignored that this Protective Order expressly incorporates Rule 37 as its enforcement mechanism, leaving no "gap" and distinguishing *Valdez-Castillo*. And *Huebner* applied Rule 16 to a pretrial-conference/discovery-procedure violation; it did not analyze Rule 16's "pretrial order" language as applied to protective orders and has not been cited favorably in this Circuit. *Compare Puck v. Silverman*, No. 1:22-cv-24078-KMM, 2024 U.S. Dist. LEXIS 57664, at *11 (S.D. Fla. Mar. 29, 2024) (applying Rule 16 to an order rendered pursuant to Rule 16) *with Puck v. Silverman*, No. 1:22-cv-24078-KMM, 2023 U.S. Dist. LEXIS 200833, at *22 (S.D. Fla. Nov. 7, 2023) (citing *Huebner*).

Rule 16 to enforce a prior restraint on speech. *See Alexander v. United States*, 509 U.S. 544 (1993) (injunctions forbidding speech are "classic examples of prior restraints"); *Constand v. Cosby*, 229 F.R.D. 472, 473 (E.D. Pa. 2005) (rejecting Rule 16 as a basis to enforce a gag order). Because the R&R rests entirely on Rule 16, it must be rejected.[3]

### C. The R&R erroneously counts unrelated orders as prior "violations" to justify severe sanctions where lesser sanctions produced compliance.

The R&R spends pages 3-6 rehashing the surveillance-video Protective Order and returns to it (at 30:6-10 and 42:9-43:3) to characterize the posts as willful violations warranting severe sanctions. Neither the Protective Order nor its subject matter is at issue in the Motion or the February 20th Order. As the R&R admits, Rabbi Botach was sanctioned in February 2026 with fees and a warning as to "the Protective Order," and he has complied since without issue.[4] That history proves the opposite of what the R&R draws from it: on this defendant, a warning or a fee award reliably produces compliance. Rabbi Botach further objects to the R&R's continued conflation of pre-February 20 social-media conduct with the conduct actually at issue. *See* R&R at 3-6 and *passim*.

### D. The R&R erroneously construes the February 20th Order as a blanket ban on any "social media reference" to Plaintiff or its counsel.

The R&R reads the February 20th Order to impose independent prohibitions on "harassing conduct" and on any "social media references," regardless of nature. *See* R&R at

---

[3] *See* R&R at 46:20-22 ("Because Defendant's conduct satisfies the predicates for sanctions under Rule 16(f), the undersigned does not find it necessary to invoke Court's inherent authority or initiate separate contempt proceedings at this time.").

[4] In the many posts Rabbi Botach has made since the Protective Order and the Feb. 26 Order, none has violated either order.

32:18-34:11. Rabbi Botach objects to that construction and to each per-post violation finding. *See id.* at 34:12-41:8.

The operative sentence directs Rabbi Botach to "cease such harassing conduct and social media references to Plaintiff and its counsel during the course of this litigation." The word "such" links the command to the conduct the Court had just described one sentence earlier, Rabbi Botach's "social media attacks." "Such … social media references" therefore means references of that character: attacks. Independently, the single premodifier "harassing," preceding the coordinate nouns "conduct" and "social media references," presumptively modifies both. Either way, the Order reaches *harassing* references, not every mention of Plaintiff on any subject or in any tone. That reading is confirmed by the parties' pre-Order briefing, which put "malicious social-media behavior", not mere references, at issue. *See* ECF 123 at 13:12; ECF 123-4. Had the Court meant to bar all references, it would have said so.

The breadth of the R&R's reading is its own refutation. On that construction, even an incidental or historical reference would violate the Order, a video that merely shows the hotel in the background while Rabbi Botach discusses an unrelated subject, or a post observing that Napoleon abdicated at Fontainebleau in 1814. The R&R's treatment of the March 16 water-park post proves the point: Plaintiff **withdrew** any reliance on that post, yet the R&R found a violation anyway. A construction that sweeps in speech even the movant concedes is not sanctionable cannot be correct.

