IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA MIAMI DIVISION

FONTAINEBLEAU FLORIDA HOTEL, LLC
d/b/a FONTAINEBLEAU MIAMI BEACH,
*a foreign limited liability company*,

CASE NO. 1:25-cv-20251-KMM

Plaintiff,

v.

JACOB SHMUEL BOTACH a/k/a
"SHMULEY BOTEACH," *an individual*,
and John Does 1-10,

Defendants.
_____________________________________/

**PLAINTIFF FONTAINEBLEAU FLORIDA HOTEL, LLC'S RESPONSE TO BOTACH'S OBJECTIONS TO THE JULY 29 REPORT AND RECOMMENDATION**

**BURSTYN LAW PLLC**

Sean A. Burstyn, Esq.
Florida Bar No. 1028778
sean.burstyn@burstynlaw.com
1101 Brickell Avenue, Suite S700
Miami, FL 33131
Tel: (305) 204-9808

*Counsel for Plaintiff*
*Fontainebleau Florida Hotel, LLC*

Plaintiff, Fontainebleau Florida Hotel, LLC, responds to Botach's Objections to Report and Recommendation on Plaintiff's Motion for Sanctions (the "Objections"). (ECF No. 239.)

## INTRODUCTION

This Court should adopt the July 29 Report and Recommendation ("R&R") and overrule Botach's Objections in their entirety because they are meritless.

To the extent this Court gives any credence to Botach's Objections, which argue that the R&R improperly entered sanctions pursuant to Rule 16, rather than under the Court's inherent authority, this concern can be easily resolved by adopting the R&R and, in addition, stating that this Court also enters the recommended sanctions on the basis of its inherent authority because Botach has acted in bad faith. As discussed further below, the R&R—extraordinary in its detail and analysis—lays out ample groundwork for the sanctions it recommends.

Botach's bad faith, his hostility toward the truth, and his disregard for this Court are illustrated by the following. In a post publicizing security measures at the synagogue housing the preschool that counsel's children attend, Botach described "an individual who allegedly acts as a kind of self-appointed security figure while carrying what multiple correspondents described as an AR-15-style rifle in a backpack around synagogue premises." (ECF No. 291-7.) When Plaintiff identified that post as a violation of the February 20 Order, Botach argued to this Court that "the posts do not concern this case, Plaintiff, or Plaintiff's counsel and therefore cannot constitute violations of the February 20 Order." (R&R, ECF No. 233 at 18 (citing ECF No. 226 at 4).) He did not believe that argument when he made it. The undersigned received a letter written by Botach in which he stated that he is aware of an "allegation" that the individual described in ECF No. 291-7 is the undersigned. Without dignifying the substance of Botach's harassment, the pattern is what matters: this is the second time he has been caught violating an order of this Court only to offer an

excuse this Court found "not credible." (ECF No. 130 at 12.) Just as he previously lied about deleting posts while they remained online, there is nothing Botach will not say or do to break the rules and evade the consequences.

Throughout this litigation, Botach has brazenly defied this Court's authority. In October 2025, this Court granted Plaintiff's motion to compel and referred Botach's counsel to the Court's Disciplinary Committee. (ECF No. 85.) In February 2026, this Court stated it was "deeply disturbed" by Botach's reliance on fabricated medical excuses to cancel his deposition at the last minute. (ECF No. 121.) This Court warned "Defendant that sanctions, potentially including the striking of Defendant's pleadings, will be issued if this trend continues." *Id*. Later, this Court denied Botach's motion to extend certain pretrial deadlines, finding that Defendant had been represented by counsel at all times, but failed to even begin conducting any discovery, ignoring Magistrate Judge Elfenbein, who "repeatedly cautioned Defendant that he should begin pursuing discovery" to progress the case. (ECF No. 125.) Separately, this Court sanctioned Defendant, taking "this opportunity to admonish Defendant in the clearest terms. The Protective Order is an Order of this Court. It is not optional." (ECF No. 130.) The Court warned Botach "that this Court will not hesitate to impose any of these sanctions if the circumstances warrant them." *Id*. Then the Court ordered Botach to stop harassing Plaintiff and its counsel with toxic online communications.

The Court has been clear, this Court has been patient, and this Court properly restrained itself to the least restrictive measures to coerce Botach's compliance to the dignities afforded under this process. Beginning with expressions of disdain, followed by warnings of more severe consequences, and later awarding monetary sanctions, this Court's approach is unassailable. *This Court even went out of its way to advise Botach that following Court orders is not optional*.

