**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO. 1:25-cv-20251-KMM

FONTAINEBLEAU FLORIDA HOTEL,
LLC d/b/a FONTAINEBLEAU MIAMI
BEACH, *a foreign limited liability company*

Plaintiff,

v.

JACOB SHMUEL BOTACH,

Defendant.
_________________________________________/

**DEFENDANT'S MOTION TO RECUSE AND/OR DISQUALIFY MAGISTRATE JUDGE MARTY FULGUEIRA ELFENBEIN**

Defendant Jacob Shmuel Botach ("Botach"), by and through undersigned counsel, and pursuant to 28 U.S.C. § 144 and 28 U.S.C. § 455, hereby moves for the recusal and/or disqualification of Magistrate Judge Elfenbein from this proceeding. In support thereof, Mr. Botach states as follows:

## I. INTRODUCTION

At a discovery hearing held on September 30, 2025, Magistrate Judge Elfenbein *sua sponte* disclosed to the parties that she was friends and previously colleagues with co-counsel for Plaintiff, Mr. Todd Friedman's spouse at the United States Attorney's Office. Judge Elfenbein stated that she did not believe recusal was warranted because her "friendship is with Mr. Friedman's wife, not with Mr. Friedman."

Publicly available information subsequently revealed circumstances and a relationship materially broader than that disclosure conveyed. This Motion is brought on the question of

whether those additional facts would lead an objective observer to reasonably question the Court's impartiality. Those additional, undisclosed facts leave such an appearance that disqualification is necessary.

More specifically, Judge Elfenbein and Mrs. Friedman, co-counsel for Plaintiff's spouse, did not merely work in the same office that employes over 200 attorneys at a given time.[1] They directly prosecuted and tried at least one federal criminal jury trial. Their relationship appears to have continued after Judge Elfenbein left the U.S. Attorney's Office when Mrs. Friedman presented as a speaker at the Court's investiture held months after taking the bench. Further, the Court and the Friedman household, including co-counsel for Plaintiff, appear to have a relationship outside of the legal profession, as congregating in the same synagogue, sharing recurring involvement and leadership roles in the synagogue's service programs, and having publicly available photographs between the families in a non-bar related social setting. Finally, during the pendency of this case, the Court served alongside both Mrs. Friedman and Plaintiff's Lead counsel, Mr. Sean Burstyn, on the Southern District's Jewish American Month committee.

Notwithstanding, Judge Elfenbein presided over and entered a report and recommendation (the "R&R") over the most consequential motion thus far in this case, recommending the harshest sanctions available. ECF No. 233. The R&R adjudicated the sanctionability of Mr. Botach's social medial posts not only about Plaintiff, but also its' counsel. On its face, the R&R went further than Plaintiff asked, finding a violation on a social media post that Plaintiff had expressly withdrawn as a basis for sanctions and posts in which Defendant made no reference to Plaintiff or its counsel.

[1] *See* United States Attorney's Office Southern District of Florida, About the District, *available online at* https://www.justice.gov/usao-sdfl (last accessed Sept. 9, 2026) ("The United States Attorney's Office has a staff of approximately 223 Assistant United States Attorneys (AUSAs), 41 Special Assistant U.S. Attorneys (SAUSAs), and 191 support personnel.")

And, it resolved the motion without mentioning the serious First Amendment implications, ignored Mr. Botach's due process objections to the directive it enforced, and did not require any showing that the sanctioned posts harmed or prejudiced any party.

Mr. Botach seeks recusal because an objective observer, fully informed of the undisclosed relationship, would view this record (in which the Court resolved highly contested credibility disputes without an evidentiary hearing, declined to consider constitutional and mitigating arguments by Defendant, and recommended case-dispositive sanctions) and doubt the Court's impartiality. The standard is not whether the Court is *actually* biased. The appropriate question instead is whether an objective observer, fully informed of the relevant facts, would reasonably *question* the Court's impartiality. The circumstances described herein create precisely the type of *appearance* where recusal and/or disqualification is necessary.

Mr. Botach has not waived this Motion. Section 455(e) expressly provides that waiver under § 455(a) can only occur following "a full disclosure on the record for the basis of disqualification." No full disclosure occurred here.

