**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 25-CV-20251-MOORE/Elfenbein

**FONTAINEBLEAU FLORIDA HOTEL, LLC**,

Plaintiff,

v.

**SHMULEY BOTEACH JACOB**
**A/K/A SHMUEL BOTACH**, *et al.*,

Defendants.
_______________________________________________/

**ORDER DENYING MOTION TO RECUSE AND/OR DISQUALIFY**

**THIS CAUSE** is before the Court on Defendant Jacob Shmuel Botach's ("Defendant") Motion to Recuse and/or Disqualify Magistrate Judge Marty Fulgueira Elfenbein (the "Motion"). *See* ECF No. [253]. Having reviewed the Motion, the pertinent portions of the record, the applicable law, and being otherwise fully advised in the premises, the Motion, **ECF No. [253]**, is **DENIED**.

## I. BACKGROUND

On December 19, 2024, Plaintiff Fontainebleau Florida Hotel, LLC ("Plaintiff") filed this action in state court alleging claims against Defendant for defamation, aiding and abetting defamation, tortious interference with business relationships, and aiding and abetting tortious interference with business relationships. *See* ECF No. [1-1] at 4-18. Thereafter, on January 16, 2025, Defendant removed the lawsuit to the Southern District of Florida and the case was assigned to the Honorable K. Michael Moore. *See* ECF No. [1]. On January 21, 2025, Judge Moore referred all pretrial discovery matters to the undersigned. *See* ECF No. [5]. Consistent with that discovery referral, the undersigned thereafter issued two standard orders in the case — the Order

Setting Discovery Procedures, ECF No. [7], and the Order Setting Discovery Status Conference, which scheduled the conference for August 20, 2025. *See* ECF No. [21]. At the Discovery Status Conference, attorney Sean Burstyn appeared "for Fountainebleau Florida Hotel, LLC, the plaintiff" and he announced the presence of two "colleagues," Andre Dambuleff and Todd Friedman.[1] *See* ECF No. [49] at 3. Mr. Friedman was present but did not otherwise participate in the conference. *See generally* ECF No. [49].

Thereafter, on September 29, 2025, Mr. Friedman entered an appearance on the docket as counsel of record for Plaintiff. *See* ECF No. [66]. At the commencement of a discovery hearing held on September 30, 2025, the Court *sua sponte* made a disclosure to the Parties — one that was prompted by Mr. Friedman's filing of his Notice of Appearance. *See* ECF No. [66]. At the beginning of the discovery hearing, the Court advised the Parties of the following:

> THE COURT: OK. Well, good morning to all of you. I did want to before we start this hearing today to disclose, because I see Mr. Friedman entered an appearance last night in the case, I do want to disclose to the parties that I am friends with Mr. Friedman's wife. She and I worked as [Assistant] United States attorneys together for five years at the U.S. Attorney's Office. Nonetheless, my friendship is with Mr. Friedman's wife, not with Mr. Friedman. So I do disclose that. Nonetheless, for the parties to know that, I don't think there is any kind of basis to recuse, but I like to make those disclosures in an abundance of caution.

*See* ECF No. [78] at 3-4.

Nearly one year after this disclosure, on September 8, 2026, Defendant moved to recuse and or disqualify the undersigned from this matter on the basis of undisclosed facts that, according

[1] As of the date of the Discovery Status Conference, neither Mr. Dambuleff nor Mr. Friedman had entered an appearance on the docket. Neither of them spoke at the Discovery Status Conference and neither were introduced as counsel for Plaintiff. *See* ECF No. [49] at 3. As the Court's Discovery Status Conferences are open to the public, *see* ECF No. [21] at 1 ("Counsel, parties, or members of the public can attend" the Zoom hearing), it was not clear whether Mr. Friedman would be representing Plaintiff in the matter or was an observer. It was not until Mr. Friedman entered his appearance on the docket that it became clear he would represent the Plaintiff going forward.

to Defendant, would lead "an objective observer, fully informed of the undisclosed relationship" to "doubt" the undersigned's "impartiality." *See* ECF No. [253] at 3. Specifically, Defendant points to five undisclosed facts, which are the following: (1) that the undersigned and Mr. Friedman's wife, Lindsey Lazopoulos Friedman, prosecuted two cases together while working at the United States Attorney's Office; (2) that Mrs. Lazopoulos Friedman served on the Court's Magistrate Judge Merit Selection Panel in 2023 that ultimately resulted in the undersigned's appointment as a Magistrate Judge by the District Judges of the Southern District of Florida; (3) that Mrs. Lazopoulos Friedman was one of the speakers at the undersigned's investiture; (4) that the Friedman family belongs to the same Jewish congregation as the undersigned and both participated as "Captains" at Temple Beth Am's Mitzvah Day program in 2023 and 2024; and (5) that the undersigned served on the Court's Jewish American Heritage Month Committee with Mrs. Lazopoulos Friedman and Mr. Burstyn.[2] *See* ECF No. [253] at 4-5.

