**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:25-cv-20251-KMM

FONTAINEBLEAU FLORIDA
HOTEL, LLC,

Plaintiff,

v.

JACOB SHMUEL BOTACH, *et al.*,

Defendants.
_____________________________________/

**ORDER ON REPORT AND RECOMMENDATION**

THIS CAUSE came before the Court upon Magistrate Judge Marty Fulgueira Elfenbein's Report and Recommendation on Plaintiff Fontainebleau Florida Hotel, LLC's ("Plaintiff") Motion for Sanctions ("R&R"). (ECF No. 233). Therein, Magistrate Judge Elfenbein recommends that Plaintiff's Motion for Sanctions (the "Motion" or "Mot.") (ECF No. 208) be granted in part and denied in part. *See generally* R&R. This Court referred the Motion to Magistrate Judge Elfenbein to "take all necessary and proper action as required by law" on June 11, 2026. (ECF No. 211). Defendant Jacob Shmuel Botach ("Defendant") filed Objections to the R&R ("Obj.") (ECF No. 239), while Plaintiff filed a Response to Defendant's Objections ("Resp.") (ECF No. 242). As set forth below, the Court ADOPTS the R&R.

## I. BACKGROUND

Magistrate Judge Elfenbein provided a thorough factual and procedural overview in her R&R. R&R at 1–8. This Court nevertheless provides a brief background here, highlighting only the facts most pertinent to the Court's disposition of Plaintiff's Motion.

This case primarily concerns statements Defendant has made regarding Plaintiff on his social media accounts. Defendant was involved in a verbal altercation in Plaintiff's hotel lobby, where a man approached him and used "heinous" language, accused Defendant of being a "baby

killer," and used "other words that are easily interpreted as antisemitic." ("FAC" or "First Amended Complaint") (ECF No. 12) ¶ 28; (ECF No. 149) ¶ 8. Plaintiff alleges that Defendant "in turn, hurled anti-Islamic words at the registered guest and repeatedly shouted, 'Allahu Akbar? Are you going to blow yourself up or something?'" FAC ¶ 28. In the days following the incident, Defendant posted repeatedly about the incident on social media. (ECF No. 157-1) ¶¶ 23–29. Plaintiff eventually filed suit as a result of these posts on January 16, 2025. *See generally* (ECF No. 1). In the operative pleading, Plaintiff brought suit for counts related to defamation and tortious interference with business relationships. FAC ¶¶ 65–122. Defendant also filed a Counterclaim and Third-Party Complaint, where he asserted claims under federal civil rights statutes and brought his own claim for tortious interference with business relationships. *See generally* (ECF No. 40).

The story of this case is impossible to tell without discussing the Parties' toxic communications and inability to comply with the Southern District of Florida's Local Rule requiring parties act in good faith. *See, e.g.*, (ECF No. 85); (ECF No. 128); *see also* S.D. Fla. L.R. 7.1(a). Both this Court and Magistrate Judge Elfenbein have repeatedly admonished the Parties and, in particular, been confronted with Defendant's consistent desire to both publicize the happenings of this litigation and publicly invoke Plaintiff and Plaintiff's counsel in increasingly inflammatory ways. Notably, this is not the first Motion for Sanctions in this case. Defendant acquired footage of the subject incident on March 26, 2025, and began posting excerpts of it on his social media accounts. *See* (ECF No. 61) at 3–4. This did not violate any Court order. Magistrate Judge Elfenbein entered a Protective Order that the Parties had jointly requested on April 9, 2025. *See* (ECF Nos. 31–32). This Protective Order provided that materials produced by nonparties were to be automatically treated as being for "Outside Counsel Eyes Only" for thirty days. (ECF No. 32) ¶ 19. Additionally, it barred public dissemination of material marked for

"Outside Counsel Eyes Only." *Id.* ¶¶ 31, 34. Nevertheless, Defendant posted surveillance footage of the incident on his social media incidents again on April 10, 2025—one day after the Protective Order was entered. *See* (ECF No. 61) at 3.

The surveillance footage was eventually designated as "Highly Confidential," which meant that under the Protective Order, it was only to be accessed by designated persons and was not to be publicly disseminated. *Id.* Nevertheless, Defendant again violated the Protective Order, posting the footage on his social media accounts on September 17, 2025. *Id.* at 5–6. Plaintiff moved for sanctions on September 24, 2025. *See generally id.* Magistrate Judge Elfenbein granted that motion in part, awarding Plaintiff reasonable attorney's fees and costs but declining to grant more severe sanctions. *See generally* (ECF No. 130). She determined that Defendant had violated the Protective Order and explained that Defendant could not unilaterally decide that a Court order does not apply to him. R&R at 4–5 (citing (ECF No. 130) at 9–14).

This was nowhere near the only example of problematic communications originating from Defendant and his counsel. For example, Magistrate Judge Elfenbein referred one of Defendant's attorneys (who has since withdrawn) to the Ad Hoc Committee on Attorney Admissions, Peer Review, and Attorney Grievance after the attorney sent Plaintiff's counsel an outrageous email comprising "a three-page non-sensical rant." (ECF No. 85) at 5–7. Therein, he demanded $100 million from Plaintiff and made many disparaging remarks towards both Plaintiff and Plaintiff's counsel. *Id.* at 5–6. Because Defendant's other attorneys quickly advised that neither they nor Defendant himself had authorized this disparaging email, the Court took no specific action against Defendant at the time.

