**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:25-cv-20251-KMM

FONTAINEBLEAU FLORIDA
HOTEL, LLC,

Plaintiff,

v.

JACOB SHMUEL BOTACH, *et al.*,

Defendants.
_______________________________________/

**ORDER**

THIS CAUSE came before the Court upon Defendant Jacob Shmuel Botach's ("Defendant") Motion to Vacate, in part, the Court's February 20, 2026 Paperless Order Restricting Defendant's Speech. ("Mot." or the "Motion") (ECF No. 221). Therein, Defendant requests that the Court vacate the portion of its prior Paperless Order where it directed Defendant to "cease . . . social media references to Plaintiff and its counsel during the course of this litigation." (the "Subject Order") (ECF No. 125). Plaintiff Fontainebleau Florida Hotel, LLC ("Plaintiff" filed a Response in Opposition to Defendant's Motion, ("Resp.") (ECF No. 232), while Defendant filed a Reply in Support of his Motion, ("Reply") (ECF No. 234). The Motion is now ripe for review.

The Court presumes the Parties' familiarity with the factual and procedural background in this matter, each of which are detailed extensively in the Court's Order Adopting Magistrate Judge Marty Fulgueira Elfenbein's Report and Recommendation, ("R&R Order") (ECF No. 261), and in Magistrate Judge Elfenbein's Report and Recommendation, (ECF No. 230). In the R&R Order, the Court adopted Magistrate Judge Elfenbein's recommendation that Defendant be sanctioned pursuant to Rule 16(f) of the Federal Rules of Civil Procedure. *See generally* R&R Order. In

doing so, the Court dismissed Defendant's counterclaims, struck his pleadings, and entered default judgment against Defendant based on his repeated violations of the Subject Order. *See generally id.* The Court explained that it would reach Defendant's arguments regarding the constitutionality of the Subject Order at a later time, as the question was irrelevant to the adjudication of how to sanction Defendant for violating said order. *Id.* at 9–10; *see GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*, 445 U.S. 375, 386 (1980) (explaining that parties subject to a court order issued by a court with jurisdiction "are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order"); *In re Novak*, 932 F.2d 1397, 1400 (11th Cir. 1991) ("It is well established that an order duly issued by a court having subject-matter jurisdiction over a case or controversy before it, and personal jurisdiction over the parties to that case or controversy, must be obeyed, regardless of the ultimate validity of the order."). Now, the Court turns to Defendant's arguments regarding vacating the Subject Order.

Defendant argues that vacatur of the Subject Order's ban on social media references to Plaintiff and its counsel is necessary because the ban is a gag order that runs afoul of the First Amendment by being overly broad, vague, and implemented without the Court making prerequisite factual findings as to its constitutionality. *See generally* Mot. The Court here holds that it should have made explicit factual findings on the record before barring Defendant from referencing Plaintiff and its counsel on social media. The Court takes this opportunity to explicitly find that restrictions on Defendant's social media communications regarding Plaintiff are justified because his communications (1) have a reasonable likelihood of prejudicing the right to a fair trial and (2) evidence an attempt to use harassment to induce Plaintiff to abandon this dispute. Further, the Court takes the opportunity to partially narrow its bar on Defendant's references to Plaintiff and its counsel.

Federal courts have the inherent power to "police those appearing before them." *Chambers v. NASCO Inc.*, 501 U.S. 32, 46 (1991). Courts are vested with this power so they can "manage their own affairs" and "achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962). Under this power, courts may impose gag orders restraining Parties' speech where the injury to the First Amendment right is outweighed by the injury to the Seventh Amendment right to a fair trial. *See Bailey v. Sys. Innovation, Inc.*, 852 F.2d 93, 97–98 (3d Cir. 1988) (explaining that "fairness in a jury trial, whether criminal or civil in nature, is a vital constitutional right"). While the Eleventh Circuit has not specifically weighed in on how to balance these rights, this Court finds that the proper standard to use when restricting the speech of trial participants (as opposed to non-participating media) is judging whether there is a reasonable likelihood that the restricted speech would prejudice the right to a fair trial. *See In re Russell*, 726 F.2d 1007, 1010–11 (4th Cir. 1984) (finding that proscription of parties' extrajudicial statements was justifiable where there was a reasonable likelihood of prejudice to the right to a fair trial); *United States v. Tijerina*, 412 F.2d 661, 666–67 (10th Cir. 1969) (same); *see also The News-Journal Corp. v. Foxman*, 939 F.2d 1499, 1515 n.10 (11th Cir. 1991) (acknowledging circuit split and declining to address whether district court was wrong to apply the "reasonable likelihood" standard).

