UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 1:25-cv-20251-JTK

FONTAINEBLEAU FLORIDA HOTEL, LLC,
Plaintiff,

v.
JACOB SHMUEL BOTACH a/k/a
SHMULEY BOTEACH, et al.,
Defendants.
_______________________________________/

**DEFENDANT'S SUPPLEMENTAL MEMORANDUM OF LAW ADDRESSING WHY THE AI INFORMATION SOUGHT THROUGH THE FOUR PROPOSED SUBPOENAS FALLS OUTSIDE THE SCOPE OF DAMAGES DISCOVERY AND THE LACK OF RELATIONSHIP BETWEEN THE REQUESTED INFORMATION, MALICE AND THE STATUTORY CAP ON PUNITIVE DAMAGES**

Defendant submits this memorandum pursuant to the October 9, 2026 Order. ECF No. 281 at 5–6. The Court should sustain the objections to the proposed AI-provider subpoenas as drafted and apply the same limits to the overlapping Seventh Request for Production. The issue is whether these demands fall within the scope of "discovery limited to damages." ECF No. 261 at 22. The unresolved punitive amount permits discovery concerning punishment for the adjudicated wrong, not an unrestricted inquiry into Defendant's research or litigation conduct.

The amended complaint already alleges knowing falsity, deliberate fabrication, repeated publication, financial motive, and specific intent to harm. Plaintiff did not pursue AI discovery before the general discovery cutoff. But under the guise of "discovery limited to damages," Plaintiff seeks every responsive AI exchange concerning this litigation, the Hotel, Plaintiff's lawyers, every court order, and the judges. It reaches accounts associated with an expansively defined "Botach," without limiting production to his queries or

material used in the actionable publications. The Court should enforce the reopening order before requiring any production and independently preserve substantiated work-product objections.

## I. The proposed AI-provider subpoenas exceed the purpose for which discovery was reopened

Plaintiff knew from its own allegations that Defendant allegedly used artificial intelligence to create the challenged publications and acted with knowing falsity, financial motivation, and specific intent to harm. Those subjects were available for investigation during general discovery. The subsequent decision to reopen discovery for damages did not revive an unrestricted opportunity to investigate them. Nor does invoking "malice" or an exception to the punitive-damages cap establish that every private exchange about this lawsuit, its lawyers, its judges, or its orders bears on a remaining damages issue.

### A. The limited reopening of discovery limited to damages does not revive discovery that Plaintiff had ample opportunity to pursue

Rule 26(b)(1) makes discovery subject to court-ordered limitations. Separately, Rule 26(b)(2)(C)(ii) requires the Court to limit discovery when "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." That restriction applies even to otherwise relevant information. The October 9, 2026, Order confirms that the subsequent extension preserved the scope previously authorized at ECF No. 261. ECF No. 281 at 1–2. Pursuant to ECF 261, "[t]he Parties may conduct **discovery limited to damages** for an additional thirty (30) days from the date of this Order." ECF 261 at 22 (bold added). Plaintiff therefore must establish that the requested discovery is limited to damages.

The Eleventh Circuit's decision in *American Key Corp. v. Cole National Corp.*, 762 F.2d 1569, 1576–78 (11th Cir. 1985), supports enforcing that boundary. There, additional discovery was permitted concerning new matters disclosed in a later document production, but the plaintiff sought broader discovery concerning previously known witnesses and subjects. The court

affirmed the restrictions, observing that the plaintiff offered no explanation for failing to pursue discovery when the opportunity existed. *Id.* at 1578. Although *American Key* did not concern a damages-only reopening, its reasoning applies here: permission to investigate a defined subject does not reopen every previously available line of inquiry.

Plaintiff's First Amended Complaint identified the asserted use of AI in paragraphs 2, 10(e), and 112 and the alleged culpable mental states in paragraph 63. FAC, ECF No. 12. Plaintiff could have timely sought nonprivileged materials concerning creation of the alleged publications, identified the tools and accounts used, and pursued appropriate discovery concerning their dissemination. The need to investigate those subjects did not first arise when the pleadings were stricken. The Court should require Plaintiff to identify what prevented timely pursuit of the historical information, including any timely request that allegedly remained unsatisfied. An assertion that additional evidence *might* now strengthen Plaintiff's punitive presentation does not, by itself, establish diligence.

