**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 25-CV-20251-KUNTZ/Elfenbein

**FONTAINEBLEAU FLORIDA HOTEL, LLC**,

Plaintiff,

v.

**SHMULEY BOTEACH JACOB**
**A/K/A SHMUEL BOTACH**, *et al.*,

Defendants.
_______________________________________/

**SECOND ORDER AFTER DISCOVERY HEARING**

**THIS CAUSE** is before the Court following the discovery hearing held on October 8, 2026 (the "Hearing"), concerning Plaintiff Fontainebleau Florida Hotel, LLC's ("Plaintiff") Notice of Hearing, ECF No. [271], and Defendant Jacob Shmuel Botach's ("Defendant") Counter-Notice of Discovery Hearing, ECF No. [275]. At the Hearing, the Court addressed several discovery disputes, including Plaintiff's interrogatories concerning punitive damages, Plaintiff's Sixth and Seventh Requests for Production, four proposed subpoenas directed to artificial intelligence ("AI") service providers, and Defendant's continued deposition. *See* ECF No. [281].

On October 9, 2026, the Court entered its Order After Discovery Hearing (the "First Order") memorializing its rulings on the matters addressed at the Hearing. *See* ECF No. [281]. The Court, however, took under advisement Defendant's blanket objection to Plaintiff's Seventh Request for Production (the "Seventh RFP") and Defendant's objections to Plaintiff's four proposed subpoenas to AI service providers as well as Plaintiff's Oral Motion to Compel Defendant to Consent to Plaintiff's Proposed AI-Provider Subpoenas. *See id.* at 4–6; ECF No. [271] at 1-2. Because the disputes substantially overlap, the Court directed the Parties to submit

expedited supplemental briefing addressing whether the requested AI-related information falls within the scope of damages discovery authorized by the District Court, including its relationship, if any, to Defendant's alleged malice and the statutory limitation on punitive damages under Florida law. *See id.* at 5–6.

The Parties timely submitted their supplemental memoranda on October 12, 2026.[1] *See* ECF Nos. [282], [283]. Having considered the Parties' arguments, the applicable law, and the record, the Court now resolves the two outstanding discovery disputes. For the reasons explained below, Defendant's blanket objections to Plaintiff's Proposed AI-Provider Subpoenas and to Plaintiff's Seventh Request for Production are **SUSTAINED in part and OVERRULED in part** and Plaintiff's Oral Motion to Compel Defendant to Consent to Plaintiff's Proposed AI-Provider Subpoenas, **ECF No. [288]**, is **DENIED**.

[1] After the Parties submitted their supplemental briefs addressing the issues discussed at the October 8, 2026 discovery hearing, Defendant filed a Notice of Appeal challenging the District Court's September 18, 2026 Order modifying the restrictions on Defendant's extrajudicial speech. *See* ECF No. [286]. Defendant's interlocutory appeal does not divest this Court of jurisdiction to resolve the outstanding discovery disputes addressed herein because those disputes concern aspects of the case distinct from the subject of the appeal. *See Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1309 (11th Cir. 2003) (explaining that an interlocutory appeal divests the district court of jurisdiction only over the aspects of the case involved in the appeal, while permitting the district court to proceed with unrelated matters); *Fla. Evergreen Foliage v. E.I. DuPont De Nemours & Co.*, 165 F. Supp. 2d 1345, 1362 (S.D. Fla. 2001), *aff'd sub nom. Green Leaf Nursery*, 341 F.3d 1292. The discovery disputes addressed herein, by contrast, concern the scope and completion of damages discovery authorized by the District Court. *See* ECF No. [261] at 22. Resolution of those disputes concerns only the scope and completion of damages discovery and does not implicate the validity or enforceability of the challenged speech restrictions or otherwise interfere with the issues presently before the Eleventh Circuit. The damages issues remain to be litigated regardless of the appeal's outcome and the discovery here is directed to those issues. Accordingly, the pending appeal does not deprive this Court of jurisdiction to resolve the outstanding damages discovery disputes.

## I. Defendant's Blanket Objections to Plaintiff's Proposed AI-Provider Subpoenas and to Plaintiff's Seventh Request for Production

Plaintiff's four subpoenas to the AI Providers and its Seventh RFP seek the same information, specifically Defendant's communications with AI platforms since December 3, 2024, concerning various categories of subjects:

1. All of Defendant's AI Communications with AI since December 3, 2024, concerning or relating to the Fontainebleau Hotel.
2. All of Defendant's AI Communications with AI since December 3, 2024, concerning or relating to this litigation.
3. All of Defendant's AI Communications with AI since December 3, 2024, concerning or relating to counsel for Plaintiff.
4. All of Defendant's AI Communications with AI since December 3, 2024, concerning or relating to any employee, owner, or representative of the Fontainebleau Hotel.
5. All of Defendant's AI Communications with AI since December 3, 2024, concerning or relating to any Court Order entered during this litigation.
6. All of Defendant's AI Communications with AI since December 3, 2024, concerning or relating to Judge K. Michael Moore or the undersigned.

ECF No. [271-2] at 39, 50, 60, 70, and 80.

In addition, to these six categories, Plaintiff seeks one more category of documents in the subpoenas to the AI providers (but not in the Seventh RFP), consisting of:

7. All of Defendant's AI Communications regarding Requests 1

through 7 that have, since their creation, been deleted.

