UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:25-cv-20251-JTK

FONTAINEBLEAU FLORIDA HOTEL, LLC,

Plaintiff,

v.

JACOB SHMUEL BOTACH a/k/a
SHMULEY BOTEACH, et al.,

Defendants.
_____________________________________________/

**DEFENDANT'S OBJECTIONS TO AND APPEAL OF MAGISTRATE JUDGE'S SECOND ORDER AFTER DISCOVERY HEARING PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 72(a) AND MAGISTRATE JUDGE RULE 4(a)(1)**

Defendant Jacob Shmuel Botach ("Defendant"), pursuant to Federal Rule of Civil Procedure 72(a), 28 U.S.C. § 636(b)(1)(A), and Southern District of Florida Magistrate Judge Rule 4(a)(1), respectfully objects to limited portions of the Second Order in order to preserve his objections for appellate review. ECF No. 289 ("Second Order").

Defendant does not seek wholesale reversal of the Second Order. The Magistrate Judge sustained Defendant's objections to Request Nos. 2, 5, and 6; denied Plaintiff's request to compel Defendant to execute authorizations for the AI providers; and preserved Defendant's ability to assert document-specific work-product protection. Defendant does not challenge those rulings.

These objections concern the portions of the Second Order that (1) overruled Defendant's objections to Request Nos. 1, 3, and 4 and the corresponding portion of Request No. 7; and (2) permitted Plaintiff to obtain historical AI communications that existed and were available for discovery before expiration of general discovery, notwithstanding Federal Rule of Civil Procedure 26(b)(2)(C)(ii).

The first issue presents a discrete legal error. Rule 26(b)(2)(C)(ii) commands that a court "must limit" otherwise permissible discovery when "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Defendant squarely presented that objection in the supplemental briefing (ECF No. 282) that the Magistrate Judge ordered the parties to file in the First Order after discovery hearing. ECF No. 281. The Second Order acknowledged it, but did not determine whether Plaintiff had ample opportunity to obtain the historical AI communications during general discovery. Instead, the Second Order reasoned that, because the District Court reopened discovery "limited to damages," the Magistrate Judge could not deny Plaintiff discovery supposedly "expressly authorized by the District Court." ECF No. 289 at 15–16.

Respectfully, ECF No. 261 did not expressly authorize these AI requests. It authorized "discovery limited to damages." ECF No. 261 at 22. Whether particular discovery fell within that subject-matter limitation did not eliminate Rule 26(b)(2)(C)(ii)'s separate mandatory restriction. The Court should therefore modify the Second Order at least as to AI communications that existed during general discovery and that Plaintiff had ample opportunity to pursue then.

The second objection is narrower still. Even assuming some AI communications may bear on punitive damages, the Second Order's reasoning does not support compelling every AI communication merely "concerning or relating to" the Hotel, Plaintiff's counsel, or every Hotel employee, owner, or representative.

The Second Order itself repeatedly recognized that the information sought must bear a sufficient relationship to the alleged injury and remaining damages issues. Yet the operative requests contain no such nexus requirement. The Court should narrow the requests to communications actually bearing on conduct alleged to have caused or amplified Plaintiff's injury or Defendant's alleged specific intent to harm Plaintiff.

Third, and independent of relevance, the requests are disproportionate to the needs of the case and intrude on Defendant's private communications, and the Second Order did not perform the proportionality analysis Rule 26 requires. Proportionality was squarely raised in Defendant's written objections. ECF No. 296-2. Defendant also files these objections to preserve, without waiver, every ground raised before the Magistrate Judge for review by this Court and, if necessary, on appeal.

## I. RELEVANT BACKGROUND

On September 17, 2026, the District Court permitted the parties to "conduct discovery limited to damages for an additional thirty (30) days." ECF No. 261 at 22. The District Court later extended the deadline for completing that discovery through November 9, 2026, without enlarging its scope. *See* ECF No. 273; ECF No. 289 at 6–7.

