IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA MIAMI DIVISION

FONTAINEBLEAU FLORIDA HOTEL, LLC d/b/a FONTAINEBLEAU MIAMI BEACH, *a foreign limited liability company*,

CASE NO. 1:25-cv-20251-KMM

Plaintiff,

v.

JACOB SHMUEL BOTACH a/k/a "SHMULEY BOTEACH," *an individual*, and John Does 1-10,

Defendants.

___________________________________/

**PLAINTIFF FONTAINEBLEAU FLORIDA HOTEL, LLC'S**
**<u>RENEWED RULE 11 MOTION FOR SANCTIONS</u>**

Plaintiff, Fontainebleau Florida Hotel, LLC d/b/a Fontainebleau Miami Beach ("Plaintiff" or "Hotel"), pursuant to Fed. R. Civ. P. 11, files this Renewed Motion for Rule 11 Sanctions.

**PREAMBLE**

Earlier this year, this Court wrote, "Although Plaintiff raises serious questions about the merits of the Counterclaim – and the Court does not foreclose the possibility that sanctions may ultimately be warranted – the Rule 11 inquiry cannot be properly conducted at this stage, where the Court has not yet adjudicated the underlying claims." *See* ECF No. 132 at 4. The Court noted "that Defendant has been placed on clear notice of Plaintiff's contention that the Counterclaim is frivolous. Accordingly, should Plaintiff prevail on its dispositive motion, Plaintiff may elect to renew the Motion for Sanctions at that time." *Id.* at 5.

The following month, Plaintiff took Defendant Jacob Shmuel Botach's ("Botach") deposition, wherein Defendant Botach repeatedly confirmed he had no evidence to support any of his counterclaims. *See*, *e.g.*, ECF No. 155-33 at 232:20-239:2 (failing to identify a single comparator); 101:9-104:19 (reading the language on Botach's hotel guest cards that management can revoke access at any time, despite Botach claiming those cards granted him "lifetime" access).

Earlier this year, the Court dismissed Botach's Counterclaim with prejudice. *See* ECF No. 261 at 21, ¶ 3. Accordingly, Plaintiff renews its Rule 11 Motion for Sanctions.

Apart from this preamble, certificate of conferral, certificate of service, and one minor, non-substantive revision (changing, "This Motion is being served . . ." to "This Motion was served . . ."), this renewed motion is identical in substance and form to Plaintiff's initial Rule 11 Motion. *Cf.* ECF No. 105.

**<u>INTRODUCTION</u>**

In response to the Hotel's lawsuit against him, Botach looked for any possible avenue to retaliate. The merits did not matter. The point was leverage and harassment. The result was his

Counterclaim and Third-Party Complaint (the "Counterclaim"). (ECF No. 40.)

The Counterclaim lacks legal and factual support. It contains three civil-rights claims that Botach and his attorneys knew or should have known were frivolous. It contains a tortious interference claim based on nothing that could amount to a protected business interest of Botach's and based on Botach's invention of conduct by Jeffrey Soffer. Botach and his counsel took no (or at least insufficient) efforts to investigate the veracity or soundness of the claims they asserted.

And it was Defendant's and his own counsel's personal animus against Mr. Soffer, and his desire to maintain his image as a fighter, that ultimately compelled the Counterclaim's filing. This improper purpose, coupled with the frivolity of the claims, compels sanctions. The courtroom is not an arena to play out delusions of grandeur.

The Hotel incorporates herein the arguments from its Motion to Dismiss and Reply in Support. (ECF Nos. 80, 96.)

This Motion was served in accordance with Fed. R. Civ. P. 11(c)(2) and was filed as provided under Rule 11(c)(2). Counter-Plaintiff was served with the same on November 17, 2025.