An order supporting sanctions must be "clear and definite," and ambiguity is construed against the party seeking sanctions and defeats the severe-sanctions theory. *See Georgia Power Co. v. NLRB*, 484 F.3d 1288, 1291 (11th Cir. 2007). At a minimum, the Order is reasonably read to reach only harassing references, and that suffices to defeat the R&R's construction. So construed, the Order also avoids the serious First Amendment problems that would attend a categorical speech ban: a restraint on a litigant's extrajudicial speech is a disfavored prior

restraint requiring particularized findings and consideration of narrower alternatives, *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976); *Gentile v. State Bar of Nev.*, 501 U.S. 1030 (1991); *United States v. Brown*, 218 F.3d 415, 424 (5th Cir. 2000); *United States v. Noriega*, 917 F.2d 1543, 1549 (11th Cir. 1990), none of which the sua sponte, paperless February 20th Order made. The constitutional-avoidance canon thus requires the narrow reading; the R&R adopted the opposite and never addressed the First Amendment at all.[5]

The R&R also fails to find that any post was "harassing." *See* R&R Sec. III(B)(1) ("[t]he February 26 publication plainly referenced Plaintiff and therefore violated the February 20 Order."); Sec. III(B)(2) (March 10 video "expressly and visually referred to Plaintiff"); Sec. III(B)(3) (generalized discussion of the case); Sec. III(B)(4) (a post Plaintiff **withdrew**, about an unrelated real-estate project[6]); Sec. III(B)(5) ("content referring to Plaintiff"); Sec. III(B)(6) (Defendant "continued making social-media references"). Section III(B)(7) improperly combines two distinct same-day posts: the first quotes a third party's reference to counsel, a mere reference the Order does not reach, and the second is the inadvertent duplicate draft addressed above. Section III(B)(8) imputes intentionality from post timing without record support, again treating a bare "reference" as a violation. Section III(B)(9) treats posts publicizing reports of counsel's contacts with a potential witness as violations of a directive "to stop making any references to Plaintiff's counsel," though Rabbi Botach's declarations

---

[5] Botach incorporates the arguments raised in his Motion to Vacate, ECF 221, as to the constitutionality of the February 20th Order.

[6] Plaintiff's withdrawal of this post underscores the impermissible breadth of the R&R's construction, which would reach ordinary participation in matters of public concern.

remain unrebutted. Each finding rests on the erroneous "any reference" construction and is objected to.

**E. The R&R erroneously found the violations "willful."**

Rabbi Botach objects to the willfulness finding. *See* R&R at 41:18-43:8. First, willfulness cannot rest on an order whose scope is genuinely disputed; for the reasons in Objection D, a good-faith understanding that non-harassing commentary was permitted is not willful defiance. Second, the finding cannot rest on the May 24 duplicate post, because the R&R never actually finds it was published intentionally, it neither credits nor rejects the unrebutted declarations, and Plaintiff offered no contrary evidence to rebut the hallmarks of an inadvertent draft (numerous errors; posted only to X, unlike Rabbi Botach's ordinary cross-posting practice). *See* R&R at 17:18-21. Third, the finding cannot rest on unrelated prior orders: Rabbi Botach complied with each after clear, conduct-specific warnings, and the language of those orders is limited to their own subjects, not court orders generally. Past admonitions have no bearing on the *factual* question whether a particular post was published intentionally.

**F. The recommended sanctions are grossly disproportionate; lesser sanctions are available and have already secured compliance.**

Rabbi Botach objects to the R&R's reliance on unrelated prior orders and admonitions as notice of severe sanctions, and to its conclusions that lesser sanctions are unavailable and that terminating relief and fees are warranted. *See* R&R at 43:9-45; 46:1-15. Sanctions must bear a reasonable relationship to the conduct and the harm shown. *Serra Chevrolet, Inc. v. Gen. Motors Corp.*, 446 F.3d 1137, 1151 (11th Cir. 2006). Default, dismissal, and striking of defenses are among the harshest sanctions a court can impose and are last resorts. *Chambers*, 501 U.S. 32. Several independent defects require their rejection.