And that wasn't enough. Just as clear as this Court has been, so too has Botach. He has made it clear that he has no regard for this Court, Court Orders, or this process. Accordingly, this Court should (A) adopt the R&R and (B) independently exercise its inherent authority as an additional basis for the same sanctions.

## STANDARD OF REVIEW

Rule 72(b)(3) provides, "*Resolving Objections.* The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."

## ARGUMENT

### I. Botach's proposal for a narrower reading of the February 20 Order is immaterial, because his conduct violated even the narrowest reading of the order.

Botach's Objections suggest that the February 20 Order can be read more narrowly and in a manner accomplishing 'constitutional avoidance' by restricting its prohibition only to harassing posts. But the Court accepting that reading doesn't change the outcome for a litigant who posted attacks on a preschool, cropped post mortem photographs, harangued counsel as a "scumbag," and called for him to go to jail instead of working on the case. In Botach's words:

> At a minimum, the Order is reasonably read to reach only harassing references, and that suffices to defeat the R&R's construction. So construed, the Order also avoids the serious First Amendment problems that would attend a categorical speech ban: a restraint on a litigant's extrajudicial speech is a disfavored prior restraint requiring particularized findings and consideration of narrower alternatives . . . none of which the sua sponte, paperless February 20th Order made. The constitutional-avoidance canon thus requires the narrow reading; the R&R adopted the opposite and never addressed the First Amendment at all.

*See* ECF No. 239 at 12-13 (citations omitted). The problem for Botach is that his ultimate objective is not to "defeat the R&R's construction," but to beat the obvious conclusion that he needs to be

sanctioned. And on both tasks, but most certainly the latter more important task, he has abjectly failed.

This Court can adopt and accept the R&R by adopting Botach's narrower construction of the February 20 Order, as only prohibiting harassment, and still uphold its core sanctions recommendations. If the Magistrate Judge did not serially list every post and use the adjective "harassing," that is only because Her Honor didn't have to. The conduct speaks for itself. And to Botach's credit, he never goes so far as to claim his toxic behavior is not in fact harassing.

Botach's citation to *Georgia Power* doesn't change the result, because even under the narrower reading of the February 20 Order, by Botach's own admission, the Court can prohibit harassment. Consequently, the R&R should be adopted and accepted, consistent because it found violations based on harassment.

## II. Defendant's Objections are meritless.

Defendant Botach asserts six meritless objections to the R&R. As set forth below, the Court should overrule Botach's objections.

### A. Botach was not deprived of due process when the Magistrate Judge granted him leave to file a sur-reply.

Botach argues that the Order granting him leave to file a sur-reply "left him functionally unable to rebut Plaintiff's new legal argument or offer contrary authority, a denial of due process." ECF No. 239 at 8. Defendant's argument is expressly contradicted by the Order granting him leave to file a sur-reply. (ECF No. 225). The Court did not preclude Defendant from rebutting new legal arguments or offer contrary authority. Instead, the express terms of the subject Order provide that Defendant may file a sur-reply "addressing the new factual materials and evidence submitted with Plaintiff's Reply and supplemental declaration" and expressly permitted Plaintiff to argue legal

issues or authorities "to the extent necessary to respond directly to arguments related to the newly submitted factual material." *Id*.

Defendant's objection is also meritless because Defendant does not identify or describe the arguments or authorities he would have raised or how those would have impacted the Court's analysis. He argues that he was "precluded from briefing his First Amendment arguments." (Objections at 8, 9.) This is nonsense. The Hotel detailed the applicable standard for, *inter alia*, civil contempt and Rule 16 sanctions, which require a lawful order. (ECF No. 208.) Botach then had every opportunity, if not obligation, to present his First Amendment arguments in his Response in Opposition. He just chose not to except in passing. For example, he never presented caselaw to the Magistrate Judge concerning the outlines of prior constraint, but he discussed them in his Objections. (Objections at 13.) Even though, as discussed *supra*, the Court need not consider this new argument, it changes nothing; Botach does not explain in his Objections that there are far stricter standards for restraining the conduct of third parties to the litigation (the concern of his cited cases) than there are for restraining the conduct of litigants in a case. But he did not raise these arguments, so instead, he passes blame upon others for his own conduct and his own failures.

Now, Botach mischaracterizes his testimony regarding the reason for harassing Plaintiff and its counsel online. He claims it is to expose anti-semitism. However, this is a red herring. Despite Botach's conclusory denial that this "was not his testimony" - the record reflects otherwise. He testified that he wanted Plaintiff's counsel to reexamine his actions, wanted Plaintiff to reconsider its strategy, and questioned why Plaintiff continued to pay Burstyn. See ECF No. [155-33] at 398:15–22. He offers no other reasonable interpretation of his testimony that rebuts his stated intent. His argument that he is exposing anti-semitism is not supported by the record.