## II. <u>RELEVANT FACTS</u>

### A. Magistrate Elfenbein Discloses Relationship with Plaintiff Counsel Friedman's Spouse.

At the outset of the September 30, 2025, discovery hearing, Magistrate Judge Elfenbein *sua sponte* disclosed her relationship with Plaintiff's counsel Mr. Friedman's wife. In full, the Court made the following statement:

> Ok. Well, good morning to all of you.
>
> I did want to before we start this hearing today to disclose, because I see Mr. Friedman entered an appearance last night[2] in the case, I do want to disclose to the

[2] Mr. Friedman filed his formal appearance on September 29, 2025 [ECF No. 66], but appeared before Judge Elfenbein at a discovery status hearing the month prior, on August 20, 2025. *See* ECF No. 49, Transcript of August 20, 2025 Discovery Status Hearing.

> parties that I am friends with Mr. Friedman's wife. She and I worked as United States attorneys together for five years at the U.S. Attorney's Office. Nonetheless, my friendship is with Mr. Friedman's wife, not with Mr. Friedman.
>
> So I do disclose that. Nonetheless, for the parties to know that, I don't think there is any kind of basis to recuse, but I like to make those disclosures in an abundance of caution.
>
> All right, folks. Let's go forward with our discovery hearing this morning.

ECF No. 78, Transcript of September 30, 2025, Discovery Hearing, at 2:17-3:5. Judge Elfenbein determined that she did not believe the relationship warranted recusal and proceeded with the hearing. No disclosure was made concerning the additional facts below.

**B. Magistrate Judge Elfenbein and the Friedman Relationship.**

Publicly available information[3] reveals that the Court and Mrs. Friedman are more than just former colleagues who served together in the United States Attorney's Office with overlapping years of service. Rather, Judge Elfenbein and Mrs. Friedman prosecuted several cases together, with at least one going to trial.[4]

On April 3, 2023, Mrs. Friedman was appointed as a member of the Federal Magistrate Merit Selection Panel to examine applications, conduct interviews, and recommend nominees for the magistrate vacancy created by Judge Otazo-Reyes' retirement. *See In re: Appointment of Federal Magistrate Judge Merit Selection Panel Regarding the Upcoming Magistrate Judge*

---

[3] To the extent Plaintiff's contend that Mr. Botach waived the basis for disqualification here because the facts are publicly available, commonsense dictates otherwise. There is no duty to investigate a judge's relationship with opposing counsel. It is the obligation of the Court and the attorneys appearing before it to disclose such relationship.

[4] *E.g.* U.S. Attorney's Office, Southern District of Florida, *Miami Art Dealer Sentenced to 51 Months in Prison for Smuggling Ivory* (Mar. 13, 2023), available online at https://www.justice.gov/usao-sdfl/pr/miami-art-dealer-sentenced-51-months-prison-smuggling-ivory (Press release noting a defendant's sentencing following a seven-day trial, noting "Assistant United States Attorneys Marty Fulgueira Elfenbein and Lindsey Lazapoulos Friedman prosecuted the case."); *see also U.S. v. Bain*, Case No. 19-20227-CR-Gayless (S.D. Fla.).

*Vacancy in Miami, Florida*, Administrative Order 2023-23 (S.D. Fla. Apr. 3, 2023). Pursuant to the Administrative Order, the Panel submitted recommendations on July 2, 2023. *Id*. Judge Elfenbein took the bench effective March 11, 2024. Approximately six months later, on September 12, 2024, Judge Elfenbein's investiture took place. The official program for the Court's investiture lists Mrs. Friedman as one of the ceremony's speakers. *See* **Exhibit A, Declaration of Jacob Shmuel Botach filed herewith ("Botach Decl.")**.

Further, Judge Elfenbein and the Friedmans belong to the same congregation. From that congregation's public website, in both 2023 and 2024, the two households served as "captains" for the synagogue's Mitzvah Day program.[5] *See* **Exhibit B, Botach Decl.**. Plaintiff's counsel, Mr. Friedman, sits on the synagogue's advisory board, worked on a revision of its bylaws, and currently serves as the congregation's contact for the Miami Waterkeeper program. *Id.* On its website, the synagogue publicly published a photograph of Judge Elfenbein and the Friedmans together. **Exhibit C**.