Defendant then argues that these non-disclosures coupled with the Court's recent Report and Recommendations on Plaintiff's Motion for Sanctions, ECF No. [208], recommending case-dispositive sanctions against Defendant, would lead one to question the undersigned's impartiality. *See* ECF No. [253] at 7-10. Defendant takes issue with several findings in the Report and Recommendations, including the decision to resolve the Motion for Sanctions without an evidentiary hearing, the finding that one social media post violated Judge Moore's February 20, 2026 Order even though Plaintiff receded from that position in the Reply, the analysis of the

---

[2] Plaintiff also points out a connection between Mr. Burstyn and Mrs. Lazopoulos Friedman, explaining that "[a]t one point, it appears" they "shared an office address." *See* ECF No. [253] at 5. It is unclear why this connection would be relevant to the undersigned when the undersigned does not know Mr. Burstyn personally and has no recollection of ever meeting him prior to this litigation. Although both the undersigned and Mr. Burstyn have been appointed to serve on the Jewish American Heritage Month Committee, which is further discussed below, the undersigned does not recall working directly with Mr. Burstyn as a result of such committee service.

language of the February 20, 2026 Order, the severity of the sanctions recommended, and the manner in which the undersigned addressed or failed to address certain arguments made by Defendant. *Id.* The Certificate of Conference in the Motion explains that Plaintiff opposes the relief, *id.* at 20, but the undersigned has reviewed the Motion and does not require Plaintiff's Response to rule on the Motion.

## II. LEGAL STANDARD

### A. Recusal under 28 U.S.C. § 144

Pursuant to 28 U.S.C. § 144, "[w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding." Under this statute, the court must decide three issues: (1) whether "the affidavit was timely filed;" (2) whether it was "accompanied by the necessary certificate of counsel of record;" and (3) whether "the affidavit [is] sufficient in statutory terms." *Parrish v. Bd. of Comm'rs of Alabama State Bar*, 524 F.2d 98, 100 (5th Cir. 1975).[3] In reviewing the motion under § 144, "the judge must pass on the legal sufficiency of the affidavit, but may not pass on the truth of the matters alleged." *Id.* (citing *Berger v. United States*, 255 U.S. 22 (1921); *United States v. Roca-Alvarez*, 451 F.2d 843, 847-48 (5th Cir. 1971); *United States v. Townsend*, 478 F.2d 1072 (3d Cir. 1973)). As to its legal sufficiency, that is "a question of law on the basis [of] whether the affidavit sets out facts and reasons for the party's belief that the judge has a personal bias and prejudice against the party or in favor of the adverse party. The facts and reasons set out in the affidavit 'must give fair support

[3] Decisions of the United States Court of Appeals for the Fifth Circuit handed down on or before September 30, 1981 are "binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit." *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981).

to the charge of a bent of mind that may prevent or impede impartiality of judgment.'" *Id.* (quoting *Berger*, 255 U.S. at 33).

In determining this legal question, the court must apply "the reasonable man standard to the facts and reasons stated in the affidavit," that is, whether the facts, with "their truth being assumed," would "convince a reasonable man that a bias exists." *Id.* at 101. To make this showing, the affidavit must establish (1) facts that are "material and stated with particularity;" (2) facts "that, if true they would convince a reasonable man that a bias exists;" and (3) facts that "show the bias is personal, as opposed to judicial, in nature." *Id.* (quoting *United States v. Thompson*, 483 F.2d 527, 528 (3d Cir. 1973)).

**B. Recusal under 28 U.S.C. § 455(a)**

Under the catch-all provision of the federal recusal statute on which Defendant relies, "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). "[W]hat matters under § 455(a) 'is not the reality of bias or prejudice but its appearance.'" *Microsoft Corp. v. United States*, 530 U.S. 1301, 1302 (2000) (quoting *Liteky v. United States*, 510 U.S. 540 (1994)); *see also Cheney v. U.S. Dist. Ct. for Dist. of Columbia*, 541 U.S. 913, 924, (2004); *In re Evergreen Sec., Ltd.*, 570 F.3d 1257, 1263 (11th Cir. 2009). "This inquiry is an objective one, made from the perspective of a reasonable observer who is informed of all the surrounding facts and circumstances." *Microsoft Corp.*, 530 U.S. at 1302. Further, "[t]he decision whether a judge's impartiality can 'reasonably be questioned' is to be made in light of the facts as they existed, and not as they were surmised or reported." *Cheney*, 541 U.S. at 914 (quoting *Microsoft Corp.*, 530 U.S. at 1302).