The Court has been forced to confront Defendant's own social media posts on many occasions. For example, Plaintiff presented the Court with evidence that Defendant had repeatedly rescheduled and cancelled depositions because his physical condition made it difficult for him to

travel, all while posting content on his social media showing him engaged in physical activity such as ice skating, kayaking, and bicycling. *See* (ECF Nos. 118, 121). Then, in response to Defendant's Motions to Continue Trial and for Extension of Time to Serve Third-Party Defendants, (ECF Nos. 119–20), Plaintiff provided the Court with evidence of Defendant's extensive online harassment campaign against both Plaintiff and its counsel. *See generally* (ECF No. 123). This evidence included, but was not limited to, posts from Defendant allegedly stating: "that Plaintiff is responsible for violent antisemitic attacks elsewhere in Miami Beach"; "that [Plaintiff's] counsel is implicated in the Epstein files and attacking Plaintiff on the basis of the claim that its counsel bears personal responsibility for the suicide of an Epstein victim"; and "that Plaintiff and its counsel are Nazi sympathizers[.]" *Id.* at 14 (citations omitted). Defendant also "post[ed] a family photo of [Plaintiff's counsel] and his wife online." *Id.* at 15. Plaintiff included many other examples of Defendant's harassing posts. *See* (ECF No. 123-4).

In responding to Defendant's motions and this mountain of evidence of harassing conduct, the Court issued a Paperless Order (the "Subject Order") on February 20, 2026. *See* (ECF No. 125). Therein, the Court denied Defendant's motion for a continuance, noting that "in light of the toxic communications between the Parties, especially Defendant's online communications," it was time to resolve the case rather than allow Defendant's conduct delay resolution. *Id.* Further, the Court denied Defendant's motion for additional time to serve third-party defendants, finding that Defendant had shown neither good cause nor diligence justifying an extension. *Id.* Finally, and most notably here, the Court stated:

> [T]he Court is deeply disturbed by Defendant's conduct, both in terms of its continued social media attacks aimed at Plaintiff and its counsel, as well as Defendant's attempt to effect service at an address he knew to belong to [third-party defendant Jeffrey Soffer's] child. The Court DIRECTS Defendant to cease such harassing conduct and social media references to Plaintiff and its counsel during the course of this litigation.

*Id.* Plaintiff's counsel emailed Defendant's attorneys that day, quoting the Subject Order and requesting it be immediately communicated to Defendant. (ECF No. 219-1) at 2–5. One of Defendant's attorneys confirmed that defense counsel would speak with Defendant about the Subject Order. *See generally id.*; (ECF No. 219-2).

Perhaps unsurprisingly, Defendant continued to post social media content that referenced both Plaintiff and Plaintiff's counsel. Plaintiff identified these posts, occurring between February 26, 2026, and May 28, 2026, as violations of the Subject Order. *See generally* (ECF No. 208). For example, on May 24, 2026, Defendant posted once again connecting Plaintiff's counsel to Jeffrey Epstein and rhetorically asking what role Plaintiff's counsel played in the suicide of one of Epstein's victims. *Id.* at 3. Plaintiff identified numerous other posts where Defendant either directly or indirectly referenced Plaintiff, including accusing it of antisemitism and its billionaire owner of using his money and influence to undermine the fairness of these legal proceedings. *See generally id.* Plaintiff moved for sanctions pursuant to Federal Rule of Civil Procedure 16 and the Court's inherent authority on May 29, 2026. *Id.* Therein, Plaintiff argued that Defendant's violations were willful violations of Court orders, evidencing disregard that justified the imposition of the most severe sanctions. *See generally id.* Accordingly, Plaintiff requested that the Court strike Defendant's affirmative defenses, enter default judgment, dismiss Defendant's counterclaims with prejudice, award attorneys' fees, and order Defendant to show cause why he should not be held in contempt. *Id.* at 21.

This Court referred Plaintiff's Motion to Magistrate Judge Elfenbein, who issued her R&R on July 29, 2026 following full briefing, including a sur-reply from Defendant. *See generally* (ECF No. 233). Therein, she recommends granting Plaintiff's Motion in part and imposing sanctions under Federal Rule of Civil Procedure 16(f). In particular, she recommends striking Defendant's answer and affirmative defenses, entering default judgment, dismissing Defendant's

counterclaim with prejudice, and awarding reasonable attorneys' fees and expenses. *See generally id.*

Now, the Court reviews Magistrate Judge Elfenbein's R&R and Defendant's objections thereto.

## II. LEGAL STANDARD

The Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). The Court "must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). A *de novo* review is therefore required if a party files "a proper, specific objection" to a factual finding contained in the report. *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006). "It is critical that the objection be sufficiently specific and not a general objection to the report" to warrant *de novo* review. *Id.*

Yet when a party has failed to object or has not properly objected to the magistrate judge's findings, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *See Keaton v. United States*, No. 14-21230-CIV, 2015 WL 12780912, at *1 (S.D. Fla. May 4, 2015); *see also Lopez v. Berryhill*, No. 17-CV-24263, 2019 WL 2254704, at *2 (S.D. Fla. Feb. 26, 2019) (stating that a district judge "evaluate[s] portions of the R & R not objected to under a clearly erroneous standard of review" (citing *Davis v. Apfel*, 93 F. Supp. 2d 1313, 1317 (M.D. Fla. 2000))).

## III. DISCUSSION

As set forth in the R&R, Magistrate Judge Elfenbein concludes that sanctions are warranted, including the striking of Defendant's pleadings and the entry of default judgment. *See generally* R&R. In reaching that conclusion, she first finds that the Subject Order was an enforceable Court order that can serve as the basis for sanctions under Rule 16(f). *Id.* at 29–34.