The Court notes that while prior restraints must overcome extreme scrutiny, "[t]here is no reason the recurrent harassing conduct of a party in pursuit of a settlement may not be enjoined." *Lewis v. S.S. Baune*, 534 F.2d 1115, 1122 (5th Cir. 1976) ("Parties certainly do not have a right to obtain a settlement through duress, harassment, or overbearing conduct[.]"). Further, the

Constitution "affords judges broader authority to regulate the speech of trial participants."[1] *United States v. Trump*, 88 F.4th 990, 1005 (D.C. Cir. 2023); *see also Bailey*, 852 F.2d at 97–98 (applying gag rule analysis from criminal cases to civil cases based on Seventh Amendment).

Applying these principles, the Court finds that Defendant's commentary on social media had a substantial likelihood of prejudicing a fair trial. The Court first notes that because default judgment has been entered, Defendant has admitted Plaintiff's well-pleaded allegations of fact in the First Amended Complaint. *See* (ECF Nos. 12, 261); *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987). The First Amended Complaint details Defendant's efforts to get Plaintiff to donate one million dollars to Defendant's organization in exchange for his promise to "de-escalate his campaign of harassment[.]" (ECF No. 12) ¶ 6. Defendant's former attorney renewed the attempts to demand money from Plaintiff, sending an inflammatory email where he demanded $100 million be tendered to Defendant, all the while referencing Florida's lack of civil extortion statute. *See* (ECF No. 65-3) at 86–88. Although Defendant's other attorneys quickly disclaimed this email on behalf of themselves and Defendant, the Court references the email for the purpose of reminding the Parties that attempts to bully Plaintiff into settling have characterized the Parties' relationship. Indeed, Plaintiff explains that Defendant is well-versed in making extortionate demands—"pay now or the defamatory actions will continue"—and uses the proceeds to fund "his

[1] Defendant's Motion largely, albeit not exclusively, relies on a standard applicable to restricting the speech of media entities who are not parties to the case. *See, e.g.*, Mot. at 5 (citing *Nebraska Press Ass'n v Stuart*, 427 U.S. 539, 558–59 (1976)); *id.* at 6 (citing *Slivka v. Young Men's Christian Ass'n of the Pikes Region*, 390 F. Supp. 3d 1283, 1286 (D. Colo. 2019)). However, the Court agrees with the Fifth Circuit that an important distinction exists between trial participants and the press. *United States v. Brown*, 218 F.3d 415, 427 (5th Cir. 2000); *Foxman*, 939 F.2d at 1512–13 (explaining that the Supreme Court considers limiting the speech of trial participants to be a less restrictive alternate than a prior restraint on the media). The Court also agrees with Plaintiff that the relevant communications are Defendant's private posts. (ECF No. 232) at 13–14 (citing (ECF No. 157-34) at 374:11–12).

international enterprise." (ECF No. 12) ¶ 25. Plaintiff also details another attempt by Defendant to bully Plaintiff out of filing suit and into payment: it states that Defendant repeatedly organized and re-organized a "giant rally" outside of Plaintiff's hotel, repeatedly postponing said rally to "continue[] a demand for payments from [Plaintiff]." *Id.* ¶ 59. To facilitate these pressure campaigns, Defendant relies on social media posts to his accounts with hundreds of thousands of followers. *Id.* ¶ 12.

While the First Amended Complaint concerns Defendant's social media commentary from before this litigation commenced, the posts Defendant has made during the course of this litigation are innumerable, and many are clear attempts to bully Plaintiff and its counsel into dropping their involvement with this action. For example, on June 11 and June 12, 2026, Defendant repeatedly posted that Plaintiff's attorney committed extortion, intimidation, and witness tampering, and that he should "stop billing hours" so he could start interviewing criminal defense lawyers. (ECF No. 219-4) at 2. This sort of post explicitly urges Plaintiff to stop litigating this action. By repeatedly re-posting it, Defendant clearly attempts to get as many eyes on the posts as possible. In doing so, he maximizes two threats to a fair jury trial: poisoning a jury pool and attempting to use public pressure to intimidate Plaintiff out of litigating. *See In re Russell*, 726 F.2d at 1011 (considering the impact of further extrajudicial commentary on prospective jurors (citing *Nebraska Press*, 427 U.S. at 563)); *Fredin v. Middlecamp*, No. 18-cv-00466, 2020 WL 6867424, at *7 (D. Minn. Nov. 23, 2020) ("The First Amendment does not entitle a litigant to publish baseless, inflammatory remarks disparaging opposing counsel or judicial officers in an effort to harass them into conceding favorable settlement terms or judicial decisions."), *aff'd*, 855 F. App'x 314 (8th Cir. 2021); *Blum v. Schlegel*, No. 91-cv-633S, 1996 WL 925921 (W.D.N.Y. May 9, 1996) (explaining

that litigation tactics like harassment and attempts to intimidate the Court and counsel "eviscerate[] the Court's ability to fairly adjudicate [] on the merits").