**B. A generalized search for hostility does not establish a remaining issue concerning malice**

Plaintiff's reliance on "malice" conflates distinct questions. To the extent Plaintiff invokes constitutional actual malice in defamation, the inquiry concerns knowledge of falsity or subjective reckless disregard for the truth of the challenged publication. *Turner v. Wells,* 879 F.3d 1254, 1273 (11th Cir. 2018). Personal hostility alone does not establish that state of mind. *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 666–68 (1989). Although motive can supply circumstantial evidence, the required connection is to the defendant's state of mind concerning the publication. Requests encompassing every exchange about a judge, court order, or litigation strategy do not acquire that connection merely because Plaintiff hopes to find angry or unfavorable language.

**1. The pleaded basis for knowledge of falsity defeats the asserted need for broad chatbot discovery**

Plaintiff's own pleading identifies a basis for proving knowledge of falsity that does not depend on Defendant's private chatbot inquiries. Paragraph 71 alleges that Defendant knew his statements were false because "he made them up completely" and because "his claims were about events in which he purported to have been personally involved." First Amended Complaint ("FAC"), ECF No. 12, ¶ 71. Paragraph 89 repeats that theory. Both paragraphs identify a concrete example: Defendant allegedly read a letter explaining the reason for his exclusion from the Hotel, deleted that explanation, and falsely represented that the Hotel excluded him because of his religion. FAC ¶¶ 71–73, 89–91. Paragraph 51 likewise attributes knowledge of falsity to Defendant's firsthand experience of Hotel security intervening and ending the Incident. Plaintiff thus alleges that Defendant knew the pertinent facts when he published the challenged statements, independently of anything he later asked or learned from a chatbot.

That theory permits proof through firsthand knowledge and the alleged fabrication itself. In *Cantrell v. Forest City Publishing Co.*, 419 U.S. 245, 252–53 (1974), the Supreme Court upheld a finding of knowing or reckless falsehood where a reporter purported to describe the plaintiff during a visit at which she was absent. Although *Cantrell* involved false-light invasion of privacy, it applied the constitutional actual-malice standard. Here, Plaintiff's theory identifies the incident, the letter, the alleged alteration, and the resulting publications as the sources of Defendant's asserted knowledge. Later chatbot research is unnecessary to establish that pleaded factual sequence.

The temporal focus of actual malice further shows that the AI discovery is beyond the scope of damages discovery. The inquiry concerns Defendant's subjective awareness of falsity when he published the challenged statement.

*Stern v. O'Quinn*, 253 F.R.D. 663 (S.D. Fla. 2008), is particularly instructive persuasive authority. The court recognized that post-publication investigation could have some relevance to actual malice, but characterized that relevance as minimal. Id. at 671–72. It nevertheless refused to compel protected post-publication investigative materials because the plaintiff failed to establish substantial need and undue hardship, emphasizing the availability of more probative contemporaneous information and alternative means of obtaining underlying facts. Id. at 685–87. Here, Plaintiff's own allegations identify such sources: Defendant's participation, the original and allegedly altered letter, and the publications themselves.

*Block v. Matesic*, 789 F. Supp. 3d 1131 (S.D. Fla. 2025), does not compel a different result. Block was a defamation-by-implication claim—a distinct species of defamation. The distinction matters because, in defamation by implication, the publication is literally true. So, the publisher's post-publication statements may be relevant and necessary to prove that the publisher intended (or knew) the statement to be false at the time of publication. Here, Plaintiff has already pleaded firsthand knowledge and deliberate fabrication, and the Court has confined the reopening to damages after the defendant's pleadings were stricken. The question is therefore what additional, proportional discovery is justified in that posture—not whether later evidence can ever illuminate earlier knowledge. *Block* supplies no basis to disregard the striking order, the limits of the reopening, or Rule 26(b)(3)'s separate requirements. Indeed, after considering the circumstantial evidence cumulatively, the order entered on summary judgment still found it insufficient to establish actual malice. *Block*, ECF No. 279, at 55–57. Here, Plaintiff's own pleaded account supplies the direct factual basis for the latter without requiring a search of Defendant's subsequent chatbot research.