At the Hearing, Defendant asserted a blanket objection to these requests, maintaining that they exceed the limited damages discovery authorized by the District Court. *See* ECF No. [281] at 4–5. Plaintiff responded that Defendant's AI communications may reveal the extent of his alleged malice toward Plaintiff, the intentionality underlying his conduct, and evidence relevant to the determination of punitive damages, including whether an exception to Florida's statutory cap applies. *See id.* The Court reserved ruling and directed the Parties to address those questions through supplemental briefing. *See id.* at 5–6.

In his supplemental memorandum, Defendant argues that the requests in the subpoenas and the Seventh RFP exceed the purpose for which discovery was reopened. *See* ECF No. [282] at 1–3. Defendant emphasizes that the District Court authorized only "discovery limited to damages," ECF No. [261] at 22, and contends that Plaintiff is attempting to reopen liability discovery concerning the creation of allegedly defamatory publications, Defendant's use of AI, and Defendant's litigation activities. *See* ECF No. [282] at 2–3. According to Defendant, Plaintiff knew of the alleged AI-related misconduct when it filed the First Amended Complaint and had ample opportunity to pursue that discovery before the original discovery cutoff. *See id.* Defendant relies on *American Key Corp. v. Cole National Corp.*, 762 F.2d 1569 (11th Cir. 1985), and Federal Rule of Civil Procedure 26(b)(2)(C)(ii) to argue that the limited reopening does not revive discovery that Plaintiff previously could have obtained. *See* ECF No. [282] at 2–3.

Defendant further argues that Plaintiff's allegations already establish a theory of knowing falsity based on Defendant's firsthand knowledge and alleged fabrication of the challenged statements. *See id.* at 4–5. In Defendant's view, Plaintiff does not need broad access to Defendant's subsequent AI communications to establish that theory, and generalized evidence of

hostility toward Plaintiff, its attorneys, or the Court does not necessarily establish actual malice in connection with the challenged publications. *See id.* at 3–6. Defendant also contends that the exceptions to the punitive-damages cap under section 768.73, Florida Statutes, do not authorize an unrestricted examination of Defendant's AI communications. *See id.* at 6–8. Although Defendant acknowledges that later statements may sometimes illuminate an earlier intent, he maintains that Plaintiff must establish a sufficient connection between the requested information and the particular conduct that caused Plaintiff's injury. *See id.*

Finally, Defendant argues that the requests in the subpoenas and the Seventh RFP risk exposing materials protected by the work-product doctrine, including AI-assisted litigation preparation, legal research, draft analyses, and communications concerning defense strategy. *See id.* at 9. Defendant relies principally on *Warner v. Gilbarco, Inc.*, 820 F. Supp. 3d 629 (E.D. Mich. 2026), for the proposition that litigation-related materials do not automatically lose work-product protection merely because a party used a third-party AI platform to prepare them. *See id.*

Plaintiff responds that the subpoenas and the Seventh RFP seek information directly relevant to its remaining damages claims, not liability.[2] *See* ECF No. [283] at 1–4. Plaintiff emphasizes that it seeks punitive damages without the statutory cap under section 768.73(1)(c), Florida Statutes, based on Defendant's alleged specific intent to harm Plaintiff. *See id.* Plaintiff maintains that Defendant's AI prompts, revisions, and related communications may reveal his intent, motive, and efforts to continue or amplify the alleged harm to Plaintiff. *See id.* Plaintiff also points to the District Court's prior ruling denying Defendant's motion to strike allegations concerning his continuing conduct. *See id.* at 1, 4. In that ruling, the District Court found that the

[2] Plaintiff's Supplemental Brief recognizes that "[t]he scope of the subpoenas, and the probity of the information they seek, is substantively coextensive with" Plaintiff's arguments "concerning the Seventh RFP." *See* ECF No. [283] at 10.

challenged allegations were "probative of intentionality and malice." ECF No. [59]. Plaintiff contends that the same rationale supports discovery of communications reflecting Defendant's alleged continued campaign against the Hotel, its employees, and its counsel. *See* ECF No. [283] at 4.

Additionally, Plaintiff relies on its damages expert's testimony that Defendant's continuing online activity may reinforce the allegedly defamatory statements and amplify the resulting injury to Plaintiff's reputation and business. *See id.* at 4 (citing ECF No. [146-13] at 102:15–104:11, 115:2–117:17). Plaintiff argues that the requested information is relevant not only to punitive damages but also to the extent of its compensatory damages. *See id.* Plaintiff further maintains that post-publication statements and conduct may constitute circumstantial evidence of malice, intent, and reprehensibility. *See id.* at 5–8. In support, Plaintiff relies on *Herbert v. Lando*, 441 U.S. 153 (1979), *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003), *Faulk v. Dimerco Express USA Corp.*, 172 F.4th 844 (11th Cir. 2026), and decisions addressing the relevance of post-publication conduct in defamation cases. *See* ECF No. [283] at 2–8.