Plaintiff thereafter pursued extraordinarily broad discovery of Defendant's communications with artificial-intelligence platforms beginning December 3, 2024 through third-party subpoenas to AI service providers and the Seventh RFP directed to Defendant. Because the discovery requested in the subpoenas overlapped with the discovery requested in the Seventh Request for Production the Magistrate Judge considered them together. ECF No. 289 at 1-2. The disputed requests sought, among other categories:

1. all AI communications concerning or relating to the Fontainebleau Hotel;
2. all AI communications concerning or relating to counsel for Plaintiff;
3. all AI communications concerning or relating to any employee, owner, or representative of the Fontainebleau Hotel; and
4. deleted AI communications falling within the requested categories.

*See* ECF No. 289 at 3–4.

Defendant objected that the requests exceeded the limited reopening of discovery, that Plaintiff already knew of the alleged AI use during general discovery but did not pursue the discovery then, that generalized hostility did not establish the necessary relationship to the damages issues, and that litigation-related AI communications could implicate work-product protection. *See* ECF No. 282. Defendant also objected to the Seventh Request for Production base

As to prior opportunity, Defendant specifically relied upon Rule 26(b)(2)(C)(ii) and *American Key Corp. v. Cole National Corp.*, 762 F.2d 1569, 1576–78 (11th Cir. 1985). Defendant showed that Plaintiff's First Amended Complaint itself alleged Defendant's asserted use of AI and the culpable mental states on which Plaintiff now relies. *See* ECF No. 282 at 2–3. Defendant therefore argued that reopening discovery for a defined subject—damages—did not necessarily revive every previously available line of discovery that could be characterized as relevant to that subject.

The Second Order agreed with Defendant in significant part. It held that Request No. 2, seeking every AI communication concerning the litigation, was "exceptionally broad" and would encompass communications having "no meaningful connection to the amount of damages or Defendant's alleged intent to

harm Plaintiff." ECF No. 289 at 13. It likewise sustained Defendant's objections to Request Nos. 5 and 6 because generalized communications concerning court orders and judicial officers lacked a sufficient connection to Plaintiff's alleged injury. *Id*. at 13–15.

But the Second Order reached the opposite conclusion concerning Request Nos. 1, 3, and 4. It reasoned that AI communications concerning the Hotel, its counsel, and its employees, owners, and representatives "may reveal information relevant to Defendant's alleged intent to harm Plaintiff, the nature and persistence of the challenged conduct, and the extent to which that conduct allegedly amplified Plaintiff's injuries." *Id*. at 12. The Court therefore overruled Defendant's scope objection to those requests and permitted discovery of corresponding deleted communications under Request No. 7. Id. at 12–13.

As to Rule 26(b)(2)(C)(ii), the Second Order acknowledged Defendant's argument that Plaintiff previously had ample opportunity to pursue AI discovery. *Id*. at 15. It further agreed that "an order reopening discovery for a limited purpose does not authorize unrestricted additional discovery." *Id*. The Order nevertheless held:

> Given the District Court's broad discretion to manage discovery and its decision to reopen discovery limited to damages in this case, the undersigned cannot deny Plaintiff discovery expressly authorized by the District Court.

*Id*. at 15–16.

The Order reasoned that *American Key* did not establish that discovery "otherwise falling within an expressly authorized reopening must be denied merely because the requesting party might have pursued similar information earlier." *Id*. at 16. It also noted that "at least some responsive communications may have been created after the original discovery period closed." *Id*.

On October 28, 2026, the Magistrate Judge entered ECF No. 303 and ordered Defendant to produce responsive, nonprivileged records responsive to Request Nos. 1, 3, 4, and 7 in part no later than midnight on October 30, 2026. ECF No. 303 at 14–16. The Magistrate Judge expressly stated that the production order "does not impact Defendant's right to appeal the undersigned's ruling at ECF No. [289] to District Judge Kuntz." Id. at 15.