**Memorandum of Law**

The purpose of Rule 11 sanctions is to "reduce frivolous claims, defenses, or motions, and to deter costly meritless maneuvers." *Massengale v. Ray*, 267 F.3d 1298, 1302 (11th Cir. 2001). Rule 11 requires that parties filing a paper certify that:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; and
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

Fed. R. Civ. P. 11(b)(1)–(3); *see also Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1294 (11th

Cir. 2002).

Under Rule 11, courts apply an objective standard to determine the reasonableness of the conduct under the circumstances at the time the representation at issue was made. *Custom Mfg. & Eng'g, Inc. v. Midway Services, Inc.*, 2006 WL 4792784 at *2 (M.D. Fla. 2006). In making this determination, a two-step inquiry is required: (1) whether the party's claims are objectively frivolous, and (2) whether the person who signed the pleadings should have been aware they were frivolous. *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998).

"[A] lawyer is obligated to inquire as to the law and facts of a particular issue before he or she submits any motion, pleading or paper." *Stinson v. Am. Sterilizer Co.*, 127 F.R.D. 689, 692 (M.D. Ala. 1989). The duty to make a reasonable inquiry is a continuing one. *Battles v. City of Ft. Myers*, 127 F.3d 1298, 1300 (11th Cir. 1997). Rule 11 "allows sanctions when an attorney continues 'insisting upon a position after it is no longer tenable.'" *Id.* A party's failure to ensure that its allegations comply with these standards constitutes grounds for a court "to impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). Sanctions may include nonmonetary terms, such as dismissal with prejudice, *Petrano v. Old Republic Nat. Title Ins. Co.*, 590 F. App'x 927, 929 (11th Cir. 2014), or monetary penalties such as an order directing payment of "part or all of the reasonable attorney's fees and other expenses directly resulting from the violation," or both. Fed. R. Civ. P. 11(c)(4).

## ARGUMENT

### I. Counter-Plaintiff's Title II Claim is Frivolous Because Botach Cannot Possibly Identify a Suitable Comparator.

Botach has never been denied access to the Hotel based on his religious background and was never asked by anyone to leave the Hotel. As the Counterclaim itself alleges, Botach

voluntarily left the Hotel in the early morning of December 2, 2024. (ECF No. 40 ¶ 28.) The allegation that Botach has been denied access to the Hotel because he is Jewish is a patently false representation to the Court. Botach has not even attempted to visit the Hotel since the Incident.

Additionally, Botach and his counsel know or should have known that identifying an apt comparator is and will be impossible. Perhaps this is why the Counterclaim does not even attempt to do so. The Title II claim is therefore untenable because Botach cannot, presumably after engaging in the required attempt to do so before filing, identify anyone who was similarly situated and treated differently; there is no one else who has engaged in a purposeful and malicious campaign to defame the Hotel and threatened litigation against it. A legal claim is frivolous "when the party files a pleading that is based on a legal theory that has no reasonable chance of success." *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996).

The reasonableness of a party's prefiling inquiry into facts and claims includes consideration of how much time for investigation was available to the signer and whether there was a plausible view of the law. *Jones v. Int'l Riding Helmets, Ltd.*, 49 F.3d 692, 695 (11th Cir. 1995). Here, Botach had nearly six months to work on the Counterclaim. There is no plausible view of Title II under which claims are sound without a similarly situated comparator or without an actual denial of service or access for an improper purpose.

There is no indication that the Counterclaim is intended to challenge the similarly situated case law, either. Botach filed a 20-page Response in Opposition ("Response") to the Hotel's Motion to Dismiss (ECF No. 92) in which there is no mention of or argument in support of changing existing case law. Botach and his counsel tacitly admit this by serially making up case law. *See* ECF No. 96-1. Their doctoring of case law is another independent basis for Rule 11 sanctions.