*Lesser sanctions have already worked and remain available.* Each prior order was limited by its terms to the conduct then before the Court, and each produced compliance. The

February 10 order addressed only deposition attendance, cautioning that "sanctions, potentially including the striking of Defendant's pleadings, will be issued if this trend continues" [ECF 121]; Rabbi Botach was deposed shortly thereafter and the trend ceased. The February 26 sanctions order was expressly cabined to the Protective Order, warning only that "[s]hould Defendant again publicly disseminate materials designated under the Protective Order without first obtaining relief from this Court in the form of a de-designation," the Court would consider Rule 37(b)(2)(A) sanctions [ECF 130 at 15]; Rabbi Botach has not since violated the Protective Order.

Neither order warned that references to this case would draw terminating sanctions, and the February 20th Order cannot supply notice of the consequences of its own violation. The record thus shows the opposite of futility. And narrower measures were never tried: a directive to remove specifically identified posts under a proper construction; a fee award tied to proven violations (the measure that produced compliance before); a show-cause order addressed to the out-of-court conduct; or, as to any contested post, a coercive civil fine after proper civil-contempt proceedings. The R&R escalated without explaining why any of these would fail. *See Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1542 (11th Cir. 1993).

*The R&R borrows inherent-authority cases while disclaiming that authority.* The R&R invokes *Chambers* and *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298 (11th Cir. 2009), to justify the severity of terminating relief. But those cases rest on the Court's inherent authority and require explicit findings of subjective bad faith and pervasive misconduct directed at the merits and at the Court's ability to adjudicate, findings the R&R expressly declined to make, resting solely on Rule 16(f). *See* R&R at 20, 46. The R&R cannot disclaim a theory and simultaneously claim its results. *Malautea* itself illustrates the process due before terminating relief: three orders on the same subject, two express warnings of striking pleadings, and a two-hour evidentiary hearing. 987 F.2d at 1542. None of that occurred here.

*No fair notice; no hearing.* Severe sanctions require fair notice and an opportunity to be heard. *Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980). The February 20th Order neither warned that disputed later references would result in default, dismissal, or striking, nor defined the prohibited conduct in the expansive manner the R&R adopted; vague speech restrictions are especially prone to overbroad enforcement, *Gentile*, 501 U.S. 1030. Compounding the problem, the R&R recommends case-ending relief on a paper record, resting on contested inferences of intent and credibility, including the duplicate-post issue on which Rabbi Botach submitted unrebutted evidence. Due process in contempt-related matters requires a real opportunity to defend. *Cooke v. United States*, 267 U.S. 517 (1925).

*The insurance inference cannot bear its weight.* That an insurer paid the earlier, stipulated $15,000 fee does not show that monetary sanctions lack deterrent effect or that only default-level relief can secure compliance. The record contains no coverage determination, no reservation of rights, and no indication the policy is eroding, and Rabbi Botach complied with the Protective Order after that sanction. Who paid a prior sanction says nothing about whether a future fee award or a targeted removal directive would secure compliance with the February 20th Order.[7]

## V. Conclusion

For the foregoing reasons, Rabbi Botach respectfully requests that the Court sustain these objections, decline to adopt the R&R, and deny Plaintiff's Motion for Sanctions in its entirety; or, in the alternative, reject every dispositive and quasi-dispositive sanction (striking,

---

[7] The record is devoid of any basis to conclude that the identity of a past payor bears on compliance, particularly where Rabbi Botach has maintained compliance with the Feb. 26 Order.

default, and dismissal) and remand for an evidentiary hearing; or, in the further alternative, limit any sanction to a narrowly tailored fee award tied to specifically identified, proven violations of the February 20th Order under its proper, narrow construction.

Respectfully submitted,

/s/ Christopher D. Cathey
Christopher Donald Cathey
Florida Bar No.: 663255
chris.cathey@offitkurman.com
Austin M. Krtausch
Florida Bar No. 1025521
Austin.krtausch@offitkurman.com
OFFIT KURMAN, P.A.
100 SE Third Ave, 10th Floor
Fort Lauderdale, FL 33394
T: 954-353-4180
F: 754-331-2465

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 12, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will serve a copy on all counsel of record.

*/s/ Christopher D. Cathey*
Christopher D. Cathey