Botach similarly has never once asked this Court or the Magistrate Judge for a hearing, or even oral argument, in his sanctions-related briefing. *See* Local Rule 7.1(b)(2). He cannot now claim the R&R is flawed in the absence of a hearing when he never requested one from the Magistrate Judge. In any case, not "every order entered without notice and a preliminary adversary hearing offends due process. The adequacy of notice and hearing respecting proceedings that may affect a party's rights turns, to a considerable extent, on the knowledge which the circumstances show such party may be taken to have of the consequences of his own conduct." *Link v. Wabash R. Co.*, 370 U.S. 626, 632 (1962). On this point, the reasonable resolution is to hold contempt hearings, which, while warranted, may be unnecessary if the Court finds sanctions warranted under Rule 16 and inherent authority.

As the saying goes, no good deed goes unpunished. This Court should reject Defendant's argument that, when the Court exercised its discretion to grant Defendant the right to file a sur-reply, the Court somehow caused him harm.

**B. Botach himself invoked Rule 16 in the Motion underlying the February 20 Order, which is a pretrial order enforceable through Rule 16.**

Next, Botach argues that the R&R improperly relied on Rule 16 because the February 20 Order was "not issued under Rule 16." ECF No. 239 at 8.

Defendant acknowledges, "Rule 16(f)(1) authorizes sanctions where a party fails to appear at or participate in a pretrial conference, or 'fails to obey a scheduling or other pretrial order.'" *Id.* at 8. And here, the February 20 Order begins, "THIS CAUSE came before the Court upon Defendant's **Motion to Amend Scheduling Order and to Continue Trial** ('Continuance Motion') [119] and Defendant's Motion for an Extension of Time to Serve Third-Party Defendants Soffer and Akbar ('Extension Motion') [120]." (ECF No. 125) (emphasis added).

Botach's argument completely ignores that the February 20 Order addressed two significant scheduling and pretrial matters: (1) modifying the pretrial scheduling order, and (2) extending the pretrial deadline to effectuate service, both of which sought to amend a "scheduling or other pretrial order."

In fact, Botach's Motion to Amend Scheduling Order and to Continue Trial begins, Defendant "respectfully **moves this Court pursuant to Fed. R. Civ. P. 16(b)(4)[1] to amend the scheduling order**, reopen discovery, and continue trial to take necessary and targeted discovery on his Counterclaim." ECF No. 119 at 1 (emphasis added). The February 20 Order then analyzed and denied Botach's Continuance Motion and Extension Motion, maintaining the schedule and pretrial order. At the conclusion of that February 20 Order, the Court added the directive to Defendant to cease harassing Plaintiff and its counsel. In *Samandarova v. Hookah Exotix LLC*, 2023 WL 346659 at *2 (S.D. Fla. Jan. 20, 2023), this Court entered default against a defendant who, as here, failed to comply with subsequent orders referring to the initial scheduling order.

Here, the February 20 Order was a scheduling or other pretrial order because it concerned the initial scheduling order. The February 20 Order is the product of Defendant's own motion seeking modification of the scheduling order pursuant to Rule 16. And Defendant's argument ignores the content of the February 20 Order, which addressed a request to modify deadlines in the scheduling order. His argument that the February 20 Order is a "stand-alone speech restriction" is plainly wrong and grossly mischaracterizes the subject Order. ECF No. 239 at 9 ("Each case involved an order issued under Rule 16 and a violation of an explicit Rule 16 requirement; none supports extending Rule 16(f) to a stand-alone speech restriction.").

---

[1] Rule 16(b)(4) provides, "Modifying a Schedule. A **schedule** may be modified only for good cause and with the judge's consent."

To the extent Botach attempts to supplement his Rule 16 argument in a manner never presented to the Magistrate Judge, by making new statutory-interpretation arguments, citing new caselaw, and, for the first time, criticizing the Magistrate Judge's earlier Order concerning Rule 16, the Court should decline to entertain it. "To allow [a party] to inject a new argument at this stage in the litigation, when there is no demonstrable reason that this argument was not raised before [the] Magistrate Judge [], would undermine the very purpose of the magistrate judge system." *Maale v. Kirchgessner*, 2011 WL 1458147 at *2 (S.D. Fla. 2011).

Further, Botach's cite to *Constand v. Cosby*, 229 F.R.D. 472, 476 (E.D. Pa. 2005), changes nothing. In *Cosby*, the court did not find Rule 16 inapplicable to a gag order; instead, the court found that the lawyers' conduct did not arise to a material interference with the litigation. Then, on the basis that lawyers are governed by rules of professional conduct, and subject to sanctions for violations thereof, it entered a case-management order under Rule 3.6 of the Pennsylvania Rules of Professional Conduct and warned that any violations of those rules would be punished under Rule 16. That reasoning is inapplicable to Botach, a nonlawyer.