### C. Plaintiff's other counsel, Mr. Sean Burstyn, Likewise Has Ties with Magistrate Elfenbein

Plaintiff's lead counsel, Mr. Sean Burstyn, adds a further and independent point of contact between the Court and Plaintiff. At one point, it appears that Mr. Burstyn shared an office address with Mrs. Friedman at 1101 Brickell Avenue, Suite S700. **Exhibit D, Botach Decl.**. Finally, during the pendency of this very litigation, Judge Elfenbein, Mrs. Friedman, and Mr. Burstyn served together on the Southern District's Jewish American Heritage Month committee. *See In re: Amendment to Membership of the Committee to Oversee Events Commemorating Jewish American Heritage Month*, Amended Administrative Order 2025-92 (S.D. Fla. Nov. 21, 2025). Mrs.

[5] The website describes Mitsvah Day "as an annual opportunity" for the community "to give back, learn of new ways to make a difference, recommit to service, meet and reconnect with fellow congregants, and give back to our community." https://www.tbam.org/mitzvah-day-2023/

Friedman publicly called it a "privilege (and a delight!)" to serve alongside "Marty Elfenbein [and] Sean Burstyn . . ." and described an associated reception as a chance to "connect and catch up with the SDFL community." **Exhibit E, Botach Decl**.

**D. Plaintiff's Motion for Sanctions**

The significance of the undisclosed relationships cannot be assessed apart from the proceedings. Following the September 30, 2025, disclosure, the Magistrate Judge presided over a series of escalating sanctions disputes, each resolved against Mr. Botach, and ultimately culminating in a recommendation of case-terminating sanctions. Mr. Botach recounts these proceedings not to relitigate them. He instead raises the sanctions proceedings because they are part of the factual record that a fully informed objective observer would consider. That record includes not only what the R&R decided, but what it declined to address, including constitutional arguments, sworn evidence, and mitigating facts presented by Mr. Botach that the R&R resolved in footnotes or passed in their entirety.

On February 27, 2026, the Magistrate Judge granted in part Plaintiff's motion for sanctions arising from the Stipulated Protective Order, resulting in a $15,000.00 fee award against Mr. Botach. *See* ECF Nos. 130; 164. Then, on July 29, 2026, the Magistrate Judge issued the R&R on Plaintiff's second motion for sanctions, recommending that Mr. Botach's Answer and Affirmative Defenses be stricken, that default judgment be entered against him as to liability, that his Counterclaim be dismissed with prejudice. *See* ECF No. 233 at 47. Several features of the R&R bear on the objective-observer inquiry.

First, the R&R found that Mr. Botach violated the February 20 Order based on his March 16, 2026 Substack post concerning a publicly reported zoning controversy, even though Plaintiff had expressly withdrawn that post as a basis for sanctions. *See* ECF No. 218 at 10 n.7. The R&R

nevertheless concluded that the post violated the February 20 Order. ECF No. 233 at 37. The post concerned a contested municipal zoning dispute regarding Plaintiff's intent to build a waterpark, a matter of public concern unrelated to the claims or defenses in this action. *See* ECF No. 214 at 3, 13–15.

Second, the R&R adopted the broadest available construction of the February 20 Order without applying the settled rule that ambiguities are construed in the charged party's favor. *U.S. v. Barnette*, 902 F. Supp. 1522, 1532 (M.D. Fla. 1995) (*citing Harris v. City of Philadelphia,* 47 F.3d 1311, 1326 (3d Cir.1995) ("Ambiguities should be resolved in favor of the party charged with contempt."). The R&R construed a single sentence in the District Court's February 20, 2026, scheduling-related order, ECF No. 125, as imposing two independent prohibitions. One of which operates as a categorical ban on any social media "reference" to Plaintiff or its counsel, without regard to whether the reference was harassing, and extending even to commentary on matters of public concern such as a zoning controversy. *See* ECF No. 233 at 32–34, 37. Mr. Botach argued that the sentence was, at minimum, ambiguous, susceptible of a conjunctive reading (prohibiting harassing references) or a disjunctive reading (prohibiting any reference at all), and that any ambiguity or uncertainty in an order to be construed "in a light favorable to the person charged with contempt." ECF No. 214 at 17 (quoting *Ga. Power Co. v. NLRB*, 484 F.3d 1288, 1291 (11th Cir. 2007)). The R&R resolved the interpretive question against Mr. Botach on grammatical grounds without acknowledging, much less applying, that construction canon and instead adopted the maximum construction of that order. *See* ECF No. 233 at 32–34.