The Due Process Clause does not set forth a specific test governing recusal, but due process

guarantees "an absence of actual bias on the part of the judge." *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016) (internal quotation marks omitted). "Recusal is required when, objectively speaking, 'the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.'" *Rippo v. Baker*, 580 U.S. 285, 287 (2017) (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)); *see also Williams*, 579 U.S. at 4. "Section 455 does not require the judge to accept all allegations by the moving party as true. If a party could force recusal of a judge by factual allegations, the result would be a virtual 'open season' for recusal." *United States v. Greenough*, 782 F.2d 1556, 1558 (11th Cir. 1986) (quoting *Phillips v. Joint Legislative Com.* 637 F.2d 1014 (5th Cir. 1981) (Unit A)).

"The Eleventh Circuit has articulated an additional important principle to be considered in recusal cases: although the duty to recuse is imperative in close cases, '[j]udges must not recuse themselves for imaginary reasons; judge shopping should not be encouraged.'" *See Molette v. Title Max of Georgia*, No. 13-CV-1615-CAP, 2013 WL 11327699, at *2–3 (N.D. Ga. June 11, 2013) (quoting *Murray v. Scott*, 253 F.3d 1308, 1313 (11th Cir. 2001) and citing *Carter v. West Publ'g Co.*, 1999 WL 994997, *2 (11th Cir. 1999) (Tjoflat, J.); *United States v. Greenough*, 782 F.2d 1556, 1558 (11th Cir. 1986) (same)). Indeed, "a judge, having been assigned to a case, should not recuse himself on unsupported, irrational, or highly tenuous speculation." *Greenough*, 782 F.2d at 1558. If that were the case, "the price of maintaining the purity of the appearance of justice would be the power of litigants or third parties to exercise a veto over the assignment of judges." *Id.; see also In re Evergreen Sec., Ltd.*, 363 B.R. 267, 297 (Bankr. M.D. Fla. 2007) ("Section 455 'is not intended to give litigants a veto power over sitting judges, or a vehicle for obtaining a judge of their choice.'" (citing *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993)).

**C. Timeliness of Motions for Recusal**

"Although a literal reading of § 455 places the duty to recognize the conflict on the judge, [the Eleventh Circuit] has held that a motion to disqualify must be timely." *Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Fla., Inc.,* 140 F.3d 898, 913 (11th Cir.1998) (affirming district court's denial of recusal motion because party did not raise recusal issue at "the first available opportunity"); *United States v. Slay*, 714 F.2d 1093, 1094 (11th Cir. 1983) ("A motion to disqualify a magistrate under § 455(a) must be timely."). "Counsel, knowing the facts claimed to support a § 455(a) recusal for appearance of partiality may not lie in wait, raising the recusal issue only after learning the court's ruling on the merits." *Phillips v. Amoco Oil Co.*, 799 F.2d 1464, 1472 (11th Cir. 1986) (citing *Slay,* 714 F.2d at 1094). "The policy considerations supporting a timeliness requirement are . . . to conserve judicial resources and prevent a litigant from waiting until an adverse decision has been handed down before moving to disqualify the judge." *Summers v. Singletary*, 119 F.3d 917, 921 (11th Cir. 1997).

As aptly explained by Fifth Circuit Court of Appeals, "[i]f disqualification may be raised at any time, a lawyer is then encouraged to delay making a [§] 455(a) motion as long as possible if he believes that there is any chance that he will win at trial. If he loses, he can always claim the judge was disqualified and get a new trial. This result would not comport well with the purposes behind [§] 455(a). . . . Lack of a timeliness requirement encourages speculation and converts the serious and laudatory business of insuring judicial fairness into a mere litigation stratagem. Congress did not enact [§] 455(a) to allow counsel to make a game of the federal judiciary's ethical obligations; we should seek to preserve the integrity of the statute by discouraging bad faith manipulation of its rules for litigious advantage." *Delesdernier v. Porterie,* 666 F.2d 116, 121 (5th Cir. 1982).

## III. DISCUSSION

The Court starts its Discussion with where the Legal Standards above ended — the question of timeliness. That is dispositive of the issue. To recap, nearly one year ago, on September 30, 2025, the Court *sua sponte* made a disclosure to the Parties before the commencement of a discovery hearing, which was prompted by Mr. Friedman's Notice of Appearance one day earlier. *See* ECF No. [66]. At the hearing, the undersigned explained: "I see Mr. Friedman entered an appearance last night in the case, I do want to disclose to the parties that I am friends with Mr. Friedman's wife. She and I worked as United States attorneys together for five years at the U.S. Attorney's Office. Nonetheless, my friendship is with Mr. Friedman's wife, not with Mr. Friedman." ECF No. [78] at 3-4. Thus, the disclosure advised the Parties that the undersigned not only had a professional relationship with Mrs. Lazopoulos Friedman, in that they worked together as Assistant United States Attorneys for a five-year period, but also a personal relationship as friends. In fact, the undersigned twice stated that she had a friendship with Mrs. Lazopoulos Friedman. At no point during the 75-minute discovery hearing did any of the attorneys ask any further questions about the relationship with Mrs. Lazopoulos Friedman or otherwise suggest any concerns about the undersigned's bias or impartiality. *See generally* ECF No. [78]. And that trend continued, that is, a trend in which Defendant failed to express any concerns whatsoever about the undersigned's bias, impartiality, or the appearance of bias and impartiality for almost one year despite the undersigned ruling on motion after motion in the case. The docket history reflects the following:

- Five days before the discovery hearing, Judge Moore referred Plaintiff's first Motion for Sanctions, ECF No. [61], to the undersigned, *see* ECF No. [62]. At no point following the

disclosure on September 30, 2025 through the date of the undersigned's ruling did Defendant express any concerns about bias or impartiality.