Next, Magistrate Judge Elfenbein finds that Defendant repeatedly and willfully violated the Subject Order through his social media posts. *Id.* at 34–40. In addition to analyzing social media posts Plaintiff identified in its Motion, Magistrate Judge Elfenbein also considers Defendant's potentially violative social media content posted after the Motion was filed; she finds that these posts, made on June 11 and June 12, 2026, also violated the Subject Order. *Id.* at 40–41. Finally, Magistrate Judge Elfenbein concludes that Defendant's misconduct is willful and that lesser sanctions than the striking of pleadings, default judgment, and dismissal would not suffice. *Id.* at 41–45. Therefore, Magistrate Judge Elfenbein recommends the striking of Defendant's Answer and Affirmative defenses, the dismissal with prejudice of his counterclaims, and the entry of default judgment as to liability on Plaintiff's well-pleaded claims. *Id.* at 45.

In response, Defendant objects that the R&R denied Defendant a fair opportunity to address Plaintiff's First Amendment arguments that were first raised in Plaintiff's Reply. *See* Obj. at 7–8. Further, Defendant argues that the R&R relies on Rule 16 as the basis for sanctions even though the Subject Order was not issued under Rule 16. *Id.* at 8–9. Next, Defendant argues that the R&R improperly considered his other violations of Court orders in determining that the posts at the center of this instant R&R were "willful violations warranting severe sanctions." *Id.* at 11. Defendant also argues that the Subject Order was not a blanket ban on all social media references to Plaintiff or its counsel; rather, it bars only harassing references to Plaintiff. *Id.* at 11–12. Therefore, Defendant argues that the R&R adopted a mistakenly broad reading of the Subject Order that creates First Amendment issues and would bar even innocuous references to Plaintiff. *Id.* at 12–13. Because the R&R did not adopt the correct reading of the Subject Order, it also fails to find that any of Defendant's posts were harassing such that they would violate Defendant's proper interpretation of the Subject Order. *Id.* at 13–14. Next, Defendant argues that the R&R is incorrect both in finding his violations willful and in recommending such severe sanctions where

lesser ones have already secured compliance. *Id.* at 14–15. Finally, Defendant makes a series of shorter objections: that the R&R relies on cases based on the Court's inherent authority to sanction while relying on Rule 16 to justify sanctions; that he had neither notice nor an opportunity to be heard before severe sanctions were imposed; and that the R&R was wrong to infer that monetary sanctions might be ineffective because an insurer would pay such sanctions for Defendant. *Id.* at 15–16.

Plaintiff filed a series of responses to Defendant's objections. *See generally* Resp. First, Plaintiff argues that, even if the Court adopts Defendant's narrower reading of the Subject Order, it can still find that Defendant violated the Subject Order, justifying sanctions. *Id.* at 3–4. Next, Plaintiff argues that each of Defendant's remaining objections are meritless. For example, Plaintiff argues that Defendant was not deprived of due process when he was apparently precluded from briefing his First Amendment arguments in the sur-reply Magistrate Judge Elfenbein allowed him to file. *Id.* at 4–5. The same is true, Plaintiff argues, as to Defendant's argument that a hearing was warranted. *Id.* at 5–6. Plaintiff also argues that Defendant himself invoked Rule 16 in the Motion underlying the Subject Order, so Defendant is wrong to argue that the Subject Order, which rules on motions to amend the trial schedule and to allow Defendant more time to serve third-party defendants, was not issued under Rule 16. *Id.* at 6–8. Next, Plaintiff argues that Defendant is wrong to argue the Court should not consider his earlier conduct and violations of other orders in weighing what sanction to give here. *Id.* at 8–10. Further, Plaintiff argues that Defendant's violations of the Subject Order are not permitted under any interpretation of the Subject Order, even if the Subject Order should otherwise be reversed. *Id.* at 10–11. Plaintiff also argues that the R&R correctly determined Defendant's violations to be willful, given Defendant's testimony that he intended to influence the litigation and his pattern of misconduct. *Id.* at 12–13. Next, Plaintiff argues that the Court has tried lesser sanctions which were ultimately unsuccessful, so the Court

is right to impose the most severe sanctions at this juncture. *Id.* at 13–17. Finally, Plaintiff argues that the Court can also impose the same sanctions under its inherent authority to do so, without reliance on Rule 16. *Id.* at 17–20.

The Court will review the R&R's findings and Defendant's objections thereto in turn.

**A. Interpretation of the Subject Order**

Defendant contends that the R&R adopted a mistakenly broad reading of the Subject Order that would run afoul of the First Amendment and that this overly broad reading led to Magistrate Judge Elfenbein incorrectly finding Defendant's posts violated the Subject Order. Obj. at 11–14. Specifically, Defendant argues that the Subject Order at least is reasonably read to reach only harassing references, and that the R&R's failure to specifically find that any posts were harassing is fatal. *Id.* at 12–13. If the Subject Order actually covers not just harassing references to Plaintiff and its counsel, but all social media references to the same, then Defendant argues the Subject Order is unconstitutional. *Id.*