Defendant has also repeatedly attempted to associate Plaintiff's attorney with Jeffrey Epstein, and has on numerous occasions associated Plaintiff's counsel with the suicide of one of Jeffrey Epstein's victims. *See* (ECF No. 123-4); (ECF No. 208-2). Such posts further serve as examples of attempts to get Plaintiff's counsel to withdraw his representation of Plaintiff. The same is true of Defendant's post that includes a photo of Plaintiff's counsel with his wife and calls Plaintiff a "traitor to the Jewish people." *See* (ECF No. 123) at 14 n.6. Further, Defendant's many posts implying that Plaintiff has in some way bribed this Court are threats to the judicial process. (ECF No. 102) at 3. Perhaps most notably, Defendant posted on May 28, 2026, that "Trial against 'that Hotel' in Miami Begins. [Defendant] will absolutely defeat the antisemitism deniers. We need your support." Resp. at 6. The Court finds that in doing so, Defendant made explicit what was already obvious: his social media posts are an attempt to influence the local populace such that Plaintiff is deprived of a fair trial. The Court does not need to guess at the intent behind Defendant's posts, as he specifically spoke to his intent during a deposition:

> I would like to hold them accountable so that they begin to re-examine their actions. And instead of paying you for another four hours some other time to further harass me, then maybe they would -- by seeing some of these posts, that maybe they would start saying, "You know, we've been reading what he's saying, and we don't know our hotel strategy anymore. Like, what is our strategy?" Like, why don't we shut this down and say we're sorry and train our security to protect Jews? Or we can continue to fight . . . . I'm not trying to drive traffic there at all. If anything, I would like them to rethink their actions.

(ECF No. 157-134) at 398:15–399:14.

The Court finds that Defendant's posts about Plaintiff and its counsel have a reasonable likelihood of prejudicing Plaintiff's access to a fair trial for the following reasons: (1) Defendant is attempting to intimidate and harass Plaintiff into dropping its case; (2) Defendant is attempting

to intimidate and harass Plaintiff's counsel into withdrawing;[2] (3) Defendant is hell-bent on making sure his posts reach as many people as people, based on the volume of his posts and the breadth of his following; and (4) in doing so, Defendant not only threatens a fair trial by wielding his following as a way to threaten Plaintiff and its counsel, but he also risks tainting the jury pool. The Court is satisfied that its inquiry and findings support the implementation of a gag order. *In re Russell*, 726 F.2d at 1011 (finding that the weighing of factors "unknown and unknowable" is necessary and can support the implementation of a gag order). The Court makes its decision "[i]n light of [Defendant's] demonstrated enthusiasm for using [social media] to [his] utmost advantage," which necessitates this "prophylactic attempt to avoid prejudicing" the trial in this case. *Brown*, 218 F.3d at 431.

Next, the Court moots Defendant's remaining arguments, regarding overbreadth, vagueness, and less restrictive alternatives. Mot. at 11–14. It does so by reshaping the order going forward. In light of Defendant's repeated violations of the Subject Order, including through harassing references to Plaintiff and its counsel, *see* (ECF No. 261), the Court finds that no less restrictive measure than a gag order on Plaintiff's social media will ensure a fair trial by avoiding both poisoning of the jury pool and attempts to bully Plaintiff and its counsel out of involvement with this case.

Accordingly, UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND

---

[2] Courts have recognized that even threatening to refer opposing counsel to attorney discipline committees is "an abusive litigation tactic." *Strong v. Wilson*, No: 18-cv-237, 2020 WL 133324, at *4 (E.D. Wis. Jan. 13, 2020). Here, Defendant threatened to refer Plaintiff's counsel to law enforcement. This is clearly more severe and is the sort of abusive tactic that infects pretrial procedures and "interfere[s] egregiously" with the Court's proper adjudication of the case. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987).

ADJUDGED that Defendant's Motion at (ECF No. 221) is GRANTED IN PART. The Court ORDERS that, during the course of this litigation, Defendant shall refrain from publicly commenting on social media regarding the trial, Plaintiff, or its attorneys in a way that could interfere with a fair trial, as discussed in this Order. This includes, but is not limited to, the following: no longer using social media to bully and intimidate Plaintiff and its attorney; no longer posting on social media that Plaintiff's attorney is associated with the suicide of one of Jeffrey Epstein's victims; no longer posting any information associated with Plaintiff or Plaintiff's counsel's families; and no longer publicly threatening to turn Plaintiff's counsel into the authorities. Defendant is expressly not barred from referring to a decision or order of the Court that is a matter of public record. He is also not barred from referring, without elaboration or any kind of characterization,[3] to scheduling information. Further, references to the Plaintiff hotel that are entirely disconnected with this litigation, such as the one at (ECF No. 208-7), are not barred going forward.

DONE AND ORDERED in Chambers at Miami, Florida, this 18th day of September, 2026.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

c: All counsel of record

[3] The Court fashions this Order such that it can be consistent with one upheld by the Fifth Circuit. *See Brown*, 218 F.3d at 418–19.