Requests 2, 5, and 6 in the proposed AI subpoenas encompass all qualifying exchanges about the litigation, court orders, and the named judges. Requests 3 and 4 encompass exchanges about Plaintiff's counsel and Hotel personnel. Although the FAC alleges attacks on counsel and personnel as part of the campaign, an inquiry about a person involved in the case is not necessarily part of that campaign. Reading an order, exploring legal defenses, or preparing for a deposition does not itself constitute another defamatory publication or injury to the Hotel. Nor is an AI-generated response necessarily a statement Defendant believed or adopted. Plaintiff must connect the requested material to the actionable conduct; the subpoena's subject labels supply no such limitation.

*Stern v. O'Quinn*, 253 F.R.D. 663, 671–73, 680–81, 685–87 (S.D. Fla. 2008), is particularly instructive. In a defamation action, the court acknowledged that post-publication investigative materials might have some relevance to actual malice, yet refused to compel protected materials without substantial need and undue hardship. It distinguished discoverable underlying facts from the documents embodying litigation preparation. *Stern* did permit discovery of earlier investigative work placed affirmatively at issue as a defense and of material whose protection had been waived through disclosure.

### C. The statutory cap exceptions do not authorize the requested examination of chatbot history

Punitive entitlement, an exception to the statutory cap, and the amount of punishment are separate inquiries. Section 768.72(2), Florida Statutes, establishes the general requirement of intentional misconduct or gross negligence, proven by clear and convincing evidence. Section 768.73(1)(c) removes the cap only upon findings that Defendant specifically intended to harm Plaintiff at the time of injury and that his conduct actually harmed Plaintiff. Broad requests for AI discussions of counsel, judges, litigation, and court orders do not isolate those predicates.

The FAC expressly invokes the uncapped-damages theory in paragraph 63, alleging specific intent to harm Plaintiff and resulting harm; paragraph 112

identifies conduct allegedly designed to damage the Hotel's business relationships. Plaintiff cannot establish a need for renewed discovery merely by relabeling these existing allegations as a newly arising "cap" issue. The Court should first determine which statutory predicates are established by the well-pleaded facts admitted under its ruling. To the extent those predicates are resolved, another search solely to prove them is unnecessary. If a particular predicate remains unresolved, the Court should identify it and determine whether Plaintiff had an ample opportunity to pursue discovery on that issue when general discovery was open.

The time and target specified in section 768.73(1)(c) also matter. Hostility toward opposing counsel, displeasure with a judge, or frustration over an order does not by itself demonstrate a specific intent to harm the Hotel when the actionable injury occurred. A later admission can illuminate earlier intent, and later conduct may continue an actionable course of injury. But those possibilities require a factual connection; they do not justify collecting every responsive litigation-related conversation. A demand selected by references to lawyers and judges is materially broader than an inquiry into intent accompanying the publications that harmed Plaintiff.

The alternative exception in section 768.73(1)(b) is equally specific. It concerns conduct motivated solely by unreasonable financial gain, together with actual knowledge by the specified decisionmaker of the conduct's unreasonable danger and high likelihood of injury. Its higher ceiling is the greater of four times compensatory damages or $2 million. Evidence of generic hostility, litigation research, or account association does not itself address those requirements. Plaintiff's allegations of financial demands were already part of the FAC. FAC ¶¶ 6, 9, 63. Any further discovery under this exception must address an identified unresolved element of the alleged wrongful conduct, rather than use the existence of an exception as a basis for unrestricted production.

Definitions 7 and 8 compound the absence of a statutory connection. "Botach" includes persons sharing access or equal rights to a financial or banking account; "Botach Account" extends to accounts associated through shared billing, devices, credentials, and other links. The requests thus can reach responsive exchanges authored by people whose participation in the alleged tort is unestablished. A shared account or payment method does not establish that another user's words express Defendant's intent, concern the Hotel's injury, or satisfy a cap exception. Request 7's demand for deleted exchanges does not supply any missing connection.

### D. The jury can assess punitive damages without unrestricted discovery of liability and litigation preparation

Defendant does not contend that default fixes the punitive amount or eliminates all evidence concerning the underlying conduct. *Belle Glade Chevrolet–Cadillac Buick Pontiac Oldsmobile, Inc. v. Figgie*, 54 So. 3d 991, 997–98 (Fla. 4th DCA 2010), recognizes the jury's role in assessing egregiousness after a sanction default. That substantive principle leaves the federal discovery limits intact. Under *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408, 422–23 (2003), punitive damages must concern the wrong that harmed the plaintiff, rather than dissimilar conduct offered to portray the defendant as generally blameworthy. Although that decision governs permissible punishment rather than creating a discovery privilege, it identifies the required substantive connection.