**A. While Some of the Requests are Relevant to Punitive Damages, Others Are Not.**

Federal Rule of Civil Procedure 26(b)(1) permits discovery of nonprivileged matters relevant to a party's claims or defenses and proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). The Rule expressly recognizes that information within the permissible scope of discovery need not be admissible in evidence to be discoverable. *See id.* The Court also has substantial discretion to manage discovery and enforce reasonable limits on its scope. *See West v. City of Albany, Georgia*, 830 F. App'x 588, 592 (11th Cir. 2020). The District Court's Order at ECF No. [261], which authorized the Parties to conduct "discovery limited to damages," also governs the scope of discovery at this juncture. *See* ECF No. [261] at 22. The District Court

subsequently extended the deadline to complete that limited discovery through November 9, 2026, while expressly declining to expand its scope. *See* ECF No. [273]. Thus, the relevant inquiry is whether the particular AI communications sought by Plaintiff bear a sufficient relationship to the damages issues remaining in this action. The Court finds that certain categories do but others do not.

1. Request Nos. 1, 3, 4, and 7 (in part) Fall Within the Scope of Damages Discovery Authorized by the District Court

As an initial matter, the Court rejects Defendant's suggestion that damages discovery in the present posture is confined to financial information concerning Defendant's net worth. Although a defendant's financial condition may be relevant to the assessment of punitive damages, it is not the only consideration. The degree of reprehensibility, the defendant's intent, and the circumstances surrounding the wrongful conduct are also relevant to determining an appropriate punitive-damages award. *See State Farm*, 538 U.S. at 418–19; *Faulk*, 172 F.4th at 862–64. Indeed, in *State Farm*, the Supreme Court identified the degree of reprehensibility as the "most important" consideration in evaluating the reasonableness of punitive damages. 538 U.S. at 419. Among the factors relevant to reprehensibility are whether the conduct was repeated rather than isolated and whether the harm resulted from intentional malice, trickery, or deceit rather than accident. *See id.*

Florida law independently supports the relevance of Defendant's intent to Plaintiff's punitive-damages claim. *See* Fla. Stat. § 768.72. Section 768.72(2), Florida Statutes, distinguishes intentional misconduct from gross negligence, while section 768.73(1) establishes different limitations on punitive damages depending upon the nature and culpability of the defendant's conduct. *See* Fla. Stat. § 768.72(2); 768.73(1). Most significantly, section 768.73(1)(c) eliminates the statutory cap where the factfinder determines that the defendant specifically intended to harm

the claimant at the time of injury and that the defendant's conduct actually caused harm. *See* Fla. Stat. § 768.73(1)(c) ("Where the factfinder determines that at the time of injury the defendant had a specific intent to harm the claimant and determines that the defendant's conduct did in fact harm the claimant, there shall be no cap on punitive damages."). Accordingly, the degree of Defendant's culpability and his alleged specific intent to injure Plaintiff are not collateral matters; they bear directly on the legal framework governing the damages Plaintiff seeks.

Florida law further recognizes that punitive damages are intended to punish wrongful conduct and deter its repetition. *See Rinaldi v. Aaron*, 314 So. 2d 762, 764 (Fla. 1975). The "nature, extent, and enormity of the wrong," the circumstances attending its commission, and the wrongdoer's intent may inform the punitive-damages inquiry. *See id.* at 763. These principles reinforce the conclusion that discovery concerning Defendant's alleged efforts to plan, refine, and perpetuate conduct intended to injure Plaintiff may be relevant to the remaining damages issues. Thus, Plaintiff's theory of uncapped punitive damages requires an examination of Defendant's intent in connection with the conduct that allegedly injured Plaintiff. Where, as here, the remaining punitive damages issues for trial include the degree of reprehensibility, and the applicability of a statutory cap exception, discovery concerning Defendant's intent may properly fall within the scope of the District Court's Order allowing damages-only discovery. *See* ECF No. [261] at 22.

The Supreme Court's decision in *Herbert v. Lando*, 441 U.S. 153 (1979), is instructive. There, the Court rejected a proposed constitutional privilege that would have categorically insulated a defamation defendant's editorial thought processes from discovery. *See id.* at 169–75. In doing so, the Court recognized that evidence of a defendant's state of mind may be necessary to establish malice and enhance damages. *See id.* at 161–65. Although *Herbert* involved a different discovery dispute, its reasoning is significant here: when a defendant's state of mind

bears on a legally cognizable issue, the mere fact that discovery probes the defendant's thinking, motives, or preparation does not render it impermissible.

The same principle applies to Defendant's AI prompts and communications. To the extent Defendant used AI platforms to generate, revise, or refine statements concerning Plaintiff, its counsel, or its representatives, those communications may reveal not merely the final content of Defendant's statements but also the purpose for which the statements were created, the instructions Defendant supplied, and the effects he sought to achieve. Such information may provide evidence of the intent underlying Defendant's conduct that cannot necessarily be discerned from the resulting public statements alone. The Court does not determine that those communications will establish malice or specific intent to harm; it determines only that they bear a sufficient relationship to those disputed damages issues to warrant discovery.

The District Court's earlier ruling is consistent with that conclusion. In denying Defendant's motion to strike certain allegations from the First Amended Complaint, the District Court determined that the challenged allegations concerning Defendant's continuing conduct were "probative of intentionality and malice." ECF No. [59]. That ruling, of course, does not establish that every AI communication is discoverable, but it reinforces the relevance of evidence concerning Defendant's alleged continuing conduct toward Plaintiff and persons associated with it. The Court also finds unpersuasive Defendant's argument that Plaintiff's existing allegations concerning knowing falsity eliminate the need for additional discovery. *See* ECF No. [282] at 4–6. Pleadings identify the claims and theories at issue; they do not necessarily supply the evidence needed to establish the amount of damages or the statutory predicates for an uncapped punitive-damages award. Although the striking of Defendant's pleadings affects the issues remaining for

adjudication, it does not automatically establish the amount of punitive damages to be awarded or eliminate the relevance of evidence bearing on reprehensibility.