## II. STANDARD OF REVIEW

A party may object to a magistrate judge's ruling on a nondispositive matter within fourteen days after service. Fed. R. Civ. P. 72(a); S.D. Fla. Mag. J. R. 4(a)(1). The District Court "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see* 28 U.S.C. § 636(b)(1)(A).

The standard is deferential. A factual determination is clearly erroneous when, after reviewing the record as a whole, the Court is left with a "definite and firm conviction that a mistake has been committed." *Krys v. Lufthansa German Airlines*, 119 F.3d 1515, 1523 (11th Cir. 1997). But the "contrary to law" component, by contrast, carries no such deference: an order is contrary to law when it "fails to apply or misapplies relevant statutes, case law or rules of procedure." *Sun Capital Partners, Inc. v. Twin City Fire Ins. Co.*, No. 12-81397-CIV, 2015 WL 11921411, at *1 (S.D. Fla. July 6, 2015).

Defendant's first objection principally invokes the "contrary to law" standard. Defendant does not ask the Court merely to substitute a different discretionary discovery judgment and Defendant does not seek a second bite at the apple. Defendant submits that the Second Order failed to apply Rule 26(b)(2)(C)(ii)'s independent, mandatory limitation to the historical discovery at issue – a failure to

apply a controlling rule of procedure that is contrary to law. Defendant's second and third objections present both a misapplication of law and, to the extent the Court reaches the discretionary balance, a clearly erroneous assessment of relevance and proportionality.

## III. OBJECTION I: THE SECOND ORDER IS CONTRARY TO RULE 26(b)(2)(C)(ii) INSOFAR AS IT PERMITS HISTORICAL AI DISCOVERY WITHOUT DETERMINING WHETHER PLAINTIFF PREVIOUSLY HAD AMPLE OPPORTUNITY TO OBTAIN IT

### A. Rule 26(b)(2)(C)(ii) imposes an independent mandatory limitation on otherwise discoverable information.

Rule 26 contains more than one limitation on discovery. Rule 26(b)(1) defines the general scope of relevant and proportional discovery. Rule 26(b)(2)(C), however, separately directs that:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the party seeking discovery has had ample opportunity to obtain the information by discovery in the action.

Fed. R. Civ. P. 26(b)(2)(C)(ii) (emphasis added).

The Rule expressly operates on discovery "otherwise allowed." Thus, a conclusion that information is relevant to damages under Rule 26(b)(1) does not resolve the separate question whether Rule 26(b)(2)(C)(ii) requires its limitation because the requesting party already had ample opportunity to obtain it.

*American Key* illustrates the distinction between a newly arising basis for additional discovery and an attempt to use a limited reopening to revisit previously available discovery. 762 F.2d at 1576–78. There, the Eleventh Circuit was "guided by" the controlling distinction "between an opportunity to conduct discovery and a failure to make use of that opportunity." *Id.* at 1575-76. The court upheld restrictions

on additional discovery where the subjects and witnesses were previously known and the requesting party offered no adequate explanation for its failure to pursue the discovery when the opportunity existed. *Id.* at 1578. The court distinguished genuinely new material that justified limited additional discovery. *Id.* at 1576–78.

That distinction applies directly here.

**B. Defendant specifically raised the prior-opportunity objection as to information Plaintiff knew how to pursue during general discovery.**

This was not an argument first raised on review. Defendant's supplemental memorandum expressly invoked Rule 26(b)(2)(C)(ii) and *American Key*.

Plaintiff's own First Amended Complaint alleged use of artificial intelligence in connection with the challenged conduct. *See* ECF No. 12 ¶¶ 2, 10(e), 112; ECF No. 282 at 3. It also alleged knowing falsity, financial motivation, and specific intent to harm. *See* ECF No. 12 ¶ 63; ECF No. 282 at 3.

Thus, according to Plaintiff's own pleading, the factual predicate for pursuing AI discovery existed during general discovery. Plaintiff could have requested nonprivileged prompts and communications concerning creation of the challenged publications, identified the tools and accounts allegedly used, and pursued appropriate discovery concerning dissemination. *See* ECF No. 282 at 3.