## II. The § 1981 Claim Has No Legal or Factual Basis Because There is no Contract.

Section 1981 claims require interference with contracts. *Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1311 (11th Cir. 2010). Botach knew or should have known that he did not try to make any contract with the Hotel and otherwise did not have any contract with the Hotel that could have been interfered with. And § 1981 claims cannot be based on speculative future contracts. *Arguello v. Conoco, Inc.*, 330 F.3d 355, 358 (5th Cir. 2003). Botach's consciousness of the frivolity of his claim is demonstrated by his fabrication of case law to support his position that allegations of speculative future contracts are sufficient. (ECF No. 92 at 13 (citing *Melton v. Nat'l Dairy LLC,* 705 F. Supp. 2d 1303, 1313-14 (N.D. Ga. 2010))). Rule 11 "establishes an objective standard, intended to eliminate any empty-head pure-heart justification for patently frivolous arguments." *S. Grouts & Mortars, Inc. v. Laticrete Int'l, Inc.*, 2007 WL 9700806 at *3 (S.D. Fla. 2007).

And in the same way Botach's Title II claim is frivolous for lack of any possible comparator, his § 1981 claim, which requires the same comparators, is also frivolous. *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1218 (11th Cir. 2019).

## III. The § 1982 Claim Has No Legal or Factual Basis Because There is no Property Interest.

"By its terms 42 U.S.C. § 1982 is limited to discrimination with respect to property rights." *Evans v. Meadow Steel Products, Inc.*, 572 F. Supp. 250, 253 (N.D. Ga. 1983). A plaintiff must suffer "interference with the rights or benefits connected with the ownership of property." *Prestige Restaurants & Entm't, Inc. v. Bayside Seafood Rest., Inc.*, 2010 WL 680905 at *7 (S.D. Fla. 2010). The Counterclaim alleges no property rights. It does not present any facts that Botach attempted to acquire any property rights from the Hotel.

And in the same way Botach's Title II claim is frivolous for lack of any possible comparator, his § 1982 claim, which requires the same comparators, is also frivolous. *Lawrence v.*

*Courtyards at Deerwood Ass'n, Inc.,* 318 F. Supp. 2d 1133, 1150 (S.D. Fla. 2004).

## IV. The Tortious Interference Claim Has No Legal or Factual Basis.

Put simply, Botach and his counsel knew or should have known that a gratuitous donative relationship among persons *not named as parties in the Counterclaim* cannot legally support a tortious interference claim for Botach personally. It would be bad enough if Botach attempted to make a donation-based claim for donations not made to himself personally. But, instead, he made a claim for World Values Network's lost donations, and World Values Network is a third-party nonprofit whose losses Botach has no standing to pursue in his own name.

Further, the claim that Mr. Soffer causally influenced any donor, or even had a sufficient relationship with any of them to do so, is patently false. Botach has produced no support for this false claim. Botach knows or should know that facts to support this claim simply do not exist. "The Rule 11 certification means that there is (or likely will be) 'evidentiary support' for the allegation . . . " *Allscripts Healthcare, LLC v. DR/Decision Res., LLC*, 495 F. Supp. 3d 47, 49 (D. Mass. 2020). Here, there is not <u>and there will not be any</u> evidentiary support for the claim that any changes in donations were caused by Mr. Soffer or the Hotel, as opposed to being caused (if there even were any actionable changes) by normal reactions to Botach's outrageous public spectacles. He is screaming himself into obscurity and has only himself to blame.

Counter-Plaintiff has no possibility of proving causation. There is no evidence that, even assuming everything else about the Counterclaim is true, that any changes to donations to Defendant Botach or the World Values Network were caused or even remotely traceable to Jeffrey Soffer or the Hotel. Counter-Plaintiff does not have any evidence of an essential element of his claim, and the decision to knowingly proceed in that absence is sanctionable.

Further, Botach has no evidence of any legally cognizable commitment to donations. He has no evidence of any withdrawals of donations. The evidence shows that donations stopped

*before* Mr. Soffer allegedly took any action beginning on December 16, 2024. And there is no evidence that anyone had any legal right to future donations.