Contrary to the Objections, the February 20 Order is an order of the "case-management character that structure[s] trial preparation." (*Cf.* ECF No. 239 at 8.) Specifically, the February 20 Order was entered on an entirely unrebutted claim in Plaintiff's Response to the motion at bar that Botach was on a course to derail pretrial preparations by forcing Plaintiff to "buckle." (ECF No. 123.) In sum, the February 20 Order is a "scheduling or other pretrial order" subject to the Court's oversight under Rule 16(f). *See Samandarova*, *ante*.

**C. Botach's pattern of defiance is exactly what Rule 16(f) directs courts to weigh.**

Next, Botach objects to the R&R's reference to Defendant's prior violation of the Protective Order on pages 3-6 of the R&R. This objection is unsupported by applicable law. Under

Rule 16(f), "district courts have discretion to decide **if there is a pattern of delay or a deliberate refusal to comply with court orders** or directions that justifies a sanction." *Samandarova v. Hookah Exotix LLC*, 2023 WL 346659, at *2 (S.D. Fla. Jan. 20, 2023) (quoting *U.S. v. Samaniego*, 345 F.3d 1280, 1284 (11th Cir. 2003)) (emphasis added). *See also Castillo v. Colmenares*, 2025 WL 2531825, at *2 (S.D. Fla. Sept. 3, 2025) (dismissal warranted "where a party engages in **a pattern of willful delay and deliberate refusal to comply with the directions of the court**.") (citing *Goforth v. Owens,* 766 F.2d 1533, 1535 (11th Cir.1985)) (emphasis added); *Samaniego*, 345 F.3d at 1284 ("Rule 16(f) sanctions were 'designed to punish lawyers and parties for conduct which unreasonably delays or otherwise interferes with the expeditious management of trial preparation.'") (quoting *Goforth,* 766 F.2d at 1535).

Botach's conduct here, despite his claims of innocence, has impaired the Court's management of this case, stalled discovery as he weaseled out of multiple deposition dates, and forced the pending mention to reopen discovery (ECF No. 207) that is the result of his nonresponsive monologues during his deposition.

In *Martins v. Royal Caribbean Cruises, Ltd.*, 429 F. Supp. 3d 1315, 1325 (S.D. Fla. 2019), this Court held that a litigant's history of violating multiple Court orders was grounds for case-dispositive relief: "Given Plaintiff's pattern of violating court orders, a with-prejudice dismissal is amply warranted." In *Martins*, the Court analyzed the plaintiff's violation of multiple Court orders in addition to the pretrial scheduling order. *Id*. at 1321 ("As reflected above, in addition to failing to proceed with the previously-scheduled trial, Plaintiff has violated numerous court orders in the weeks leading up to the December 18, 2018 trial[.]")

Accordingly, Defendant's objection is meritless. The Magistrate Judge properly reviewed Botach's prior misconduct for a pattern of delay or deliberate refusal to comply with Court orders.

A constraint on the scope of the Magistrate Judge's review of the docket is both unsupported by Defendant's authorities and defies case law directing the Court to determine whether a party has engaged in a pattern of delay or deliberate refusal to abide by the Court's directives. Botach's objection should be overruled.

**D. No interpretation of the February 20 Order permitted Botach's attacks.**

Next, Botach objects to the R&R for failing to "impose independent prohibitions on 'harassing conduct' and on any 'social media references,' regardless of nature." ECF No. 239 at 11. Defendant's objection misses the fundamental point of whether Defendant violated the February 20 Order. As the R&R correctly notes, a "party's disagreement with an order does not excuse noncompliance. Unless and until the order is modified, stayed, vacated, or reversed, the party must obey it." ECF No. 233 at 21-22 (citing *Maness v. Meyers*, 419 U.S. 449, 459 (1975) ("[A]n order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings.")). Defendant was not entitled to "adopt self-help and unilaterally decide that a judicial direction is invalid, unnecessary, or inapplicable." *Id*. at 22 (citing *Maness*, 419 U.S. at 458-59). In *Maness*, the Supreme Court wrote:

> We begin with the basic proposition that all orders and judgments of courts must be complied with promptly. If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal. Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect . . . The orderly and expeditious administration of justice by the courts requires that 'an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings.'

*Maness*, 419 U.S. at 458–59 (citations omitted).