Third, the R&R resolved a sharply contested credibility dispute on paper and without an evidentiary hearing. Mr. Botach and his assistant, Gavriel Bell, submitted sworn declarations attesting that the May 24, 2026, posts were unpublished drafts that appeared following the

replacement and restoration of Mr. Botach's mobile telephone, and detailing anomalies, such as timing, duplication, typographical errors, and formatting, that are inconsistent with Mr. Botach's ordinary social media practices. *See* ECF Nos. 214-1; 214-2; 230; 226 at 2–3. Without holding an evidentiary hearing, the R&R denominated the May 24 posts "perhaps the most egregious violations" of the February 20 Order. ECF No. 233 at p. 38. The R&R further declined to resolve the sworn technological-error explanation, reasoning that "[e]ven if the Court accepted that explanation," other posts sufficed, *id.* at 42. Finally, the R&R found the totality of Mr. Botach's conduct "willful and blatant." *Id.* at 42–43. The posts subject to the unresolved explanation thus remained the centerpiece of the violation analysis, while the contested question of intent was resolved against the declarants without any opportunity for live testimony. Particularly when the Court considered Mr. Botach's intent.

Fourth, the R&R adjudicated the sanctionability of Mr. Botach's statements about Mr. Burstyn personally. Among the posts the R&R found violative were posts concerning Mr. Burstyn himself, including the May 24, 2026, and June 11–12, 2026 posts. *See* ECF No. 233 at 38–41. As to the May 24 post recounting a confrontation in Jerusalem, Mr. Botach's sworn account, which was unrebutted, is that an individual accosted him and his family on the night of Shavuot while repeatedly invoking Mr. Burstyn by name and stating that Mr. Burstyn "is going to f—k you up." ECF No. 214-1 ¶¶3–20.

As to the June 11–12 posts, Mr. Botach submitted sworn declarations attesting that the posts concerned alleged pressure and intimidation directed at a nonparty, a close friend and former employee, by an intermediary who claimed to act at Mr. Burstyn's behest, conduct Mr. Botach reported to the Miami Beach Police Department and the FBI. *See* ECF Nos. 214-1 ¶¶21–25; 226 at 3–4; 230. The R&R deemed each of these posts a violation without addressing that context. *See*

ECF No. 233 at 38–41. The Magistrate Judge thus passed judgment and recommended case-dispositive sanctions in substantial part because of Mr. Botach's public statements about an attorney with whom, per the public record, the Court recently served on a District committee, and whose co-counsel's spouse is the Court's friend, while declining to engage Mr. Botach's sworn account that those statements reported threats and witness pressure invoking that same attorney's name.

Fifth, the R&R recommended the most severe sanctions available on that record. Rather than a graduated response, the R&R recommended striking Mr. Botach's defensive pleadings, entering default judgment on liability, and dismissing his civil rights Counterclaim with prejudice. Such relief terminates Mr. Botach's ability to be heard on the merits of claims and defenses the R&R itself acknowledged it made no determination that lacked substantive merit. *See* ECF No. 233 at 45 & n.5.

Finally, the R&R does not address any constitutional concerns, and mitigating facts were relegated to footnotes or simply disregarded. Mr. Botach's timeliness argument, that Plaintiff sat on the challenged posts for approximately three months before raising them, depriving Mr. Botach, his counsel, and the Court of any opportunity for early correction, *see* ECF No. 214 at 12–13, was addressed only in a footnote and dismissed on a prediction that the Court found it “highly unlikely” earlier notice would have altered Mr. Botach's behavior. ECF No. 233 at 43 n.3. Mr. Botach's undisputed offer at the May 28, 2026, conferral to take down the challenged posts, which Plaintiff declined in favor of filing its motion, appears in the R&R's background recitation but plays no role in its willfulness or lesser-sanctions analysis. *Compare* ECF No. 233 at 14, 18, *with id.* at 41–45. And Mr. Botach's evidence that Plaintiff's counsel has himself publicized this litigation, posting the Complaint to social media the day it was filed and mocking Mr. Botach's claims in an interview