- One week later, on October 7, 2025, the undersigned *sua sponte* struck Plaintiff's Notice of Filing Amendments to the First Amended Complaint as an unauthorized amendment submitted without leave of Court — a ruling that was adverse to Plaintiff. *See* ECF No. [76]. Defendant raised no concerns about the undersigned's bias or impartiality following this ruling.
- On December 4, 2025, the undersigned granted Defendant's Motion for Leave to File Sur-Reply to Plaintiff's Reply in Support of its Motion for Sanctions, ECF No. [104]. This ruling was favorable to Defendant. Defendant again raised no concerns.
- On December 31, 2025, Judge Moore referred Plaintiff's Rule 11 Motion for Sanctions, ECF No. [105], to the undersigned. *See* ECF No. [113]. Once again, Defendant did not express any concerns about the undersigned's impartiality following this referral.
- On February 26, 2026, the undersigned issued her Order on Plaintiff's Motion for Sanctions in which she denied the motion in part and granted it in part. *See* ECF No. [130]. In doing so, the undersigned disagreed with Plaintiff's argument that Defendant's April 2, 2025 social media post violated the Protective Order and agreed "with Defendant that applying the Protective Order retroactively to conduct that predates its entry would be improper." *Id.* at 12. However, the undersigned found that Defendant's social media post on September 17, 2025 constituted a violation. *Id.* at 11. In assessing what sanctions were appropriate, the undersigned declined to impose the broad array of sanctions that Plaintiff requested, "including preclusion of the surveillance footage at trial, an order to show cause for contempt, permission to redesignate all materials as 'Outside Counsel Eyes Only,' [and]

striking of pleadings." *Id.* at 13. Instead, the undersigned determined that less severe sanctions were appropriate for the violation of the Protective Order and limited them to an admonishment of Defendant along with an award of Plaintiff's attorney's fees and costs for preparing the motion and reply. *Id.* at 14-15. Thus, despite finding that Defendant willfully violated the Protective Order, the undersigned imposed the least severe sanction possible. Once again, Defendant expressed no concerns about the undersigned's bias or impartiality following the issuance of this Order.

- On February 27, 2026, the undersigned entered an Order on Plaintiff's Motion for Rule 11 Sanctions, denying it as premature. *See* ECF No. [132]. This ruling was not adverse to Defendant. Defendant yet again failed to raise any concerns about bias or impartiality following the entry of this Order.
- On March 5, 2026, the undersigned entered an Order granting Plaintiff's Motion for Leave to Take Deposition at Courthouse and for Leave to Bring Electronic Equipment in which it made "clear that it [wa]s not commenting on, and [wa]s not basing its ruling upon, any matter involving the alleged hate-mail letter sent to attorney Sean Burstyn" and was "not speculating as to who may have sent such correspondence." *See* ECF No. [140]. Rather, the undersigned found it "prudent and appropriate that the deposition proceed at a neutral location given the evident animosity between the parties in this litigation." *Id.* This ruling was again not adverse to Defendant. Defendant once more failed to raise any concerns about bias or impartiality.

- On March 30, 2026, the undersigned entered an Order granting the sum of attorney's fees to which the Parties stipulated following the award of sanctions.[4] *See* ECF No. [164]. Again, Defendant raised no concerns about bias or impartiality following this Order.
- On June 11, 2026, Judge Moore referred Plaintiff's most recent Motion for Sanctions to the undersigned. *See* ECF No. [211]. At no point in time between the referral of that motion through the date of the Report and Recommendations did Defendant raise any concerns about bias or impartiality.
- On July 17, 2026, the undersigned granted in part and denied in part Defendant's Motion for Leave to File a Sur-Reply, allowing Defendant to file a Sur-Reply to address new factual material that Plaintiff introduced in its Reply in support of the Motion for Sanctions. *See* ECF No. [225]. In doing so, the undersigned overruled Plaintiff's vehement objections and allowed Defendant to file a limited Sur-Reply — a ruling that was favorable to Defendant. *Id.* Once again, Defendant raised no concern about the undersigned's bias and impartiality following the ruling on this motion.
- On July 29, 2026, the undersigned issued her Report and Recommendations on Plaintiff's Motion for Sanctions, ECF No. [208], recommending that it be granted in part and denied in part. Specifically, the undersigned recommended that Judge Moore impose case-dispositive sanctions under Rule 16(f) for Defendant's repeated and willful violations of Judge Moore's order, including striking of pleadings and entry of default judgment, but recommended that Judge Moore not invoke his inherent authority to impose sanctions or initiate separate criminal or civil contempt proceedings against Defendant.