As an initial matter, the Court notes that Defendant's contentions that the Subject Order might have been unconstitutional are immaterial to the Court's analysis of sanctions. Regardless of whether a court's order is constitutional, parties are required to follow said order until it is reversed or modified. *See GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*, 445 U.S. 375, 386 (1980) (explaining that parties subject to a court order issued by a court with jurisdiction "are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order"); *In re Novak*, 932 F.2d 1397, 1400 (11th Cir. 1991) ("It is well established that an order duly issued by a court having subject-matter jurisdiction over a case or controversy before it, and personal jurisdiction over the parties to that case or controversy, must be obeyed, regardless of the ultimate validity of the order."). "Disobedience of an invalid court may [even] be punished as criminal contempt." *In re Novak*, 932 F.2d at 1401; *see Maness v. Meyers*, 419

U.S. 449, 458–59 (1975). In fact, "orders of the court 'must be obeyed until reversed by orderly review or disrobed of authority by delay or frustration in the appellate process.'" *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1208 (11th Cir. 1985) (quoting *United States v. Dickinson*, 465 F.2d 496, 509 (5th Cir. 1972)) (emphasis in original). The proper remedy for an apparently incorrect order is judicial review. *Id.* (citing *In re Grand Jury Proceedings*, 601 F.2d 162, 168–69 (5th Cir. 1979)). An exception lies where compliance with a court order results in the "irrevocable and permanent surrender of a constitutional right," although the Supreme Court has "emphatically rejected the suggestion that an individual may disregard a court order simply because [it] interfered with . . . his exercise of First Amendment Rights." *Id.* (citations and internal quotations omitted). Therefore, Defendant's arguments regarding the validity of the Subject Order are not relevant to the decision of whether to sanction him for violating said Order.[1]

Next, the Court turns to the proper interpretation of the Subject Order. Magistrate Judge Elfenbein finds that the Subject Order was clear in ordering Defendant to refrain from two distinct categories of conduct: (1) harassing conduct and (2) social media references to Plaintiff and its counsel. R&R at 32–33. She also finds that the Subject Order is an order issued under Rule 16. *Id.* at 29–30. She notes that her analysis is not changed by the Court using the word "directed" rather than "ordered." *Id.* at 30–32. Defendant objects, arguing that the R&R's reading of the Subject Order is incorrect and that the Court had actually directed Defendant to refrain from *harassing* social media references. Obj. at 11–12. Defendant also argues that the R&R incorrectly relies on Rule 16 as a basis for sanctions when the Subject Order was not actually issued under Rule 16. *Id.* at 8–11.

[1] The Court further analyzes Defendant's arguments as to the vacatur of the Subject Order in a forthcoming order.

Reviewing *de novo*, the Court finds that Magistrate Judge Elfenbein's interpretation of the Subject Order is the correct one. As the Court who issued the Subject Order, this Court "is in the best position to interpret its own orders." *Cave v. Singletary*, 84 F.3d 1350, 1355 (11th Cir. 1996) (quoting *Matter of Chicago, Rock Island & Pac. R.R. Co.*, 865 F.2d 807, 810–11 (7th Cir. 1988)). The District Court intended to bar Defendant from making social media references to Plaintiff and its counsel during the pendency of this litigation, as the Court had become (and continues to be) "extremely disturbed by Defendant's conduct [] in terms of its continued social media attacks aimed at Plaintiff and its counsel[.]" (ECF No. 125). Therefore, Defendant's social media references to Plaintiff and its counsel following the Subject Order would each be violations of the Subject Order. The Court of course has discretion in fashioning a sanction depending on the nature of Defendant's violations. *See Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1542 (11th Cir. 1993) (explaining Federal Rules of Civil Procedure "give district judges broad discretion to fashion appropriate sanctions").

As for Defendant's objections to the R&R's finding that the Subject Order should be analyzed under Rule 16, the Court finds that many of these arguments are raised for the first time in the objections and thus should be disregarded. *See generally* (ECF No. 214); *see* Obj. at 8 (arguing for the first time using canons of statutory interpretation). The Eleventh Circuit has stated that a "district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge." *Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009). In any case, the Court finds that even upon *de novo* review, Magistrate Judge Elfenbein was correct to interpret the Subject Order as being issued under Rule 16.

As Magistrate Judge Elfenbein explained in her prior Sanctions Order in this case, Rule 16(f) is "a broad case-management sanctions hook extending beyond purely 'scheduling orders' to other pretrial directives." (ECF No. 132) at 6–7; *see also Goforth v. Owens*, 766 F.2d 1533,

1535 (11th Cir. 1985) (explaining that courts can use Rule 16(f) to sanction disregard of court orders and that the rule was "designed to punish lawyers and parties for conduct which unreasonably delays or otherwise interferes with the expeditious management of trial preparation"). In the Subject Order, the Court ruled on two motions that are clearly encompassed by Rule 16, as they sought to amend the scheduling order and for additional time to serve third-party defendants. Further, the Court made clear that "Defendant's [toxic] online communications" made it important to timely resolve this matter. *See* Subject Order. Under *Goforth*, the Subject Order (including the portion ordering Defendant to cease social media references to Plaintiff and its counsel) is clearly encompassed by Rule 16(f), because it intended to prevent unreasonable delay and interference with the expeditious management of trial preparation. 766 F.2d at 1535.

In as much as Defendant argues that the R&R was wrong to find the Subject Order was sufficiently clear and definite to be the basis for sanctions, the Court analyzes this argument for clear error because Defendant only cursorily and generally raises it in his objections. *See* Obj. at 12; *see also Keaton*, 2015 WL 12780912, at *1. The Court finds there is no clear error in Magistrate Judge Elfenbein's finding that the Subject Order was sufficiently clear and definite to be the basis for sanctions. Even upon *de novo* review, the Court finds that its language in the Subject Order clearly barred Defendant from making social media references to Plaintiff and its counsel. *See Consumer Fin. Prot. Bureau v. Brown*, 69 F.4th 1321, 1330 n.15 (11th Cir. 2023) ("As a starting principle, district courts are not required to hold a litigant's hand and guide him through the basics[.]").