An identified prompt used to fabricate an actionable publication raises a different relevance question than private research to defend this case or general inquiries to a chatbot. Any such relevance must still be evaluated against the prior discovery opportunity because the Order reopening discovery expressly narrowed the scope to **discovery limited to damages**. ECF 161 at 22. This Court should sustain the objections to the subpoenas as drafted and require Plaintiff, before seeking broader discovery, to identify the unresolved damages issue, explain why the historical information was not timely pursued, and

propose requests limited by author, account, subject, and time. The remaining issue of the amount of punitive damages that may be awarded does not automatically extend the expired opportunity to investigate liability.

**II. The requested AI information seeks work product**

The Court should prohibit the requested wholesale production of Defendant's AI-assisted litigation preparation. *See Warner v. Gilbarco*, Inc., 820 F. Supp. 3d 629, 635–37 (E.D. Mich. 2026).

In *Warner*, the defendants sought documents and information concerning the plaintiff's use of third-party AI tools in the lawsuit. The court denied the request as untimely because the defendants had not justified waiting until after discovery closed. It independently held that the requested material was irrelevant or, at most, marginally relevant and disproportionate. The court also applied Rule 26(b)(3) to the plaintiff's litigation preparation and rejected the contention that use of ChatGPT necessarily waived work-product protection. 820 F. Supp. 3d at 635–37. Its reasoning directly addresses demands that would expose a litigant's private drafting, analysis, and litigation strategy merely because those activities occurred through software.

*Warner* involved a pro se plaintiff, but Rule 26(b)(3)(A) expressly protects qualifying materials prepared "by or for another party or its representative." The rule does not remove a party from that protection upon retention of counsel. A represented defendant remains a party and must participate in preparing his defense. Thus, litigation-focused prompts, draft analyses, and responses prepared primarily to assist that defense may qualify as ordinary work product without treating the AI system as an attorney.

## Conclusion

The Court should enforce the damages-only limitation and prohibit the proposed subpoenas seeking AI Information. Alternatively, it should require Plaintiff to identify a narrowly defined, timely, unprotected category bearing on an unresolved damages issue; afford Defendant an opportunity to substantiate work-product claims; and resolve those claims before provider production to Plaintiff. The Court should impose corresponding limits on the Seventh RFP under Rule 26(c).

Respectfully submitted this 12th day of October, 2026.

Respectfully submitted,

**NICKLAUS, NICKLAUS & ASSOCIATES, P.A.**

By: *_/s/ P. Brandon Perkins_*
**P. BRANDON PERKINS, ESQ.**
Florida Bar No.: 568635
**EDWARD R. NICKLAUS, ESQ.**
Florida Bar No.: 138399
*Attorneys for Defendant*
4651 Ponce de Leon Blvd., Suite 200
Coral Gables, Florida 33146
Telephone: 305-460-9888
Facsimile: 305-460-9889
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2026, the foregoing document was served via e-mail served by electronic mail on all persons identified in the attached Service List.

By: *_/s/ P. Brandon Perkins_*

**P. BRANDON PERKINS, ESQ.**
Florida Bar No.: 568635
**EDWARD R. NICKLAUS, ESQ.**
Florida Bar No.: 138399

**SERVICE LIST**

**Counsel for Plaintiff, Fontainebleau Florida Hotel, LLC**
Sean Alexander Burstyn, Esq.
sean.burstyn@burstynlaw.com
docketing@burstynlaw.com
Andrei Dambuleff, Esq.
andrei.dambuleff@burstynlaw.com
Todd Rapp Friedman, Esq.
todd@toddfriedmanpa.com
Christopher Ara Ajizian, Esq.
chris@ajizianlaw.com

**Co-Counsel for Defendant, Jacob Shmuel Botach**
Christopher Donald Cathey, Esq.
chris.cathey@offitkurman.com
Austin Michael Krtausch, Esq.
austin.krtausch@offitkurman.com
Scott B. Piekarsky, Esq.
scott.piekarsky@offitkurman.com

**Counsel for Chubb Insurance Company of New Jersey**
Irene Marie Porter, Esq.
iporter@mhickslaw.com