Defendant's argument also conflates constitutional actual malice with the distinct inquiries relevant to punitive damages. Accordingly to Defendant, his alleged hostility does not necessarily prove constitutional actual malice, and it therefore should not be considered when deciding whether punitive damages are appropriate. Constitutional actual malice in a defamation action concerns knowledge of falsity or reckless disregard for truth. *See Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 666–68 (1989); *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968); *Turner v. Wells*, 879 F.3d 1254, 1273 (11th Cir. 2018). By contrast, the reprehensibility inquiry and the specific-intent exception under section 768.73(1)(c) require consideration of the defendant's culpability and intent to harm the claimant. *See State Farm*, 538 U.S. at 418–19; *Faulk*, 172 F.4th at 862–64; Fla. Stat. § 768.73(1)(c). Evidence of hostility, planning, or deliberate efforts to inflict or amplify injury to Plaintiff may be relevant to those questions when sufficiently connected to the alleged wrongful conduct here. Plaintiff seeks evidence not simply to establish that Defendant disliked the Hotel, but to determine whether Defendant deliberately engaged in conduct intended to cause injury and whether that intent bears on the reprehensibility and statutory treatment of the punitive damages sought. The Court therefore rejects Defendant's argument that because hostility does not necessarily prove constitutional actual malice, it should not be considered when deciding whether punitive damages are appropriate.

Nor does the fact that some requested communications postdate the original publications render them categorically undiscoverable. Subsequent statements and conduct may, depending on their content and context, provide circumstantial evidence of a defendant's earlier intent or reveal a continuing course of conduct relevant to the injury. *See Herbert*, 441 U.S. at 164–65 & n.12

("The existence of actual malice may be shown in many ways. As a general rule, any competent evidence, either direct or circumstantial, can be resorted to, and all the relevant circumstances surrounding the transaction may be shown, provided they are not too remote, including threats, prior or subsequent defamations, subsequent statements of the defendant, circumstances indicating the existence of rivalry, ill will, or hostility between the parties, facts tending to show a reckless disregard of the plaintiff's rights[.]") (citation omitted); *Block v. Matesic*, 789 F. Supp. 3d 1131, 1166 (S.D. Fla. 2025) ("[W]e see no reason to categorically preclude defamation plaintiffs from relying on post-publication evidence."). The temporal relationship between a communication and the alleged injury may affect its probative value, but it does not create an absolute bar to discovery.

Defendant's reliance on *Stern v. O'Quinn*, 253 F.R.D. 663 (S.D. Fla. 2008), does not compel a contrary conclusion. *Stern* recognized that post-publication investigative materials could have some relevance to actual malice but declined to compel certain materials in light of applicable work-product protections and the requesting party's failure to satisfy the requirements for overcoming those protections. *See id.* at 671–72, 685–87. That decision does not establish a categorical rule that post-publication communications are irrelevant or that all such materials are immune from discovery. Rather, it confirms the importance of separately evaluating relevance and privilege — precisely the approach the Court adopts here.

The Court does not hold that every subsequent statement by Defendant may support an award of punitive damages. The Supreme Court has cautioned that punitive damages may not be used to punish a defendant for unrelated or dissimilar conduct merely because that conduct reflects poorly on the defendant's character. *See State Farm*, 538 U.S. at 422–23 ("A defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business."). But the permissible scope of discovery is broader than the scope of evidence that may

be ultimately admitted at trial. *See* Fed. R. Civ. P. 26(b)(1). The present inquiry is whether the requested information is relevant and proportional under Rule 26(b)(1) to the damages issues remaining in this case. Here, Plaintiff alleges a continuing course of conduct directed toward the Hotel, its personnel, and its representatives, including conduct involving AI-generated content. *See* ECF No. [12] at ¶¶2, 10(e), 63, 112. Plaintiff has also identified testimony from its damages expert concerning the alleged cumulative effect of Defendant's continuing online activity on the Hotel's reputation and business. *See* ECF No. [146-13] at 102:15–104:11, 115:2–117:17. As such, Defendant's communications with AI platforms concerning the Hotel and the Hotel's employees, owners, or representatives, including Plaintiff's counsel, may reveal information relevant to Defendant's alleged intent to harm Plaintiff, the nature and persistence of the challenged conduct, and the extent to which that conduct allegedly amplified Plaintiff's injuries. The Court therefore concludes that Request Nos. 1 (seeking AI communications about the Hotel), 3 (seeking AI communications about Plaintiff's counsel), and 4 (seeking AI communications about any employee, owner, or representative of the Hotel) in the subpoenas to the AI providers and the Seventh RFP fall within the scope of damages discovery authorized by the District Court**.** Accordingly, Defendant's blanket scope objection to Request Nos. 1, 3, and 4 is **OVERRULED.**

Further, to the extent Request No. 7 in the subpoenas to the AI providers (which is not a request contained within the Seventh RFP) seeks Defendant's AI communications regarding Requests Nos. 1 through 7[3] that have been deleted since their creation, the Court concludes that this Request is authorized by the District Court's Order only to the extent it seeks any deleted AI communications regarding Request Nos. 1, 3, and 4. For the reasons explained below, to the extent Request No. 7 seeks deleted AI communications about Request Nos. 2, 5, and 6, these fall outside

[3] This appears to be a typographical error that should say Request Nos. 1 through 6.

the scope of authorized damages discovery. Accordingly, Defendant's objection to Request No. 7 in the subpoenas is **OVERRULED in part and SUSTAINED in part** consistent with this Order.