Nothing in the Second Order identifies a circumstance that prevented Plaintiff from pursuing those historical communications during general discovery.

**C. The Second Order did not decide whether Plaintiff had ample prior opportunity; it instead treated the damages-only reopening as "express" authorization of the discovery.**

The Second Order acknowledged Rule 26(b)(2)(C)(ii), acknowledged *American Key*, and agreed with Defendant's general premise that a limited reopening does not authorize unrestricted discovery. ECF No. 289 at 15.

But it did not determine whether Plaintiff had ample opportunity during general discovery to obtain AI communications that already existed at that time.

Instead, the Order reasoned:

> Given the District Court's broad discretion to manage discovery and its decision to reopen discovery limited to damages in this case, the undersigned cannot deny Plaintiff discovery expressly authorized by the District Court.

*Id*. at 15–16.

Respectfully, that premise conflates two distinct questions.ECF No. 261 authorized "discovery limited to damages." ECF No. 261 at 22. It did not expressly authorize Requests 1, 3, 4, or 7. It did not mention AI communications. It did not determine whether Plaintiff had previously had ample opportunity to obtain historical AI records. And it did not suspend Rule 26(b)(2)(C)(ii).

Indeed, the parties were directed to brief precisely whether these AI requests fell within the limited reopening. *See* ECF No. 281 at 5–6; ECF No. 289 at 1–2. If ECF No. 261 had already "expressly authorized" these requests, there would have been no scope question left to resolve.

The damages-only reopening establishes the subject matter within which additional discovery potentially may occur. Rule 26(b)(2)(C)(ii) independently limits the extent of discovery within that subject matter when the requesting party previously had ample opportunity to obtain the information.

By treating a general damages reopening as express authorization of particular historical discovery, the Second Order did not give independent effect to Rule 26(b)(2)(C)(ii).

**D. The fact that some responsive communications were created after the original discovery cutoff does not resolve whether Plaintiff had ample opportunity to pursue AI discovery when general discovery was open.**

The Second Order also reasoned that "at least some responsive communications may have been created after the original discovery period closed." ECF No. 289 at 16. That observation does not resolve Defendant's Rule 26(b)(2)(C)(ii) objection.

The relevant inquiry is not merely whether each individual document Plaintiff now seeks had already been created before the discovery cutoff. Rule 26(b)(2)(C)(ii) asks whether "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Here, Plaintiff's own First Amended Complaint placed Defendant's alleged use of AI at issue during general discovery. *See* ECF No. 12 ¶¶ 2, 10(e), 112. Plaintiff likewise alleged knowing falsity, financial motivation, and specific intent to harm. Id. ¶ 63. Yet Plaintiff did not pursue discovery concerning the AI platforms allegedly used, the relevant accounts, Defendant's AI communications, or the alleged use of AI in creating or disseminating the challenged publications while general discovery remained open.

Had Plaintiff timely pursued that known subject during general discovery, the parties and the Court could have addressed the permissible scope of AI discovery at that time. Plaintiff could have sought identification of the relevant platforms and accounts, requested then-existing nonprivileged communications, pursued appropriate third-party discovery, and, if warranted, sought supplementation or continuing-production requirements applicable to later developments. Plaintiff

instead allowed general discovery to close without pursuing the subject and now seeks to initiate broad AI discovery during a reopening expressly limited to damages.

The fact that particular communications may have been created after the original discovery cutoff does not eliminate that prior opportunity. At most, the timing of particular communications may bear on the extent of any supplementation obligation or the appropriate scope of continuing discovery. It does not answer the antecedent question raised by Rule 26(b)(2)(C)(ii): whether Plaintiff had ample opportunity to pursue the known subject of AI discovery during the period in which general discovery was authorized.