"A factual claim is frivolous if no reasonably competent attorney . . . could conclude it has a reasonable evidentiary basis." *White v. Sacred Heart Health Sys., Inc.*, 2016 WL 6093495 at *2 (N.D. Fla. 2016). "When there is no factual basis for a particular claim, the attorney has violated Rule 11(b)(3)." *Brown v. Generac Power Sys., Inc.*, 2021 WL 1030229 at *7 (S.D. Fla. 2021).

It was Botach's counsel "who signed the pleadings, and who should have known that the facts of this case, not to mention the law, did not support certain of the claims asserted. Accordingly, [he] has run afoul of Rule 11 and should be made to [pay] the price." *Baker v. McDonald's Corp.*, 686 F. Supp. 1485, 1487 (S.D. Fla. 1987).

## V. The Counterclaim was Filed for an Improper Purpose.

The Counterclaim is vindictive, based on personal animus, and designed to provide Botach with content to post about on social media.

Botach has made the Counterclaim a principal facet of his social-media activity. And those statements reflect that the Counterclaim comes from (1) personal animus against the Hotel, its staff, and its owner, and (2) the desire to look tough online. Botach has stated that the Hotel's Complaint against him is "why I'm going to destroy [Hotel] owner Jeffrey Soffer." Ex. A. He tweeted (to his thousands of followers) that "Jeffrey Soffer's actions in suing to silence me is an abomination to justice and an affront to decency. He must be held to account. Hotels like [Plaintiff] who vilify victims of antisemitic attacks must SOFFER . . . that is SUFFER . . . ." Ex. B. He tweeted "[m]y attorneys will be dropping a legal 30,000 bunker buster lawsuit against Soffer and the hotel Gd willing that will teach bully Billionaires that their money cannot [protect] antisemites and being rich gives you no immunity from being a traitor to your people." Ex. C. He wrote that "Soffer will be subpoenaed and deposed as part of Rabbi Shmuley's $20m counter suit [after he]

sued the rabbi to suppress the incident." Ex. D. He has posted fake pictures of Mr. Soffer and accused him of hiding from being deposed, which is obviously false given Mr. Soffer has not even been served. Ex. H. But Botach is not about the truth. He is using this lawsuit to fabricate a narrative that he has a billionaire on the run when the truth is that Botach has nothing but frivolous claims. Botach has posted about this case and his counterclaim on his various social media platforms hundreds of times combined.

Additionally, Botach's counsel has laid bare his own improper motivation behind the Counterclaim. He demanded *one hundred million dollars* in fourteen days for the Hotel to drop its Complaint. That is obviously extortionate when Botach himself stated that the claim was only for $20 million. Botach's counsel stated he would "file a big scary lawsuit" and had "lodged many SHARK-LIKE, rock-the-boat type, litigation demands . . . for . . . sums . . . over . . . $100mm." He wrote it was "[t]ime for one of those fat checks they are writing to end up in ourrrr pockets, not yours. Time for me to EXPOSE, EXPOSE, EXPOSE, Jeffrey Soffer."[1] He compared himself to a wild predator slaughtering a group of prey animals. Ex. I. Among all these expressions of animus toward Mr. Soffer's very existence, Botach's counsel neglected to describe the factual or legal justification for the Counterclaim. *See Galanis v. Szulik,* 841 F. Supp. 2d 456, 461 (D. Mass. 2011) (imposing sanctions upon a party where it was "apparent that **this action was filed to extort a quick settlement from [plaintiff] and intimidate him into releasing potential claims against [defendant]**" where defendant could not "come forward with *any* evidence supporting the allegations in the complaint" and noting "the federal court system is not to be used to settle personal grudges") (italic emphasis in original; bold emphasis added). Botach's counsel's personal animus is beyond dispute. Other attorneys for Botach disclaimed any approval of the statement,

---

[1] All formatting, capitalization, misspellings in original.

only proving that his lawyer for the Counterclaim, who remains counsel of record, is acting as an agent of chaos when he should be an officer of the court.