Moreover, as detailed in Plaintiff's Response in Opposition to Defendant's Motion to Vacate the February 20 Order, Defendant acknowledged his obligation to contest the validity and

lawfulness of the February 20 Order in his response to Plaintiff's Motion for Sanctions. (ECF No. 232 at 8-10.) Yet, Defendant failed to object to the validity of the February 20 Order. (*See generally* ECF No. 214.) Regardless, Plaintiff has provided extensive briefing on the propriety of the February 20 Order. (ECF No. 232 at 10-20). Plaintiff incorporates those arguments here.

Regardless, Botach tells this Court in the Objections that the "R&R also fails to find that any post was 'harassing.'" (Objections at 13.) This is—for the umpteenth time in this litigation—totally false. The R&R ruled that the May 24 posts, at a minimum, violated the February 20 Order's prohibition on harassing conduct. (ECF No. 233 at 39.) This argument also does not prevent this Court from finding that Botach's conduct is harassing; notably, the Objections spend no time trying to argue that none of what Botach has done constitutes harassment.

In that regard, Botach's argument misses the forest for the trees. Botach's interpretive fight sits entirely at the outer limits of the February 20 Order, but that approach fails because his misconduct falls at the dead center of the narrower reading that even he urges this Court to adopt. Thus, the Defendant pleads for only harassing posts to be regulated, but that makes no difference to the R&R's outcome because his posts are harassing. So even if he defeats "the R&R's construction" (ECF No. 239 at 12), he doesn't defeat the Motion for Sanctions and/or the recommended sanctions, which stand under his preferred narrowed reading of the Order. The question is whether he violated the Order, not who's right on the outer limits of an Order that on its narrowest reading unquestionably prohibits the conduct under review.

Notwithstanding the foregoing, Defendant's objection to the February 20 Order misses the point. He violated the February 20 Order before seeking to and obtaining an order vacating or modifying the February 20 Order.

### E. The R&R properly found the violations "willful."

In painstaking detail, the R&R also discusses nine separate, repeated and willful violations of the Court's February 20 Order. *Id.* at 34-41. Therein, the R&R detailed Botach's knowing, intentional, and purposeful misconduct, impermissibly designed to degrade, abuse, and disrupt the sanctity and decorum required of this process. *Id.* The Magistrate Judge analyzed the statements made by Defendant, evidencing his knowledge of the Court's order at the time he was violating it. *See*, *e.g.*, *id.* at 36 (discussing March 11 video and stating, "This video is particularly significant because it demonstrates Defendant's contemporaneous understanding of the District Court's directive.") The Magistrate Judge found that the "record demonstrates that Defendant willfully chose to disregard a clear judicial command." *Id.* at 41.

Defendant Botach asserts conclusory arguments that the record does not establish willful violations. He makes a surface-level claim that his conduct is reciprocal, but there is no reciprocal-environment exception to the February 20 Order, especially in the absence of anything reciprocal to targeting a preschool. And Defendant does not cite any authority supporting his argument that the R&R erred or that a different result is required under the applicable *de novo* standard of review. *See*, *e.g.*, *Ferrier v. Q Link Wireless LLC*, 2019 WL 5260123, at *1 (S.D. Fla. Aug. 21, 2019) (adopting report and recommendation dismissing action with prejudice where, "As Magistrate Judge Seltzer generously notes in his Report, discovery in this case 'has not gone smoothly.'"); *see also Archer v. Air Jamaica*, 268 F.R.D. 401, 403 (S.D. Fla. 2010) (finding "willful disobedience" where defendants were "forced to spend almost four months of the discovery period trying to get Plaintiffs to provide the most basic disclosures and discovery responses.").

Overall, Botach cannot credibly argue that his conduct was not willful or intentional. On May 24, 2026, he published a post falsely accusing Plaintiff's counsel of appearing or bearing a

connection to the Epstein files and the suicide of a rape victim. The R&R never credited Botach's *assistant's conjecture* about unintentionality as credible, and it certainly leaves no room to conclude that Botach was found credible (indeed, his affirmation nowhere denies intentionality). His assistant's theory about phones, swimming pools, Apple stores, and social media platforms is a diversion from Botach's truth-revealing conduct: Fully aware that he was facing sanctions for the posts, Botach chose to leave the posts online for *over a month* after Plaintiff demanded their removal. If Botach demands that this Court close the loop on this issue, then we respectfully submit that it should find his excuses (as it has before) to be not credible.