with a social-media influencer, *see* ECF Nos. 138; 152; 214 at 4, is acknowledged in the R&R's recitation of the parties' arguments, ECF No. 233 at 14, but is once again nowhere engaged in the R&R's analysis, leaving a speech restriction enforced with case-terminating severity against one side only. Mr. Botach acknowledges, as he must, that adverse rulings standing alone are not grounds for recusal. *See Liteky v. United States*, 510 U.S. 540, 555 (1994) ("judicial rulings alone almost never constitute a valid basis for a bias or partiality motion."). Still, under the applicable standard, an objective observer would assess the undisclosed nature of the relationships along with the proceedings together.

## III. ARGUMENT

### A. Governing Standards

Two statutes govern the disqualification of a federal judicial officer. *Hamm v. Members of Bd. of Regents of Fla.*, 708 F.2d 647, 651 (11th Cir. 1983). Mr. Botach proceeds principally under 28 U.S.C. § 455(a), and separately under 28 U.S.C. § 144.

Section 455(a) provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Congress rewrote Section 455 in 1974 "for the specific purpose of 'broaden[ing] and clarify[ing] the grounds for judicial disqualification.'" *United States v. Kelly*, 888 F.2d 732, 744 (11th Cir. 1989) (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 108 S.Ct. 2194, 2197, 100 L.Ed.2d 855 (1988)). The amendments liberalized greatly the scope of disqualification in the federal courts and eliminated the former duty to sit. *United States v. Alabama*, 828 F.2d 1532, 1540-41 (11th Cir. 1987). As the Eleventh Circuit stated in *Kelly*, "[s]ection 455 does away with the old 'duty to sit' doctrine and requires judges to resolve any doubts they may have in favor of disqualification." *Kelly,* 888 F.2d at 744.

The standard is "whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." *Id.* at 744-45 (quoting *United States v. Torkington*, 874 F.2d 1441, 1446 (11th Cir. 1989)). The question is how the judicial officer's "participation in a given case looks to the average person on the street," and disqualification follows "if the reasonable man, were he to know all the circumstances, would harbor doubts about the judge's impartiality." *Potashnick v. Port City Constr. Co.*, 609 F.2d 1101, 1111 (5th Cir. 1980). "The very purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *Kelly*, 888 F.2d at 744 (quoting *Liljeberg,* 108 S.Ct. 2194 at 2197).

Actual bias is not the question, and Mr. Botach does not ask this Court to find it. "Neither actual partiality, nor knowledge of the disqualifying circumstances on the part of the judge during the affected proceeding, are prerequisites to disqualification under this section." *Kelly* at 744. "[W]hat matters under Section 455(a) 'is not the reality of bias or prejudice but its appearance.'" *Microsoft Corp. v. United States*, 530 U.S. 1301, 1302 (2000) (quoting *Liteky v. United States*, 510 U.S. 540, 548, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994)) (Rehnquist, C.J. statement on denial of direct appeal). Mr. Botach does not suggest that Magistrate Judge Elfenbein harbors any actual ill will toward him, and nothing in this Motion should be read to say otherwise. He only submits that the objective circumstances, once fully known, are the kind that a reasonable member of the public would find troubling.

The obligation runs to the judicial officer rather than to the parties. Under Section 455, "a judge is under an affirmative, self-enforcing obligation to recuse himself *sua sponte* whenever the proper grounds exist," and "[t]he duty of recusal applies equally before, during, and after a judicial proceeding, whenever disqualifying circumstances become known to the judge." *Kelly*, 888 F.2d

at 744; *accord Murray v. Scott*, 253 F.3d 1308, 1310 (11th Cir. 2001) (Section 455 imposes "a self-enforcing obligation to recuse himself where the proper legal grounds exist. Most important, the benefit of the doubt must be resolved in favor of recusal.").