[4] Ultimately, Defendant's insurance carrier, not Defendant, paid the award of attorney's fees to Plaintiff. *See* ECF No. [208-3].

- Now, five weeks after the issuance of the undersigned's Report and Recommendations on the Motion for Sanctions, Defendant raises — for the first time — a concern about the undersigned's bias and impartiality.

To sum it up, Defendant waited until *after* Judge Moore referred three different motions to the undersigned for a ruling or report and recommendations, *after* the undersigned entered eight different orders, and *nearly one year after* the disclosure to raise a concern about the undersigned's alleged bias and impartiality related to her relationship to Mrs. Lazopoulos Friedman. On this record, it is evident that Defendant lied in wait and decided to raise this issue only after obtaining an adverse ruling from the undersigned. Indeed, he said nothing at all. That is, he said nothing while the Court continued to provide rulings that were favorable, partially favorable, or neutral to him.

But now the undersigned has made adverse sanctions recommendations against him for his repeated violations of Judge Moore's clear directive. And now, for the first time, Defendant raises the suggestion of the undersigned's bias and impartiality. "Certainly, where the facts are known before a legal proceeding is held, waiting to file such a motion until the court has ruled against a party is untimely." *Summers*, 119 F.3d at 921. That is exactly what has occurred here and the Eleventh Circuit has time and again found that such motions are untimely. *See Summers*, 119 F.3d at 921 ("Both Summers and his counsel were present when the circumstances underlying petitioner's motion arose. They did not raise the issue until after an adverse decision on the magistrate judge's report and recommendation had been entered. This was too late."); *Phillips*, 799 F.2d at 1472 (finding that motion to disqualify was untimely when the attorneys knew about the basis for the motion six to seven months before moving for recusal); *Slay*, 714 F.2d at 1094 (concluding that a motion under § 455(a) was untimely when the defendant's counsel knew about

the facts that he contended supported the recusal motion prior to the hearing on the motion to suppress but did not raise them); *see also Lawrence v. Goldberg*, No. 06-CV-21952, 2006 WL 8442960, at *3 (S.D. Fla. Oct. 30, 2006) (concluding that the plaintiff waived recusal arguments raised under §§ 144 and 455(a) when the plaintiff had filed a number of motions over a period of two years after learning of the facts upon which the recusal was based).

Importantly, "Congress did not enact [§] 455(a) to allow counsel to make a game of the federal judiciary's ethical obligations." *Delesdernier,* 666 F.2d at 121. The Court has a duty "to preserve the integrity of the statute by discouraging bad faith manipulation of its rules for litigious advantage." *Id.* In fulfilling that duty now, the Court will not allow Defendant to sit back and take no action when he agrees with a ruling and then exercise veto power when a ruling is not to his liking. That is not the purpose of §§ 144 or 455(a). To find otherwise would allow for manipulation of the judiciary. Under the circumstances presented here, the Court concludes that Defendant's Motion is untimely.

In an effort to circumvent the untimeliness of the Motion, Defendant contends the Court failed to make a full disclosure about the circumstances of the undersigned's relationship with Mrs. Lazopoulos Friedman and Plaintiff's counsel. Specifically, Defendant states the disclosures were incomplete because they did not explain that: (1) the undersigned and Mrs. Lazopoulos Friedman "jointly prosecuted and tried at least one federal criminal jury trial;" (2) that Mrs. Lazopoulos Friedman "served on the Merit Selection Panel that recommended nominees for a magistrate judgeship in this District;" (3) that Mrs. Lazopoulos Friedman "spoke at the Court's investiture;" (4) that the undersigned and "the Friedman household served together in recurring leadership roles and have interacted in non-bar related social events;" and (5) that the undersigned, Mrs. Lazopoulos Friedman, and Mr. Burstyn "served together on a District committee during the

pendency of this litigation." *See* ECF No. [253] at 18. The undersigned will address each purported non-disclosure, all of which were either covered by the disclosure made nearly one year ago or are simply a red herring.