Finally, the Court finds that any arguments from Defendant that the Subject Order was not actually an order because it used the word "directs" instead of "orders" are clearly frivolous. The Court agrees with Magistrate Judge Elfenbein's finding that there is no basis in the law for treating these words in a meaningfully different way. R&R at 30–32. Therefore, the Court concludes the

following: the Subject Order did indeed order Defendant to cease making social media references to Plaintiff and its counsel during the course of this litigation; the Subject Order is of the sort encompassed by Rule 16(f); and any of Defendant's attempts to skirt sanctions based off arguments that the Subject Order is itself unlawful are inapposite and inapplicable under existing legal standards.

**B. Whether Defendant's Posts Violated the Subject Order**

Magistrate Judge Elfenbein finds that Defendant violated the Subject Order many times over. R&R at 34–41. She finds specifically that social media posts from each of the following days violated the Subject Order: February 26, 2026; March 10, 2026; March 11, 2026; March 16, 2026; March 24, 2026; March 28, 2026; May 24, 2026; May 28, 2026; June 11, 2026; and June 12, 2026. *Id.* Defendant largely does not object specifically to Magistrate Judge Elfenbein's findings that these posts violated the Subject Order, as he instead relies on the aforementioned arguments that Magistrate Judge Elfenbein misinterpreted the Subject Order. Obj. at 12–14.

The lone exception is Defendant's May 24, 2026 post, which he claims was not posted intentionally. Obj. at 6. Defendant argues that both he and his assistant "submitted unrebutted declarations establishing that a revised version of the post was originally made in November 2025, before the Order, and that an old draft was inadvertently reposted on May 24, 2026 along with other prior posts, caused by technical irregularities[.]" *Id.* The post at issue states the following:

> How many times will Fontainebleau and Jeffrey Soffer attorney SeanBurstyn appear in Epstein files? Burstyn sued @Netflix to destroy Epstein's most famous victim @VirginiaGuiffre, who accused, Qatar apologist and OJ Simpson lawyer, Alan Dershowitz of rape six times. Although Guiffre later, under a legal assault, said she may have made an error, she killed herself in April, orphaning her three children. What role did attorneys like SeanBurstyn play in pushing her over the edge as they incessantly called a liar? Burstyn # is now the attorney for lizzysavetsky, who defended antisemitism Fontainebleau (for a fee? She refuses to answer). And Burstyn and Savetsky are now suing the world's leading Jewish media for $5 million for daring to ask how many millions Lizzy has made "defending Israel". Burstyn, is the reason that 84% of Americans believe that attorneys are scumbags.

(ECF No. 208-2). Defendant argues that the post was made in error when his assistant was synchronizing his accounts on a new cell phone. Obj. at 6 (citing (ECF No. 214-2)). The Court finds that this argument, raised in affidavits by both Defendant and his assistant, is not credible. As for Defendant, the self-serving nature of the affidavit combined with his record of misrepresentations during this litigation, *see, e.g.*, (ECF No. 121), make his statements lack credibility. As to the assistant's affidavit, the Court determines that the post remaining up on Defendant's social media account for weeks weighs against finding the affidavit credible. (ECF No. 214-2) at 5. Further working against Defendant is that the post accusing Plaintiff's counsel of appearing in the Epstein files was posted within hours of his posting another violative post on social media. *See* (ECF Nos. 208-2; 208-11).

The Court finds that clear error review would be appropriate here, as Defendant's reference to this post in his Objections is brief and appears in the factual background rather than in his actual objections. *See generally* Obj.; *see also id.* at 6. Magistrate Judge Elfenbein did not clearly err in determining that Defendant's post, which accuses through implication Plaintiff's counsel of contributing to the suicide of one of Epstein's victims, violated the Subject Order. Further, even upon *de novo* review, the Court finds that Defendant's arguments as to the inadvertency of the posting are not credible and that his post violates the Subject Order.

The Court also finds no clear error with Magistrate Judge Elfenbein's finding that both of Defendant's May 24, 2026 posts—the other of which accuses Plaintiff's counsel of intimidating and silencing Defendant, (ECF No. 208-11)—violate the Subject Order not just by referencing Plaintiff and its counsel, but by constituting harassment as well. R&R at 39 ("[The May 24, 2026 posts] therefore violated both components of the District Court's [Subject Order]."). Defendant does not object to this finding, instead mistakenly arguing that Magistrate Judge Elfenbein did not find any of his conduct or social media posts to be harassing. Obj. at 13.

Finally, as mentioned, Defendant does not object to Magistrate Judge Elfenbein's findings that his social media posts referenced Plaintiff and its counsel, as he instead focused on evaluating her interpretation of the Subject Order. *See generally id.* Therefore, the Court evaluates Magistrate Judge Elfenbein's finding that each post violated the Subject Order for clear error, and finds no clear error. Indeed, each of the posts Magistrate Judge Elfenbein analyzed violated the Subject Order by referencing Plaintiff and/or its counsel.