2. Request Nos 2, 5, and 6 Exceed the Permissible Scope of Damages Discovery

Although the Court finds that certain AI communications are discoverable, it agrees with Defendant that the requests in the subpoenas and Seventh RFP, as drafted, are broader than the damages discovery authorized by the District Court. Further, the Court's limitation of the subpoenas and the Seventh RFP is consistent with Rule 26(b)(2)(C), which requires courts to limit discovery when its scope exceeds the permissible bounds of Rule 26(b)(1). *See* Fed. R. Civ. P. 26(b)(2)(C)(iii).

Starting with Request No. 2 in the subpoenas and the Seventh RFP, it seeks all AI communications concerning or relating to "this litigation." ECF No. [271-2] at 39, 50, 60, 70, and 80. That formulation is exceptionally broad. It encompasses potentially every AI exchange on matters having no meaningful connection to the amount of damages or Defendant's alleged intent to harm Plaintiff. Plaintiff has not established that every communication relating to this litigation bears on an issue remaining for the damages trial. The Court therefore finds that Request No. 2 is overbroad and exceeds the limited scope of reopened discovery.

Turning to Request No. 5 in the subpoenas and the Seventh RFP, it seeks all AI communications concerning or relating to any Court Order entered during this litigation. *See* ECF No. [271-2] at 39, 50, 60, 70, and 80. Such communications may include Defendant's attempts to understand an Order, research its consequences, consider procedural options, or evaluate the litigation. The fact that Defendant may have expressed disagreement with, frustration about, or hostility toward a Court Order does not, without a sufficient connection to the alleged injury, make

the communication relevant to Plaintiff's damages. Although Plaintiff contends that Defendant's reactions to Court Orders reflect the depth of his hostility and the reprehensibility of his conduct, that theory is too attenuated to justify discovery of every AI exchange concerning every Order entered in this case. The Court therefore finds that Request No. 5 exceeds the permissible scope of damages discovery.

Finally, Request No. 6 in the subpoenas and the Seventh RFP seeks all AI communications concerning or relating to District Judge K. Michael Moore or the undersigned Magistrate Judge. The Court likewise finds that Defendant's private communications with AI platforms concerning judicial officers, without more, do not bear a sufficient relationship to the damages Plaintiff seeks for the alleged harm to the Hotel. The discovery inquiry is not whether Defendant has criticized the judiciary; it is whether the requested information is relevant and proportional to the damages issues remaining in this action. A request encompassing every AI communication about the judges presiding over this litigation exceeds that scope. The Court thus finds that Request No. 6 exceeds the permissible scope of damages discovery.

The Court recognizes Plaintiff's argument that Defendant's criticism of the judicial process may demonstrate the persistence of his alleged hostility. But the Supreme Court has cautioned against using dissimilar conduct as a basis for punishing a defendant for being an objectionable person rather than for the conduct that injured the plaintiff. *See State Farm*, 538 U.S. at 422–23. Although *State Farm* addresses substantive limits on punitive damages rather than the permissible scope of discovery, its reasoning underscores the need for a meaningful connection between the information sought and the conduct for which damages may be imposed. That connection is insufficiently established for Request Nos. 2, 5, and 6 and, as a result, these requests in the subpoenas and the Seventh RFP fall outside the permissible scope of damages discovery permitted

by the District Court's Order. Accordingly, Defendant's scope objection that Request Nos. 2, 5, and 6 fall outside the permissible scope of damages discovery is **SUSTAINED**.[4]

**B. The Limited Reopening of Discovery Does Not Preclude the Authorized Requests**

Defendant separately argues that Plaintiff had ample opportunity to pursue AI-related discovery during the original discovery period and should not be permitted to revisit that subject through the limited reopening. *See* ECF No. [282] at 2–3. Defendant relies on Rule 26(b)(2)(C)(ii), which requires courts to limit discovery where the requesting party has had ample opportunity to obtain the information, and *American Key Corp.*, 762 F.2d at 1569. The Court agrees with Defendant's general premise that an order reopening discovery for a limited purpose does not authorize unrestricted additional discovery. The District Court expressly limited the reopening to damages discovery, and that limitation must be enforced. *See* ECF Nos. [261] at 22, [273].

The Court's conclusion is consistent with the substantial discretion afforded district courts in managing discovery. *See Baker v. Welker*, 438 F. App'x 852, 855 (11th Cir. 2011) (citing *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1269 (11th Cir. 2001)). Given the District Court's broad discretion to manage discovery and its decision to reopen discovery limited to damages in this case, the undersigned cannot deny Plaintiff discovery expressly authorized by the District Court. Defendant's reliance on *American Key* is therefore misplaced to the extent Defendant argues that the reopening categorically forecloses the authorized requests. In that case,

---

[4] This limitation does not mean that an otherwise responsive communication must be withheld under an authorized request merely because it also mentions this litigation, a Court Order, or a judicial officer. A communication independently responsive to Request Nos. 1, 3, or 4 remains subject to production, absent a valid privilege or protection. The Court's ruling limits the subjects for which Defendant must search and produce; it does not create a categorical exemption for responsive communications containing incidental references to excluded subjects.

the Eleventh Circuit upheld limits on further discovery because the discovery requests went beyond what the court had originally allowed. *See* 762 F.2d at 1576–78. The decision recognizes a district court's authority to enforce reasonable discovery limits; it does not establish that discovery otherwise falling within an expressly authorized reopening must be denied merely because the requesting party might have pursued similar information earlier.