Nor does Rule 26(e) require a different conclusion. Courts have distinguished between the continuing obligation to correct or supplement a materially incomplete or incorrect discovery response and an automatic obligation to produce every responsive document created after discovery closes. *See*, e.g., *Coquina Invs. v. Rothstein*, No. 10-60786-CIV, ECF No. 911 (S.D. Fla. May 14, 2012). Thus, Defendant does not contend that a timely request necessarily would have required perpetual production of every later-created AI communication. The point is narrower: had Plaintiff timely pursued this known category of discovery, the permissible scope of any supplementation or continuing production could have been addressed during general discovery rather than raised for the first time through a damages-only reopening.

That a party made a tactical choice not to pursue a known category of discovery during the original period does not defeat the Rule 26(b)(2)(C)(ii) bar or supply good cause to revisit it. In *Croman Corp. v. United States*, 94 Fed. Cl. 157, 161 (2010), the court applied that Rule and denied a motion to reopen discovery "for the limited purpose" of pursuing a new theory where the movant "has had ample opportunity to obtain the information by discovery in the action," even though the

movant had narrowed its focus during the original period as an "efficient litigation strategy." The ample-opportunity determination is an independent and sufficient ground that the court must actually make. *Id*. at 162.

Indeed, Plaintiff's theory of a continuing course of conduct reinforces rather than eliminates the diligence issue. If Plaintiff believed Defendant was engaged in an ongoing AI-assisted campaign relevant to its claims and damages, that theory supplied a reason to pursue AI discovery while general discovery remained open. The later creation of additional communications does not explain the failure to investigate the known subject when Plaintiff had the opportunity to do so.

Accordingly, the Second Order's observation that some communications may postdate the original discovery period does not dispose of Defendant's preserved Rule 26(b)(2)(C)(ii) objection. The Court should determine whether Plaintiff had ample opportunity to pursue AI discovery when general discovery was open and, if so, whether Rule 26(b)(2)(C)(ii) precludes Plaintiff from using the limited damages reopening to initiate that previously available line of discovery.

**E. The appropriate relief can be narrow.**

Defendant therefore respectfully asks the Court to modify ECF No. 289 to provide that Plaintiff may not obtain responsive AI communications that existed before expiration of general discovery where Plaintiff had ample opportunity to obtain those communications during general discovery.

Alternatively, the Court should set aside that portion of ECF No. 289 and remand the issue for an express determination under Rule 26(b)(2)(C)(ii), separately considering historical communications and communications created after expiration of general discovery.

That remedy preserves the District Court's damages-only reopening while giving effect to Rule 26(b)(2)(C)(ii).

## IV. OBJECTION II: REQUEST NOS. 1, 3, AND 4 REMAIN OVERBROAD BECAUSE THEIR OPERATIVE LANGUAGE REQUIRES NO NEXUS BETWEEN THE COMMUNICATION AND THE CONDUCT OR INJURY FOR WHICH DAMAGES MAY BE AWARDED

Even apart from the prior-opportunity limitation, Request Nos. 1, 3, and 4 remain broader than the reasoning used to sustain them.

### A. The Second Order itself correctly recognized that a meaningful connection to the alleged injury is required.

The Second Order repeatedly applied a nexus principle in sustaining Defendant's other objections.

Request No. 2 was impermissibly broad because it encompassed communications about the litigation having "no meaningful connection to the amount of damages or Defendant's alleged intent to harm Plaintiff." ECF No. 289 at 13.

Request No. 5 was impermissible because disagreement with or hostility toward a court order did not, "without a sufficient connection to the alleged injury," make every such communication relevant to damages. *Id*. at 13–14.

Request No. 6 was impermissible because communications concerning judicial officers "without more" did not bear a sufficient relationship to damages for harm allegedly suffered by the Hotel. *Id*. at 14.

The Order appropriately recognized *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408, 422–23 (2003), which cautions that punitive damages may not be imposed for unrelated or dissimilar conduct and requires a nexus between other conduct and the specific harm suffered by the plaintiff.