And the animosity toward Mr. Soffer and the Hotel predates any purported legal claim. Botach alleges Mr. Soffer made disparaging phone calls on or about December 16, 2024. (ECF No. 40 ¶¶ 36, 38.) But days earlier, on December 11, 2024, Botach wrote on Twitter that Mr. Soffer "is already going bankrupt. Let's help him get there faster." Ex. G. He wrote on December 13, 2024 that Mr. Soffer would "rue the day" the Hotel filed suit against Botach. Ex. E. On December 8, 2024, he posted a "[m]essage to . . . Jeffrey Soffer" to which he attached a picture of a fighter jet bombing a village. Ex. F. Botach made these clear displays of his desire to attack Mr. Soffer and the Hotel *before* the alleged "bases" of his claims under Count IV arose.

Parties and counsel are not required to like the other side. But the conduct at issue here reveals that the motivation behind the Counterclaim was not the vindication of any rights; it was the grandiose desire to look tough on Instagram and attack Mr. Soffer and the Hotel by any means possible, regardless of merit. Botach and his counsel have "exhibited a personal animosity towards [Mr. Soffer] . . . and this animosity has infected many aspects of this litigation." *Benbow v. Ingram*, 2025 WL 1303957 at *9 (E.D.N.C. 2025).

The Court is not a forum for personal dislike or self-promotion via frivolous litigation. *See In re Kunstler*, 914 F.2d 505, 520 (4th Cir. 1990) (upholding Rule 11 sanctions "when the [plaintiff's] primary motives in filing the complaint were to gain publicity, to embarrass state and county officials . . . and to intimidate those involved" in the case). "If counsel willfully files a baseless complaint, a court may properly infer that it was filed either for purposes of harassment, or some purpose other than to vindicate rights through the judicial process." *Brown*, 2021 WL 1030229 at *12. "[B]ecause plaintiff's [pleading] was lacking in both factual and legal support, the [c]ourt infers that it was filed for an improper purpose." *Hughes v. Kia Motors Corp.*, 2015

WL 12559880 at *2 (N.D. Ga. 2015). "Improper purposes include filing suit as leverage in separate proceedings, to obtain discovery for use in other proceedings, and to embarrass, intimidate, or harass." *Benbow*, 2025 WL 1303957 at *8.

## CONCLUSION

Botach did not file the Counterclaim for any legitimate purpose. This Court is not a circus from which Botach can springboard into his angry, if often incoherent, online tirades. The Hotel respectfully requests the Court grant an award of attorney's fees expended on issues related to the Counterclaim and any other relief it deems appropriate.

## CERTIFICATE OF CONFERRAL

On September 25, 2026, counsel for Plaintiff met and conferred via a Zoom videoconference with counsel for Defendant Botach regarding Plaintiff's request to renew this motion. Counsel for Defendant, Christopher Cathey, told Plaintiff's counsel that he practices law differently from this "unprofessional bullshit" and that the Rule 11 motion was itself "bullshit" and that Plaintiff's counsel should go "whine to the Judge" about it. Accordingly, the parties were unable to resolve the motion.

Dated: November 23, 2026
Miami, Florida

Respectfully submitted,

**BURSTYN LAW PLLC**

By: */s/ Sean A. Burstyn*
Sean A. Burstyn, Esq.
Florida Bar No. 1028778
sean.burstyn@burstynlaw.com
1101 Brickell Avenue, Suite S700
Miami, FL 33131

*Counsel for Plaintiff,*
*Fontainebleau Florida Hotel, LLC*
*d/b/a Fontainebleau Miami Beach*

**CERTIFICATE OF SERVICE**

I certify that on November 23, 2026, a true and correct copy of the foregoing was filed via CM/ECF and thereby served by email upon counsel of record.

By: /s/ *Sean A. Burstyn*
Sean A. Burstyn, Esq.