The R&R's conclusion that Botach intended to use his out-of-court conduct to influence the litigation also goes unrefuted in the Objections. Rather than address Botach's problematic testimony, the Objections point to Botach's unrelated testimony on a different point. (Objections at 7.) This lack of a response to the challenged testimony is as telling as Botach's own uncontradicted statements of intent. Even worse, Botach declined entirely to address his later conduct that confirmed the truth of his testimony that he intends to influence and pressure the Hotel: his post, as detailed in the R&R, in which he alluded to Plaintiff's counsel being referred to the FBI and wrote that Plaintiff's counsel should "stop billing hours and start interviewing criminal defense lawyers." (ECF No. 233 at 40.) That Botach has *other* testimony about a desire to spotlight antisemitism has no bearing on posts totally unrelated to antisemitism.

Botach's excuses and explanations are not credible, purposely ignore his own conduct, and attempt to deflect blame upon anybody but himself. He is far past earning any benefit of the doubt, and the record speaks for itself. Accordingly, this objection must be overruled.

**F. Lesser sanctions were tried and failed; only terminating sanctions remain.**

Defendant's objection that the sanctions are grossly disproportionate also fails. How many times must this Court warn, order, and sanction Defendant before he complies with his obligations?

"The Eleventh Circuit has consistently affirmed district court determinations that no sanction short of default judgment was appropriate when, as here, a sanction less harsh than default judgment would not change Defendants' behavior." *Boom Funded, LLC v. Aeva, LLC*, 2025 WL 1885676 at *18 (S.D. Fla. 2025).

Botach's proportionality argument is nonsense. This Court told him to stop harassing Plaintiff and its counsel. He did it anyway. He even continued his harassment during the briefing of the underlying motion. As detailed in both the Motion for Sanctions and the R&R, Botach's misconduct has been pervasive and constant. This Court has granted Plaintiff's requests for discovery over his misconduct. (ECF No. 85.) This Court has warned Botach to refrain from engaging in a documented pattern of misconduct. (ECF No. 121.)

Contrary to Botach's arguments, this Court has warned Botach that additional sanctions, including these **very same** sanctions entered in the R&R, could result from repeated misconduct. *Id*. This Court has scolded Botach for failing to heed the Magistrate Judge's advice to commence discovery and progress his case. (ECF No. 125.) This Court entered monetary sanctions against Botach. (ECF No. 130.) This Court has expressly admonished Botach that Court orders are not optional. *Id*. The Court warned Botach of a litany of severe sanctions if merited under the future circumstances. *Id*. The February 27 Sanctions Order expressly and broadly warned Botach that "[a] party subject to *a* court order cannot unilaterally decide the order does not apply to him and act accordingly." (ECF No. 130 (emphasis added).) His suggestion that the February 27 Sanctions Order left open the possibility that he could unilaterally decide that *other* court orders could be unilaterally disregarded isn't just outrageous, it further exemplifies the bad faith that warrants the exercise of inherent authority. And of course, this Court ordered Botach to stop harassing Plaintiff and its counsel with toxic online communications. (ECF No. 125.)

Botach has been repeatedly warned that sanctions may be imposed, and was specifically warned that case-terminating sanctions, such as default judgment, may be entered for further violative conduct. (ECF No. 130 at 15.) Botach never filed any motions for clarification. He never moved to vacate any Order until after he had responded to the Motion for Sanctions. It is not tenable for Botach to claim that he did not know severe sanctions were possible.

These prior warnings from the Court and from Magistrate Judge Elfenbein also show the futility of lesser sanctions. Those warnings, and the imposition of sanctions, did nothing to deter Botach from continuing his harassing conduct and his open hostility to the Court's authority. Botach's argument that he should get one free shot for every type of violative conduct, without any correlating escalation in sanctions, is preposterous. That is why the Objections cite no caselaw for the proposition that a litigant can repeatedly get sanctioned, but if he comes up with a new way to get sanctioned every time, then lesser sanctions are always appropriate. Lesser sanctions are ineffective here because Botach has been warned and sanctioned before, and now he is facing sanctions again.

Although his argument that he did not receive warnings is contradicted by the docket, no adult should have to be warned that consequences will follow for jeopardizing the safety of a preschool. Botach insults and attacks without boundaries. Now, his accusation that the Magistrate Judge "manufacture[d]" repeated violations is yet another example. This Court should reject Botach's claimed entitlement to at least one free (or low-cost) violation of each order before suffering enhanced sanctions. Under Botach's view, if there were fifty orders, he could *knowingly* violate each order once, and only on his *fifty-first* violation could the Court begin to consider whether he has forfeited the game. No case has ever held that, which is why he has no authority

for his argument, and we respectfully submit there is no reason for this Court to be the first to endorse such an approach.