Section 144 provides a separate albeit narrower ground for recusal. It provides that upon the filing of "a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding." 28 U.S.C. § 144. The affidavit "shall state the facts and the reasons for the belief that bias or prejudice exists," and "shall be accompanied by a certificate of counsel of record stating that it is made in good faith." *Id.* "To warrant recusal under § 144, the moving party must allege facts that would convince a reasonable person that bias actually exists," and "[p]roperly pleaded facts in a § 144 affidavit must be considered as true." *Christo v. Padgett*, 223 F.3d 1324, 1333 (11th Cir. 2000). Mr. Botach has filed the affidavit the statute requires, together with the certificate of counsel of record, and addresses Section 144 separately in Part III.D below.

**B. <u>The Relationship Between Judge Elfenbein and Plaintiff's Counsel Satisfies § 455(a)'s Objective Standard</u>**

The question under Section 455(a) is not whether the Court is, or has been, fair. The question instead is whether "an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1524 (11th Cir. 1988). That objective observer is not "idiosyncratic, hypersensitive, [or] cynical," *In re Horne*, 630 F. App'x 908, 910 (11th Cir. 2015), but neither is the observer confined to a limited set of facts disclosed from the bench. The statute imposes on judges "a self-enforcing obligation to recuse himself where

the proper legal grounds exist." *Murray v. Scott*, 253 F.3d 1308, 1310 (11th Cir. 2001) (internal quotation marks omitted).

Mr. Botach does not seek disqualification here based on mere professional associations between counsel and the Court. *E.g. Smith v. Pepsico, Inc.*, 434 F. Supp. 524, 525 (S.D. Fla. 1977) (two-year law clerk relationship insufficient). He rests instead on the accumulation of independently sourced, and previously undisclosed facts that, taken together, he respectfully submits exceed the standard that a reasonable and objective layperson will have a significant doubt as to the Court's impartiality. Specifically, (i) direct co-prosecutions between counsel's spouse and the Court; (ii) a ceremonial investiture speaker role; (iii) a merit-selection process in which Mrs. Friedman nominated candidates that may have been for Court's own seat;[6] and (iv) recurring, congregational leadership with evidence of more than a collegial relationship.

"Because 28 U.S.C. s. 445(a) focuses on the appearance of impartiality, as opposed to the existence in fact of any bias or prejudice, a judge faced with potential ground for disqualification ought to consider how his participation in a given case looks to the average person on the street." *Potashnick v. Port City Const. Co.*, 609 F.2d 1101, 1111 (5th Cir. 1980). "Use of the word 'might' in the statute was intended to indicate that disqualification should follow if the reasonable man, were he to know all the circumstances, would harbor doubts about the judge's impartiality." *Id.* To that end, "the focus has consistently been on the question whether the relationship between the judge and an interested party was such as to present a risk that the judge's impartiality in the case

[6] The Regulations of the Judicial Conference of the United States Establishing Standards and Procedures for the Appointment and Reappointment of United States Magistrate Judges make the nomination process confidential. Mr. Botach is thus unaware whether Mrs. Friedman was involved in the panel that included Judge Elfenbein in its nominations.

at bar might reasonably be questioned." *Preston v. United States*, 923 F.2d 731, 735 (9th Cir. 1991).

*United States v. Kelly*, 888 F.2d 732 (11th Cir. 1989), dealt with partiality arising from a judicial officer's social relationships. In *Kelly*, the district judge presided over a bench trial in which a longtime legal associate of the defendant appeared as a defense witness. *Id.* at 738 ("The judge's wife and [the Witness'] wife were close personal friends, and [the witness] had been avoiding contact with the judge at social functions.") The judge had known for several months that the witness would testify. *Id.* at 747. During trial, the judge observed the witness's wife in the courtroom and invited her back to chambers, where they spoke privately. *Id.* The next trial day, the judge raised the recusal question himself, expressed near certainty that he should disqualify himself, and then declined to do so. *Id.* at 738-39. The Eleventh Circuit reversed, holding that "that the district judge committed a 'clear error of judgment' by failing to recuse himself." *Id.* at 745.

The question is not whether Magistrate Judge Elfenbein was in fact influenced by her relationship with the Friedman household. Under *Kelly*, the appearance is enough, "regardless of what result was reached." *Id.*

The Ninth Circuit's decision, *In re Creech*, is instructive on the weight of a speaking role at a court's investiture. 119 F.4th 1114 (9th Cir. 2024). There, the court ordered reassignment where an attorney "was one of just two speakers" at the judge's investiture, noting that this was "a testament to the strength of [their] relationship" and that "[o]ther evidence could lead a reasonable observer to believe that their friendship is ongoing." *Id.* at 1122-23. The Ninth Circuit held that the appearance of partiality was present, notwithstanding the judge's own representation that she had "lost touch" with the attorney and had never "visited each other's homes," shared vacations,

holidays, or family occasions with her. *Id.* at 1123. Mrs. Friedman held that same role at Judge Elfenbein's investiture.