Regarding the first alleged non-disclosure, Defendant contends the undersigned failed to explain that Mrs. Lazopoulos Friedman and the undersigned jointly prosecuted two cases, including a federal criminal jury trial in 2022. This, however, falls within the undersigned's disclosure that she worked "together" with Mrs. Lazopoulos Friedman as Assistant United States Attorneys for a five-year period. *See* ECF No. [78] at 3. When the undersigned made the disclosure in this case, it was not because Mrs. Lazopoulos Friedman was a former co-worker but because she is a friend. Yet, in making the disclosure, the Court deemed it appropriate for completeness to explain that the relationship is both personal and professional. The mere appearance of a former co-worker as counsel of record in a case is not grounds for recusal, much less the appearance of a former co-worker's spouse. It bears noting that the role of the Magistrate Judge includes handling of criminal matters regularly. Most of the Magistrate Judges in the Southern District of Florida are former Assistant United States Attorneys or former Assistant Federal Public Defenders and their former co-workers appear before them routinely in criminal matters. Their status as former co-workers does not trigger a disclosure or recusal obligation. If that were the case, the judiciary's criminal case load would come to a grinding halt as the Magistrate Judges would be forced to recuse every time a former co-worker appeared before them in duty court.

Indeed, "reasonable well-informed observers understand that judges were previously practicing attorneys and that they may have worked for various law firms during their career" — in this case, the United States Attorney's Office. *Liberty Mut. Ins. Co. v. Com. Concrete Sys.,*

*LLC*, No. 16-CV-658-MW/CAS, 2017 WL 1234140, at *4 (N.D. Fla. Apr. 1, 2017); *see also Huff v. Standard Life Ins. Co.*, 683 F.2d 1363, 1370 (11th Cir. 1982) (finding no abuse of discretion in judge's decision not to recuse because that judge's former association with and partnership in the law firm representing the defendant "does not create the same risk of impartiality found in *Potashnick*"[5] or "jeopardize the image of our judicial system"). Here, the undersigned's work with Mrs. Lazopoulos Friedman (who again is married to counsel of record but is not a lawyer in this case) at the U.S. Attorney's Office would not be a basis to recuse. As a result, the mere fact that the undersigned did not specify that, when they worked together, they prosecuted two cases together does not impact the recusal analysis and does not otherwise cure the untimeliness of Defendant's Motion.

Next, Defendant contends that the undersigned should have disclosed that Mrs. Lazopoulos Friedman was a speaker at her investiture. This also falls within the scope of the Court's September 30, 2026 disclosure when the Court explained twice that she was friends with Mrs. Lazopoulos Friedman. Defendant is correct that Mrs. Lazopoulos Friedman spoke at the undersigned's investiture, and in doing so, she discussed the undersigned's time at the U.S. Attorney's Office. Her speaking role at the investiture was in her capacity as a former co-worker and friend, and the undersigned disclosed the friendship and work relationship nearly one year ago, so this argument does not remedy the untimeliness of Defendant's Motion.

But even if this information was newly discovered and the Court then takes Defendant's argument that a friendship requires recusal to its logical conclusion, then Defendant is suggesting that judges must live in a silo, isolated from the world without any professional, community, or

[5] The Eleventh Circuit explained that, in *Potashnick*, the trial judge participated with defense counsel in outside business ventures, was personally represented by defense counsel, and the judge's family retained a relationship with the judge's former law firm. *Id.* at 136-70. None of those factors were present in *Huff*.

personal relationships with other members of the bar. That is not objectively reasonable nor is that the reality of the world we live in. As the Seventh Circuit Court of Appeals observed:

> In today's legal culture friendships among judges and lawyers are common. They are more than common; they are desirable. A judge need not cut himself off from the rest of the legal community. Social as well as official communications among judges and lawyers may improve the quality of legal decisions. Social interactions also make service on the bench, quite isolated as a rule, more tolerable to judges. Many well-qualified people would hesitate to become judges if they knew that wearing the robe meant either discharging one's friends or risking disqualification in substantial numbers of cases. Many courts therefore have held that a judge need not disqualify himself just because a friend—even a close friend—appears as a lawyer.

*United States v. Murphy*, 768 F.2d 1518, 1537–38 (7th Cir. 1985) (citing *In re United States,* 666 F.2d 690 (1st Cir.1981); *Parrish v. Board of Comm'rs,* 524 F.2d 98 (5th Cir.1975) (en banc); *Merit Ins. Co. v. Leatherby Ins. Co.,* 714 F.2d 673, 680 (7th Cir.), *cert. denied,* 464 U.S. 1009, (1983)). Indeed, in *Parrish*, the former Fifth Circuit Courts of Appeals considered whether a judge's acquaintanceship or friendship with some of the defendants and all of the defendants' counsel required recusal under §§ 144 and 455(a). 524 F.2d at 102-104. Analyzing the issue first under § 144, the appellate court concluded that the movant's affidavit failed to show any personal bias or prejudice under § 144 because a judge's "acquaintance with some of the defendants and counsel, has been rejected as a basis for requiring the disqualification of a trial judge." *Id.* at 102. And in affirming the judge's decision not to recuse under § 455(a), it explained: "The allegation of lack of impartiality stemming from [the judge's] acquaintanceship or friendship with witnesses and defense counsel is likewise tenuous. It does not exceed what might be expected as background or associational activities with respect to the usual district judge." *Id.* at 104. Thus, courts have recognized that it is not uncommon for judges to have friendships with lawyers in the community and that, in and of itself, does not rise to the level of a § 144 or § 455(a) recusal.