The Court takes this time to highlight Defendant's posts from June 11 and June 12, 2026, as particularly egregious violations of the Subject Order that constitute both harassing conduct and social media references to Plaintiff's attorney. Defendant repeatedly posted that Plaintiff's attorney committed extortion, intimidation, and witness tampering. (ECF No. 219-4) at 2. In these posts, Defendant avers that Plaintiff's attorney should "stop billing hours and start interviewing criminal defense lawyers." *Id.* These posts stand out to the Court because Defendant posted them *after* Plaintiff had already moved for sanctions. *Id.*; *see generally* Mot. (filed on May 29, 2026). The temerity Defendant evidenced in posting them while simultaneously briefing why he should not be sanctioned, *see* (ECF No. 14) (filed on June 12, 2026), would strain credulity if not for the Court's familiarity with Defendant's conduct throughout the course of this litigation and with Defendant's numerous other violations of the Subject Order.

**C. Willfulness of Defendant's Conduct**

Next, the Court turns to Magistrate Judge Elfenbein's finding that Defendant willfully disregarded a clear judicial command. R&R at 41–43. Magistrate Judge Elfenbein finds that Defendant knew of the Subject Order but continued to violate it with many posts over many days in the subsequent three months. *Id.* at 41–42. His pattern of violations was "inconsistent with negligence or misunderstanding." *Id.* at 42. She further notes that Defendant's prior violations of a Court order show he has been specifically put on notice about the significance of an order and

that sanctions result from failing to follow an order. *Id.* at 42 (citing (ECF No. 130)). This history "further undermine[d] any suggestion that the present violations resulted from inadvertence or misunderstanding." *Id.* at 42–43 (citing *Malautea*, 987 F.2d at 1542–44). Finally, Magistrate Judge Elfenbein notes that Defendant's arguments regarding his "desire to further [advocacy against antisemitism] do[] not give him a license to disregard the [Subject Order]." *Id.* at 43 n.4. Defendant objects, arguing that a willfulness finding "cannot rest on an order whose scope is genuinely disputed[.]" Obj. at 14. Further, he argues that the May 24, 2026, duplicate post should not be considered, and that the willfulness finding cannot depend on Defendant's compliance (or lack thereof) with prior unrelated orders. *Id.*

The Court already found that Defendant's contentions regarding the May 24, 2026 post were not credible. More importantly, Magistrate Judge Elfenbein explicitly finds that Defendant's violations would be considered willful "[e]ven if [she] accepted [his] explanation" for the post, as he "still intentionally published numerous other videos and posts on social media that refer to Plaintiff or its counsel "following the entry of the [Subject Order], following the meet and confer on the [Motion], and even during the briefing period on the [Motion]." R&R at 42. Therefore, this objection is overruled.

Next, the Court considers Defendant's objection that his violations could not have been willful as the scope of the Subject Order was genuinely disputed. Even if Defendant's interpretation of the Subject Order as barring only harassing references was correct, the Court has already found that Defendant's May 24, 2026 posts and June 11 and June 12, 2026 posts constituted harassment. So even if the scope and meaning of the Subject Order was genuinely disputed, Defendant would be violating the Subject Order under either interpretation. Therefore, Defendant's final objection is overruled.

Finally, as for Defendant's objection that Magistrate Judge Elfenbein was wrong to consider his lack of compliance with prior unrelated orders, courts have long considered a party's pattern of noncompliance in assessing willfulness. *See Goforth*, 766 F.2d at 1535 (explaining that district court could dismiss action under Rule 16(f) based on attorney's "pattern of delay" and failure to comply with various court orders); *Omaha Indian Tribe, Treaty of 1854 with U.S. v. Tract I-Blackbird Bend Area*, 933 F.2d 1462, 1468–69 (8th Cir. 1991) (explaining that "pattern of noncompliance with court orders" supported a finding of willfulness justifying case-terminating sanctions), *cert. denied*, 502 U.S. 942 (1991). Therefore, this objection is also overruled. The Court agrees with Magistrate Judge Elfenbein's decision to consider the course of Defendant's conduct throughout the litigation. The Court finds that Defendant's repeated violations of Court orders and the Court's repeated needed to admonish Defendant to stop delaying litigation through dilatory conduct and toxic communications each weigh towards a finding of willfulness. *See, e.g.*, (ECF No. 82) at 3 n.1 ("[T]he Court is substantially troubled by the Parties' apparent inability to agree on matters that are necessary to move the case along."); (ECF No. 121) ("The Court is deeply disturbed by this trend, and cautions Defendant that sanctions, potentially including the striking of Defendant's pleadings, will be issued if this trend continues."); (ECF No. 128) (finding unconvincing Defendant's explanations for social media posts that showed him engaging in physical activity while using back pain as reason for delaying depositions); (ECF No. 130) (sanctioning Defendant for violating a Court order).

The Court finds there is no clear error with Magistrate Judge Elfenbein's remaining, unobjected to findings as to willfulness.

**D. Consideration of Lesser Sanctions**

Next, the Court considers Magistrate Judge Elfenbein's finding that lesser sanctions than the case-terminating sanctions she recommends would not suffice. R&R at 43–45. Defendant

objects, arguing that the sanctions are far too harsh because lesser sanctions have produced compliance. Obj. at 14. Further, Defendant argues that he was not warned that violating the Subject Order could draw terminating sanctions. *Id.* at 15. Defendant argues that the R&R relies on case law where courts imposed sanctions based on their inherent authority, rather than on Rule 16(f). *Id.* Defendant also argues that he was not provided fair notice or a hearing, and that the R&R's reliance on an inference that insurance would pay any monetary fines is misplaced. *Id.* at 16.