The distinction is consequential. Plaintiff is not entitled to use the District Court's damages-only reopening to revisit every issue concerning Defendant's liability or litigation conduct. But Plaintiff is entitled to seek otherwise discoverable evidence that bears on the amount of damages, subject to the proportionality limitations of Rule 26. Here, the District Court affirmatively reopened discovery concerning damages, *see* ECF No. [261] at 22, and the undersigned has determined that Request Nos. 1, 3, 4, and 7 (in part) seek information relevant to those remaining damages issues. Moreover, Plaintiff's theory concerns an alleged continuing course of conduct, and at least some responsive communications may have been created after the original discovery period closed. *See* ECF No. [283] at 3–4, 7–9. The Court therefore declines to sustain Defendant's blanket objection on the ground that Plaintiff previously could have pursued AI-related discovery. The Court instead enforces the District Court's limitation by permitting only those requests sufficiently connected to damages and excluding the requests that sweep more broadly into unrelated litigation matters.

### C. The Work-Product Doctrine Does Not Categorically Protect Defendant's AI Communications

Defendant also contends that the requested AI communications may constitute protected work product because they include AI-assisted litigation preparation, research, draft analyses, and other materials concerning the defense of this action. *See* ECF No. [282] at 9.

Federal Rule of Civil Procedure 26(b)(3)(A) generally protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). The doctrine is designed to protect the adversarial process by preserving the privacy necessary for litigation preparation. *See Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947); *United States v. Nobles*, 422 U.S. 225, 238–39 (1975). Federal Rule of Civil Procedure 26(b)(3) recognize two types of work product protected from discovery: fact work product, which protects information that relates to litigation and is prepared in anticipation of litigation by or for a party or its representative, *see Tyne v. Time Warner Entert. Co., L.P.*, 212 F.R.D. 596, 598 (M.D. Fla. 2002) (citations omitted), and opinion work product, which consists primarily of an attorney's mental impressions, conclusions, opinions, and theories. *Id.*; *see also Regency of Palm Beach, Inc. v. QBE Ins. Corp.*, 259 F.R.D. 645, 649 (S.D. Fla. 2009).

The Eleventh Circuit's interpretation of Rule 26(b)(3)(A) confirms that work-product protection is not limited to materials prepared by counsel but extends to materials prepared by or for a party or its representative in anticipation of litigation. In *Tambourine Comercio Internacional SA v. Solowsky*, it emphasized that the Rule's plain text protects materials prepared "by or for another party or its representative" and held that the protection belonged to the party for whom the documents were prepared, rather than to its attorneys merely because they had commissioned the documents. 312 F. App'x 263, 284 (11th Cir. 2009). Similarly, in *Republic of Ecuador v. Hinchee*, the Eleventh Circuit recognized that Rule 26(b)(3)(A) extends beyond materials prepared by attorneys to materials prepared by or for a party's representatives, while explaining that the doctrine protects attorney work product as well as qualifying materials prepared on an attorney's behalf. 741 F.3d 1185, 1192–93 (11th Cir. 2013). Decisions from this District have likewise recognized that work-product protection extends beyond a lawyer's own

preparation. For example, in *Mitsui Sumitomo Insurance Co. v. Carbel, LLC*, citing Rule 26(b)(3), the court explained that work-product protection may encompass materials prepared by a party or its agents in anticipation of litigation, even when those materials were not prepared by counsel. *Mitsui Sumitomo Ins. Co. v. Carbel, LLC*, No. 09-21208-CIV, 2011 WL 2682958, at *2 (S.D. Fla. July 11, 2011). Read together, these decisions establish that Rule 26(b)(3)(A) is not an attorney-exclusive protection; rather, its application turns on whether the materials were prepared in anticipation of litigation by or for a party or its representative, subject to the Rule's other requirements and limitations.

When determining whether a document is protected under the work-product doctrine, "litigation need not necessarily be imminent . . . as long as the primary motivating purpose behind the creation of the document was to aid in possible litigation." *U.S. v. Consol. City of Jacksonville*, 2015 WL 7076695 at *4 (M.D. Fla. Nov. 13, 2015) (citations omitted). The document must have been "*created principally or exclusively* to assist in anticipated or ongoing litigation." *Id.* at *6 (emphasis added). "Just because a document may have been used later to assist in litigation . . . does not mean it was principally prepared for such purpose." *Foodonics Int'l, Inc. v. Srochi*, No. 3:17-CV-1054-J-32JRK, 2020 WL 9670613 (M.D. Fla. Mar. 20, 2020). The party asserting work-product protection bears the burden of establishing that the particular materials qualify for protection. *See U.S. Fidelity & Guar. Co. v. Liberty Surplus Ins. Corp.*, 630 F. Supp. 2d 1332, 1336-37 (M.D. Fla. 2007).