Florida's statutory cap exception similarly focuses on a particular claimant and injury. Section 768.73(1)(c) removes the punitive-damages cap only where the factfinder determines that "at the time of injury the defendant had a specific intent to harm the claimant" and that the defendant's conduct actually harmed that claimant. Fla. Stat. § 768.73(1)(c).

The relevant claimant here is Fontainebleau.

**B. The reasoning supporting discovery of particular AI communications does not support production of every communication within Requests 1, 3, and 4.**

The Second Order explained that AI communications could be relevant "[t]o the extent Defendant used AI platforms to generate, revise, or refine statements concerning Plaintiff, its counsel, or its representatives." ECF No. 289 at 9. Those communications could reveal "the purpose for which the statements were created, the instructions Defendant supplied, and the effects he sought to achieve." *Id*.

Defendant does not contend in these objections that such a sufficiently connected communication is categorically irrelevant. The problem is that the actual Requests contain no such limitation.

> Request No. 1 seeks every AI communication concerning or relating to the Hotel.
>
> Request No. 3 seeks every AI communication concerning or relating to Plaintiff's counsel.
>
> Request No. 4 seeks every AI communication concerning or relating to any employee, owner, or representative of the Hotel.

ECF No. 289 at 3.

A communication may satisfy one of those subject labels without bearing on creation, revision, dissemination, continuation, or amplification of conduct that injured Plaintiff. For example, an AI communication might concern the identity or

background of counsel, the position held by an employee, factual information about the Hotel, or some other matter having no connection to Defendant's alleged intent to harm the Hotel or the extent of its alleged injury.

The Second Order recognized precisely this defect when analyzing Requests 2, 5, and 6. The mere subject of a communication does not establish the necessary relationship to damages.

The same logic applies to Requests 1, 3, and 4.

**C. Herbert does not eliminate the required connection.**

The Second Order relied in part upon *Herbert v. Lando*, 441 U.S. 153 (1979). *Herbert* establishes that a defamation defendant's state of mind is not categorically insulated from discovery and recognizes that subsequent statements and surrounding circumstances may, in appropriate circumstances, bear on malice. *See* id. at 164–65 & n.12.

But *Herbert* does not hold that every later private communication mentioning a plaintiff or a person associated with the plaintiff is relevant.

The passage quoted in the Second Order itself speaks of "relevant circumstances" and evidence that is "not too remote." *Id*. at 164 n.12. *Herbert* therefore supports a fact-sensitive inquiry into connection and remoteness, not discovery based solely on a broad subject label.

Similarly, *Faulk v. Dimerco Express USA Corp*., 172 F.4th 844 (11th Cir. 2026), confirms the importance of reprehensibility and repeated, intentional conduct in evaluating punitive damages. It does not eliminate *State Farm's* requirement that the conduct considered for punitive purposes be sufficiently related to the conduct and injury at issue. *See State Farm*, 538 U.S. at 422–24.

### D. A narrower formulation would preserve legitimate damages discovery without sweeping in unrelated private communications.

Defendant therefore requests, in the alternative, that the Court narrow Request Nos. 1, 3, and 4 and the corresponding portion of Request No. 7 to communications that bear a sufficient relationship to the conduct alleged to have harmed Fontainebleau.

For example, the Court could limit production to nonprivileged AI communications that:

1. concern the creation, planning, drafting, editing, revision, refinement, publication, republication, dissemination, or amplification of statements or content concerning Fontainebleau;
2. concern continuation or amplification of conduct alleged in the First Amended Complaint to have injured Fontainebleau; or
3. otherwise bear directly on Defendant's alleged specific intent to harm Fontainebleau in connection with the conduct that caused or allegedly continued or amplified the claimed injury.

As to communications concerning Plaintiff's counsel or Hotel employees, owners, or representatives, the communication should additionally be required to bear a relationship to alleged injury to Fontainebleau rather than merely mention or concern the individual.

That approach is consistent with the Second Order's own treatment of Requests 2, 5, and 6 and avoids converting damages discovery into a general examination of Defendant's private AI history.