Botach's Objections also lay to rest another persistent mistruth, which is his claim that he was surprised by the February 20 Order's restriction on harassing posts. *See* ECF No. 214 at 8 ("Rabbi Botach had no notice that his out-of-court conduct would be addressed by this Court . . . ."); *see also id.* at 10, 17; *see also* ECF No. 221 at 2 (referring to the directive as being entered "*sua sponte*"). In his Objections, he finally acknowledges Plaintiff's longstanding position, which, in his own words, is that the "pre-[February 20] Order briefing" put his conduct "**at issue**." (ECF No. 239 at 12 (emphasis added).) He simply failed to counter-brief it when he had the chance.

In fact, Courts are not required to explicitly find that lesser sanctions are unwarranted. The Eleventh Circuit has "made clear that such consideration need not be explicit. It is true that the district court did not explicitly consider and reject lesser sanctions, but a determination that no other sanction would suffice radiates from its explanation for the dismissal . . . [I]t is entirely fitting to consider harm to other parties' interests in determining the sanction to be imposed for a violation of the rules." *Zocaras v. Castro*, 465 F.3d 479, 484–85 (11th Cir. 2006). The Eleventh Circuit has also held,

> [W]hen lesser sanctions would be ineffective, [the Rules do] not require the vain gesture of first imposing those ineffective lesser sanctions.' [An] ask-for-forgiveness-rather-than-permission rule would strip sanctions of any deterrent effect—malicious actors could repeatedly violate court orders with peace of mind, knowing that any future sanction could be nullified after the fact by simple compliance with the initial order. [The] district court did not abuse its discretion by deciding that no sanction short of default judgment was appropriate. In fact, lesser sanctions had already been tried—and to no avail.

*Hornady v. Outokumpu Stainless USA*, 118 F.4th 1367, 1379 (11th Cir. 2024). *Hornady* cites *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536 (11th Cir. 1993), one of Botach's cited authorities

that hurts him. Default is permitted without "the vain gesture" of lesser sanctions, which is particularly true where a litigant has shown himself to be beyond, and undesirous of, reform.

The record establishes that Defendant has shown a contumacious disregard for the authority of the Court. *Compare Ferrier*, at *2 (S.D. Fla. Aug. 21, 2019). The Court has tried warnings and lesser sanctions, including monetary sanctions. No lesser sanction will suffice.

**III. Plaintiff welcomes Botach's invitation to invoke the Court's inherent authority.**

Botach's Objections take exception to the Court's issuance of the sanctions pursuant to Rule 16, rather than pursuant to the Court's inherent authority. *See*, *e.g.*, ECF No. 239 at 15 ("But those cases rest on the Court's inherent authority and require explicit findings of subjective bad faith and pervasive misconduct directed at the merits and at the Court's ability to adjudicate, findings the R&R expressly declined to make, resting solely on Rule 16(f).") Accordingly, Plaintiff invites the Court to take the Objections on Botach's own terms and adopt the R&R, while also additionally and alternatively sourcing the sanctions in the Court's inherent authority.

Given the nature of Botach's argument, Plaintiff suggests that this Court dispel Botach's Objections by adopting the R&R, while also exercising its inherent authority as an alternative basis for entering such relief. The R&R detailed every consideration required for invoking that authority. That the Magistrate Judge did not invoke inherent authority is not even argued by Botach to mean this Court cannot exercise its own inherent authority.

"A court may exercise this power 'to sanction the willful disobedience of a court order, and to sanction a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017) (citing *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 382 (2013)). The exercise of inherent authority

generally requires a finding of "bad faith." *Purchasing Power, LLC,* 851 F.3d at 1223. *See also Parnell v. Florida Dep't of Corr.*, 181 F.4th 1209, 1211 (11th Cir. 2026) (same).

"'A finding of bad faith is warranted where,' among other things, 'a frivolous argument' is 'knowingly or recklessly raise[d].'" *Johnson v. 27th Ave. Caraf, Inc.*, 9 F.4th 1300, 1314 (11th Cir. 2021) (quoting *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998)). *See also Baker v. 3M Co.*, 2023 WL 3734013, at *4 (11th Cir. May 31, 2023) ("The subjective bad faith standard 'can be met' if there is 'direct evidence of subjective bad faith,' or if the 'attorney's conduct [that] is so egregious that it could only be committed in bad faith.'") (quoting *Purchasing Power*, 851 F.3d at 1224-25); *Hyde v. Irish*, 962 F.3d 1306, 1310 (11th Cir. 2020) (same). It may also rest on evidence that a party willfully disobeyed a court order, attempted to abuse the judicial process, harassed an opposing party or counsel to obtain litigation advantage, or engaged in conduct calculated to interfere with the court's ability to resolve the case fairly. *See Chambers*, 501 U.S. at 45; *Purchasing Power, LLC*, 851 F.3d at 1223; *In re Mroz*, 65 F.3d at 1575–76. "A party demonstrates bad faith by, *inter alia,* delaying or disrupting the litigation . . . ." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009).