We recognize that *Creech* involved more than just a speaking role and that court recognized that longstanding friendship "taken alone, would not necessarily require recusal in a run-of-the-mill case." *Id.* at 1123. But this is not the run-of-the-mill case. For instance, Plaintiff's counsel has accused Mr. Botach of sending a threatening letter to their office. *See* ECF Nos. 137; 232 at p. 18. Further, *Creech* supports the notion that a speaking role at a judge's investiture is probative of an ongoing friendship, and that a judge's own characterization of a relationship as attenuated does not control where the objective public record suggests otherwise.

Under the liberal scope of disqualification and elimination of the duty to sit, that standard applied to this record favors disqualification. *See United States v. State of Alabama*, 828 F.2d at 1540-41.

**C. <u>A Fully Informed Lay Person Viewing This Record Can Question the Court's Impartiality.</u>**

Mr. Botach is mindful that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky*, 510 U.S. at 555. But *Liteky* itself makes clear that the significance of in-court conduct changes when an extrajudicial source is present. Rulings and conduct during proceedings "can" support a partiality challenge where they derive from an extrajudicial source or reveal the kind of favoritism that makes fair judgment impossible. *Id.* The objective-observer test, moreover, asks what a layperson "fully informed of the facts" would conclude. *Parker*, 855 F.2d at 1524. A fully informed observer here knows both sets of facts, and the question is what the combination looks like "to the average person on the street." *Potashnick*, 609 F.2d at 1111.

What that observer would observe is a magistrate judge with a personal, ceremonial, professional, and congregational ties to the household of one of Plaintiff's lawyers, and contemporaneous committee service with another, who then (i) recommended the most severe sanctions available in civil litigation in substantial part to sanction Mr. Botach's public criticism of those very lawyers; (ii) found a violation on a ground that Plaintiff itself withdrew; (iii) construed another judge's single-sentence directive at its maximum conceivable breadth without applying the settled rule that ambiguities in an order are construed in favor of the party charged; (iv) rejected sworn, declarations on a contested question of intent without an evidentiary hearing, (v) resolved the motion without addressing the First Amendment and due-process arguments Mr. Botach squarely presented; (vi) recommended case-terminating relief without addressing the absence of any showing of audience, injury, or prejudice to the adjudicative process; and (vii) disregard of Mr. Botach's mitigation, including Plaintiff's counsel's three-month delay in seeking sanctions, Mr. Botach's declined offer to remove the posts, and opposing counsel's own publicizing of the case. In combination with the relationships, the appearance is precisely what § 455(a) exists to prevent.

**D. <u>Section 144 Independently Supports Recusal.</u>**

Section 144 requires the assigned judicial officer to "proceed no further" upon the filing of a timely and sufficient affidavit alleging personal bias or prejudice against the movant or in favor of an adverse party, accompanied by a certificate of counsel of record made in good faith. 28 U.S.C. § 144. Both the affidavit and the certificate have been filed with this Motion. *See* Botach Decl.; Certificate of Counsel Pursuant to 28 U.S.C. § 144.

Section 144 requires recusal on a "timely and sufficient affidavit" alleging facts that "would convince a reasonable person that bias actually exists." *Christo*, 223 F.3d at 1333. The affidavit must set forth facts that the judge "has a personal bias or prejudice either against him or in favor

of any adverse party." 28 U.S.C. § 144. The Court does not weigh the truth of properly pled facts in a § 144 affidavit, rather, those facts "must be considered as true." *Christo* at 1333.

The Botach Declaration satisfies each element. It pleads specific, publicly sourced facts rather than conclusions. Every fact arises from an extrajudicial source and falls squarely outside the limitation on judicial-conduct-based recusal recognized in *Liteky*, 510 U.S. at 554–56. As those facts must be taken as true, they describe a sustained personal relationship between the assigned judicial officer and the household of one of Plaintiff's attorneys, the scope of which was not disclosed. A reasonable person, under those facts, would conclude that the relationship operates in favor of Plaintiff within the meaning of the statute.