Defendant cites to *In re Creech*, 119 F.4th 1114 (9th Cir. 2024) to support his contention that Mrs. Lazopoulos Friedman's role at the undersigned's investiture requires recusal. However, Defendant's reliance on *In re Creech* is misplaced. In that case, an inmate on death row filed a civil rights lawsuit in federal court in which he claimed the prosecutors committed prosecutorial misconduct and violated his constitutional rights. *Id.* at 1118-19, 1123. In doing so, the plaintiff sued a prosecutor, in her official capacity, who had previously worked as a co-clerk with the presiding district judge and who spoke at the district judge's investiture years later. *Id.* at 1124. The Ninth Circuit explained the district judge's "longstanding friendship with [the prosecutor] is not grounds for recusal because a matter under [the prosecutor's] supervision has come before" the trial judge. *Id.* Rather, the grounds for recusal were because the district judge "may be called upon to make judgments about [the prosecutor's] personal involvement—and thus her personal and professional reputation. . . ." *Id.* None of those facts are present here. Mrs. Lazopoulos Friedman is not counsel of record in this case, much less a party to this lawsuit. The Court will not be called upon to make any judgments regarding Mrs. Lazopoulos Friedman either as a party, witness, or lawyer.

And unlike the district court in *Creech*, the undersigned here did not minimize her friendship or suggest it was in the past. Rather, the disclosure used present-tense language to convey that the friendship is ongoing, explaining: "I *am* friends with Mr. Friedman's wife. . . . my friendship *is* with Mr. Friedman's wife." *See* ECF No. [78] at 3 (emphasis added). By contrast, the undersigned used past-tense language to describe her work with Mrs. Lazopoulos Friedman at the U.S. Attorney's Office because that working relationship was in the past. But nothing about the disclosure suggested the friendship was limited to the past. Under the circumstances present here, not only is Defendant's Motion untimely but, even if it were timely, a reasonable observer

would not find that a judge's friendship with a lawyer's spouse creates any inference of bias or impartiality.

Defendant's remaining arguments are even less availing. Defendant next argues that because the undersigned and "the Friedman household served together in recurring leadership roles and have interacted in non-bar related social events," *see* ECF No. [253] at 18, referring to the undersigned's membership at Temple Beth Am and involvement in the synagogue's Mitzvah Day, there is an appearance of lack of impartiality or bias. To put matters into context here, Temple Beth Am is one of the largest, if not the largest, Jewish congregation in all of South Florida with more than 1,800 families as members. The mere fact that the undersigned is a member of the same synagogue as the Friedman family does not warrant disclosure. The undersigned does not track — and is not required to track — every lawyer or their spouse who is a member of Temple Beth Am for disclosure purposes. Nor is the undersigned privy, as a general matter, to such information.

The Court will next provide necessary context for Defendant's suggestion that the undersigned was required to disclose that she and the Friedmans were Mitzvah Day Captains at the synagogue. Mitzvah Day is an annual day of service at Temple Beth Am where the Chairs of Mitzvah Day work on selecting service projects for the community. As Mitzvah Day Captains, the undersigned and her husband were assigned to oversee the execution of a specific service project, consisting of a clean up at Deering Estate. In doing so, the undersigned communicated with those individuals who signed up through the synagogue's website to volunteer for that specific service project and then the undersigned participated with those volunteers at that service project on Mitzvah Day. To coordinate the Deering Estate clean up, the undersigned did not work with the Mitzvah Day Captains for other projects, including the Friedmans. The only time Mitzvah Day participants for other projects interact with one another is at the optional breakfast held at

Temple Beth Am on Mitzvah Day, which takes place immediately before the service projects begin. The photograph attached to Defendant's affidavit is exactly that. It is a photograph at one of the Mitzvah Day breakfasts in which the undersigned interacted with Mrs. Lazopoulos Friedman, who was accompanied by her husband. Again, this interaction would be covered by the undersigned's September 30, 2025 disclosure, stating: "I am friends with Mr. Friedman's wife." *See* ECF No. [78] at 3-4. Because that is what friends do. They chat when they run into each other at an event — in this case, the Mitzvah Day breakfast. No specific disclosure was needed to identify this specific breakfast interaction.[6] It was covered by the disclosure of "friendship."