Addressing Defendant's main objection regarding lesser sanctions, the Court finds upon *de novo* review that lesser sanctions would not work to rein in Defendant's willful and contumacious disregard for this Court's orders.[2] "When lesser sanctions would be ineffective, Rule 37 does not require the vain gesture of first imposing those ineffective lesser sanctions." *Malautea*, 987 F.2d at 1544. The Court has tried warning Defendant repeatedly that compliance with Court orders is not optional. It has also repeatedly told Defendant that his dilatory tactics risk severe sanctions. *See* (ECF No. 121) ("The Court . . . cautions Defendant that sanctions, potentially including the striking of Defendant's pleadings, will be issued if this trend [of relying on misrepresentations to delay taking a deposition and delay trial] continues."); (ECF No. 132) at 15 (warning Defendant that, "if the circumstances [so warrant,]" the Court will not hesitate to impose sanctions, including dismissal of the action, striking of pleadings, or rendering default judgment). Neither approach has yielded compliance. Notably, even when confronted with the instant Motion

[2] In considering Defendant's pattern of violating Court orders while feigning incredulity that he could be accused of such a thing, the Court is reminded of the Australian comedian James Donald Forbes McCann, who joked: "Fool me once, shame on you. Fool me twice, shame on me. Fool me three times, it's twice as much shame on me. . . . Fool me four times? Shame back on you actually, you are picking on a vulnerable man." James Donald Forbes McCann, *Fool Me Once*, at 0:00–0:48 (YouTube Aug. 14, 2021) https://www.youtube.com/watch?v=udSMZG_L-S0. While the comedian's routine goes on to explain the implications of being fooled more and more times, the Court stopped being surprised by Defendant long ago and no longer opens itself up to be fooled into giving him grace again.

that seeks case-terminating sanctions, Defendant continued violating the Subject Order with some of his most egregious violations to date. *See* (ECF No. 219-4) at 2. Given its extensive experience with Defendant, which includes experiencing first-hand his discomfort with following Court orders and his comfort with making misrepresentations to the Court, the Court is confident that the imposition of lesser sanctions "would be ineffective" and the exact sort of "vain gesture" that the Federal Rules of Civil Procedure do not require. *Malautea*, 987 F.2d at 1544. To wit, Magistrate Judge Elfenbein imposed a $15,000 award of attorney's fees on Defendant when she previously sanctioned Defendant. *See* (ECF Nos. 130, 164). This award did little to deter Defendant from finding new ways to violate the Court's orders or from harassing Plaintiff and its attorney.[3]

Threats of greater sanctions and financial sanctions have both been attempted. The Court has tried the carrot. Now, faced with a party who is "repeatedly and stubbornly defiant" and who has zero indicia of someone who plans to comply with Court orders such that the case can be orderly resolved, the Court must try the stick. *See Moon v. Newsome*, 863 F.2d 835, 839 (11th Cir. 1989) (finding that routine and stubborn defiance justifies the imposition of dismissal as a sanction). Therefore, the Court finds upon *de novo* review that lesser sanctions would not suffice.[4]

---

[3] Many of Defendant's social media attacks imply that Plaintiff and its counsel are attempting to bully Defendant out of litigating this case and defending himself in the face of antisemitism. *See, e.g.*, (ECF No. 219-4) at 2. The Court takes the opportunity to identify the irony of these accusations when the same can be said of Defendant's social media posting during the course of this litigation. For example, some of Defendant's online harassment that led to the Subject Order to begin with include posting a photo of Plaintiff's attorney and his wife online and referring to Plaintiff's attorney as attacking "Epstein sex slave Virginia Giuffre who killed herself." *See* (ECF No. 123) at 15.

[4] In so finding upon *de novo* review, the Court relies on case law where courts imposed sanctions using Rule 16 and Rule 37 as their bases for sanctions. The Court also finds that monetary sanctions would not suffice regardless of who is paying them; therefore, Defendant's objection regarding Magistrate Judge Elfenbein's reliance on insurance paying for any monetary sanctions is moot.

In as much as Defendant objects that he did not have enough of an opportunity to be heard, the Court notes that Defendant filed a response to Plaintiff's Motion. (ECF No. 214). Defendant was also given the opportunity to file a sur-reply in opposition to the Motion. (ECF No. 226).

### E. Defendant's Other Objection

Defendant's final objection is that the R&R is based on a procedure that deprived him of a fair opportunity to address the First Amendment, because Magistrate Judge Elfenbein's Order allowing Defendant to file a sur-reply in opposition to Plaintiff's Motion limited his sur-reply to "addressing the new factual materials and evidence submitted with Plaintif's Reply and supplemental declaration." Obj. at 7–8; (ECF No. 225).

The Court overrules this objection for three reasons. First, Defendant was the first party to invoke the First Amendment in the briefing related to the instant Motion. *See* (ECF No. 214) at 16. Therefore, Plaintiff's references to the First Amendment are properly replying to that invocation. *United States v. Orisnord*, No. 24-12778, 2025 WL 2505051, at *3 (11th Cir. Sep. 2, 2025) ("[A] reply cannot be used to add new arguments and is limited by the scope of the response." (citing S.D. Fla. L.R. 7.1(c))). Second, "[a] district court's decision to permit the filing of a surreply is purely discretionary[.]" *First Specialty Ins. v. 633 Parts., Ltd.*, 300 F. App'x 777, 788 (11th Cir. 2008). Thus, Magistrate Judge Elfenbein was not required to allow a sur-reply of any scope. Finally, Defendant's arguments regarding the First Amendment are fully briefed in connection with his Motion to Vacate the Subject Order. *See* (ECF No. 221). In any case, as established, the extent to which the Subject Order complied with the First Amendment does not

---

Defendant also was allowed to file his Objections to Magistrate Judge Elfenbein's R&R. (ECF No. 239). This is ample opportunity to respond before any final order was entered, and the Court finds that an in-person hearing would not have further aided its adjudication of the instant Motion. Further, Defendant never requested a hearing on the Motion. *See generally* (ECF No. 214).