The fact that a document was created after litigation commenced does not, standing alone, establish that it was prepared because of litigation. *See Quality Time, Inc. v. W. Bend Mut. Ins. Co.*, No. 12-1008-JTM-GLR, 2012 WL 5499555 (D. Kan. Nov. 13, 2012), *modified on reconsideration*, No. 12-1008-JTM-GLR, 2012 WL 6705986 (D. Kan. Dec. 26, 2012) ("In general,

the party resisting discovery on grounds of work product must show more than the creation of a document after commencement of litigation."). The party asserting work-product protection must support the claim with evidence establishing that the materials were prepared in anticipation of litigation. *See Milinazzo v. State Farm Insurance Co.*, 247 F.R.D. 691, 701–02 (S.D. Fla. 2007). That approach is especially appropriate here, where Defendant invokes work-product protection over a potentially diverse collection of AI communications without establishing that every communication within the permitted categories was created because of this litigation. The Parties rely on two recent decisions addressing AI-assisted materials: *United States v. Heppner*, 820 F. Supp. 3d 292 (S.D.N.Y. 2026) and *Warner v. Gilbarco, Inc.*, 820 F. Supp. 3d 629 (E.D. Mich. 2026).

In *Heppner*, the court concluded that certain AI communications independently generated by a represented defendant were not protected work product where they were not prepared at counsel's direction and did not reflect counsel's litigation strategy. 820 F. Supp. 3d at 298–99. The court emphasized that the materials had been created by the defendant on his own initiative rather than as an agent of counsel or as a reflection of counsel's legal theories. *See id.* The Court finds *Heppner* persuasive insofar as it recognizes that independently generated AI communications do not automatically become protected work product merely because counsel represents the user. At the same time, the Court does not read *Heppner* as establishing that all materials independently prepared by a represented party are categorically unprotected. This is because Rule 26(b)(3)(A) expressly extends to qualifying materials prepared "by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A).

In *Warner*, the court recognized that AI-assisted litigation preparation may qualify for work-product protection and that using a third-party AI tool does not necessarily result in waiver.

820 F. Supp. 3d at 636–37. But *Warner* does not support Defendant's blanket objection. The recognition that qualifying AI-assisted litigation preparation may remain protected notwithstanding the use of an AI platform does not establish that all communications with AI concerning an opposing party, its personnel, or its counsel were prepared in anticipation of litigation. The Court must examine the purpose and circumstances of the particular communications rather than presume protection from the medium through which they were created. *See Consol. City of Jacksonville*, 2015 WL 7076695 at *4–6.

Neither decision establishes a categorical rule governing all AI communications. Rather, they underscore that the applicability of work-product protection depends on the nature, purpose, and circumstances of the particular materials. Here, communications independently generated by Defendant to create, revise, or disseminate content concerning the Hotel, its personnel, or Plaintiff's counsel are not transformed into attorney work product merely because Defendant is a litigant or because the resulting content may bear on this action. To the extent such communications were created for the purpose of producing public-facing statements or pursuing Defendant's independent activities, rather than preparing the defense of this litigation, they ordinarily would not satisfy Rule 26(b)(3)(A). The Court therefore rejects Defendant's blanket work-product objection to Request Nos. 1, 3, 4, and 7. However, that conclusion does not foreclose a properly supported, document-specific claim of protection. If a particular communication was prepared because of this litigation and otherwise satisfies Rule 26(b)(3), Defendant may assert the protection in accordance with the Federal Rules. Defendant must, however, identify the withheld material and describe the nature of the asserted protection sufficiently to permit Plaintiff to assess the claim without revealing the protected information itself. *See* Fed. R. Civ. P. 26(b)(5)(A).

The Court emphasizes that a party's communications with and use of AI does not automatically establish either discoverability or protection. The analysis turns on the ordinary requirements of Rules 26(b)(1), 26(b)(3), and 26(b)(5). Defendant may not withhold all communications within the permitted categories based on a generalized assertion that they concern litigation, and Plaintiff may not obtain genuinely protected litigation-preparation materials merely by describing them as AI communications.

**II. Plaintiff's Oral Motion to Compel Defendant to Consent to Plaintiff's Proposed AI-Provider Subpoenas, ECF No. [288]**

The Court next addresses Plaintiff's request that Defendant be compelled to consent to the four subpoenas directed to AI service providers. At the Hearing, Plaintiff explained that it sought third-party records because of concerns that Defendant may have deleted or failed to preserve responsive AI communications. *See* ECF No. [281] at 5. Plaintiff maintains that obtaining records directly from the providers would permit it to identify responsive communications, including potentially deleted materials, and assess whether Defendant has preserved relevant information. *See* ECF No. [283] at 9–10. Plaintiff further requests that Defendant be required to provide consent authorizing the AI providers to disclose responsive records and to identify account information necessary for the providers to locate Defendant's communications. *See id.* For the reasons explained below, Plaintiff's Oral Motion to Compel Defendant to Consent to Plaintiff's Proposed AI-Provider Subpoenas, **ECF No. [288]**, is **DENIED.**

As discussed in Section I, the Court has determined that AI communications concerning the Hotel, Plaintiff's counsel, and the Hotel's employees, owners, or representatives fall within the authorized damages discovery. Conversely, unrestricted demands for all AI communications concerning this litigation, Court Orders, or judicial officers exceed that scope. Accordingly,

Plaintiff may pursue Rule 45 subpoenas to the four AI service providers, but only to the extent the subpoenas seek the allowed categories of communications.