## V. OBJECTION III: REQUEST NOS. 1, 3, 4, AND THE CORRESPONDING PORTION OF REQUEST NO. 7 ARE DISPROPORTIONATE AND INTRUDE ON DEFENDANT'S PRIVATE COMMUNICATIONS.

Independent of relevance, Rule 26 requires that these requests be limited on proportionality grounds, and the Second Order did not undertake that analysis. Rule 26(b)(1) permits discovery only of matter that is both relevant and "proportional to the needs of the case," and Rule 26(b)(2)(C)(iii) directs that the court "must limit" discovery where "the burden or expense of the proposed discovery outweighs its likely benefit." Relevancy and proportionality are the "guiding principles" that govern the scope of all discovery. *McArdle v. City of Ocala, FL*, 451 F. Supp. 3d 1304, 1308 (M.D. Fla. 2020). The failure to apply that mandatory limitation is independently contrary to law.

**A. The requests are not proportional to the needs of the case.**

The requests compel Defendant to search, review, and produce every communication he has had with any AI platform since December 3, 2024 that in any way "concern[s] or relat[es] to" the Hotel, Plaintiff's counsel, or any Hotel employee, owner, or representative. The burden of reviewing nearly two years of a party's communications to isolate arguably responsive material is substantial, and courts decline to impose it where the requesting party offers "nothing more than its hope that there might be something of relevance." *Palma v. Metro PCS Wireless, Inc.*, 18 F. Supp. 3d 1346, 1348 (M.D. Fla. 2014). Furthermore, the Second Order sustained Defendant's objections to the parallel categories (Requests 2, 5, and 6) precisely because broad subject-matter sweeps bear little connection to the damages issues that remain. Where broad discovery into a party's general conduct is sought, the "benefit of granting the broad discovery requested" may be "outweighed by the burden of the proposed discovery and the privacy concerns" of the responding party, and the discovery must then be limited. *McArdle*, 451 F. Supp. 3d at 1312-13.

**B. The requests intrude on Defendant's private communications.**

The communications sought are Defendant's private exchanges with AI platforms. Even where private communications are not privileged, an opposing party "does not have a generalized right to rummage at will" through them, and "speculation" that a communication "might include a party admission, without more, is not a sufficient reason to require" a party to provide "open access to [its] communication with third parties." *Palma*, 18 F. Supp. 3d at 1348. Privacy is a recognized proportionality factor that weighs against the broad requests here.

## VI. CONCLUSION

For these reasons, Defendant respectfully requests that the Court sustain these objections in part and:

A. MODIFY ECF No. 289 to exclude responsive AI communications that existed before expiration of general discovery where Plaintiff had ample opportunity to obtain those communications during general discovery pursuant to Rule 26(b)(2)(C)(ii);

B. alternatively, SET ASIDE that portion of ECF No. 289 and remand the issue for an express determination under Rule 26(b)(2)(C)(ii), distinguishing historical communications from communications created after expiration of general discovery;

C. independently or alternatively, MODIFY Request Nos. 1, 3, 4, and the corresponding portion of Request No. 7 to require a sufficient nexus between the communication and the conduct alleged to have caused, continued, or amplified Plaintiff's injury or Defendant's alleged specific intent to harm Plaintiff; and

D. grant such other relief as the Court deems just.

Respectfully submitted,

**NICKLAUS, NICKLAUS & ASSOCIATES, P.A.**

By: /s/ *P. Brandon Perkins*
**P. BRANDON PERKINS, ESQ**.
Florida Bar No.: 568635
Nicklaus, Nicklaus & Associates, P.A.
4651 Ponce de Leon Boulevard, Suite 200
Coral Gables, Florida 33146
Phone: (305) 460-9888
Fax: (305) 460-9889
BPerkins@Nicklauslaw.com
StephanieL@Nicklauslaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 30, 2026, the foregoing was electronically filed with the Clerk of Court using CM/ECF, which will provide notice to all counsel of record.

/s/ P. Brandon Perkins

PHILLIP BRANDON PERKINS