However, "[i]n the absence of direct evidence of subjective bad faith, a court may still exercise its inherent authority to sanction a party for knowingly or recklessly raising a frivolous argument." *Parnell v. Florida Dep't of Corr.*, 181 F.4th 1209, 1211 (11th Cir. 2026).

Botach's frivolous arguments are manifold. He argued directives aren't orders. And if that isn't frivolous on its face, his subsequent litigation conduct confirmed he believed the 'directives aren't orders' argument to be frivolous because he proceeded to move to vacate the directive on the basis that it is a binding order. When he was caught leaking confidential surveillance footage, he made up a series of frivolous arguments labeled "not credible" by the Magistrate Judge. When

he was caught skipping out on his deposition due to debilitating back pain, he raised only more incredible arguments to explain the photos in which he was caught engaging in vigorous physical activity.

The facts of his instant misconduct, as detailed in the R&R, only further underscore the appropriateness of this Court exercising its inherent authority because they amply establish his bad faith. In the R&R, the Magistrate Judge painstakingly detailed an extensive record of Botach's repeated and knowing violations of not only this Court's February 20 Order, but others as well. *See*, *e.g.*, ECF No. 233 at 4 ("Defendant contemporaneously published a social-media post acknowledging that he was 'required under the rules to remove the video.'").

As set forth above, the R&R provides extensive detail showing that Botach's misconduct has been willful, contumacious, and constant, from compelling discovery, referring counsel to the Disciplinary Committee, admonishing Defendant for misconduct, warning Defendant about sanctions as consequences for misconduct, awarding monetary sanctions, to the sanctions entered in the R&R. *See* ECF No. 233 at 1-13.

In addition, the R&R sets forth an extensive discussion of Botach's knowing violation of the Court's February 20 Order, including, for example, the R&R's discussion of Botach's March 11, 2026 post, where "Defendant began the video by stating that he was not going to discuss the case, yet immediately proceeded to discuss the incident underlying this litigation and his dispute with Plaintiff." *See* ECF No. 233 at 36. It also discusses nine separate, repeated and willful violations of the Court's February 20 Order, supporting the Magistrate Judge's ultimate conclusion that the "record demonstrates that Defendant willfully chose to disregard a clear judicial command." *Id*. at 41. For example, the R&R noted that Botach "used repeated violations of the Court's Order as an extrajudicial litigation tactic designed to influence whether, and under what

conditions, Plaintiff continued to prosecute its claims" and that Botach's "objective directly implicates the integrity of the judicial process." (*Id*. at 44-45.) The R&R further recognized the "institutional harm caused by Defendant's abuse of the judicial process." (*Id*. at 45.)

These conclusions, and the factual findings supporting them, support inherent-authority sanctions in the same way they support Rule 16 sanctions. In other words, the R&R already has laid a detailed and sufficient basis for invoking the Court's inherent authority, and this Court's review can find bad faith, as further discussed *infra*.

Accordingly, this Court can adopt and accept the R&R, while also exercising its inherent authority to enter the sanctions because the R&R identified specific misconduct, supported that misconduct with detailed factual findings, and explained why that misconduct demonstrates subjective bad faith and egregious misconduct.

## CONCLUSION

Botach's conduct amply supports the recommended sanctions. That conduct is so severe, consistent, and widespread that it demands consequences under both the Federal Rules of Civil Procedure and the Court's inherent authority to control the cases before it. Plaintiff respectfully submits that the Court should adopt the recommended sanctions and make its own determination to exercise its inherent authority on the grounds that Botach acted in bad faith.

Dated: August 26, 2026
Miami, Florida

Respectfully submitted,

**BURSTYN LAW PLLC**

By: /s/ Sean A. Burstyn
Sean A. Burstyn, Esq.
Florida Bar No. 1028778
sean.burstyn@burstynlaw.com
docketing@burstynlaw.com
1101 Brickell Avenue, Suite S700
Miami, FL 33131
Tel: (305) 204-9808

*Counsel for Plaintiff*
*Fontainebleau Florida Hotel, LLC*

**CERTIFICATE OF SERVICE**

I certify that on August 26, 2026, a true and correct copy of the foregoing was electronically filed on the CM/ECF system, which will serve it via electronic mail on all counsel of record.

By: *[/s/ Sean A. Burstyn]*
Sean A. Burstyn, Esq.