**E. Mr. Botach Has Not Waived Disqualification, and This Motion Is Timely**

Section 455(e) permits waiver of a ground arising under § 455(a) only where the waiver "is preceded by a full disclosure on the record of the basis for disqualification." 28 U.S.C. § 455(e). In short, waiver only occurs where the grounds have been fully set forth on the record. "The issue, dealing with 455(a) disqualification, is on that, under 28 U.S.C. § 455(e), might be waived provided it is preceded by a *full* disclosure on the record of the basis of disqualification." *Miller Indus., Inc. v. Caterpillar Tractor Co.*, 516 F. Supp. 84, 90 (S.D. Ala. 1980) ("That full disclosure was not made on the record to defendants until June of 1980 and they took prompt action afterwards."). "The statute imposes, however, no duty on the parties to seek disqualification, nor any time limits within which disqualification must be sought." *Potashnick*, 609 F.2d at 1115. (finding disclosure of relationship with a law firm representing a party during a pretrial conference did not constitute waiver because "[t]he judge's disclosure of his prior relationship with [the law firm] did not reveal the nature of his relationship to [the lawyer].").

The September 30, 2025, disclosure here conveyed two facts: (i) that the Court is friends with Mr. Friedman's wife; and (ii) that the two served together as Assistant United States Attorneys for five years. The disclosure did not reveal the full nature of the relationship. Specifically, that (i) the Court and Mrs. Friedman jointly prosecuted and tried at least one federal criminal jury trial; (ii) that Mrs. Friedman served on the Merit Selection Panel that recommended nominees for a magistrate judgeship in this District; (iii) that Mrs. Friedman spoke at the Court's investiture; (iv) that the Court and the Friedman household served together in recurring leadership roles and have interacted in non-bar related social events; and (v) that the Court, Mrs. Friedman, and Mr. Burstyn served together on a District committee during the pendency of this litigation.

A disclosure that omits the very facts on which disqualification is sought cannot result in a waiver. Holding otherwise would convert § 455(e)'s requirement of a full disclosure on the record into allowing forfeiture of disqualification on unknown grounds when a party fails to take action after a partial disclosure. Section 455 places the obligation on the judicial officer, not the parties. That burden does not shift to a party merely because a partial disclosure was made.

The Motion is likewise timely. Mr. Botach as soon as reasonably possible after learning of the undisclosed facts were identified through review of the public record. Mr. Botach raises these grounds now, at the earliest practicable point. Where disqualification is required but not effected, prior orders are subject to vacatur. *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 862–64 (1988) (affirming vacatur of final judgment for a violation of §455(a)).

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Mr. Botach respectfully requests that the Court issue an order that Magistrate Judge Elfenbein recuse herself from further proceedings in this case or disqualify

her pursuant to 28 U.S.C. §§ 455 and 144, and grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Christopher D. Cathey*

Christopher D. Cathey, Esq.
Florida Bar No. 663255
OFFIT KURMAN, P.A.
100 SE Third Avenue, 10th Floor
Fort Lauderdale, Florida 33394
Telephone: (954) 353-4180
Chris.Cathey@offitkurman.com

Scott B. Piekarsky, Esq.
Admitted *Pro Hac Vice*
OFFIT KURMAN, P.A.
Court Plaza South
21 Main Street, Ste 158
Hackensack, NJ 07601
Scott.piekarsky@ofitkurman.com

Attorneys for Defendant
Jacob Shmuel Botach

**CERTIFICATE OF CONFERRAL**

On September 3 and 4 2026, Defendant's counsel conferred with Plaintiff's counsel with respect to this Motion via email. Plaintiff opposes the requested relief.

*/s/ Christopher D. Cathey*
Christopher D. Cathey, Esq.

**CERTIFICATE OF SERVICE**

I hereby certify that on September 8, 2026, the foregoing document was filed using the CM/ECF system for the United States District Court, Southern District of Florida, which will send electronic notice to all counsel of record.

*/s/ Christopher D. Cathey*
Christopher D. Cathey, Esq.