Next, Defendant contends the Court should have disclosed that Mrs. Lazopoulos Friedman served on the Court's Merit Selection Panel for various Magistrate Judge vacancies, including the one the undersigned was selected to fill. This is a red herring. As a reminder, Mr. Friedman, who *is* counsel of record, has not served on the Merit Selection Panel to the undersigned's knowledge. Rather, it is his wife who Chief Judge Cecilia M. Altonaga appointed to serve on the Merit Selection Panel. Based on the Court's review of Chief Judge Altonaga's Administrative Orders, it appears that Mrs. Lazopoulos Friedman has served on the Merit Selection Panels for the last five Magistrate Judges in Miami as well as on the Merit Selection Panel for the Reappointment of another Magistrate Judge in Miami. Again, taking Defendant's argument to its logical conclusion, Defendant would require six of the currently sitting Magistrate Judges to disclose and potentially recuse every time that Mrs. Lazopoulos Friedman or Mr. Friedman appeared as counsel of record before them simply because she was a member of the Merit Selection Panel that ultimately led to

---

[6] In the Motion, Defendant also lists Mr. Friedman's involvement in Temple Beth Am to suggest some other tenuous connection with the undersigned. The undersigned does not serve and has not served on the board of Temple Beth Am, has only ever served a role as Mitzvah Day Captain at the synagogue, and is not aware of what other roles Mr. Friedman has served or is currently serving. Again, the congregation is very large. The undersigned does not keep track of what role different congregants serve within the synagogue.

their appointment. Presumably then, these purported disclosure and recusal considerations would apply each time any member of the Merit Selection Panel (or their spouses) appeared before a Magistrate Judge who was appointed during that selection process. Such a requirement would deter any lawyer in our community from volunteering their time to serve on the Merit Selection Panel if their mere participation would deprive them of the opportunity to represent their clients and appear before the federal judiciary. Put simply, there is no requirement for this sort of disclosure and no reasonable, objective observer would find that the participation of a panel member in a case as a lawyer, much less their spouse, would create an appearance of bias or impartiality.

Finally, Defendant contends the undersigned should have disclosed her service on the Jewish American Heritage Month Committee on which Mrs. Lazopoulos Friedman and Mr. Burstyn also serve. However, the Court is not required to disclose every professional committee or bar organization in common with an attorney appearing before it, much less the spouse of an attorney appearing before the Court. The District Court has numerous committees in which both federal judges and members of the Bar serve and volunteer their time to serve the Court. For context, the Jewish American Heritage Month Committee is a committee of 15 federal judges and 27 lawyers appointed by Chief Judge Altonaga that meets virtually a few times a year and once in person to plan a speaking event dedicated to honoring Jewish American Heritage Month. Members of the Bar would be deterred from participating in and volunteering their time on one of the District Court's committees alongside federal judges if that meant they could not appear before any judges on those committees (the Jewish American Heritage Month Committee alone has 15 federal judges on it). Likewise, judges would be deterred from participating in any committees if that meant they would have to recuse each time a lawyer on a common committee appears before him or her,

regardless of whether the judge actually knows the lawyer or interacts with that lawyer on the committee. Indeed, participation on one of the District Court's committee's with other members of the Bar "does not exceed what might be expected as background or associational activities with respect to the usual . . . judge," *Parrish*, 524 F.2d at 104, and would therefore not be a basis for recusal under §§ 144 and 455(a). No reasonable observer would believe that the undersigned could not be impartial or unbiased simply because of her common appointment to the Jewish American Heritage Month Committee with Mrs. Lazopoulos Friedman and Mr. Burstyn. But regardless of whether this common committee membership could trigger a disclosure obligation, the undersigned already disclosed her "friendship" with Mrs. Lazopoulos Friedman, which is a much broader disclosure than common membership on a professional committee. Thus, the Motion seeking to disqualify the undersigned remains untimely.[7]

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Recuse and/or Disqualify Magistrate Judge Marty Fulgueira Elfenbein, **ECF No. [253]**, is **DENIED**.

[7] Defendant also contends that the undersigned's Report and Recommendations on Plaintiff's Motion for Sanctions would lead a reasonable person to believe there is an appearance of bias or impartiality. "To disqualify a judge under § 455(a), the bias 'must stem from extrajudicial sources, unless the judge's acts demonstrate such pervasive bias and prejudice that it unfairly prejudices one of the parties.'" *United States v. Berger*, 375 F.3d 1223, 1227 (11th Cir. 2004) (quoting *United States v. Bailey,* 175 F.3d 966, 968 (11th Cir.1999)). "[A]dverse rulings alone do not provide a party with a basis for holding that the court's impartiality is in doubt." *Id.* (quoting *Byrne v. Nezhat,* 261 F.3d 1075, 1103 (11th Cir. 2001) (alterations in original)). Here, the Court has already explained above that Defendant's other arguments are untimely and even if they were timely, they would not be a basis to recuse. This leaves only Defendant's argument regarding the purported bias and partiality in the undersigned's Report and Recommendations. Defendant is, of course, free to disagree with the Report and Recommendations and file objections for Judge Moore's consideration in his ultimate ruling. That is Defendant's right. But his disagreement with the undersigned's findings on Plaintiff's Motion for Sanctions, standing alone, is not a basis for a finding of bias or partiality.

**DONE and ORDERED** in Chambers in Miami, Florida on September 11, 2026.

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc: All Counsel of Record