Finally, Defendant's objection that he was never specifically warned his violations of the Subject Order could lead to such severe sanctions does not move the Court. For one, Magistrate Judge Elfenbein did warn Defendant about the sanctions he could face if he violated Court orders. (ECF No. 130) at 15. Further, even after Plaintiff put Defendant on notice of his intent to file the instant Motion and after Plaintiff filed the Motion, indicating he was seeking case-terminating sanctions, Defendant was not deterred in any way from continuing to violate the Subject Order. Therefore, the Court overrules this objection.

impact Defendant's obligation to follow that order; therefore, his First Amendment argumentation that was left out of the sur-reply would have been irrelevant to the Court's adjudication of the Motion for Sanctions. *See Kleiner*, 751 F.2d at 1208. As such, Defendant's final objection is overruled.

### F. Magistrate Judge Elfenbein's Other Findings

Because the remainder of Magistrate Judge Elfenbein's R&R is not objected to, the Court reviews it for clear error. *Keaton*, 2015 WL 12780912, at *1. The Court finds there is no clear in the remainder of Magistrate Judge Elfenbein's R&R. As such, the Court adopts the R&R in full.

## IV. CONCLUSION

Accordingly, UPON CONSIDERATION of the R&R, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED as follows:

1. Magistrate Judge Elfenbein's R&R at (ECF No. 233) is ADOPTED;
2. Defendant's Answer and Affirmative Defenses at (ECF No. 69) are STRICKEN;
3. Defendant's Counterclaim at (ECF No. 40) is DISMISSED WITH PREJUDICE;
4. Default judgment is entered against Defendant as to liability on Plaintiff's First Amended Complaint at (ECF No. 12);
5. Plaintiff's Motion for Sanctions at (ECF No. 208) is GRANTED IN PART as explained above, and DENIED IN PART in as much as Plaintiff requests the Court invoke its inherent authority to sanction or initiate separate contempt proceedings;
6. Plaintiff's Motion to Dismiss Counterclaims and Third-Party Claims at (ECF No. 80) is DENIED AS MOOT;
7. The trial to determine damages is hereby reset to the two-week period beginning February 22, 2027, at 9:00 AM in the Miami Division; calendar call in this matter

is hereby reset for February 18, 2027, at 2:00 PM in the Miami Division; the final pretrial conference is hereby reset for February 9, 2027, at 11:00 AM in the Miami Division;

8. The Parties' pretrial motions at (ECF Nos. 146–47, 152–55, 157–58, 196) are DENIED WITHOUT PREJUDICE because they are likely to be greatly impacted by this Order. The Parties' new deadline to file such pretrial motions is December 10, 2026;
9. The Parties may conduct discovery limited to damages for an additional thirty (30) days from the date of this Order, as this Order impacts the scope of the case. The Parties are reminded that discovery issues in this case have been referred to Magistrate Judge Elfenbein, (ECF No. 5);
10. Plaintiff's Motion for Limited Extension of Pretrial Deadline for Fact Discovery Relating to Punitive Damages at (ECF No. 207) is DENIED AS MOOT;
11. Non-Party Chubb Insurance Company of New Jersey's Motion to Intervene for the Limited Purpose of Submitting Jury Instructions and Special Interrogatory Verdict Addressing Factual Issues Relating to Insurance Coverage at (ECF No. 166) is DENIED WITHOUT PREJUDICE because it is likely to be greatly impacted by this Order. Should Chubb Insurance Company seek to renew its same Motion to Intervene, it shall file a notice indicating as much on the docket within twenty-one (21) days of this Order. Defendant is ORDERED to serve Chubb Insurance Company with a copy of this Order and file a notice of compliance indicating that he has done so within two (2) business days of this Order being filed;
12. Plaintiff's Motion to Strike at (ECF No. 102) is deemed unopposed because Defendant never filed a response to it, despite being granted an extension to do so.

*See* (ECF No. 112); *see also* S.D. Fla. L.R. 7.1(c)(1) (explaining that failure to file an opposition to a motion "may be deemed sufficient cause for granting the motion by default). Accordingly, Plaintiff's Unopposed Motion to Strike at (ECF No. 102) is GRANTED and the references to Defendant's December 6 letter at (ECF Nos. 40, 88, 88-3, 92) are hereby STRICKEN;

13. Defendant's Motion for Leave to File a Limited Reply or, Alternatively, to Disregard or Strike New and Unsupported Assertions at (ECF No. 249) is DENIED, as the Court has discretion on whether to allow Parties to file a reply in support of objections to a report and recommendation. *See Berene v. Nationstar Mortgage, LLC*, No. 14-61153-Civ, 2017 WL 10775869, at *1 n.1 (S.D. Fla. Mar. 16, 2017) (explaining that Federal Rules of Civil Procedure do not provide for the filing of a reply in support of objection a report and recommendation, but granting leave to do so). The Court finds that a reply from Defendant would not have been helpful. Further, the Court did not weigh the allegations Defendant sought to rebut;
14. The Court will adjudicate Defendant's Motion to Vacate the Subject Order, (ECF No. 221), by separate Order and in due course.

DONE AND ORDERED in Chambers at Miami, Florida, this 17th day of September, 2026.

K. M. Moore
K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

c: All counsel of record