Although Plaintiff may pursue appropriately limited subpoenas, the Court declines to compel Defendant to execute consents or authorizations permitting the AI providers to disclose responsive communications. Rule 34 permits a party to request documents and electronically stored information within another party's possession, custody, or control. *See* Fed. R. Civ. P. 34(a)(1). The Rule requires a responding party to produce responsive, nonprivileged materials within that party's control, but it does not expressly require a party to execute an authorization allowing a third party to disclose records directly to an adversary.

Rule 45 separately governs subpoenas directed to nonparties. Neither Rule establishes that a litigant must execute a blanket authorization permitting a third-party service provider to disclose the litigant's private records merely because an opposing party seeks relevant information. And Plaintiff cites to no authorities to support its request. Courts have addressed analogous questions in the context of requests to compel litigants to execute medical-record authorizations and have reached differing conclusions on whether Rule 34 may be used to compel execution of such authorizations. *See Williams v. Carnival Corp.*, No. 18-21654-CIV, 2020 WL 854809, at *1–2 (S.D. Fla. Feb. 11, 2020). Generally though, courts within this Circuit avoid compelling authorizations where the requesting party can obtain the relevant information through ordinary third-party discovery procedures. *See id.* The Court finds that reasoning persuasive here.

Plaintiff has not established that Defendant is legally required to consent to disclosure by the AI providers merely because Plaintiff seeks relevant information. Defendant is defending this action; he has not independently undertaken an obligation to authorize third-party access to his accounts by virtue of his participation in the litigation. Nor has Plaintiff established that

compelling consent is necessary to avoid prejudice at this stage. *See Sherlock v. Fontainebleau*, 229 F. Supp. 3d 1277, 1282, n.8 (S.D. Fla. 2017). Plaintiff may seek relevant records directly from the providers through Rule 45, subject to the providers' rights to object. If Plaintiff encounters a specific legal or practical impediment that cannot be addressed through ordinary subpoena procedures, it may seek appropriate relief upon a particularized showing. But the Court will not compel Defendant to execute prospective authorizations based solely on the possibility that such consent might facilitate Plaintiff's third-party discovery.

The Court further emphasizes that permitting the issuance of subpoenas does not establish their enforceability. Rule 45 provides procedures for objections and motions to quash or modify subpoenas by nonparties. Accordingly, the Court's ruling preserves Plaintiff's ability to seek authorized third-party discovery consistent with this Order without prematurely adjudicating the obligations of nonparties that have not appeared before the Court.

But there is one additional wrinkle. The Court recognizes that Defendant may, consistent with this Order, assert that certain responsive AI communications within the possession of the AI providers are subject to work-product protection. And if Plaintiff serves the subpoenas on the AI providers and requires them to produce the document directly to Plaintiff's counsel, Defendant will be deprived of the opportunity to determine whether there are any work-product protected documents within the production that should otherwise be withheld and identified on a privilege log. For that reason, the Parties are **DIRECTED** to meet and confer to discuss the logistics of how the AI providers, to the extent they have responsive materials, will be instructed to produce such materials. If the Parties cannot agree on a procedure, the Court will hear the Parties' respective positions on this issue at the follow-up discovery hearing that is tentatively set for October 26, 2026 at 1 p.m.

## III. CONCLUSION

For the foregoing reasons, it is **ORDERED and ADJUDGED** as follows:

1. Defendant's objections to the subpoenas to the AI providers and the Seventh RFP are **OVERRULED in part and SUSTAINED in part** consistent with this Order. Defendant's blanket scope objection to Request Nos. 1, 3, 4, and 7 (in part) are **OVERRULED** to the extent those requests seek nonprivileged AI communications concerning the Fontainebleau Hotel, counsel for Plaintiff, or any employee, owner, or representative of the Fontainebleau Hotel, respectively. Defendant's blanket scope objections to Request Nos. 2, 5, 6, and 7 (in part) are **SUSTAINED**. Defendant is not required to produce any documents in response to those requests. To the extent Defendant withholds otherwise responsive materials based on his work-product protection objection, Defendant **SHALL** comply with Federal Rule of Civil Procedure 26(b)(5)(A), including by providing a sufficient privilege log identifying the withheld materials and the grounds for the asserted protection.
2. Plaintiff's Oral Motion to Compel Defendant to Consent to Plaintiff's Proposed AI-Provider Subpoenas, **ECF No. [288]**, is **DENIED**.
3. Plaintiff **MAY** serve subpoenas under Rule 45 directed to the four AI service providers, but the requests **SHALL** be limited to AI communications since December 3, 2024, concerning or relating to (a) the Fontainebleau Hotel; (b) counsel for Plaintiff; or (c) any employee, owner, or representative of the Fontainebleau Hotel. Before the issuance of such revised subpoenas, the Parties are **DIRECTED** to meet and confer to discuss the logistics of how the AI providers, to the extent they have responsive materials, will be instructed to produce such materials in light of potential work-product objections. Any

subpoenas issued pursuant to this Order remain subject to Federal Rule of Civil Procedure 45. Nothing in this Order compels a nonparty provider to produce information or resolves objections that may be raised by a subpoena recipient.

4. All other provisions and deadlines established in the First Order, ECF No. [281], **REMAIN IN EFFECT**.

**DONE and ORDERED** in Chambers in Miami, Florida on October 21, 2026.

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc: All Counsel of Record